## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| | |
| FTX RECOVERY TRUST, FTX DIGITAL MARKETS, LTD. | Adv. Pro. No. 24-50222 (KBO) |
| Plaintiffs, | **Re:  Adv. D.I. 1, 15** |
| v. | |
| BINANCE HOLDINGS LIMITED., BINANCE CAPITAL MANAGEMENT CO. LTD, BINANCE HOLDINGS (IE) LIMITED, BINANCE (SERVICES) HOLDINGS LIMITED, CHANGPENG ZHAO, DINGHUA XIAO, SAMUEL WENJUN LIM, and DOES 1-1000 | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION TO (A) SERVE THE INDIVIDUAL DEFENDANTS BY ALTERNATIVE MEANS AND (B) SET A SCHEDULING CONFERENCE WITH ALL DEFENDANTS**

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of reorganized debtor entities (the "**Reorganized Debtors**") in the above-captioned chapter 11 cases, a complete list of the Reorganized Debtors' last four digits of their federal tax identification numbers is not provided herein, but may be obtained on the website of the Reorganized Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 7

BACKGROUND ..................................................................................................................... 9

ARGUMENT ........................................................................................................................ 15

I.  Service on the Individual Defendants by Alternative Means is Proper ........................... 15

    A.  Plaintiffs Attempted to Locate and Serve Pursuant to the Hague Convention ..... 16

    B.  Plaintiffs Conducted Good-Faith Diligence on Service by a Foreign Party in the UAE ............................................................................................................. 18

    C.  The Service Plan Provides Proper Notice of this Adversary Proceeding ............. 21

II.  Cause Exists to Set a Joint Scheduling Conference with All Defendants ........................ 28

CONCLUSION ..................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Braverman Kaskey, P.C. v. Toidze,*
   599 F. App'x 448 (3d Cir. 2015) ........................................................................17

*Celgene Corp. v. Blanche Ltd.,*
   Case No. 16-501 (SDW) (LDW), 2017 WL 1282200 (D.N.J. Mar. 9, 2017) .....................20

*CKR L. LLP v. Anderson Invs. Int'l, LLC,*
   525 F. Supp. 3d 518 (S.D.N.Y. 2021) ...............................................................26

*Commodity Futures Trading Commission v. Zhao et al,*
   Case No. 1:23-cv-01887 (N.D. Ill. Mar 27, 2023).................................................11

*Cox v. CoinMarketCap OpCo LLC,*
   Case No. 3:21-cv-08197-SMB (D. Ariz. Mar. 1, 2022) ......................................23

*DAD-JColor Switch LLC v. Fortafy Games DMCC,*
   Case No. 1:18-cv-0419-DAD-JLT, 2018 WL 2298401 (E.D. Cal. May 21, 2018) .......18, 19

*Divx, LLC v. LG Elecs. Inc.,*
   Case No. CV 20-1202-CFC-JLH, 2021 WL 411708 (D. Del. Feb. 5, 2021) .....................27

*Green v. Mitsui Sumitomo Ins. Co. (In re TK Holdings, Inc.),*
   Case No. 17-11375 (BLS), 2021 WL 954827 (Bankr. D. Del. Mar. 8, 2021) ...14, 15, 16, 20

*In re Celsius Network LLC,*
   666 B.R. 28 (Bankr. S.D.N.Y. 2024)...............................................................15, 20

*In re Heckmann Corp. Sec. Litig.,*
   No. CA 10-378-LPS-MPT, 2011 WL 5855333 (D. Del. Nov. 22, 2011) ....................20, 24

*In re Terrorist Attacks on Sept. 11, 2001,*
   Case No. 03-MD-01570 (GBD)(SN), 2023 WL 2966563 (S.D.N.Y. Apr. 17, 2023)..........23

*Kuhlman v. McDonnell,*
   Case No. 1:20-CV-00510, 2021 WL 306468 (S.D. Ohio Jan. 29, 2021) ...........................19

*Kumar v. Alhunaif,*
   Case No. 23-CV-321 (DEH), 2023 WL 8527671 (S.D.N.Y. Dec. 8, 2023) ..........17, 25, 26

*Lahav v. Binance Holdings Limited et al.,*
   Case No. 1:24-cv-21421 (KMM) (S.D. Fla. Apr. 16, 2024) ..................................9

*Menon v. Corbett*,
    Case No. 21-8384 (KM), 2023 WL 4946972 (D.N.J. Aug. 3, 2023) ............................21, 26

*Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*,
    Case No. CV 19-2227 (MN), 2021 WL 2403134 (D. Del. June 11, 2021) .........................27

*Oscilloscope Pictures, Inc. v. Monbo*,
    Case No. 17-CV-7458 (E.D.N.Y. Mar. 13, 2018) ...............................................................23

*Patel v. Defendant "1"*,
    Case No. 3:23-CV-24651-MCR-ZCB, 2024 WL 4919419 (N.D. Fla. Jan. 16, 2024) .........26

*Payne v. McGettigan's Mgmt. Servs. LLC*,
    Case No. 1:19-cv-01517 (DLC), 2019 WL 6647804 (S.D.N.Y. Nov. 19, 2019) ...........19, 27

*Prediction Co. LLC v. Rajgarhia*,
    Case No. 09-cv-7459 (SAS), 2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010) ......................27

*Rosenthal v. Christiana Bank & Tr. Co.*,
    Case No. CA 12-623-LPS, 2012 WL 4442793 (D. Del. Sept. 24, 2012) ............................25

*Sec. & Exch. Comm'n v. Binance Holdings Ltd.*,
    Case No. 1:23-cv-01599 (D.D.C. June 5, 2023) ..................................................................10

*Tyson v. Coinbase Glob., Inc.*,
    Case No. 23-cv-22066, 2024 WL 5126766 (D.N.J. Dec. 16, 2024) ....................................15

*U.S. SEC v. Vuuzle Media Corp.*,
    Case No. 2:21-CV-1226-KSH-CLW, 2021 WL 1731947 (D.N.J. May 3, 2021) ...............20

*United States v. Zhao*,
    Case No. 2:23-cr-179 (RAJ) (W.D. Wash. Nov. 14, 2023)............................................11, 17

*USA v. Information Associated with Google Account*,
    Case No. 2:21-mj-00659-SKV (W.D. Wash. Dec. 17, 2021)...............................................25

## FEDERAL STATUTES

11 U.S.C. § 105(a), (d)........................................................................................................28

31 U.S.C. § 5311.................................................................................................................11

15 U.S.C. §§ 77e(a), (c) .....................................................................................................10

## FEDERAL RULES

Del. Bankr. LR 7004-1...................................................................................................27, 28

Del. Bankr. LR 7016-1 .................................................................................................27, 28

Fed. R. Bankr. P. 7016(b) ..................................................................................................27

Fed. R. Bankr. P. 7016(b)(3)(B) .......................................................................................28

Fed. R. Bankr. P. 7004(a)(1) ..........................................................................................7, 14

Fed. R. Civ. P. 4(f) ..................................................................................................... passim

Fed. R. Civ. P. 4(f)(2) ..................................................................................................15, 18

Fed. R. Civ. P. 4(f)(3) ................................................................................................. passim

## OTHER AUTHORITIES

ARABIAN BUSINESS, *Crypto Giant Binance Said to Mull the UAE For Global HQ*,
    https://www.arabianbusiness.com/industries/technology/crypto-giant-binance-said-to-
    mull-the-uae-for-global-hq .................................................................................18

