## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | |
| Debtors. | Case No. 22-11068 (KBO) |
| | (Jointly Administered) |
| FTX RECOVERY TRUST, FTX DIGITAL MARKETS, LTD. | |
| Plaintiffs, | |
| - against - | |
| BINANCE HOLDINGS LIMITED, BINANCE CAPITAL MANAGEMENT CO. LTD, BINANCE HOLDINGS (IE) LIMITED, BINANCE (SERVICES) HOLDINGS LIMITED, CHANGPENG ZHAO, DINGHUA XIAO, SAMUEL WENJUN LIM, and DOES 1-1000 | Adv. Pro. No. 24-50222 (KBO) **Related to Docket No. 62** |
| Defendants. | |

## DEFENDANT DIGITAL ANCHOR HOLDINGS LIMITED'S BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION, DISMISS, OR ABSTAIN

Dated: May 16, 2025
      Wilmington, Delaware

**CONNOLLY GALLAGHER, LLP**

Karen C. Bifferato (DE Bar No. 3279)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 888-6221
kbifferato@connollygallagher.com

-and-

**MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.**

Karen R. King *(pro hac vice* forthcoming*)*
Peter Menz *(pro hac vice* forthcoming*)*
565 Fifth Avenue
New York, New York 10017
(212) 856-9600 (telephone)
(212) 856-9494 (facsimile)
kking@maglaw.com
pmenz@maglaw.com

*Attorneys for Defendant Digital Anchor Holdings Limited*

# **TABLE OF CONTENTS**

STATEMENT OF THE NATURE AND STAGE OF THIS PROCEEDING.................................. 1

SUMMARY OF ARGUMENT.................................................................................... 2

STATEMENT OF FACTS ....................................................................................... 4

ARGUMENT ....................................................................................................... 6

   I.    THE FRAUDULENT TRANSFER CLAIMS MUST BE ARBITRATED...................... 6

      a.   Legal Standard ..................................................................................... 6

      b.   Application........................................................................................... 7

   II.    NO PERSONAL JURISDICTION EXISTS OVER DIGITAL ANCHOR ..................... 10

   III.  THIS COURT SHOULD DISMISS THE FALSE STATEMENT CLAIMS ON
         JURISDICTION GROUNDS OR ABSTAIN FROM HEARING THEM...................... 13

      a.   There Is No Bankruptcy Jurisdiction Over The False Statement Claims .................... 13

          i.   Legal Standard ...................................................................................... 13

          ii.   Application.......................................................................................... 14

      b.   No Other Basis for Jurisdiction Exists.......................................................... 16

      c.   Should This Court Conclude It Has Jurisdiction, It Should Nonetheless
          Abstain From Hearing the False Statement Claims......................................... 17

   IV.  IN THE ALTERNATIVE, PLAINTIFF'S CLAIMS SHOULD BE DISMISSED
         FOR FAILURE TO STATE A CLAIM............................................................. 21

      a.   Legal Standard ..................................................................................... 21

      b.   Application........................................................................................... 21

          i.   All Fraudulent Transfer Claims Fail Because Plaintiffs Did Not Plead Which
             Defendant Received Which Transfer........................................................... 21

          ii.   This Court Must Dismiss the False Statement Claims As to Digital Anchor ........... 22

CONCLUSION.................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Aldosarri v. Ripp*,
    49 F.4th 236 (3d Cir. 2022) ............................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................21

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ....................................................................................6

*Blanton v. Domino's Pizza Franchising LLC*,
    962 F.3d 842 (6th Cir. 2020) ......................................................................9

*Bricker v. Martin*,
    348 B.R. 28 (W.D. Pa. 2006) ....................................................................17

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018) ....................................................................3, 12

*China Media Express Holdings Inc. by Barth v. Nexus Executive Risks, Ltd.*,
    182 F. Supp. 3d 42 (S.D.N.Y. 2016)........................................................10

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
    70 F.4th 668 (3d Cir. 2023) ......................................................................21

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ..................................................................................10

*Dresser Indus., Inc. v. Underwriters at Lloyd's of London*,
    106 F.3d 494 (3d Cir. 1997) ......................................................................16

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018)....................................................................................9

*GEICO v. Mount Prospect Chiropractic Center, P.A.*,
    98 F.4th 463 (3d Cir. 2024) ........................................................................2

*Gu v. Wang*,
    2025 WL 660625 (D.N.J. Feb. 28, 2025).................................................13

*Gunn v. Minton*,
    568 U.S. 251 (2013) ..................................................................................16

*Halper v. Halper*,
    164 F.3d 830 (3d Cir. 1999) ................................................................13, 19

*Hasson v. FullStory, Inc.*,
    114 F.4th 181 (3d Cir. 2024) ...................................................................11

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
    586 U.S. 63 (2019) ...............................................................................2, 7, 9

*Hepp v. Facebook*,
    14 F.4th 204 (3d Cir. 2021) ..............................................................11, 12

*Hohl v. Bastian*,
    279 B.R. 165 (W.D. Pa. 2002) ...............................................................14

*IMO Industries, Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998) ...................................................................12

*In re American Home Mortg. Holding*,
    477 B.R. 517 (Bankr. D. Del. 2012) .......................................................15

*In re Art Inst. of Philadelphia LLC*,
    2022 WL 18401591 (Bankr. D. Del. Jan. 12, 2022)................................18

*In re Buena Vista Oceanside, LLC*,
    2015 WL 9957185 (Bankr. W.D. Pa. Sept. 22, 2015) .............................17

*In re BWI Liquidating Corp.*,
    437 B.R. 160 (Bankr. D. Del. Sept. 28, 2010) ........................................15

*In re Canfibre of Riverside, Inc.*,
    2006 WL 2130664 (Bankr. D. Del. Jul. 20, 2006) ..................................19

*In re Conex Holdings, LLC*,
    514 B.R. 405 (Bankr. D. Del. 2014) .......................................................23

*In re French*,
    619 B.R. 285 (Bankr. D.N.J. 2020)..........................................................17

*In re G-I Holdings, Inc.*,
    580 B.R. 388 (Bankr. D.N.J. 2018)..........................................................19

*In re Holiday RV Superstores, Inc.*,
    362 B.R. 126 (Bankr. D. Del. 2007) .......................................................19

*In re IMMC Corp.*,
    909 F.3d 589 (3d Cir. 2018) ...................................................................16

*In re Integrated Health Servs., Inc.*,
    291 B.R. 615 (Bankr. D. Del. 2003) .......................................................18

*In re Kessler*,
    430 B.R. 155 (Bankr. M.D. Pa. 2010)................................................................20

*In re LaRoche Indus., Inc.*,
    312 B.R. 249 (Bankr. D. Del. 2004) ..................................................................20

*In re Mintze*,
    434 F.3d 222 (3d Cir. 2006) ...............................................................................9

