# Exhibit 3

EXECUTION COPY

## SHARE TRANSFER AGREEMENT

This Share Transfer Agreement (this "Agreement"), dated as of July 15, 2021 is entered into by and between Nishad Singh ("Purchaser") and Samuel Wenjun Lim ("Seller").

WHEREAS, Purchaser desires to purchase from the Seller that number of shares of common stock of WEST REALM SHIRES INC., a Delaware corporation ("WRS"), par value $0.00001 per share, set forth opposite the Purchaser's name in Schedule A attached hereto (the "Transferred Shares"), and the Seller desires to sell such Transferred Shares to the Purchaser.

NOW THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements set forth herein, the parties to this Agreement agree as follows:

### ARTICLE I
### TRANSFER OF TRANSFERRED SHARES

**1.1    Transaction**.  Upon the terms and conditions set forth herein, the Seller hereby conveys, sells and transfers the Transferred Shares (together with all rights, benefits and privileges thereunder), as beneficially owned by Seller, free and clear of claims, liens or other encumbrances, to Purchaser, and the Purchaser hereby purchases and accepts the Seller's Transferred Shares and all such rights, benefits and privileges.

**1.2    Purchase Price**.  The aggregate purchase price to be paid by Purchaser to the Seller for the Transferred Shares shall be the amount set forth next to the Purchaser's name in Schedule A attached hereto (the "Purchase Price").

**1.3    Payment of Purchase Price.**  On the Closing Date (as defined below), Purchaser shall pay 100% of the Purchase Price to Seller in BUSD to the wallet designated by the Seller in writing.

**1.4    Closing; Closing Deliverables**.

(a)    The closing of the transactions contemplated by this Agreement (the "Closing") shall take place remotely and electronically on the date hereof or on another date that is mutually agreed between the Seller and Purchaser in writing (the "Closing Date").  On the Closing Date, (i) Purchaser shall pay 100% of the Purchase Price to the Seller in the manners set forth in Section 1.3 above, and (ii) Seller hereby instructs, and shall instruct or cause to be instructed, WRS to cancel any stock certificates or book-entry record, as applicable, evidencing the Transferred Shares, and issue a duly-executed stock certificate or book-entry record, as applicable, evidencing the applicable number of Transferred Shares purchased by Purchaser in the Purchaser's name. Effective as of the Closing Date, Seller acknowledges and agrees that it is relinquishing all rights of a stockholder with respect to the Transferred Shares, and the Purchaser shall be deemed the exclusive owner of the Transferred Shares set forth on Schedule A hereto.

**1.5    Further Assurances**.  From time to time after the Closing Date, Purchaser and the Seller, without charge to the other, shall perform such other acts, and shall execute and acknowledge and shall furnish such other documents, instruments, materials and/or information that such other party reasonably may request in order to effect the intent of, and the consummation of the transactions provided in, this Agreement, including, without limitation, those actions necessary to transfer by the Seller to the Purchaser good and marketable title to the Transferred Shares, free and clear of all claims, liens and other encumbrances and transfer by Purchaser to the

Seller good and marketable title to such cryptographic tokens according to Section 1.3, free and clear of all claims, liens and other encumbrances.

**ARTICLE II**
**REPRESENTATIONS AND WARRANTIES OF SELLER**

Seller represents and warrants to Purchaser that the following statements are true, correct and complete as of the date hereof and as of the Closing Date:

**2.1    Capitalization**.  That Seller is the sole owner (legal and beneficial) of the Transferred Shares and save as otherwise provided in WRS's amended and restated certificate of incorporation, that Seller has good, valid and marketable title to the Transferred Shares, free and clear of all restrictions, liens, encumbrances, options and claims, and upon transfer of the Transferred Shares held by the Seller to the Purchaser in accordance with this Agreement, the Purchaser shall own, and shall have good, valid and marketable title to, the Transferred Shares held by the Seller, free and clear of all liens, encumbrances, options and claims.