BLOOMBERG, *FTX Sues Binance, Former CEO Zhao Seeking $1.8 Billion Clawback*,
    https://www.bloomberg.com/news/articles/2024-11-11/ftx-sues-binance-former-ceo-
    zhao-seeking-1-8-billion-clawback ....................................................................10

CNBC, *FTX Sues Crypto Exchange Binance and its Former CEO Zhao For $1.8 Billion*,
    https://www.cnbc.com/2024/11/11/ftx-sues-crypto-exchange-binance-and-its-former-
    ceo-zhao-for-1point8-billion.html ......................................................................10

CNN BUSINESS, *The Middle East Already has A Crypto Hub, and it's Not Dubai*,
    https://edition.cnn.com/2022/02/22/investing/mideast-summary-02-22-2022-
    intl/index.html....................................................................................................18

COIN TELEGRAPH, *FTX Bankruptcy Estate Files $1.8B Lawsuit Against Binance, CZ*,
    https://cointelegraph.com/news/tx-estate-sues-binance-cz-1-8-billion ...............10

FINANCE VISIONS, *Museum of the Future Hosts Binance Founder's Talk on Cryptocurrencies*
    ............................................................................................................................18

FINANCIAL TIMES, *FTX Sues Binance and Its Former CEO Zhao For $1.8 Billion*,
    https://www.ft.com/barrier/corporate/28e231f4-690f-4652-934f-099cc7d7e85a ...............10

FORBES, *Inside The Secret Dubai Homes Of CZ, Mukesh Ambani And 20 Other Billionaires*,
    https://www.forbes.com/sites/giacomotognini/2024/05/14/inside-the-secret-dubai-
    homes-cz-mukesh-ambani-billionaires-binance/ ................................................17

FORBES, *Profile: Changpeng Zhao*,
    https://www.forbes.com/profile/changpeng-zhao/...............................................16

GUARDIAN, *FTX Sues Binance And Its Former CEO For $1.8bn*,
https://www.theguardian.com/technology/2024/nov/11/ftx-sues-binance-changpeng-zhao ............................................................................................................................................10

HCCH, *HCCH Members*,
https://www.hcch.net/en/states/hcch-members ....................................................................18

X, *How to get the blue checkmark on X*
https://help.x.com/en/managing-your-account/about-x-verified-accounts ..........................22

TELEGRAM, *FAQ,*
https://telegram.org/faq#q-can-i-hide-my-last-seen-time ...............................................25, 26

NEW YORK POST, *FTX Sues Binance for $1.8B, Claims Ex-CEO Zhao 'Set Out To Destroy'
Firm,* https://nypost.com/2024/11/11/business/ftx-sues-binance-for-1-8b-claims-ex-ceo-zhao-set-out-to-destroy-firm/ .........................................................................................10

REUTERS, *FTX sues Binance and its former CEO for $1.8 bln*,
https://www.reuters.com/markets/europe/ftx-sues-binance-its-former-ceo-18-bln-2024-11-11/ ........................................................................................................................................10

U.S. NEWS, *FTX Sues Binance and Its Former CEO for $1.8 Billion*,
https://www.usnews.com/news/top-news/articles/2024-11-11/ftx-sues-binance-and-its-former-ceo-for-1-8-billion ..............................................................................................10

WALL STREET JOURNAL, *FTX to Binance: Please Pay Us Back $1.8 billion*,
https://www.wsj.com/livecoverage/stock-market-today-dow-sp500-nasdaq-live-11-11-2024/card/ftx-to-binance-please-pay-us-back-1-8-billion-LGpqofS0uWiTsZEMDooD ....10

WHATS APP, *About WhatsApp*,
www.whatsapp.com/about ..............................................................................................25, 26

WHATSAPP, *FAQ,*
https://faq.whatsapp.com/665923838265756/?cms_platform=iphone ................................26

Plaintiffs FTX Recovery Trust[2] and FTX Digital Markets Ltd. submit this memorandum of law (the "**Memorandum**") in support of their motion (the "**Motion**") to serve Changpeng Zhao ("**Zhao,**" or, as he is commonly known, "**CZ**"), Dinghua Xiao ("**Xiao**"), and Samuel Wenjun Lim ("**Lim**," and collectively with Zhao and Xiao, the "**Individual Defendants**") by alternative means pursuant to Fed. R. Civ. P. 4(f) ("**Rule 4(f)**"), made applicable to the above-captioned proceeding pursuant to Rule 7004(a)(1) of the Federal Rules of Bankruptcy Procedure, and to set a scheduling conference with all Defendants for thirty days after service on the Individual Defendants has been effectuated. In support of their Motion, Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT

1.     As set forth in more detail in the Complaint, this Adversary Proceeding seeks redress for a $1.76 billion-dollar fraudulent transfer, which took place when the world's largest cryptocurrency platform, Binance, cashed out its equity stake in rival FTX at a time when FTX was insolvent. It also seeks redress for a series of malicious and false tweets sent by Binance's founder, majority equity holder, and then-CEO, Changpeng Zhao, which were intended to, and indeed did, trigger a market panic and a "run" on FTX, leading to its immediate collapse.

2.     The Motion seeks leave of the Court to serve, by alternative means, the Summons and Complaint upon the Individual Defendants, who are three former Binance executives. The other four defendants (the "**Binance Entity Defendants**")[3] are corporate entities whose addresses are publicly available, and which are located in jurisdictions that are parties to the Hague Convention (defined below). After the Binance Entity Defendants' counsel declined to accept

---

[2]    This Court substituted the Consolidated Wind Down Trust (the "**FTX Recovery Trust**") as the plaintiff for the Debtors in the above-captioned adversary proceeding (the "**Adversary Proceeding**") on February 11, 2025. Case No. 22-11068 [D.I. 29554].

[3]    The "Binance Entity Defendants" collectively refer to Binance Capital Management Co. Ltd., Binance Holdings Ltd., Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited.

service on behalf of the Binance Entity Defendants, the Plaintiffs commenced international service, served the four Binance Entities, and have since filed a proposed joint scheduling order with this Court.

3.      The Individual Defendants are a different story.  After a lengthy investigation, Plaintiffs believe they have potentially located CZ's residential address.  Unfortunately, however, that address is located in the United Arab Emirates (the "**UAE**"), a jurisdiction that is not a party to the Hague Convention and which imposes onerous burdens on parties attempting to effectuate service of process from abroad.  It is perhaps in part because of those and similar legal barriers that CZ, who has had extensive entanglements with the United States judicial system, apparently set up his official residence in the UAE after being released from a United States prison.

4.      The other two Individual Defendants, Samuel Lim (Binance's former Head of Compliance) and Dinghua Xiao (a former Binance executive), have proven even more difficult to locate, even after an investigation.  Plaintiffs attempted service on Mr. Xiao at two addresses previously linked to him in Australia, but neither attempt was successful as the current resident at each address did not know Mr. Xiao.  Plaintiffs have also initiated service of process under the Hague Convention at two addresses associated with Mr. Lim in Singapore.  Singapore, however, does not permit service from abroad either through mail or in person, and instead requires service through the Singaporean Central Authority.  That process could take eight months or longer, and even then, the addresses may turn out to be outdated or otherwise incorrect.

5.      Because of the challenges associated with serving the Individual Defendants, Plaintiffs are seeking leave to serve them through the following alternative means: (1) personal email (if an email address is known); (2) social media (if the Individual Defendant has a known presence); (3) United States counsel (if the Individual Defendant has been represented by United

States counsel in any recent action); and (4) certified courier service (if the Individual Defendant has a known address at which service has not yet been attempted).  Together, serving by these means will remove any doubt that the Individual Defendants will have received actual notice of this highly-publicized Adversary Proceeding.  And, as set forth in more detail below, service through alternative means under Rule 4(f) is commonplace in similar situations and will easily satisfy the minimum requirements of constitutional due process.