*In re National Collegiate Student Loans Tr. Litig.*,
    2020 WL 3960334 (Del. Ch. Jul. 13, 2020)......................................................18

*In re PennySaver USA Publishing, LLC*,
    602 B.R. 256 (Bankr. D. Del. 2019) ......................................................4, 21, 22

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004) ....................................................................3, 14, 15

*In re Santa Clara County Child Care Consortium*,
    223 B.R. 40 (1st Cir. BAP 1998).......................................................................14

*In re Selheimer & Co.*,
    319 B.R. 384 (Bankr. E.D. Pa. 2005) ...............................................................16

*In re Seven Fields Development Corp.*,
    505 F.3d 237 (3d Cir. 2007) ........................................................................14, 15

*In re Solyndra, LLC*,
    2015 WL 6125246 (Bankr. D. Del. Oct. 16, 2015) ..........................................15

*In re Sun Healthcare Group, Inc.*,
    267 B.R. 673 (Bankr. D. Del. 2000) ...........................................................19, 20

*In re The Fairchild Corp.*,
    452 B.R. 525 (Bankr. D. Del. 2011)..................................................................15

*In re Valley Media, Inc.*,
    289 B.R. 27 (Bankr. D. Del. 2003) ...................................................................19

*In re Vanhook*,
    468 B.R. 694 (D.N.J. 2012) ........................................................................3, 17

*In re Venoco, LLC*,
    610 B.R. 239 (D. Del. 2020) ...............................................................................4

*In re Windhaven Top Ins. Holdings, LLC*,
    636 B.R. 596 (Bankr. D. Del. 2021) .................................................................20

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009) .......................................................................21

*Jovanovic v. United States Olympic & Paralympic Comm.*,
   2023 WL 7179298 (D.N.J. Mar. 31, 2023) .....................................................13

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ...................................................................................10

*Knepp v. Educational Fin. Servs.*,
   2018 WL 11199014 (Bankr. D.N.J. Dec. 26, 2018) ..........................................9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ...................................................................................13

*Lyon v. Whitman*,
   45 F.3d 758 (3d Cir. 1995) ..........................................................................17

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007) .........................................................................10

*Matter of Walker*,
   51 F.3d 562 (5th Cir. 1995) .........................................................................16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) ...................................7

*Neff v. PKS Holdings, LLC*,
   2019 WL 3729568 (E.D. Pa. Aug. 8, 2019) ....................................................13

*New Prime Inc. v. Oliveira*,
   586 U.S. 105 (2019) .....................................................................................7

*Oakwood Laboratories LLC v. Thanoo*,
   999 F.3d 892 (3d Cir. 2021) .........................................................................21

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
   496 F.3d 312 (3d Cir. 2007) .........................................................................10

*Pak v. EoCell, Inc.*,
   2020 WL 6318725 (N.D. Cal. Oct. 28, 2020) ...................................................8

*Panajoti Consulting, LLC v. BuyHive USA, Inc.*,
   2022 WL 3645993 (E.D. Mich. Aug. 24, 2022) .................................................8

*Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993) .........................................................................4

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ........................................................................7

*Richardson v. Coverall N. Am., Inc.*,
   811 F. App'x 100 (3d Cir. 2020) ...................................................9

*Santiago v. Warminster Tp.*,
   629 F.3d 121 (3d Cir. 2010) .........................................................21

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014) ...........................................................4

*Securities and Exchange Commission v. Jarkesy*,
   603 U.S. 109 (2024) .....................................................................20

*Standard Bent Glass Corp. v. Glassrobots Oy*,
   333 F.3d 440 (3d Cir. 2003) .........................................................10

*Stern v. Marshall*,
   564 U.S. 462 (2011) .....................................................................13

*Townsend Ventures, LLC v. Hybrid Kinetic Grp. Ltd.*,
   2017 WL 3730345 (D. Md. Aug. 30, 2017) ....................................8

*Wells v. Merit Life Ins. Co.*,
   671 F. Supp. 2d 570 (D. Del. 2009) ................................................2

*Wyrough & Loser, Inc. v. Pelmore Labs, Inc.*,
   376 F.2d 543 (3d Cir. 1967) ...........................................................7

**Statutes**

9 U.S.C. § 4 ....................................................................................7

9 U.S.C. §§ 201 .............................................................................10

11 U.S.C. § 546 .............................................................................22

28 U.S.C. § 157 .............................................................................16

28 U.S.C. § 157……………………………………………………………13, 14

28 U.S.C. § 1332 ...........................................................................16

28 U.S.C. §§ 1334……………………………………………… 1, 13, 14, 16, 17, 19

28 U.S.C. § 1367 ...........................................................................16

**Rules**

Fed. R. Civ. P. 9...................................................................................................21

Fed. R. Civ. P. 12...................................................................................................3

Fed. R. Civ. P. 44.1...............................................................................................18

Defendant Digital Anchor Holdings Limited, formerly known as Binance Capital Management Co. Ltd. ("Digital Anchor"), by and through undersigned counsel, respectfully submits the following brief in support of its motion to compel arbitration pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(1); to dismiss pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(1), (2), and (6); and to permissively abstain pursuant to 28 U.S.C. § 1334(c)(1).[1]

## **STATEMENT OF THE NATURE AND STAGE OF THIS PROCEEDING**

On October 8, 2024, this Court confirmed Debtors' plan of reorganization.  D.I. 26404.

On November 10, 2024, Non-Debtor FTX Digital Marketing Ltd. and Debtors FTX Trading Ltd., Alameda Research LLC, Alameda Research Ltd., West Realm Shires Inc., West Realm Shires Services Inc., Clifton Bay Investments LLC, Cottonwood Grove Ltd., Euclid Way Ltd., and Paper Bird Inc. ("Plaintiffs") commenced this adversary proceeding against Binance Holdings Ltd., Binance Capital Management Co. Ltd., Binance Holdings (IE) Limited, Binance (Services) Holdings Limited, Changpeng Zhao, Dinghua Xiao, Samuel Wenjun Lim, and 1000 unnamed Defendants (collectively, "Defendants"). D.I. 27852.   Through the first five causes of action, which are premised on the fraudulent transfer provisions of the Bankruptcy Code (the "Fraudulent Transfer Claims"), Plaintiffs seek to void a 2021 transaction whereby FTX repurchased approximately $2 billion of FTX shares pursuant to a Share Repurchase Agreement, as well as a smaller repurchase of shares in a related company.  Through the sixth through ninth causes of action, which are non-bankruptcy tort claims, Plaintiffs seek to recover for allegedly false or misleading statements made by Mr. Zhao and the corporate entities.

---

[1] Pursuant to Fed. R. Bankr. P. 7012(b), Digital Anchor states that it does not consent to the entry of final orders or judgments by the Bankruptcy Court.