**2.2    Authority of Seller; No Conflict**.  That Seller has the full right, power, legal capacity and authority to perform its obligations under this Agreement, including transferring the Transferred Shares as described herein to Purchaser pursuant to this Agreement.  The execution and delivery of this Agreement and Seller's performance hereunder will not conflict with, or breach or result in a default under, any laws or any agreement by which Seller is bound.  No third party consent, filing, notice, authorization or approval, governmental or otherwise, is necessary to enable the Seller to enter into, and to perform Seller's obligations under this Agreement. This Agreement has been duly executed and delivered by the Seller and, assuming due authorization, execution and delivery by Purchaser, constitutes the valid, legal and binding obligation of the Seller, enforceable against the Seller in accordance with its terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles.  The Transferred Shares as described herein have not (nor has any portion thereof) been assigned, pledged, or encumbered by the Seller.

**2.3    Compliance with Applicable Law**.  There is no claim, action, suit, proceeding, arbitration, investigation or inquiry pending or, to the best of the Seller's knowledge, threatened, against or involving the Seller before any national, provincial, federal, state, municipal, foreign, or other court or governmental or administrative body or agency, or any private arbitration tribunal that would have a material adverse effect on the transactions contemplated hereunder.

**2.4    Sophisticated Seller**.  Seller (a) is a sophisticated individual familiar with transactions similar to those contemplated by this Agreement, (b) has adequate information concerning the business and financial condition of WRS to make an informed decision regarding the sale of the Transferred Shares, (c) has independently and without reliance upon the Purchaser or WRS, and based on such information and the advice of such advisors as Seller has deemed appropriate, made its own analysis and decision to enter into this Agreement. Seller acknowledges that neither the Purchaser nor WRS nor any of their respective affiliates is acting as a fiduciary or financial or investment adviser to Seller, and that neither the Purchaser nor WRS nor any of their respective affiliates has given Seller any investment advice, opinion or other information on whether the sale of the Transferred Shares is prudent.  Seller acknowledges that (i) the Purchaser currently may have, and later may come into possession of, information with respect to WRS that is not known to Seller and that may be material to a decision to sell the Transferred Shares (the "***Seller Excluded Information***"), (ii) Seller has determined to sell the Transferred Shares notwithstanding its lack of knowledge of the Seller Excluded Information, and (iii) the Purchaser

shall have no liability to Seller, and Seller waives and releases any claims that it might have against the Purchaser whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Seller Excluded Information in connection with the sale of the Transferred Shares and the transactions contemplated by this Agreement.  Seller understands that the Purchaser will rely on the accuracy and truth of the foregoing representations, and Seller hereby consents to such reliance.

       **2.5**     **Taxes**.  Seller agrees that it shall be fully responsible for its own income tax and other tax consequences, if any, associated with the transactions contemplated herein.

**ARTICLE III**
**REPRESENTATIONS AND WARRANTIES OF PURCHASER**

       Purchaser represents and warrants to Seller that the following statements are true, correct and complete as of the date hereof and as of the Closing Date:

       **3.1**     **Ownership of Tokens**.  Purchaser is the sole owner (legal and beneficial) of the cryptographic tokens with the symbol "BUSD" to be transferred by Purchaser to Seller pursuant to Section 1.3 (the "**Purchaser's Tokens**"), Purchaser has good, valid and marketable title to the Purchaser's Tokens, free and clear of all restrictions, liens, encumbrances, options and claims, and upon transfer of the Purchaser's Tokens held by Purchaser to Seller in accordance with this Agreement, Seller shall own, and shall have good, valid and marketable title to, the Purchaser's Tokens, free and clear of all liens, encumbrances, options and claims.

       **3.2**     **Authority of Purchaser**.  Purchaser has the requisite power, capacity and authority to execute and deliver this Agreement, to perform its obligations under this Agreement and to consummate the purchase of the Transferred Shares. This Agreement has been duly executed and delivered by Purchaser and, assuming due authorization, execution and delivery by the Seller, constitutes the valid and binding obligation of Purchaser, enforceable against it in accordance with its terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles. The cryptographic tokens with the symbol "BUSD" paid by Purchaser to Seller pursuant to Section 1.3 have not (nor has any portion thereof) been assigned, pledged, or encumbered by Purchaser.