6.    For all of these reasons, and as set forth more fully herein, Plaintiffs respectfully request that this Court permit service on the Individual Defendants through alternative means and enter the Order attached as **Exhibit A** to the Motion.

## BACKGROUND

7.    On October 31, 2024, Plaintiffs' counsel sent an email to attorneys at Cahill Gordon & Reindel LLP ("**Cahill**"), who represent certain of the Binance Entity Defendants, as well as Individual Defendant CZ in an ongoing action titled *Lahav v. Binance Holdings Limited et al.*, Case No. 1:24-cv-21421 (KMM) (S.D. Fla. Apr. 16, 2024).[4] to inquire whether that same counsel would be representing the Binance Entities and/or CZ in this Adversary Proceeding, which at that time had not yet been commenced.  The parties spoke twice briefly by phone, and, on November 2, 2024, Cahill responded that it would be "representing Binance" in connection with the Plaintiffs' forthcoming Adversary Proceeding.  Chase Decl. Ex A.[5]  During one of the calls, Plaintiffs' counsel inquired whether Cahill knew who would be representing CZ.  Cahill responded that it did not know but that it would inquire.

---

[4]    CZ waived service of the summons in the *Lahav* action.  *See* Case No. 1:24-cv-21421 (S.D. Fla. Apr 16, 2024) [D.I. 15], available at Westlaw.

[5]    Citations to the Chase Declaration refer to the *Declaration of Ashley Rona Chase in Support of Plaintiffs' Ex Parte Motion to (A) Serve the Individual Defendants by Alternative Means and (B) Set a Scheduling Conference with All Defendants*, filed contemporaneously herewith.

8.  On November 10, 2024, Plaintiffs commenced this Adversary Proceeding by filing the complaint (the "**Complaint**"). [Adv. D.I. 1]. The filing of the Complaint was widely reported in mainstream media and crypto-focused outlets.[6]

9.  On November 11, 2024, Plaintiffs' counsel emailed a copy of the Complaint to Cahill and asked whether Cahill would accept service on behalf of the Binance Entity Defendants. Plaintiffs' counsel received no response. Chase Decl. Ex. A.

10.  Individual Defendants CZ and Mr. Lim have been represented by United States counsel in multiple recent actions. For example, CZ was sued by the Securities and Exchange Commission in 2023 for allegedly violating federal securities laws and unlawfully soliciting U.S. investors to buy, sell, and trade crypto asset securities through unregistered trading platforms. *Sec. & Exch. Comm'n v. Binance Holdings Ltd. et al.*, Case No. 1:23-cv-01599 [D.I. 1] (D.D.C. June 5, 2023), SEC Compl., ¶¶ 1-2, available at Westlaw. The SEC alleged that CZ violated Sections 5, 15(a), and 17A(b) of the Securities and Exchange Act of 1934 (15 U.S.C. §§ 77e(a) and 77e(c)) by orchestrating Binance and BAM Trading's violations of the same. *Id.* at ¶ 15. In addition, as

---

[6]  *See, e.g.*, BLOOMBERG, *FTX Sues Binance, Former CEO Zhao Seeking $1.8 Billion Clawback*, https://www.bloomberg.com/news/articles/2024-11-11/ftx-sues-binance-former-ceo-zhao-seeking-1-8-billion-clawback (last visited Mar. 2, 2025); WALL STREET JOURNAL, *FTX to Binance: Please Pay Us Back $1.8 billion*, https://www.wsj.com/livecoverage/stock-market-today-dow-sp500-nasdaq-live-11-11-2024/card/ftx-to-binance-please-pay-us-back-1-8-billion-LGpqofS0uWiTsZEMDooD (last visited Mar. 2, 2025); FINANCIAL TIMES, *FTX Sues Binance and its Former CEO Zhao for $1.8 billion*, https://www.ft.com/barrier/corporate/28e231f4-690f-4652-934f-099cc7d7e85a (last visited Mar. 2, 2025); THE GUARDIAN, *FTX sues Binance and its former CEO for $1.8bn*, https://www.theguardian.com/technology/2024/nov/11/ftx-sues-binance-changpeng-zhao (last visited Mar. 2, 2025); REUTERS, *FTX Sues Binance and its Former CEO for $1.8 bln*, https://www.reuters.com/markets/europe/ftx-sues-binance-its-former-ceo-18-bln-2024-11-11/ (last visited Mar. 2, 2025); CNBC, *FTX sues crypto exchange Binance and its former CEO Zhao for $1.8 billion*, https://www.cnbc.com/2024/11/11/ftx-sues-crypto-exchange-binance-and-its-former-ceo-zhao-for-1point8-billion.html (last visited Mar. 2, 2025); U.S. NEWS, *FTX Sues Binance and Its Former CEO for $1.8 Billion*, https://www.usnews.com/news/top-news/articles/2024-11-11/ftx-sues-binance-and-its-former-ceo-for-1-8-Billion (last visited March 2, 2025); COIN TELEGRAPH, *FTX bankruptcy estate files $1.8B lawsuit against Binance, CZ*, https://cointelegraph.com/news/tx-estate-sues-binance-cz-1-8-billion (last visited Mar. 2, 2025); NEW YORK POST, *FTX Sues Binance For $1.8B, Claims Ex-CEO Zhao 'Set Out To Destroy' Firm*, https://nypost.com/2024/11/11/business/ftx-sues-binance-for-1-8b-claims-ex-ceo-zhao-set-out-to-destroy-firm/ (last visited Mar. 2, 2025).

described in more detail in the Complaint, in 2023, CZ pled guilty to charges in the Western District of Washington for, among other things, failure to comply with anti-money laundering laws of the Bank Secrecy Act (31 U.S.C. § 5311 *et seq*) in connection with his management of Binance. Compl. ¶¶ 2, 25; *United States v. Zhao*, Case No. 2:23-cr-179 (RAJ) (W.D. Wash. Nov. 21, 2023) [D.I. 31], Plea Agreement at 8-12.[7]  This indictment resulted in a criminal conviction, for which CZ served four months in prison.  Compl. ¶ 2.  In light of this history, Plaintiffs attempted to contact CZ's and Mr. Lim's United States counsel to request that they accept service on their clients' behalf.

11.     On November 12, 2024, Plaintiffs' counsel emailed a copy of the Complaint to attorneys at Latham & Watkins, LLP ("**Latham**") who had represented CZ in *Commodity Futures Trading Commission v. Zhao et al*, Case No. 1:23-cv-01887 (N.D. Ill. Mar 27, 2023), available at Westlaw.  In the same email, Plaintiffs' counsel asked the attorneys at Latham whether they would be representing CZ in this Adversary Proceeding and whether they would accept service of the Complaint on his behalf.  Plaintiffs' counsel received no response.  Chase Decl. Ex. B.

12.     On November 12, 2024, Plaintiffs' counsel emailed a copy of the Complaint to an attorney at MoloLamken LLP ("**MoloLamken**") who had represented Mr. Lim in *Commodity Futures Trading Commission*, Case No. 1:23-cv-01887.  In the same email, Plaintiffs' counsel asked the MoloLamken attorney whether he would be representing Mr. Lim in this Adversary Proceeding and whether MoloLamken would accept service of the Complaint on Mr. Lim's behalf.  Plaintiffs' counsel received no response.  Chase Decl. Ex. C.