Digital Anchor now moves to dismiss the complaint and, in the alternative, compel arbitration and seek permissive abstention.

## SUMMARY OF ARGUMENT

1. As a threshold matter,[2] Plaintiffs' fraudulent transfer claims cannot be litigated in this forum because the transfers at issue were pursuant to a Share Repurchase Agreement that mandates "[a]ny controversy or claim arising out of or relating to this Agreement" be arbitrated in Hong Kong.  Moreover, any questions relating to arbitrability are also delegated to the Hong Kong arbitrator.  *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 67-68 (2019).  Accordingly, this Court "ha[s] no discretion and must send [the dispute] to arbitration."  *GEICO v. Mount Prospect Chiropractic Center, P.A.*, 98 F.4th 463, 472 (3d Cir. 2024) (Federal Arbitration Act "leaves no place for the exercise of discretion" by the court).

2. Plaintiffs fail to establish personal jurisdiction over Digital Anchor.  Indeed, Digital Anchor (under its former name "Binance Capital Management") is mentioned only three times in Plaintiffs' sprawling complaint—once to acknowledge that it is a foreign company, and two other times to allege that it entered into the Share Repurchase Agreement with FTX Trading Ltd. and Euclid Way Ltd.  There is no allegation that Digital Anchor has any connection whatsoever with the United States, and Plaintiffs' attempt to obfuscate this deficiency by grouping Digital Anchor with other defendants

---

[2] Digital Anchor objects to personal jurisdiction before this Court and does not waive its personal jurisdiction defense.  It raises the arbitration agreement as a threshold issue because this Court need not undertake the analysis of determining personal jurisdiction over the various defendants when it does not have jurisdiction over the fraudulent transfer claims to begin with.  *Cf. Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 572 n.3 (D. Del. 2009) (treating motion to compel arbitration as motion to dismiss for lack of subject matter jurisdiction).

under the label "Binance" is improper. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018) (group pleading makes it "impossible to determine" which entities are subject to personal jurisdiction). Accordingly, all claims against Digital Anchor should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

3. This Court lacks subject-matter jurisdiction over the False Statement Claims. When an adversary proceeding is commenced following plan confirmation, the claims must have a "close nexus" to the bankruptcy proceeding to give rise to federal jurisdiction. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004). Here, Plaintiffs' speculative tort claims bear no relation to the (now-concluded) bankruptcy proceeding. Indeed, the False Statement Claims are fatally at odds with the Fraudulent Transfer Claims; after premising their Fraudulent Transfer Claims on the theory that FTX was little more than a Ponzi scheme raiding its own customers' accounts, Plaintiffs turn on a dime and allege that FTX's collapse was caused by a handful of tweets and a "non-binding letter of intent" signed by "Binance."

4. Even if this Court concludes that it has jurisdiction over the False Statement Claims, this Court should permissively abstain from hearing these claims, as each of the applicable factors considered by courts in the Third Circuit strongly favors abstention here. *See In re Vanhook*, 468 B.R. 694, 701 (D.N.J. 2012).

5. In the alternative, even if this Court has jurisdiction over Digital Anchor and the claims asserted, it should nonetheless dismiss Digital Anchor from the case because plaintiffs fail to plead essential elements of their claims. As to the Fraudulent Transfer Claims, Plaintiffs fail to include even minimal details as to which defendants received which transfers, even though "[e]ach defendant is entitled to know what he or she did that is

asserted to be wrongful." *In re PennySaver USA Publishing, LLC*, 602 B.R. 256, 268 (Bankr. D. Del. 2019). As to the False Statement Claims, Plaintiffs fail to allege that Digital Anchor made the purportedly false statements that are the basis for these claims.

## STATEMENT OF FACTS

The following is drawn from the "factual allegations in the Complaint," documents "integral to or explicitly relied upon" in the Complaint," and "undisputedly authentic document[s]" that form the basis for Plaintiffs' claims. *In re Venoco, LLC*, 610 B.R. 239, 241-42 (D. Del. 2020), *aff'd*, 998 F.3d 94 (3d Cir. 2021) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) and *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

### *Digital Anchor*

Defendant Digital Anchor, formerly known as Binance Capital Management Co. Ltd., is a company established under the laws of the British Virgin Islands. Complaint ¶ 22. It is not alleged to have any presence or do any business in the United States. Plaintiffs improperly refer to Digital Anchor alongside all other corporate defendants in the aggregate, as "Binance." *Id.* ¶ 24.

### *Facts Relevant to The Fraudulent Transfer Claims*

As alleged in the Complaint, FTX was a "rising star in the crypto world" that "collapsed under the weight of the many material errors committed by its founder," including "pervasive malfeasance that began long before it was discovered." *Id.* ¶ 1. FTX "fell apart" in November 2022 and filed for Chapter 11 bankruptcy the same month. *Id.* ¶¶ 71, 78.

FTX previously sold a portion of its equity to "Binance." *See id.* ¶¶ 34-37. In summer 2021, FTX and "Binance" entered into several agreements with FTX to effectuate FTX's

repurchase of this equity stake. *See id.* ¶¶ 38-41. As relevant here, on July 15, 2021, Digital

Anchor executed an agreement with Debtors and former Plaintiffs FTX Trading Ltd. and Euclid

Way Ltd., which contemplated the repurchase of this equity for a purchase price of

$2,281,974,000 (the "FTX Repurchase Agreement"). *Id.* ¶ 43; *see* Declaration of Karen R. King

("King Decl."), Ex. 1, FTX Repurchase Agreement. This agreement contained a broad

arbitration clause:

> **4.7 Governing Law; Jurisdiction.** This Agreement shall be governed by the internal
> laws of Hong Kong, without regard to conflict of law principles that would result in the
> application of any law other than such laws. ***Any controversy or claim arising out of or
> relating to this Agreement or the interpretation, breach, termination or validity hereof
> shall be resolved through arbitration in accordance with the Hong Kong International
> Arbitration Centre Arbitration Rules.*** There shall be three arbitrators. Each of Purchaser
> and Seller has the right to appoint one arbitrator and the third arbitrator shall be appointed
> by the Hong Kong International Arbitration Centre. The language to be used in the
> arbitral proceedings shall be English and the seat of the arbitration shall be Hong Kong.

*Id.* at 7 (emphasis added).

Simultaneously, certain individual defendants, on the one hand, and certain executives of

FTX, on the other hand, entered into materially identical repurchase agreements, which

contemplated the purchase of shares in West Realm Shares, Inc. for approximately $30 million

(the "WRS Repurchase Agreements"). *Id.* ¶ 40. These agreements contained similar choice-of-

law clauses and arbitration clauses in favor of Hong Kong arbitration. *See* Exs. 1-5 (WRS

Repurchase Agreements). Plaintiffs allege that the FTX Repurchase and the WRS Repurchase

comprise a "single overall transaction." *Id.* ¶ 83.