       **3.3**     **Compliance with Applicable Law**.  There is no claim, action, suit, proceeding, arbitration, investigation or inquiry pending or, to the best of Purchaser's knowledge, threatened, against or involving Purchaser before any national, provincial, federal, state, municipal, foreign, or other court or governmental or administrative body or agency, or any private arbitration tribunal that would have a material adverse effect on the transactions contemplated hereunder.

       **3.4**     **Sophisticated Purchaser**.  Purchaser (a) is a sophisticated investor familiar with transactions similar to those contemplated by this Agreement, (b) has adequate information concerning the business and financial condition of WRS to make an informed decision regarding the purchase of the Transferred Shares, (c) has independently and without reliance upon Seller or WRS, and based on such information and the advice of such advisors as Purchaser has deemed appropriate, made its own analysis and decision to enter into this Agreement. Purchaser acknowledges that neither Seller nor WRS nor any of their respective affiliates is acting as a fiduciary or financial or investment adviser to Purchaser, and that neither Seller nor WRS nor any of their respective affiliates has given Purchaser any investment advice, opinion or other information on whether the purchase of the Transferred Shares is prudent.  Purchaser

acknowledges that (i) Seller currently may have, and later may come into possession of, information with respect to WRS that is not known to Purchaser and that may be material to a decision to purchase the Transferred Shares (the "***Purchaser Excluded Information***"), (ii) Purchaser has determined to purchase the Transferred Shares notwithstanding its lack of knowledge of the Purchaser Excluded Information, and (iii) Seller shall have no liability to Purchaser, and Purchaser waives and releases any claims that it might have against Seller whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Purchaser Excluded Information in connection with the purchase of the Transferred Shares and the transactions contemplated by this Agreement.  Purchaser understands that Seller will rely on the accuracy and truth of the foregoing representations, and Purchaser hereby consents to such reliance.

**3.5** **Taxes**.  Purchaser agrees that it shall be fully responsible for its own tax consequences, in any, associated with the transactions contemplated herein.

**ARTICLE IV**
**MISCELLANEOUS**

**4.1** **Confidentiality**.  Other than as required by applicable law, each party shall at all times use commercially reasonable efforts to keep confidential the terms of this Agreement, any agreement ancillary to, or referred to in, this Agreement, and any confidential information which it has acquired and may acquire in relation to the transaction contemplated hereunder (for the avoidance of doubt, the fact that Seller shall no longer be a shareholder of WRS shall not be deemed confidential information).  The parties agree that, unless otherwise required by applicable laws, neither of them shall issue or permit to be issued a press release or make any public announcement with respect to this Agreement or the transaction contemplated hereunder without the prior written consent of the other parties. In case Purchaser or Seller is required to make any public announcement as required by applicable laws, the other party shall have reasonable opportunity to provide comments on such announcement.

**4.2** **Survival.**  The representations and warranties set forth in this Agreement shall survive for one (1) month after the Closing Date.

**4.3** **Notices**.  All notices and other communications under this Agreement shall be in writing and shall be deemed given if delivered personally, electronically mailed (if confirmed), or if mailed by registered or certified mail (return receipt requested) on the third business day after mailing to the parties at the addresses set forth below (or at such other address for a party as shall be specified by like notice).