---

[7]   Copies of the *United States v. Zhao* pleadings referenced in this Memorandum are attached as Exhibit R to the Chase Declaration.

13.     Plaintiffs' counsel's investigation did not reveal any prior actions in which the third Individual Defendant, Mr. Xiao, was represented by United States counsel.

14.     On November 25, 2024, Plaintiffs contacted Daniel Levine at DL Investigations (the "**Investigator**") requesting assistance to locate and serve each defendant.  The Investigator accepted the engagement the next day.  Plaintiffs and the Investigator have been in regular contact pursuant to this engagement.

15.     On November 26, 2024, Plaintiffs corresponded with Viking Advocates, LLC ("**Viking**"), a consulting law firm specializing in international service, regarding effectuating service on the defendants pursuant to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "**Hague Convention**").  Plaintiffs and Viking held an introductory call on December 3, 2024.

16.     On December 3, 2024, Plaintiffs' counsel had a call with a different attorney at Cahill, who Plaintiffs' counsel learned was also involved in the Binance representation.  Cahill informed Plaintiffs that it would be representing three of the four Binance Entity Defendants, with Defendant Binance Capital Management Co. Ltd. to be represented by another firm, later identified as Morvillo Abramowitz Grand Iason & Anello PC ("**Morvillo**").  The parties discussed the possibility that counsel would accept service on behalf of the Binance Entity Defendants, although no agreement was reached.[8]  Cahill also agreed to check whether it would be able to find out who would be representing the Individual Defendants so that Plaintiffs could make the same request to

---

[8]    Over the ensuing weeks, the parties discussed the possibility that Cahill and Morvillo would accept service on behalf of the Binance Entity Defendants over email and by phone.  Ultimately, on January 21, 2025, Cahill informed Plaintiffs' counsel that neither it nor Morvillo would accept service on behalf of the Binance Entity Defendants unless Plaintiffs agreed to certain conditions relating to discovery.

the Individual Defendants' counsel.  To date, however, Cahill has not identified any counsel representing CZ or either of the other Individual Defendants.  *See* Chase Decl. Ex. A.

17.     On December 18, 2024, the Investigator sent his preliminary findings to Plaintiffs. These findings included corporate addresses for the Binance Entity Defendants but no permanent addresses for the Individual Defendants.  The next day, the Investigator provided Plaintiffs with an address allegedly associated with CZ in New Jersey, where an 80-year-old individual with a common name resides.  This did not appear to be CZ's address.  The Investigator requested additional time to complete his investigation.

18.     On January 8, 2025, Plaintiffs' counsel emailed and called the Investigator for an update.  He confirmed that his searches were still pending.

19.     In January 2025, through their own search of documents, Plaintiffs located an address for CZ in Dubai, UAE.  Although a Canadian citizen, further research confirmed that CZ now likely resides in the UAE.  *See infra* ¶ 31; Chase Decl. Ex. D (CZ's dog's social media account identifying his location as the UAE).  Plaintiffs' counsel then engaged local counsel, Galadari & Associates ("**Galadari**"), in the UAE to understand the process for serving Individual Defendant CZ.[9]

20.     Plaintiffs also located possible addresses for Individual Defendants Xiao and Lim in Australia and Singapore, respectively.  However, Plaintiffs were unable to confirm whether these addresses are still valid.  Nonetheless, in late January, Plaintiffs engaged Viking to attempt to serve the Binance Entity Defendants and Individual Defendants Xiao and Lim at the addresses identified to date.

---

[9]    Viking's services are limited to Hague Convention signatories and thus it was unable to attempt service on CZ's potential UAE address.

21.   In February 2025, Viking attempted to serve Individual Defendant Xiao at the two Australia-based addresses but determined that these addresses were outdated.  Around the same time, Viking commenced service on Individual Defendant Lim at two addresses through the Singapore Central Authority under the Hague Convention, a process that is expected to take six to eight months to complete.  It is still unclear whether either of these addresses are, in fact, a permanent residence for Individual Defendant Lim.

22.   On February 10, 2025, Viking informed Plaintiffs that Defendant Binance Capital Management Co., Ltd. (now Digital Anchor Holdings Limited) had been successfully served on February 3, 2025 in the British Virgin Islands ("**BVI**") and forwarded an affidavit of service of D'Andre Mitchan, a certified process server in the BVI, testifying to the same.  Plaintiffs promptly filed the affidavit with this Court.  *See* [Adv. D.I. 6.]

23.   Also on February 10, 2025, Viking informed Plaintiffs that Defendants Binance Holdings (IE) Limited and Binance (Services) Holdings Limited were successfully served on February 4, 2025 in Ireland and that the server was preparing an affidavit to that effect.  Plaintiffs promptly filed the affidavits with this Court.  *See* [Adv. D.I. 7, 8.]

24.   On February 24, 2025, Plaintiffs sent a summons and the Complaint to Binance Holdings Limited's address in Grand Cayman by certified mail.  Chase Decl. Ex. E.  Later that day, Plaintiffs and the Binance Entity Defendants filed a joint proposed scheduling order, which acknowledged that Plaintiffs served each of the Binance Entity Defendants pursuant to the Hague Convention and waived "the defense of sufficiency of service of process."  [Adv. D.I. 10].  This Court entered the proposed scheduling order on February 25, 2025.  [Adv. D.I. 11].  Thus, all four of the Binance Entity Defendants have now been served, and only the three Individual Defendants remain to be served.

<u>**ARGUMENT**</u>

**I.      Service on the Individual Defendants by Alternative Means is Proper**

25.     Rule 4(f), made applicable pursuant to Rule 7004(a)(1) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), provides that an individual may be served in a foreign country "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . .;  (2) if there is no internationally agreed means . . . by a method that is reasonably calculated to give notice . . .; or (3) by other means not prohibited by international agreement, as the court orders."  There is "no hierarchy" among the three means of service listed in Rule 4(f).  *Green v. Mitsui Sumitomo Ins. Co. (In re TK Holdings, Inc.)*, No. 17-11375 (BLS), 2021 WL 954827, at *3, n.21 (Bankr. D. Del. Mar. 8, 2021).  In other words, a plaintiff may effectuate service pursuant to Rule 4(f)(3) without any attempt to serve the foreign defendant through the means articulated in Rule 4(f)(1) or Rule 4(f)(2).  Indeed, when a defendant's whereabouts "are unknown, [Rule (4)(f)](1) and (2) are inapplicable."  *In re Celsius Network LLC*, 666 B.R. 28, 36 (Bankr. S.D.N.Y. 2024).  A court assesses the appropriateness of service under Rule 4(f)(3) in its discretion and after considering the "particularities and necessities of a given case."  *See Mitsui Sumitomo*, 2021 WL 954827, at *4.