The Complaint alleges that FTX Trading was "balance-sheet insolvent" and "did not have

the financial resources to satisfy all customer deposits at the time of the 2021 Share Repurchase,"

*id.* ¶¶ 42, 45; that all Debtors, in fact, were "insolvent," *id.* ¶ 45; that the Debtors were "actively

misrepresent[ing]… material facts about their business," *id.*; and that Bankman-Fried was

committing "pervasive fraud" at the company that "significantly scal[ed] up" at the time of the 2021 Share Repurchase, with later equity raises being tainted "by the same overarching fraud." *Id.* ¶¶ 47, 50.

### Facts Relevant to The False Statement Claims

Plaintiffs allege that, in late 2022, Changpeng Zhao, the CEO of "Binance," sent several tweets regarding FTX, which were purportedly false and misleading because, among other reasons, they did not report that "Zhao's true intention was to harm FTX." *Id.* ¶¶ 56-62. Zhao and Sam Bankman-Fried then discussed a potential acquisition of FTX, which culminated in the two individuals signing "a letter of intent on behalf of their respective companies." *Id.* ¶ 67. Zhao later sent additional tweets describing the letter of intent as "non-binding." *Id.* ¶ 68. The following day, the @Binance Twitter account stated that the acquisition of FTX would not be pursued, based on "corporate due diligence" and "the latest news reports regarding mishandled customer funds and alleged US agency investigations." *Id.* ¶¶ 68-70. According to Plaintiffs, these statements purportedly "destroyed value" at FTX. *Id.* ¶ 63. The Complaint does not allege that any of these statements were made by Digital Anchor.

## ARGUMENT

### I. THE FRAUDULENT TRANSFER CLAIMS MUST BE ARBITRATED

#### a. Legal Standard

The Federal Arbitration Act requires courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). Once a court has determined that a written agreement to arbitrate exists, the court must order arbitration "upon being satisfied

that the making of the agreement for arbitration or the failure to comply therewith is not in

issue." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4).

Although a court will typically determine what issues the parties have agreed to arbitrate,

parties may agree to delegate this "gateway" question to the arbitrator. *Id.* at 69. When an

arbitration agreement contains such a "delegation clause," the arbitrator will "decide even the

initial question whether the parties' dispute is subject to arbitration." *New Prime Inc. v. Oliveira*,

586 U.S. 105, 111-12 (2019). The court may not "decide the arbitrability issue… even if the

court thinks that the argument that the arbitration agreement applies to a particular dispute is

wholly groundless." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019).

### b. Application

The brunt of this case—the more than $2 billion that Plaintiffs seek to recover as a

fraudulent transfer—concerns the FTX Repurchase. That dispute must be heard in an arbitral

forum, not this Court.[3]

The FTX Repurchase Agreement between former Plaintiff FTX Trading Ltd., former

Plaintiff Euclid Way Ltd., and Digital Anchor contains an arbitration clause requiring that "any

controversy or claim arising out of or relating to this Agreement" must be arbitrated in Hong

Kong. King Decl., Ex. 1 (FTX Repurchase Agreement) § 4.7. This agreement is binding on the

signatories, as well as their successors and assigns. *Id.* § 4.4. As this Court's order confirming

---

[3] Because seeking to enforce an arbitration agreement does not go to the merits of the case, but
whether it has been brought in the appropriate forum, this request is a "preliminary matter" that
must be "raised and disposed of before the court considers the merits or quasimerits of a
controversy." *Wyrough & Loser, Inc. v. Pelmore Labs, Inc.*, 376 F.2d 543, 547 (3d Cir. 1967);
*accord Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630, 105 S. Ct.
3346, 3355, 87 L. Ed. 2d 444 (1985) (agreement to arbitrate is a "specialized kind of forum-
selection clause"). Digital Anchor therefore believe that this Court may either resolve the motion
to compel arbitration in the first instance, or resolve its objections to personal jurisdiction first.
In any event, it does not waive its objections to personal jurisdiction.

FTX's Chapter 11 Plan makes clear, the FTX Recovery Trust is the successor and/or the assignee of FTX Trading Ltd. and Euclid Way Ltd.  D.I. 26404 ¶¶ 51, 106.  Indeed, as the FTX Recovery Trust itself has explained, all Debtors (including the prior Plaintiffs) "assigned their interests" to the Trust.  D.I. 29390 ¶ 5; *id.* ¶ 2 ("The Plan and Confirmation Order provide that, on the Effective Date, all of the Debtors' interests in the Adversary Proceedings were transferred to the FTX Recovery Trust").  Because the FTX Recovery Trust is the successor and/or the assignee of FTX Trading Ltd., a written arbitration agreement exists between the FTX Recovery Trust and Digital Anchor.[4]

Furthermore, this enforceable arbitration agreement contains a delegation clause.  The rules of the Hong Kong International Arbitration Centre ("HKIAC") are incorporated into the agreement by reference.  King Decl., Ex. 1 § 4.7.  Those rules expressly provide that the arbitral tribunal "may rule on its own jurisdiction under these Rules, including any objections with respect to the existence, validity or scope of the arbitration agreement."  King Decl., Ex. 7 (2018 HKIAC Rules) § 19.1; *see also* King Decl., Ex. 8 (2024 HKIAC Rules) § 19.1 (same).  District courts considering this question have unanimously held that this language delegates the question of arbitrability to the arbitrator.  *See, e.g.*, *Panajoti Consulting, LLC v. BuyHive USA, Inc.*, No. 22-10487, 2022 WL 3645993, at *2 (E.D. Mich. Aug. 24, 2022); *Pak v. EoCell, Inc.*, No. 20-cv-05791-VC, 2020 WL 6318725, at *1 (N.D. Cal. Oct. 28, 2020); *Townsend Ventures, LLC v. Hybrid Kinetic Grp. Ltd.*, No. CV GLR-17-130, 2017 WL 3730345, at *5 (D. Md. Aug. 30,

---

[4] The complaint does not spell out which Plaintiff advances which claim, but acknowledges that only the Debtor Plaintiffs (*i.e.*, every Plaintiff other than FTX Digital Markets, or, put differently, every Plaintiff that was subsequently substituted by the FTX Recovery Trust) actually made the transfers at issue, Complaint ¶ 45, and only the Debtor Plaintiffs would be entitled to recover on the Fraudulent Transfer Claims.  Complaint ¶¶ 91, 104, 113, 124, 128.  Digital Anchor therefore understands that the Fraudulent Transfer Claims are advanced solely by the FTX Recovery Trust.

2017).  And for good reason: eleven circuits—including the Third Circuit—have concluded that materially identical language in the rules of the American Arbitration Association effectuates a valid delegation.  *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting cases); *see, e.g.*, *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020).  Therefore, in accordance with the parties' agreement, the FTX Recovery Trust must submit these claims to arbitration in the first instance and raise any objections to arbitrability in that forum.  Any argument that fraudulent transfer claims are not subject to arbitration would go to the scope of arbitrability, which this court "has no power" to decide.  *Henry Schein*, 586 U.S. at 68.