To Purchaser:

Nishad Singh
Address:          2000 Center St, 4th Floor, Berkeley CA 94704
Attn:             Nishad Singh
E-mail:           nishad@ftx.com

*with copies (which shall not constitute notice) to*:

West Realm Shires Inc.
Attn: Daniel Friedberg, General Counsel
Email: dan@ftx.us

-4-

and

Fenwick & West LLP
Address:      1191 Second Ave, 10th Floor
Attn:         Andrew Albertson
E-mail:       aalbertson@fenwick.com

To Seller:

Hon Ng
Address:      30 de Castro Street, Wickhams Cay 1, P.O. Box 4519,
              Road Town, Tortola ,British Virgin Islands
E-mail:       hon.ng@binance.com and legal@binance.com

*with a copy (which shall not constitute notice) to*:

Paul Hastings LLP
Address:      43/F, Jing An Kerry Center Tower II, 1539 Nanjing West Road,
              Shanghai 200040, PRC
Attn:         David S. Wang
E-mail:       davidwang@paulhastings.com

**4.4     Assignment**.  Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be assigned by any party (whether by operation of law or otherwise) without the prior written consent of the other party.  Subject only to the preceding sentence, this Agreement will be binding upon, inure to the benefit of, and be enforceable by and against the parties and their respective successors, heirs, personal representatives, executors and permitted assigns.

**4.5     Construction**.  Each party acknowledges and agrees that it has been represented by legal counsel in the negotiation and delivery of this Agreement and that this Agreement has been drafted and prepared through the efforts of all parties and the rule of construction that any vague or ambiguous terms are to be construed against the party drafting such terms shall not be applied to any party to this Agreement.

**4.6     Terms**.  Common nouns and pronouns will be deemed to refer to the masculine, feminine, neuter, singular, and plural, as the identity of the person or persons, firm, or corporation may in the context require.

**4.7     Governing Law; Jurisdiction**.  This Agreement shall be governed by the internal laws of Hong Kong, without regard to conflict of law principles that would result in the application of any law other than such laws. Any controversy or claim arising out of or relating to this Agreement or the interpretation, breach, termination or validity hereof shall be resolved through arbitration in accordance with the Hong Kong International Arbitration Centre Arbitration Rules. There shall be three arbitrators. Each of Purchaser and Seller has the right to appoint one arbitrator and the third arbitrator shall be appointed by the Hong Kong International Arbitration Centre.  The language to be used in the arbitral proceedings shall be English and the seat of the arbitration shall be Hong Kong.

**4.8     Specific Enforcement**.  All breaches of this Agreement are subject to specific enforcement, without prejudice to the right to seek damages or other remedies.

**4.9     Entire Agreement; Third Party Beneficiaries**.  This Agreement constitutes the entire understanding between the parties with respect to the sale and purchase of the Transferred Shares and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter of this Agreement.  No provision of this Agreement is intended to confer upon any person other than the parties hereto any rights or remedies hereunder.

**4.10     Amendment and Waiver**.  Except as otherwise expressly provided herein, any provision of this Agreement may be amended or modified and the observance of any provision of this Agreement may be waived (either generally or any particular instance and either retroactively or prospectively) only with the written consent of the parties or, with respect to a waiver, with the written consent of the party against whom such waiver is sought.  The failure of any party to enforce its rights under this Agreement at any time for any period shall not be construed as a waiver of such rights.

**4.11     Severability**.  In the event that any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid, or unenforceable, to any extent, such provisions shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.

**4.12     Counterparts**.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same instrument.  Transmission by facsimile or electronic mail of an executed counterpart of this Agreement shall be deemed to constitute due and sufficient delivery of such counterpart.

**4.13     Expenses**.  Each party hereto shall bear its own costs and expenses in connection with this Agreement and the transactions contemplated hereby.

**4.14     Headings**.  Headings and captions are for convenience only and are not to be used in the interpretation of this Agreement.

[THE REMINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Purchaser has caused this Agreement to be executed as of the date first written above.

**Purchaser:**

**NISHAD SINGH**

By: _Nishad Singh_ _____

IN WITNESS WHEREOF, the Seller has caused this Agreement to be executed as of the date first written above.


**Seller:**


**Samuel Wenjun Lim**

*Samuel Lim*

By:_____


[*Signature Page to Share Transfer Agreement (West Realm)*]

**SCHEDULE A**

| Purchaser | Seller | Transferred Shares | Purchase Price |
|---|---|---|---|
| Nishad Singh | Samuel Wenjun Lim | 20,139 | US$3,073,815.57 |