26.     With the rise in crypto-related litigation, courts have used their discretion to expand proper means of service to alternative digital platforms.  As Chief Judge Martin Glenn recently recognized, "[d]igital blockchain technology, and the anonymity it helps to maintain, has presented new roadblocks to initiating and prosecuting civil litigation designed to recover millions of dollars in value that the Bankruptcy Code and non-bankruptcy law enable a bankruptcy estate to recover."  *In re Celsius Network*, 666 B.R. at 30.  In authorizing service using non-fungible tokens ("**NFT**")

on digital wallets, the *Celsius* Court explained that federal courts have "incorporated advances in telecommunications technology" into the "flexibility and discretion" permitted under Rule 4(f). *Id.* at 37 (citing *Philip Morris USA Inc. v. Veles Ltd.*, Case No. 06-CV-2988 (GBD), 2007 WL 725412, at \*2 (S.D.N.Y. Mar. 12, 2007)); *see also Tyson v. Coinbase Glob., Inc.*, Case No. 23-cv-22066, 2024 WL 5126766, at \*2 (D.N.J. Dec. 16, 2024) (granting a motion to serve via NFT because "no international treaty or agreement prohibits the method of alternative service Plaintiff proposes, the service is reasonably calculated to apprise the Doe Defendants of the pendency of this action, and Plaintiff has made a good faith effort to locate the Doe Defendants. Further, the Court finds that the mode of alternative service requested is consistent with constitutional standards of due process.").

### A.    Plaintiffs Attempted to Locate and Serve Pursuant to the Hague Convention

27.    Plaintiffs are "not required to attempt service abroad before seeking alternate service under Rule 4(f)(3)." *Green v. Mitsui Sumitomo Ins. Co. (In re TK Holdings, Inc.)*, Case Case No. 17-11375 (BLS), 2021 WL 954827, at \*3 (Bankr. D. Del. Feb. 23, 2021), *aff'd at In re TK Holdings,* Case No. AP 20-51004-BLS, 2021 WL 3796878, at \*2 (D. Del. Aug. 26, 2021) (same).  Indeed, "Rule 4(f)(3) is devoid of express limitations that 'indicate its availability only after attempting service of process by other means.'"  *Id.*  Nonetheless, Plaintiffs have attempted in good faith to locate and serve the Individual Defendants pursuant to the Hague Convention to no avail.

28.    *First*, immediately after commencing this Adversary Proceeding, Plaintiffs' counsel contacted attorneys who represented two of the three Individual Defendants in recent federal cases but received no response. *See supra* ¶¶ 10-13.

29.     *Second*, Plaintiffs' counsel asked counsel to the Binance Entity Defendants whether they knew who was representing the Individual Defendants, who are former executives of Binance and, in the case of CZ, the current majority shareholder of the Binance enterprise, estimated to be worth over $60 billion as of September 2024.[10]  That same counsel, Cahill, is currently counsel for CZ in an ongoing civil action pending in the Southern District of Florida.  *See supra* ¶ 7.  Cahill, however, was unable to identify any counsel representing the Individual Defendants in this Adversary Proceeding.  *See supra* ¶ 16.

30.     *Third*, Plaintiffs engaged the Investigator shortly after commencing this Adversary Proceeding.  *See supra* ¶ 14.  The Investigator was only able to find one potential address in the United States for CZ—which turned out to be invalid—and did not otherwise uncover possible addresses for the Individual Defendants abroad that Plaintiffs had not already ascertained through other means.  *See supra* ¶¶ 17-20.

31.     Fourth, Plaintiffs' counsel conducted its own research in an attempt to locate the Individual Defendants, yielding potential addresses abroad.  *See supra* ¶¶ 19-20.  While certain potential addresses for CZ are located in Hague Convention signatory jurisdictions, they predate a range of credible public reports suggesting that CZ now lives in the UAE,[11] so Plaintiffs' counsel did not instruct Viking to attempt service at these addresses.

---

[10] FORBES, *Profile: Changpeng Zhao*, https://www.forbes.com/profile/changpeng-zhao/ (last visited Mar. 1, 2025).

[11] *See, e.g.,* FORBES, *Inside The Secret Dubai Homes Of CZ, Mukesh Ambani And 20 Other Billionaires*, https://www.forbes.com/sites/giacomotognini/2024/05/14/inside-the-secret-dubai-homes-cz-mukesh-ambani-billionaires-binance/ (last visited Mar. 4, 2025); *United States v. Zhao*, Case No. 2:23-cr-179 (RAJ) at 6 (W.D. Wa. Jan. 23, 2024) [D.I. 56] (attaching December 22, 2023 letter to Judge Jones requesting permission to travel and noting "If the Court is unable to permit *Mr. Zhao to reside at home in the UAE* for the full extent of this requested time, he respectfully requests that he be permitted to return home for . . .") (emphasis added).

32.     In sum, Plaintiffs have not been able to confirm addresses for any of the Individual Defendants,[12] let alone addresses in Hague Convention jurisdictions. As such, the Hague Convention does not apply. *Braverman Kaskey, P.C. v. Toidze*, 599 F. App'x 448, 452 (3d Cir. 2015) ("When a defendant's address is unknown, as is the case here, the Hague Convention shall not apply.") (internal quotations omitted); Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. 1, adopted November 15, 1965, 20 UST 361; TIAS 6638; 658 UNTS 163 (the Hague Convention "shall not apply where the address of the person to be served with the document is not known"); *Kumar v. Alhunaif*, Case No. 23-CV-321 (DEH), 2023 WL 8527671, at *2 (S.D.N.Y. Dec. 8, 2023) ("an address is not known if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so.") (citing cases).

## B.   Plaintiffs Conducted Good-Faith Diligence on Service by a Foreign Party in the UAE

33.     Plaintiffs discovered that CZ has likely maintained some form of residence in Dubai, UAE since 2021.[13]   The UAE is not a signatory to the Hague Convention, nor any other international treaty related to service of process.   *See* HCCH, *HCCH Members*, https://www.hcch.net/en/states/hcch-members (last visited March 3, 2025); *DAD-JColor Switch*

---

[12]   Although Plaintiffs' investigation suggests at least one of the addresses for CZ in Dubai may be a permanent address, Plaintiffs will not have confirmation unless and until service in the UAE is complete.

[13]   *See, e.g.*, ARABIAN BUSINESS, *Crypto giant Binance said to mull the UAE for global HQ*, https://www.arabianbusiness.com/industries/technology/crypto-giant-binance-said-to-mull-the-uae-for-global-hq (last visited Mar. 2, 2025) (stating that, in 2021, CZ "bought his first home [in Dubai] to show his commitment" to accessing business opportunities in the region); FINANCE VISIONS, *Museum of the Future Hosts Binance Founder's Talk on Cryptocurrencies* (translated), https://tinyurl.com/46rd25u2 (last visited March 2, 2025) («أعلن الملياردير في نوفمبر الماضي أنه اشترى شقة في دبي ، وصفها بأنها "مدينة صديقة للحلول المالية المشفرة".» ["The billionaire announced last November that he had bought an apartment in Dubai."]); CNN BUSINESS, *The Middle East already has a crypto hub, and it's not Dubai*, https://edition.cnn.com/2022/02/22/investing/mideast-summary-02-22-2022-intl/index.html (last visited Mar. 2, 2025) ("[T]he CEO of Binance, who awaits a final approval for a Bahraini license, is reported to have recently bought a home in [Dubai]."); *see also* Chase Decl. Ex. D.