Enforcement of an arbitration clause is not discretionary.  "Where an otherwise applicable arbitration clause exists, a bankruptcy court lacks the authority and discretion to deny its enforcement, *unless* the party opposing arbitration can establish congressional intent… to preclude waiver of judicial remedies for the statutory rights at issue."  *In re Mintze*, 434 F.3d 222, 231 (3d Cir. 2006).  As the Supreme Court has repeatedly reminded lower courts, this is a stringent test.  *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 516 (2018) ("In many cases over many years, this Court has heard and rejected efforts to conjure conflicts between the Arbitration Act and other federal statutes. In fact, this Court has rejected every such effort to date…").  In the context of this post-confirmation adversary proceeding, the FTX Recovery Trust cannot possibly establish that arbitration would cause a "sufficiently adverse effect on the underlying purposes of the Bankruptcy Code." *Mintze*, 434 F.3d at 232; *accord Knepp v. Educational Fin. Servs.*, No. 18-01389 (VFP), 2018 WL 11199014, at *8 (Bankr. D.N.J. Dec. 26, 2018) (noting that "various courts have required arbitration of bankruptcy adversary proceedings").  The Debtors' Plan has been confirmed, and the FTX Recovery Trust is bound to return value to

9

creditors whether it recovers those assets in this court, through a settlement agreement, or in an

arbitration proceeding. Compelling arbitration no more conflicts with the purposes of the

Bankruptcy Code than would a private settlement of these claims.

For the foregoing reasons, this Court should order the parties to arbitration in accordance

with the FTX Repurchase Agreement.[5]

## II. NO PERSONAL JURISDICTION EXISTS OVER DIGITAL ANCHOR

Plaintiffs bear the burden of establishing a *prima facie* case of personal jurisdiction,

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007), which "must be

assessed individually" for each defendant and for each claim. *Keeton v. Hustler Magazine, Inc.*,

465 U.S. 770, 781 n.13 (1984); *Marten v. Godwin*, 499 F.3d 290, 295-296 (3d Cir. 2007). As

Plaintiffs make no effort to allege that Digital Anchor is essentially "at home" in the United

States and therefore subject to general jurisdiction in this forum, *see Daimler AG v. Bauman*, 571

U.S. 117, 122 (2014), they must demonstrate that specific jurisdiction exists.

To establish specific jurisdiction, a plaintiff may meet the "purposeful availment" test by

alleging (1) "minimum contacts with the forum… that show the defendant took a deliberate act

---

[5] Because this arbitration agreement involves international commerce, it is also subject to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("CREFAA"), codified at 9 U.S.C. §§ 201 *et seq.* The Third Circuit applies "four factors to determine whether the arbitration agreement falls under CREFAA." *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 & n.13 (3d Cir. 2003) (whether there is "an agreement in writing to arbitrate the subject of the dispute"; whether "the agreement provide[s] for arbitration in the territory of a signatory of the Convention; whether "the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial"; and whether "a party to the agreement [is] not an American citizen" or "the commercial relationship ha[s] some reasonable relation with one or more foreign states"). Each factor is easily satisfied here: the FTX Repurchase Agreement is in writing; the agreement calls for arbitration in Hong Kong, which is a signatory to CREFAA*, see China Media Express Holdings Inc. by Barth v. Nexus Executive Risks, Ltd.*, 182 F. Supp. 3d 42, 52 (S.D.N.Y. 2016); the agreement arises out of a commercial transaction; and no signatory to the contract is an American citizen.

reaching out to do business" there; and (2) a "strong relationship between the defendant, the

forum and the litigation." *Hepp v. Facebook*, 14 F.4th 204, 207-08 n.7 (3d Cir. 2021).

Alternatively, plaintiffs may establish specific personal jurisdiction pursuant to the "effects" test,

which requires a showing that "(1) the defendant committed an intentional tort; (2) the plaintiff

felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious

conduct at the forum." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024).  Plaintiffs'

minimal allegations as to Digital Anchor do not meet either of these tests.

Other than alleging that Digital Anchor is a company established under the laws of the

British Virgin Islands (*i.e.*, not in the United States) Complaint ¶ 22, Plaintiffs offer only one

allegation about Digital Anchor in its lengthy Complaint:  that it was the "nominal" counterparty

as to the 2021 repurchase of FTX Trading shares through the Series A Preferred Share Transfer

Agreement.  *Id.* ¶¶ 38, 42, 82.  The FTX Repurchase Agreement, in turn, is between three

companies in different Caribbean jurisdictions (King Decl., Ex. 1 (FTX Repurchase Agreement),

at 1), and is expressly governed by Hong Kong Law (*id.* § 4.7).  No part of the contract

concerned a U.S. company or provided for performance in the United States.[6]

These facts are obviously insufficient to establish personal jurisdiction in the United

States, under either test for specific jurisdiction recognized in the Third Circuit.  Plaintiff have

made no allegations that Digital Anchor has any relationship with the United States.  Plaintiffs do

not allege that Digital Anchor ever "took a deliberate act reaching out to do business" in the

---

[6] Although WRS is alleged to be a "Delaware corporation," Complaint ¶ 15, Digital Anchor is
not alleged to be a party as to the WRS Repurchase Agreements.  Plaintiff's allegation that the
WRS Repurchase Agreements, together with the agreement that Digital Anchor signed, comprise
a "single overall transaction" states a legal conclusion that need not be credited.  In any event,
"[m]erely entering into a contract with a resident of a state, absent any indication that the
contract was executed or performed there, is insufficient to justify the exercise of personal
jurisdiction in that state." *Aldosarri v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022).

United States. *Hepp*, 14 F.4th at 207. Certainly, Plaintiff has made no effort to demonstrate that

any purported contacts with the United States "give rise—or relate to—plaintiff's claims." *Id.*

      Nor do Plaintiffs find any solace in the "effects" test. As an initial matter, this analysis

could only apply to Plaintiffs' claims for injurious falsehood, fraud, and intentional

misrepresentation—Plaintiffs' only claims that are founded on intentional torts. *See IMO*

*Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 261 (3d Cir. 1998) (effects test requires nonresident

defendant to have "commit[ed] an intentional tort"). As discussed further below, Plaintiffs do

not even allege that Digital Anchor made any of the alleged misrepresentations. *See* Section

IV.B.ii, *infra*. Even assuming Plaintiffs could cure that fatal deficiency, nothing in the Complaint

alleges that FTX felt the brunt of the harm in the United States, nor that Digital Anchor expressly

aimed any tortious conduct at the United States.