*LLC v. Fortafy Games DMCC*, Case No. 1:18-cv-0419-DAD-JLT, 2018 WL 2298401, at *3 (E.D. Cal. May 21, 2018) (the UAE is "not a party to The Hague Service Convention or any other treaty related to service of process") (citing cases). Therefore, service of process must comply with either Rule 4(f)(2) or 4(f)(3).[14]

34.    Service of process on CZ in the UAE by a foreign party would require seven distinct steps, a process that would take three to eight months, at a minimum. Momani Declaration,[15] ¶¶ 12-14. Specifically, first, U.S. authorities must submit letters rogatory through diplomatic channels to the UAE Ministry of Foreign Affairs (the "**MOFA**"). Momani Declaration, ¶ 12. Second, after review, the MOFA will forward the documents to the UAE Ministry of Justice (the "**MOJ**") or other relevant judicial authorities. *Id.* Third, the MOJ then reviews the judicial documents to ensure they comply with UAE procedural laws. *Id.* Fourth, assuming the documents comply, the MOJ refers the matter to the court with jurisdiction over the defendant's residence. *Id.* Fifth, the competent court will select an entity authorized to effectuate service to proceed with service according to UAE law. *Id.* Sixth, the process server notifies the defendant. *Id.* Importantly, service under UAE law is permissible through traditional means—such as direct delivery to the recipient's residence—or modern technological means—such as facsimile, SMS

---

[14]    Rule 4(f)(2) permits service:

by a method that is reasonably calculated to give notice: (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; (B) as the foreign authority directs in response to a letter rogatory or letter of request; or (C) unless prohibited by the foreign country's law, by: (i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt[.]

Rule 4(f)(3) permitted service "by other means not prohibited by international agreement, as the court orders."

[15]    Citations to the Momani Declaration refer to the *Declaration of Hussein Momani in Support of Plaintiffs' Ex Parte Motion to (A) Serve the Individual Defendants by Alternative Means and (B) Set a Scheduling Conference with All Defendants*, filed contemporaneously herewith

messages, mobile applications, or email. *Id.* Seventh, the process server executes a report documenting his efforts at effectuating service. *Id.*

35.    Given the routinely high costs and delays involved, courts have often granted plaintiffs' motions for alternative service when attempting to serve defendants located in the UAE. *See, e.g.*, *Payne v. McGettigan's Mgmt. Servs. LLC*, Case No. 1:19-cv-01517 (DLC), 2019 WL 6647804, at *2 (S.D.N.Y. Nov. 19, 2019) (permitting service on defendant "by international certified mail at his home and business address in Dubai" and by email when plaintiff showed that "without an order for alternative service, international service would be prohibitively expensive and unduly delay" the action); *Kuhlman v. McDonnell*, Case No. 1:20-CV-00510, 2021 WL 306468, at *3 (S.D. Ohio Jan. 29, 2021) (authorizing email service on Dubai resident after plaintiff communicated with defendant and hired an investigator to discover defendant's address); *Color Switch LLC v. Fortafy Games DMCC*, Case No. 1:18-CV-0419, 2018 WL 2298401, at *3 (E.D. Cal. May 21, 2018) (authorizing email service upon Dubai-based company after plaintiff first attempted service at a physical address and argued that "[s]ervice by email is particularly appropriate here because [defendant], as a publisher of mobile gaming applications, is engaged in a high-tech business, conducts its business—including past correspondence with Plaintiffs—via email"); *Celgene Corp. v. Blanche Ltd.*, Case No. 16-501 (SDW) (LDW), 2017 WL 1282200, at *2-3 (D.N.J. Mar. 9, 2017) (granting alternative service via email after unsuccessful service attempts on defendant in the UAE).

36.    In fact, courts have authorized alternative service on defendants likely located in the UAE without requiring plaintiffs to first attempt service through UAE procedures. *See, e.g.*, *U.S. SEC v. Vuuzle Media Corp.*, Case No. 2:21-CV-1226-KSH-CLW, 2021 WL 1731947, at *4 (D.N.J. May 3, 2021) ("[plaintiff] has identified two possible physical locations for [defendant],

at neither of which service has been attempted. Notwithstanding, the Court will excuse [plaintiff] from expending further effort toward effectuating service at these (or other) locations").  Of particular relevance here, given the continued delay and high cost of initiating a separate UAE legal proceeding to effectuate service, "[c]ourts have . . . found that avoiding the additional expense of serving a defendant in a foreign country is a valid justification for granting an alternative method of service."  *Green v. Mitsui Sumitomo Ins. Co. (In re TK Holdings, Inc.)*, 2021 WL 954827, at *5 (Bankr. D. Del. Feb. 23, 2021) (quoting *Affinity Labs of Tex., LLC v. Nissan N. Am. Inc.,* 2014 WL 11342502, at *3 (W.D. Tex. July 2, 2014)).

### C.    The Service Plan Provides Proper Notice of this Adversary Proceeding

37.    In granting a motion to serve defendants by alternative means pursuant to Rule 4(f)(3), "the critical question is whether notice is likely to reach defendants through the chosen alternative method of service."  *In re Celsius Network LLC*, 666 B.R. 28, 37 (Bankr. S.D.N.Y. 2024).  Service that "is reasonably calculated to reach the defendant and allow the opportunity to object and respond to the litigation . . . comports with the due process clause."  *In re Heckmann Corp. Sec. Litig.*, Case No. CA 10-378-LPS-MPT, 2011 WL 5855333, at *4 (D. Del. Nov. 22, 2011) ("Rule 4(f)(3) was adopted to provide flexibility to the federal courts in dealing with questions of alternative method of service of process.").  The analysis remains the same regardless of whether a plaintiff seeks authority to serve the defendant via email or social media platforms, such as X.  *Cf. Menon v. Corbett*, Case No. 21-8384 (KM), 2023 WL 4946972, at *4 (D.N.J. Aug. 3, 2023) (citing *Vaswani, Inc. v. Manjunathamurthy*, Case No. 2:20-cv-20288, 2021 WL 1541071, at *4 (D.N.J. Apr. 19, 2021)).

38.    As an initial matter, the Individual Defendants—especially CZ—are undoubtedly already aware of this lawsuit given the publicity surrounding the filing of the Complaint.  *See*

*supra* ¶ 8, n.6.  However, to be certain that the Individual Defendants are apprised of this action, consistent with due process, Plaintiffs propose to serve each Individual Defendant via multiple means, each one of which would independently provide adequate notice.

39.     Plaintiffs propose to effectuate service on the Individual Defendants as follows (the "**Service Plan**"):

| Individual Defendant | Means of Service |
|---|---|
| Changpeng Zhao | • Tag on X: @cz_binance<br><br>• Email at ███████████<br><br>• WhatsApp at ███████████<br><br>• Certified Mail at:<br><br>   o ████████████████ and<br><br>   o ████████████████<br><br>• Email to U.S. Counsel:<br><br>   o Cahill Gordon & Reindel LLP<br><br>   o Latham & Watkins, LLP |
| Dinghua Xiao | • Tag on X: @dingalingts<br><br>• Email at ███████████<br><br>• WhatsApp at ███████████ |
| Samuel Wenjun Lim | • Telegram at ████████<br><br>• WhatsApp at ████████<br><br>• Email to U.S. Counsel MoloLamken LLP |

40.     Serving Individual Defendants CZ and Mr. Xiao by tagging them in a post on X (formerly Twitter) with a link to the Complaint would provide them with notice of this Adversary Proceeding and the opportunity to respond thereto. *See, e.g.*, Momani Decl. ¶ 12.  Both Individual Defendants use X regularly and, notably, have verified X accounts.[16]  By way of example, since March 1, 2025, CZ has posted or reposted on X 153 times.   *See* @cz_binance, X, https://x.com/cz_binance (last visited Mar. 27, 2025).  He has 10 million followers on X and continues to use this platform to share his perspective on the cryptocurrency market, including news related to Binance and BNB, among other topics.  *See id.*  To CZ, X is the "global town square."[17]  Certain of CZ's posts on X (then Twitter) are the basis for Counts Six through Nine of the Complaint.