      The paragraphs alleging acts by "Binance" do not move the needle. Although Plaintiffs

have sued four different corporate entities, they improperly refer to these defendants in the

aggregate, ignoring that each is a distinct entity "that the complaint collapses into one." *Charles*

*Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018). As but one example,

Plaintiffs allege that other entity defendants consented to the entry of a consent order in an

enforcement action brought by the CFTC, which contained stipulated facts regarding the

relationships between these entities. Complaint ¶ 24. Plaintiffs conspicuously do not allege that

Digital Anchor signed this consent order (because it did not), but attempt to lump Digital Anchor

together with other Defendants through the generic "Binance" label. Because Plaintiffs refer

almost exclusively "to only the grouped entities throughout [their] complaint, it is impossible to

determine" what Digital Anchor (or any other corporate defendant) is alleged to have done, and

therefore "whether it belongs in this lawsuit at all." *Id.* As numerous courts in the Third Circuit

have recognized, this Court "need not accept conclusory and 'group-pled' allegations as true" when evaluating personal jurisdiction. *Gu v. Wang*, No. CV 24-4348 (MAS) (JBD), 2025 WL 660625, at *7 n.13 (D.N.J. Feb. 28, 2025); *see also Jovanovic v. United States Olympic & Paralympic Comm.*, No. CV222098ZNQRLS, 2023 WL 7179298, at *8 (D.N.J. Mar. 31, 2023) (disregarding generalized allegations because it is "improper" to "assert[] group pleading to establish personal jurisdiction over each Defendant"); *Neff v. PKS Holdings, LLC*, No. 5:18-CV-1826, 2019 WL 3729568, at *7 (E.D. Pa. Aug. 8, 2019) ("The Court cannot properly assess jurisdictional claims against any defendant without defendant-specific allegations.").

For these reasons, Plaintiff's claims against Digital Anchor should be dismissed for lack of personal jurisdiction.

### III. THIS COURT SHOULD DISMISS THE FALSE STATEMENT CLAIMS ON JURISDICTION GROUNDS OR ABSTAIN FROM HEARING THEM

Federal courts, including bankruptcy courts, "are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, bankruptcy courts are obligated to engage in a "claim-by-claim" approach to determine whether they have jurisdiction over each cause of action in an adversary proceeding. *Halper v. Halper*, 164 F.3d 830, 839 (3d Cir. 1999). That exercise reveals that there is no jurisdiction over the False Statement Claims. Should this Court conclude otherwise, it should permissively abstain from hearing these claims given their at-best tenuous connection to the Fraudulent Transfer Claims.

### a. There Is No Bankruptcy Jurisdiction Over The False Statement Claims

#### i. Legal Standard

District courts of the United States have "original and exclusive jurisdiction" of all Title 11 bankruptcy proceedings, and may refer "any or all such proceedings to the bankruptcy judges of their district." *Stern v. Marshall*, 564 U.S. 462, 473 (2011) (citing 28 U.S.C. §§ 1334(a) and

157(a)).  The scope of federal bankruptcy jurisdiction is defined by 28 U.S.C § 1334 to include

the following categories of proceedings:

- Proceedings "under title 11," which "refers to the bankruptcy filing itself."  *Hohl v. Bastian*, 279 B.R. 165, 171 (W.D. Pa. 2002);

- Proceedings which "aris[e] under Title 11," *i.e.*, those based on a "cause of action created or determined by a statutory provision of the Bankruptcy Code."  *In re Santa Clara County Child Care Consortium*, 223 B.R. 40, 43 n.2 (1st Cir. BAP 1998).

- Proceedings which "arise in… cases under Title 11," *i.e.*, those that are "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."  *Id.* at 43 n.3.

- Proceedings which "relate[] to cases under Title 11."  Although "related-to" jurisdiction may extend to adversary proceedings that are filed after plan confirmation, the Third Circuit requires "a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter" in these circumstances.  *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004).

### ii.  Application

The False Statement Claims do not fit within any of the enumerated categories in Section

1334.  This adversary proceeding is not the bankruptcy filing itself, and therefore is not a case

"under Title 11."  The False Statement Claims are also based exclusively on state tort law, not

under Title II, and could be filed in any court of competent jurisdiction.

Nor are the False Statement Claims sufficiently "related to cases under Title 11" to justify

the exercise of jurisdiction.  Because this adversary proceeding was filed after plan confirmation,

the Third Circuit's "close nexus" test applies.  *In re Seven Fields Development Corp.*, 505 F.3d

237, 265 (3d Cir. 2007) ("[T]he 'close nexus' test applies in all disputes raised post-confirmation").  Here, there is no close relationship to the bankruptcy plan or proceeding.  Indeed, the FTX Recovery Trust is advancing speculative legal claims that are inconsistent with its fraudulent transfer claims and which are purely based on non-bankruptcy law.  *Resorts Int'l, Inc.* 372 F.3d at 170 (no "related to" jurisdiction over "professional negligence and breach of contract claims that arise under state common law"); *In re American Home Mortg. Holding*, 477 B.R. 517, 532 (Bankr. D. Del. 2012) (dismissing claims that "will not be determined by reference to the Debtors' plan" but instead "arise under state law").

The fact that the FTX Recovery Trust is seeking to win additional funds to distribute to its beneficiaries is itself insufficient, because "if the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant."  *Resorts Int'l, Inc.* 372 F.3d at 170*; accord In re The Fairchild Corp.*, 452 B.R. 525, 532 (Bankr. D. Del. 2011) ("[T]he potential to increase recovery for trust beneficiaries cannot be sufficient, in and of itself, to establish a close nexus because it would create a broader jurisdiction than Congress intended).

Finally, although the Plan purports to provide for the retention of jurisdiction over all adversary proceedings, *see* Plan § 12.1(f), Delaware courts have repeatedly rejected that gambit.  A plan of confirmation "must specifically describe a cause of action in order to retain 'related to' jurisdiction" over that claim.  *In re Solyndra, LLC*, 2015 WL 6125246, at *5 (Bankr. D. Del. Oct. 16, 2015); *In re BWI Liquidating Corp.*, 437 B.R. 160, 166 (Bankr. D. Del. Sept. 28, 2010) (same).  The Debtors' Plan did not do so here.  Accordingly, there is no bankruptcy jurisdiction over the False Statement Claims.

**b. No Other Basis for Jurisdiction Exists**

A bankruptcy court's statutory jurisdiction is coextensive with the jurisdictional grant of Section 1334. *See* 28 U.S.C. § 157. They have no statutory basis to adjudicate cases based on other grants of federal jurisdiction, and courts are "obligat[ed] to guard the limits of that authority." *In re IMMC Corp.*, 909 F.3d 589, 595 (3d Cir. 2018); *see, e.g.*, *Matter of Walker*, 51 F.3d 562, 571 (5th Cir. 1995) ("[B]ankruptcy courts may not exercise supplemental jurisdiction); *In re Selheimer & Co.*, 319 B.R. 384, 390 (Bankr. E.D. Pa. 2005) (same). Because there is no bankruptcy jurisdiction as to the False Statement Claims, that fact alone forbids this court from proceeding further. Regardless, no other basis for federal jurisdiction exists as to these claims.