41.     Mr. Xiao is also a frequent user of X.  He has nearly 235,000 followers on X and has posted or reposted nine times this month.  *See* @dingalings, X, https://x.com/dingalings (last visited Mar. 27, 2025).  Like CZ, many of Mr. Xiao's posts are commentary on the cryptocurrency market or the launch of new crypto tokens.  *Id.*  Individual Defendants CZ and Mr. Xiao have even recently interacted on X, such as by Mr. Xiao reposting CZ's Tweets on December 20, 2024 and February 6, 2025, as well as Mr. Xiao posting "ty CZ love ya [heart emoji]" on February 6, 2025.  Chase Decl. Exs. F, G, H.

42.     Under these circumstances, alternative service by X on Defendants CZ and Mr. Xiao is appropriate.  *See* Momani Decl. ¶ 12; *Cox v. CoinMarketCap OpCo LLC,* Case No. 3:21-

---

[16]    A verified account on X is one that has (i) "a display name and profile photo;" (ii) been "active in the past 30 days;" (iii) "a confirmed phone number;" (iv) "no recent changes to [its] profile photo, display name, or username (@handle);" (v) "no signs of being misleading or deceptive;" and (vi) "no signs of engaging in platform manipulation and spam."   *How to get the blue checkmark on X*, https://help.x.com/en/managing-your-account/about-x-verified-accounts  (last visited Mar. 27, 2025).

[17]    https://www.youtube.com/watch?v=zU1ahmjyFOc&t=1s, at 1:13:50-1:16:00 (last visited Mar. 27, 2025).

cv-08197-SMB (D. Ariz. Mar. 1, 2022) [D.I. 54]; *In re Terrorist Attacks on Sept. 11, 2001*, Case No. 03-MD-01570 (GBD)(SN), 2023 WL 2966563, at *3 (S.D.N.Y. Apr. 17, 2023) (allowing service on defendants through publication and via messages to Twitter accounts reported to belong to spokespersons for the defendants); *cf. Oscilloscope Pictures, Inc. v. Monbo*, Case No. 17-CV-7458 at 1 (E.D.N.Y. Mar. 13, 2018) [D.I. 13] (finding "good cause for allowing service by. . . email; Twitter; and first class mail").[18]

43.    *Cox v. CoinMarketCap OpCo LLC*, *et al.*,[19] another case in which CZ was a defendant, is instructive.  Case No. 3:21-cv-08197-SMB (D. Ariz. 2021).  In *Cox*, the plaintiff moved to serve CZ and other Binance employees by publication and through electronic means via each individuals' X account.  *See Cox*, [D.I. 24], at 10.  Although the Court initially denied the motion on what it later acknowledged was a misunderstanding of the law,[20] in his renewed motion, the plaintiff reiterated CZ's efforts at shielding his location and detailed the plaintiff's failed efforts at pinpointing CZ's physical location at which he may effectuate service.  *See Cox*, [D.I. 50], at 2-3.  The plaintiff also engaged a private investigator who was unable to provide a physical location for CZ and the other Binance employee-defendants in *Cox*.  *See id.*; *see also Cox,* [D.I. 24], Ex. A.

---

[18]    A copy of *Oscilloscope Pictures, Inc.,* [D.I. 13] is attached as Exhibit P to the Chase Declaration.

[19]    Copies of the *Cox* pleadings referenced in this Memorandum are attached as Exhibits L, M, N, O to the Chase Declaration.

[20]    On the plaintiff's first motion, the Court mistakenly held that plaintiff was required to provide the defendants' country of residence to "accommodate [p]laintiff's request to serve via Twitter [because, otherwise, t]he Court can only speculate as to whether service by Twitter is prohibited by international agreement." *Cox*, [D.I. 29], at 3.  Even in denying the motion, however, the Court acknowledged the difficulty of serving the defendants because of Binance's reputation as an "international cryptocurrency exchange that hops around from jurisdiction to jurisdiction to avoid regulators." *Cox*, [D.I. 29], at 2-3.  The Court ultimately acknowledged its error and noted that "the Hague Convention does not apply where, as here, 'the address of the person to be served with the documents is not known.'" *Cox*, [D.I. 54], at 4.

44.    The *Cox* Court held that "under the circumstances, service via Twitter is the best method available to give notice to Defendants of the pendency of this action." *See Cox*, [D.I. 54], at 5.  Citing its broad discretion and the plaintiff's failed efforts to serve the summons and complaint by more traditional means, the Court "authorize[d] service by tweeting a copy of the summons and a link to the Complaint to the verified Twitter accounts of Defendants [CZ], Lin, and He pursuant to Rule 4(f)(3)." *Id.*

45.    Although service via X is sufficient on its own, Plaintiffs also request leave to serve Individual Defendants CZ and Mr. Xiao to their known, personal email addresses to eliminate any doubt that they receive notice of this action.  "When faced with an international business scofflaw, playing hide-and-seek with the federal court," a plaintiff may effectuate service through email.  *In re Heckmann Corp. Sec. Litig.*, Case No. CA 10-378-LPS-MPT, 2011 WL 5855333, at *5 (D. Del. Nov. 22, 2011) (granting a motion to serve a defendant via email because email service was "reasonably calculated to reach him, it [was] not inconsistent with due process, and [was] an acceptable means of service").  The Service Plan proposes to serve Mr. Xiao via the email address he included on his resume in 2022, which is consistent with the email address FTX's records had for Mr. Xiao.  *See* Chase Decl. Ex. I.  The Service Plan also proposes to serve CZ via the email address believed to be his personal email address,[21] which is also the non-Binance email address FTX had in its records for CZ.  The email addresses included in the Service Plan are specific to the Individual Defendants—they even include and are linked to the Individual Defendants' names—and are not connected to any current or former employment.  In other words, service on the Individual Defendants through these personal email addresses will independently put them on

---

[21]    *See, e.g.*, *USA v. Information Associated with Google Account*, Case No. 2:21-mj-00659-SKV (W.D. Wash. Dec. 17, 2021) [D.I. 1], *Affidavit* ¶ 22, available at Westlaw.

notice of this litigation and thus comports with due process. *See* Momani Decl. ¶ 12; *Rosenthal v. Christiana Bank & Tr. Co.*, Case No. CA 12-623-LPS, 2012 WL 4442793, at *1 (D. Del. Sept. 24, 2012) (granting motion to serve through email and citing cases supporting that "[s]ervice of process via email has been authorized by federal courts, pursuant to Fed.R.Civ.P. 4(f), when the circumstances indicate that traditional methods are inadequate and that service via email would comport with Due Process"); *Kumar v. Alhunaif*, Case No. 23-CV-321 (DEH), 2023 WL 8527671, at *4 (S.D.N.Y. Dec. 8, 2023) (noting that courts "routinely allow[] service by email [because such service]. . . comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant.").

46.     Similarly, serving the Individual Defendants through WhatsApp[22] and Telegram[23] would independently notify them of this Adversary Proceeding.  Individual Defendant Lim specifically identified his Telegram and WhatsApp accounts as a means through which executives at the Debtors should contact him. *See* Chase Decl. Ex. J.  As for Individual Defendants CZ and Mr. Xiao, Plaintiffs have ascertained each of their personal mobile phone numbers and serving these Individual Defendants through WhatsApp is akin to sending them a direct text message.  In fact, Binance and Debtor executives used WhatsApp to consummate the 2021 Share Repurchase at issue in this proceeding. *See*, *e.g.,* Chase Decl. Ex. K; *see also Patel v. Defendant "1"*, Case No. 3:23-CV-24651-MCR-ZCB, 2024 WL 4919419, at *2–3 (N.D. Fla. Jan. 16, 2024) (granting motion to serve via WhatsApp, NFT, and website posting because (i) "the service of process requested is not prohibited by international agreement"; and the service plan was "reasonably

---

[22]   WhatsApp is a messaging platform with over 2 billion users in over 180 countries. "WHATSAPP, *About WhatsApp*," www.whatsapp.com/about (last visited Mar. 27, 2025).