*First*, no federal question jurisdiction exists, because the False Statement Claims are based on non-federal tort claims. Federal law did not "create[] the cause of action asserted," nor do the False Statement Claims "necessarily raise a stated federal issue" that is actually disputed and substantial." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (internal citations omitted).

*Second*, no diversity jurisdiction exists, because (1) no defendant is a citizen of the United States, and (2) the FTX Recovery Trust is a citizen of the United States, while FTX Digital Markets Ltd. is a citizen of a foreign state. *See* 28 U.S.C. § 1332(a)(2); *Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 497-500 (3d Cir. 1997) (collecting cases holding that jurisdiction does not "exist[] in suits between aliens on one side of the controversy and aliens and citizens on the other").

*Third*, and finally, the Fraudulent Transfer Claims provide no basis for the exercise of supplemental jurisdiction. The Fraudulent Transfer claims are not "so related… that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Not only do the False Statement Claims depend on entirely different conduct

from the Fraudulent Transfer Claims, the allegations underlying the False Statement Claims

sharply conflict with the key proposition underlying the Fraudulent Transfer Claims: that FTX

was a worthless, fraudulent business in summer 2021.  Thus, there is "so little overlap between

the evidence relevant" to these claims "that there is no 'common nucleus of operative fact'

justifying supplemental jurisdiction over the state law claims." *Lyon v. Whitman*, 45 F.3d 758,

763 (3d Cir. 1995).

### c. Should This Court Conclude It Has Jurisdiction, It Should Nonetheless Abstain From Hearing the False Statement Claims

Pursuant to 28 U.S.C. § 1334(c)(1), bankruptcy courts may abstain from hearing claims

premised on state law and which are ancillary to the bankruptcy case.  *See Bricker v. Martin*, 348

B.R. 28, 37-39 (W.D. Pa. 2006) (Hardiman, J.) (collecting cases where district courts abstained

from hearing particular claims).

Courts in the Third Circuit consider twelve factors when determining whether to abstain

from hearing such claims.  *In re Vanhook*, 468 B.R. 694, 700-701 (D.N.J. 2012).  Except for the

factors that are inapplicable here, these factors overwhelmingly favor abstention:

*The effect or lack thereof on the efficient administration of the estate if a Court*

*recommends abstention*: Because the Debtors' plan of reorganization was confirmed in October

2024 (before this adversary proceeding was filed), abstention "will have no discernable effect on

the 'efficient administration' of the estate." *In re Buena Vista Oceanside, LLC*, No. 11–24516–

CMB, 2015 WL 9957185, at *6 (Bankr. W.D. Pa. Sept. 22, 2015).

*The extent to which state law issues predominate over bankruptcy issues:* State law

entirely predominates over bankruptcy issues.  The False Statement Claims are based solely on

state law; they "do not require interpretation of the confirmed plan, federal statutes, or complex

bankruptcy issues." *In re French*, 619 B.R. 285, 298 (Bankr. D.N.J. 2020).

17

***The difficulty or unsettled nature of the applicable state law:*** This factor weighs heavily in favor of abstention for three reasons:

- *First*, the Debtors have made no attempt to identify what jurisdiction's law would govern.[7]  Given that all Defendants are foreign entities and that both the FTX Repurchase Agreement and the WRS Repurchase Agreements expressly call for the application of Hong Kong law, adjudicating these claims will likely require a complicated determination of foreign law pursuant to Fed. R. Civ. P. 44.1.

- *Second*, even if the law of the forum (Delaware) applies, significant unsettled questions would still exist.  Injurious falsehood, for instance, is a rarely litigated tort, and Delaware courts disagree as to its required elements.  *E.g.*, *In re National Collegiate Student Loans Tr. Litig.*, 2020 WL 3960334, at *4-5 (Del. Ch. Jul. 13, 2020) (noting disagreement regarding whether "Delaware law requires a facially derogatory statement as an element of injurious falsehood" and declining to resolve because claim failed on other grounds).  This uncertainty weighs in favor of abstention.

- *Third*, "even if a matter does not involve unsettled issues of state law, where the state law issues so predominate the proceeding… this factor weighs in favor of having the state court decide it."  *In re Integrated Health Servs., Inc.*, 291 B.R. 615, 620 (Bankr. D. Del. 2003).  Because the False Statement Claims depend entirely on state law, state law issues "predominate" here.  *Id.*

---

[7] To add further confusion, when the jurisdictional basis for a claim is "related to" jurisdiction, "even the question of whose choice-of-law principles should apply is subject to disagreement." *In re Art Inst. of Philadelphia LLC*, No. 18-11535 (CTG), 2022 WL 18401591, at *5 (Bankr. D. Del. Jan. 12, 2022).

***The presence of a related proceeding commenced in state court or other non-bankruptcy court:*** Because there is no other pending proceeding, this factor is "neutral." *In re Canfibre of Riverside, Inc.*, 2006 WL 2130664, at *2 (Bankr. D. Del. Jul. 20, 2006).

***The jurisdictional basis, if any, other than 28 U.S.C. § 1334:*** As discussed above, there is no jurisdictional basis other than 28 U.S.C. § 1334, and therefore "this factor weighs in favor of abstention." *In re Valley Media, Inc.*, 289 B.R. 27, 31 (Bankr. D. Del. 2003).

***The degree of relatedness or remoteness of the proceeding to the main bankruptcy case:*** These claims were filed post-confirmation and were brought by a recovery trust and a non-debtor. This factor also favors abstention, as "the bankruptcy court will not oversee proceedings involving reorganized debtors indefinitely." *In re G-I Holdings, Inc.*, 580 B.R. 388, 431 (Bankr. D.N.J. 2018).

***The substance rather than form of an asserted "core" proceeding:*** The False Statement Claims are not "core" claims. To determine "whether a proceeding is really a 'core' proceeding," courts in the Third Circuit apply the following test: "a proceeding is core (1) if it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *In re Valley Media*, 289 B.R. at 31 (quoting *Halper*, 164 F.3d at 836). Neither prong is satisfied here:

- The False Statement Claims do not involve any substantive rights created by the Bankruptcy Code; they only involve non-federal tort claims. *In re Sun Healthcare Group, Inc.*, 267 B.R. 673, 678 (Bankr. D. Del. 2000) ("This case does not present a situation which invokes a substantive right provided by title 11; rather, it is founded on state law claims."); *In re Holiday RV Superstores, Inc.*, 362 B.R. 126, 130 (Bankr. D. Del.