[23]   Telegram is a cloud-based messaging app based in Dubai with over 950 million users worldwide. "TELEGRAM *FAQ*," https://telegram.org/faq#q-who-is-telegram-for (last visited Mar. 27, 2025).

calculated to give notice to the Defendants . . . [s]ince . . . the Defendants carried out their purported scheme via an electronic forum using the internet and cryptocurrency blockchain technology"). Notably, in certain settings, WhatsApp and Telegram both allow a sender to determine whether its message was successfully sent, delivered, read, and/or when a user is online.[24]  Therefore, the WhatsApp and Telegram accounts on the Service List provide an additional means through which service on the Individual Defendants is proper under Rule 4(f).  *See* Momani Decl. ¶ 12; *CKR L. LLP v. Anderson Invs. Int'l, LLC*, 525 F. Supp. 3d 518, 524-25 (S.D.N.Y. 2021) (granting motion to serve individual defendant, alleged to reside in Dubai, via WhatsApp because "such service is not prohibited by international agreement or federal law" and because service over WhatsApp was "reasonably calculated to notify [defendants] of this action"); *cf Corbett*, 2023 WL 4946972, at *5 (granting renewed motion to serve defendant via Facebook messenger and WhatsApp because plaintiff set forth "sufficient evidence to prove that [d]efendant [wa]s reasonably likely to receive the summons" through these means); *Alhunaif*, 2023 WL 8527671, at *4 (granting motion to serve via text message, among other means, because "cell phone numbers are durable, with the phone number tethered to their holders").

47.     Finally, as an independently adequate means of service, Plaintiffs propose to serve Individual Defendants CZ and Mr. Xiao by email to U.S. Counsel that have represented them in ongoing, or recent, legal proceedings in the United States.  *See Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*, Case No. CV 19-2227 (MN), 2021 WL 2403134, at *2 (D. Del. June 11, 2021) (granting motion to serve Korean corporation via email to its U.S. counsel that was still engaged to represent the defendant); *Divx, LLC v. LG Elecs. Inc.*, Case No. CV 20-1202-CFC-JLH, 2021

---

[24]  *See* "WHATSAPP, *How to check read receipts*," https://faq.whatsapp.com/665923838265756/?cms_platform=iphone (last visited Mar. 27, 2025); "TELEGRAM, *FAQ*," https://telegram.org/faq#q-can-i-hide-my-last-seen-time (last visited Mar. 27, 2025).

WL 411708, at *2 (D. Del. Feb. 5, 2021) ("find[ing] that service via e-mail to [defendant's] counsel—who is actively defending [defendant] in an[other] matter involving the same patents . . . [is] 'reasonably calculated' to inform [defendant] about this action"); *Payne v. McGettigan's Mgmt. Servs. LLC*, Case No. 1:19-cv-01517 (DLC), 2019 WL 6647804, at *2 (S.D.N.Y. Nov. 19, 2019) (allowing plaintiff to serve defendant through substituted service on defendant's counsel, among other means, when international service would be expensive and unduly delay the action); *Prediction Co. LLC v. Rajgarhia*, No. 09-cv-7459(SAS), 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) (granting motion to serve defendant through his U.S. counsel "and requesting that [counsel] forward the documents to [defendant]" even though counsel appeared not to know defendant's address because counsel and defendant had been in recent contact).

48.    In sum, Plaintiffs' proposed Service Plan includes multiple means of alternative service on each Individual Defendant, each one of which would independently be sufficient to provide adequate notice.

## II.    Cause Exists to Set a Joint Scheduling Conference with All Defendants

49.    Read together, Rules 7004-1 and 7016-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") require a scheduling conference for an adversary proceeding to take place at least thirty-five days and not more than ninety days from the date of the issuance of the summons.  *See* Local Rules 7004-1 and 7016-1.  The Court has discretion to amend this default deadline.  For instance, Bankruptcy Rule 7016(b) grants this Court authority to hear and determine the proceeding and take any other action regarding procedure.  *See* Fed. R. Bankr. P. 7016(b)(3)(B).  Section 105 of the Bankruptcy Code provides this Court with additional broad authority to "issue any order, process, or judgment that is

necessary or appropriate . . ." including those "necessary to further the expeditious and economical resolution of [a] case[.]" 11 U.S.C. § 105(a), (d).

50.     On February 3, 2025, Plaintiffs successfully served Defendant Binance Capital Management Co., Ltd. (now Digital Anchor Holdings Limited).  *See* [Adv. D.I. 6].  Plaintiffs successfully served Defendants Binance Holdings (IE) Limited and Binance (Services) Holdings Limited on February 4, 2025, and Binance Holdings Limited later that month.  *See* [Adv. D.I. 7, 8, 10, 11].  Pursuant to Local Rules 7004-1 and 7016-1, a scheduling conference by and among the Plaintiffs and the Binance Entity Defendants must take place on or before May 2, 2025.

51.     Despite Plaintiffs' best efforts, the elusive nature of the Individual Defendants—non-U.S. residents—has made it impossible for Plaintiffs to serve these defendants around the same time that Plaintiffs served the Binance Entity Defendants.  The window within which a scheduling conference with all Defendants would overlap is rapidly closing.

52.     The Individual Defendants are former executives of the Binance Entity Defendants. Indeed, CZ is Binance's founder and former CEO and, upon information and belief, controlled the Binance Entity Defendants during the transactions at issue in the Complaint.  Thus, at least some discovery requests and factual disputes will be common among the Binance Entity Defendants and at least some of the Individual Defendants.  As such, the scheduling conference should be set for a time after all Defendants have been served and are required to attend.  This would (i) streamline the resolution of this Adversary Proceeding, including the resolution of duplicative, non-dispositive disputes; (ii) facilitate the prompt and cost-effective resolution of this Adversary Proceeding; and (iii) minimize this Court's administrative burden and conserve judicial resources.

53.     Plaintiffs therefore request that this Court set a scheduling conference with all Defendants for on or after thirty days after the Individual Defendants have been served.

## **<u>CONCLUSION</u>**

WHEREFORE, for the reasons stated above, Plaintiffs respectfully request that this Court

(i) grant the Motion; and (ii) grant such other relief as is proper.

Dated:  March 28, 2025
Wilmington, Delaware

*/s/ Robert C. Maddox*

**RICHARDS, LAYTON & FINGER, P.A.**
Kevin Gross (No. 209)
Paul N. Heath (No. 3704)
Brendan J. Schlauch (No. 6115)
Robert C. Maddox (No. 5356)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
gross@rlf.com
heath@rlf.com
schlauch@rlf.com
maddox@rlf.com

-and-

**WHITE & CASE LLP**

J. Christopher Shore (admitted pro hac vice)
Brian D. Pfeiffer (admitted pro hac vice)
Colin West (admitted *pro hac vice*)
Ashley R. Chase (admitted pro hac vice)
Brett L. Bakemeyer (admitted pro hac vice)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
cshore@whitecase.com
brian.pfeiffer@whitecase.com
cwest@whitecase.com
ashley.chase@whitecase.com
brett.bakemeyer@whitecase.com

*Attorneys for the Plaintiffs*