2007) ("[T]he Adversary Complaint alleges state law claims with little nexus to the bankruptcy proceedings").

- Nor could the False Statement Claims arise only in the context of a bankruptcy proceeding; they could be advanced against Defendants in any court of competent jurisdiction. *Sun Healthcare Group*, 267 B.R. at 678.

***The feasibility of severing state law claims from core bankruptcy matters:*** Because no core bankruptcy matters exist as to the False Statement Claims, this factor weighs in favor of abstention. *In re Kessler*, 430 B.R. 155, 168 (Bankr. M.D. Pa. 2010).

***The burden of [the court's] docket:*** The District of Delaware is the busiest bankruptcy dockets in the country for large corporate bankruptcies, which puts an immense strain on the District's judges. *In re LaRoche Indus., Inc.*, 312 B.R. 249, 255 (Bankr. D. Del. 2004) ("[T]his Court is tremendously overburdened.").

***The likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties:*** At this time, there is no apparent evidence of forum shopping. Accordingly, this factor is neutral. *In re Windhaven Top Ins. Holdings, LLC*, 636 B.R. 596, 610 (Bankr. D. Del. 2021).

***The existence of a right to a jury trial:*** These are tort claims for money damages, the "prototypical common law remedy." *Securities and Exchange Commission v. Jarkesy*, 603 U.S. 109, 123 (2024); *see* Complaint ¶¶ 132, 136, 140, 144. Digital Anchor is therefore entitled to a trial by jury, which it would be deprived of in this forum.

***The presence in the proceeding of non-debtor parties:*** No party in this matter is a debtor. Each of the defendants is a non-debtor party, and neither FTX Digital Markets nor the FTX Recovery Trust is a debtor.

20

* * *

In short, the applicable factors strongly favor permissive abstention.  That discretion is appropriately exercised here, given the tenuous connection between the False Statement Claims and the Fraudulent Transfer Claims.

## IV. IN THE ALTERNATIVE, PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### a.  Legal Standard

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conclusory allegations, however, "are not entitled to the assumption of truth." *Santiago v. Warminster Tp.*, 629 F.3d 121, 131 (3d Cir. 2010).  Thus, courts may "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021).

Claims that depend on fraud are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  Under that standard, the complaint "must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity. *i.e.*, 'the who, what, when, where and how.'" *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023) (quoting *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009)).

### b.  Application

#### i.  All Fraudulent Transfer Claims Fail Because Plaintiffs Did Not Plead Which Defendant Received Which Transfer

To adequately allege a fraudulent transfer claim, a plaintiff must "provide specific facts as to which…. Defendant received which transfer." *In re PennySaver USA Publishing, LLC*, 602

B.R. 256, 268 (Bankr. D. Del. 2019).  Where there are no "specific allegations within the

complaint regarding which… entity received the transfers," the complaint must be dismissed.  *Id.*

Plaintiffs do not meet this standard, instead alleging on information or belief that "one or

more Binance entities" received the transfers at issue, or simply that "Binance" received these

transfers, without pleading any distinction between the FTX Repurchase or the WRS

Repurchase.  Complaint ¶¶ 43, 82.  "Binance" is defined as comprising every corporate

defendant in this case.  *Id.* ¶ 24.  This "theory of collective responsibility" does not satisfy

federal pleading standards, because "[e]ach defendant is entitled to know what he or she did that

is asserted to be wrongful."  *PennySaver USA*, 602 B.R. at 268.  Accordingly, these claims must

be dismissed.[8]

### ii.  This Court Must Dismiss the False Statement Claims As to Digital Anchor

Plaintiffs admit, as they must, that each of the False Statement Claims require them to

prove that the defendant made a false statement or one that concealed a material fact.[9]  But the

Complaint does not allege that Digital Anchor made *any* statements.  The challenged statements

are (1) eight tweets sent by Changpeng Zhao; (2) two tweets sent by the "@Binance" Twitter

account; and (3) a Letter of Intent purportedly executed by Zhao on behalf of "his… company[]," 

---

[8] Digital Anchor also joins in and incorporates by reference any arguments made by Defendants Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited (the "BHL Defendants") as to why the Fraudulent Transfer Claim fails to state a claim, including that the constructive transfer claims are barred by 11 U.S.C. § 546(e)'s safe harbor provision; that the Complaint does not plausibly plead insolvency as of July 2021, when the transfers took place; (3) that the Complaint fails to allege that the Debtors received less than reasonably equivalent value; and (4) that the actual fraudulent transfer claims fail because neither direct evidence of fraud nor badges of fraud are adequately alleged.

[9] Complaint ¶ 130 (injurious falsehood claim requires the defendant to "publish[] a false statement"); *id.* ¶ 134 (fraud claim requires a showing that the defendant made "a false representation"); *id.* ¶ 138 (intentional misrepresentation claim requires a showing of "deliberate concealment by the defendant of a material past or present fact").

which Plaintiffs have failed to attach to the complaint or describe in any detail.  Complaint ¶¶ 56, 58, 60, 67-68, 70.  Plaintiffs make no effort to allege that any of these statements were made by Digital Anchor.  Again, statements attributing certain statements to "Binance" are obviously insufficient.  Plaintiffs may not "lump[]" defendants together "without supplying specific facts as to each defendant's wrongdoing," *In re Conex Holdings, LLC*, 514 B.R. 405, 414 (Bankr. D. Del. 2014), particularly since Rule 9(b)'s heightened pleading standard applies to these claims.

For these reasons, the False Statement Claims should be dismissed as to Digital Anchor.[10]

## **CONCLUSION**

For these reasons, Digital Anchor respectfully submits that the Fraudulent Transfer Claims are subject to arbitration and that the False Statement Claims should be dismissed for lack of subject matter jurisdiction; that, in any event, there is no personal jurisdiction as to Digital Anchor; and that, should this Court disagree, it should dismiss all claims for failure to state a claim, or in the alternative, permissively abstain as to the False Statement Claims.

Dated: May 16, 2025
   Wilmington, Delaware

**CONNOLLY GALLAGHER, LLP**

*/s/ Karen C. Bifferato*
Karen C. Bifferato (DE Bar No. 3279)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 888-6221
kbifferato@connollygallagher.com

-and-

---

[10] Digital Anchor also joins in and incorporates by reference any argument made by the BHL Defendants as to Plaintiffs' failure to plead a false or misleading statement, injurious falsehood, intent, and unjust enrichment, as well as the doctrine of *in pari delicto*.

**MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.**

Karen R. King *(pro hac vice* forthcoming*)*
Peter Menz *(pro hac vice* forthcoming*)*
565 Fifth Avenue
New York, New York 10017
(212) 856-9600 (telephone)
(212) 856-9494 (facsimile)
kking@maglaw.com
pmenz@maglaw.com

*Attorneys for Defendant Digital Anchor Holdings Limited*