## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| FTX RECOVERY TRUST, FTX DIGITAL MARKETS, LTD. | |
| Plaintiffs, | |
| - against - | |
| BINANCE HOLDINGS LIMITED., BINANCE CAPITAL MANAGEMENT CO. LTD, BINANCE HOLDINGS (IE) LIMITED, BINANCE (SERVICES) HOLDINGS LIMITED, CHANGPENG ZHAO, DINGHUA XIAO, SAMUEL WENJUN LIM, and DOES 1-1000 | Adv. Pro. No. 24-50222 (KBO) |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BINANCE HOLDINGS LIMITED'S, BINANCE HOLDINGS (IE) LIMITED'S, AND BINANCE (SERVICES) HOLDINGS LIMITED'S MOTION TO DISMISS THE COMPLAINT

Samson A. Enzer[*]
Herbert S. Washer[*]
Edward N. Moss[*]
Joel H. Levitin[*]
Gregory Mortenson[*]
32 Old Slip
New York, NY 10005
(212) 701-3000
SEnzer@cahill.com
HWasher@cahill.com
EMoss@cahill.com
JLevitin@cahill.com
GMortenson@cahill.com
[*] admitted pro hac vice

**CAHILL GORDON & REINDEL LLP**
Gregory Strong (No. 4664)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
(302) 884-0001
GStrong@cahill.com

*Attorneys for Defendants Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited*

Dated: May 16, 2025

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 4

ARGUMENT .................................................................................................................. 7

I.     THIS COURT LACKS PERSONAL JURISDICTION OVER THE BHL
DEFENDANTS ................................................................................................ 7

     A.     Plaintiffs Fail to Plead General Jurisdiction ............................... 8

     B.     Plaintiffs Fail to Plead Specific Jurisdiction .............................. 8

II.     PLAINTIFFS' AVOIDANCE CLAIMS REGARDING THE JULY 2021
TRANSFERS FAIL (COUNTS 1-5) .................................................................. 12

     A.     Plaintiffs' Constructive Fraudulent Transfer Claims Are Barred by
the Safe Harbor Provision of the Bankruptcy Code .................... 13

     B.     Plaintiffs' Constructive Fraudulent Transfer Claims Fail for
Additional Reasons ...................................................................... 16

     C.     Plaintiffs' Intentional Fraudulent Transfer Claims Fail .............. 20

III.     PLAINTIFFS' STATE LAW CLAIMS CONCERNING THE
NOVEMBER 2022 TWEETS FAIL AS WELL (COUNTS 6-9) ...................... 22

     A.     This Court Lacks Jurisdiction to Hear Plaintiffs' State Law Claims
Concerning the November 2022 Tweets ...................................... 23

     B.     The Tweets Are Not False or Misleading .................................... 24

     C.     The Doctrine of *In Pari Delicto* Bars Plaintiffs' State Law Claims ......... 28

     D.     Plaintiffs' State Law Claims Rely on Impermissible Group
Pleading ....................................................................................... 29

     E.     Plaintiffs Fail to State a Claim for Injurious Falsehood (Count 6) ........... 30

     F.     Plaintiffs Fail to Adequately Allege Fraud and Intentional
Misrepresentation (Counts 7 and 8) ............................................ 33

     G.     Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 9) ............. 35

CONCLUSION ............................................................................................................... 36

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alameda Rsch. Ltd.* v. *Giles (In re FTX Trading Ltd.)*,
   2024 WL 4562675 (Bankr. D. Del. Oct. 23, 2024) ..........................................21, 22

*Aldossari ex rel. Aldossari* v. *Ripp*,
   49 F.4th 236 (3d Cir. 2022) ...................................................................................11

*Aoki* v. *Benihana, Inc.*,
   839 F. Supp. 2d 759 (D. Del. 2012)..............................................................25, 32, 33

*Astropower Liquidating Tr* v. *Xantrex Tech., Inc. (In re Astropower Liquidating
   Tr.)*,
   2006 WL 2850110 (Bankr. D. Del. Oct. 2, 2006) ....................................................11

*Baldonado* v. *Avrinmeritor, Inc.*,
   2014 WL 2116112 (D. Del. May 20, 2014).......................................................33, 34

*Balasiano* v. *Borell (In re Furniture Factory Ultimate Holding, L.P.)*,
   2023 WL 5662747 (Bankr. D. Del. Aug. 31, 2023) .................................................17

*Benak ex rel. Alliance Premier Growth Fund* v. *Alliance Capital Mgmt. L.P.*,
   435 F.3d 396 (3d Cir. 2006)..................................................................................19n

*Bench Walk Lighting LLC* v. *LG Innotek Co.*,
   530 F. Supp. 3d 468 (D. Del. 2021).........................................................................30

*Berdeaux* v. *OneCoin Ltd.*,
   561 F. Supp. 3d 379 (S.D.N.Y. 2021)......................................................................10

*In re Bernard L. Madoff Inv. Sec. LLC*,
   721 F.3d 54 (2d Cir. 2013).......................................................................................29

*In re Bernard L. Madoff Inv. Sec. LLC*,
   773 F.3d 411 (2d Cir. 2014)........................................................................14, 15, 16

*Bocker* v. *Hartzell Engine Techs., LLC*,
   2023 WL 415792 (D. Del. Jan. 26, 2023)..........................................................22, 23

*In re BWI Liquidating Corp.*,
   437 B.R. 160 (Bankr. D. Del. 2010) ........................................................................24

*Cammarata* v. *Kelly Capital LLC*,
   2016 WL 6023058 (D.N.J. Oct. 14, 2016)...............................................................11

*Charys Liquidating Trust* v. *Hades Advisors, LLC (In re Charys Holding Co., Inc.)*,
    2010 WL 2788152 (Bankr. D. Del. July 14, 2010) ................................................. 14n

*In re Conex Holdings, LLC*,
    514 B.R. 405 (Bankr. D. Del. 2014) ....................................................................... 30

*In re Cred Inc.*,
    650 B.R. 803 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024) ..................... *passim*

*Daimler AG* v. *Bauman*,
    571 U.S. 117 (2014) ................................................................................................ 8

*Burtch* v. *Seaport Capital, LLC (In re Direct Response Media, Inc.)*,
    466 B.R. 626 (Bankr. D. Del. 2012) ................................................................... 17, 21

*Smith* v. *Weinshanker (In re Draw Another Circle)*,
    602 B.R. 878 (Bankr. D. Del. 2019) ....................................................................... 18

*Dunn as Tr. of GCX Liquidating Tr.* v. *Barney (In re GCX Ltd.)*,
    2024 WL 667366 (Bankr. D. Del. Feb. 16, 2024) .......................................... 7, 8, 11

*Edinburgh Holdings, Inc.* v. *Educ. Affiliates, Inc.*,
    2018 WL 2727542 (Del. Ch. June 6, 2018) .................................................. 33, 34, 35

*Elemica Inc.* v. *ecMarket Inc.*,
    2022 WL 911127 (D. Del. Mar. 29, 2022) ............................................................. 32

*Fatouros* v. *Lambrakis*,
    627 F. App'x 84 (3d Cir. 2015) ............................................................................... 9

*Fowler* v. *UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) .................................................................................... 1n

*In re FTX Trading Ltd.*,
    No. 22 Bk. 11068 (Bankr. D. Del.) .................................................................. *passim*

*Gaffin* v. *Teledyne, Inc.*,
    611 A.2d 467 (Del. 1992) ....................................................................................... 35

*Golden* v. *Community Health Sys., Inc. (In re Quorum Health Corp.)*,
    2023 WL 2552399 (Bankr. D. Del. Mar. 16, 2023) .................................. 14n, 15, 16

*Goodyear Dunlop Tires Operations, S.A.* v. *Brown*,
    564 U.S. 915 (2011) ................................................................................................. 8

*Hopkins* v. *Concorde Career Colleges, Inc.*,
    2016 WL 1238775 (D. Del. Mar. 29, 2016) ........................................................... 34

*Hughes Tech. Servs., LLC* v. *Glob. Consulting & Mech. Servs.*, *LLC*,
  2020 WL 7350994 (E.D. Pa. Dec. 15, 2020) ........................................................12

*IMO Indus., Inc.* v. *Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998)................................................................................9

*In re Insilco Techs., Inc.*,
  330 B.R. 512 (Bankr. D. Del. 2005), *aff'd*, 394 B.R. 747 (D. Del. 2008) .............................24

*Jalbert* v. *Souza (In re F-Squared Inv. Mgmt., LLC)*,
  2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019) ........................................................18, 20

*Knight Broadband LLC* v. *Knight*,
  2022 WL 1788855 (Del. Super. Ct. June 2, 2022) ...................................................... *passim*

*Koch* v. *Christie's Int'l PLC*,
  785 F. Supp. 2d 105 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012) ..........................19n

*Kosachuk* v. *Selective Advisors Grp., LLC (In re: NLG, LLC)*,
  2023 WL 2055344 (Bankr. D. Del. Feb. 16, 2023) ......................................................14n

*Lawal* v. *McDonald*,
  546 F. App'x 107, 113 (3d Cir. 2014) ....................................................................30

*Li* v. *Eqonex Ltd.*,
  2024 WL 4241951 (S.D.N.Y. Sept. 18, 2024)..............................................................28

*Guiliano* v. *Ferdinand (In re Liquid Holdings Grp., Inc.)*,
  2018 WL 2759301 (Bankr. D. Del. June 6, 2018) ........................................................18

*Malik* v. *Cabot Oil & Gas Corp.*,
  710 F. App'x 561 (3d Cir. 2017) .........................................................................8

*In re MarketXT Holdings Corp.*,
  361 B.R. 369 (Bankr. S.D.N.Y. 2007) ....................................................................22, 23

*MDNet, Inc.* v. *Pharmacia Corp.*,
  147 F. App'x 239 (3d Cir. 2005) .........................................................................30

*In re Nat'l Collegiate Student Loan Trusts Litig.*,
  2020 WL 3960334 (Del. Ch. July 13, 2020)..............................................................31, 32, 33

*Nelson* v. *Claussen*,
  2024 WL 4249730 (D.N.J. Sept. 20, 2024) ................................................................30

*In re NewStarcom Holdings Inc.*,
  816 F. App'x 675 (3d Cir. 2020) .........................................................................16n

*Off. Comm. Of Unsecured Creditors* v. *R.F. Lafferty & Co.*,
    267 F.3d 340 (3d Cir. 2001)................................................................28

*Paul Elton, LLC* v. *Rommel Delaware, LLC*,
    2020 WL 2203708 (Del. Ch. May 7, 2020) ...............................................33

*Peltz* v. *Hatten*,
    279 B.R. 710 (D. Del. 2002), *aff'd sub nom. In re USN Commc'ns, Inc.*, 60 F.
    App'x 401 (3d Cir. 2003)..............................................................20, 21

*Pennsylvania Emp., Benefit Tr. Fund* v. *Zeneca, Inc.*,
    710 F. Supp. 2d 458 (D. Del. 2010)........................................................36

*In re Pennysaver USA Publ'g, LLC*,
    587 B.R. 445 (Bankr. D. Del. 2018) .....................................................12n

*Pinkney* v. *Meadville, Pennsylvania*,
    2022 WL 1616972 (3d Cir. May 23, 2022) ............................................19n

*In re Pitt Penn Holding Co.*,
    484 B.R. 25 (Bankr. D. Del. 2012) .........................................................28

*Remick* v. *Manfredy*,
    238 F.3d 248 (3d Cir. 2001)..............................................................9, 10

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004)................................................................24

*Sadek* v. *Horovitz*,
    2013 WL 12149254 (D.N.J. Mar. 28, 2013)..............................................12

*In re Samson Resources Corp.*,
    625 B.R. 291 (Bankr. D. Del. 2020) .....................................................14n

*Saudi* v. *Acomarit Maritimes Servs., S.A.*,
    114 F. App'x 449 (3d Cir. 2004) ..........................................................7

*Schmidt* v. *Skolas*,
    770 F.3d 241 (3d Cir. 2014)................................................................19n

*Sebastian Brown Prods., LLC* v. *Muzooka Inc.*,
    2015 WL 1467255 (D. Del. Mar. 30, 2015) ............................................9, 10

*Sierra* v. *Trafigura Trading LLC*,
    2024 WL 3823018 (D. Del. Aug. 14, 2024) ............................................7, 8

*Spuglio* v. *Cabaret Lounge*,
    344 F. App'x 724 (3d Cir. 2009) ..........................................................11

*Stampone* v. *Fopma*,
    567 F. App'x 69 (3d Cir. 2014) ...........................................................................7

*Stewart* v. *Wilmington Trust SP Services, Inc.*,
    112 A.3d 271 (Del. Ch. 2015)........................................................................28, 29

*In re Stillwater Asset Backed Offshore Fund Ltd.*,
    559 B.R. 563 (Bankr. S.D.N.Y. 2016) .................................................................17

*Swift* v. *Pandey*,
    2016 WL 4267947 (D.N.J. Aug. 10, 2016) ..........................................................36

*Theseus Strategy Group LLC* v. *Barsa (In re: Old Bpsush, Inc.)*,
    2021 WL 4453595 (D. Del. Sept. 29, 2021)..........................................................25

*Trenwick Am. Litig. Tr.* v. *Ernst & Young, L.L.P.*,
    906 A.2d 168 (Del. Ch. 2006)..............................................................................34

*United States* v. *Bankman-Fried*,
    No. 22 Cr. 673 (S.D.N.Y.) ..........................................................................7n, 19

*Vichi* v. *Koninklijke Philips Elecs. N.V.*,
    62 A.3d 26 (Del. Ch. 2012)..................................................................................36

*Vichi* v. *Koninklijke Philips Elecs., N.V.*,
    85 A.3d 725 (Del. Ch. 2014)................................................................................35

*Walden* v. *Fiore*,
    571 U.S. 277 (2014)........................................................................................7, 8

*In re West Realm Shires Inc.*,
    No. 22 Bk. 11183 (Bankr. D. Del) ......................................................................16n

**Statutes**

11 U.S.C. § 101(22A)(A)...........................................................................................14

11 U.S.C. § 544........................................................................................................13

11 U.S.C. § 546(e) ........................................................................................3, 13, 15, 16

11 U.S.C. § 548(a)(1)......................................................................................12n, 13, 21

11 U.S.C. § 550...............................................................................................12n, 16, 17

11 U.S.C. § 741........................................................................................................15

Delaware Uniform Fraudulent Transfer Act.................................................................12n

**Regulations**

Securities Exchange Commission Regulation S ............................................................12

**Rules**

Federal Rule of Evidence 201(b)(1) ........................................................................19n

Federal Rule of Bankruptcy Procedure 7012(b) ....................................................1, 1n

Federal Rule of Civil Procedure 9(b)........................................................21, 22, 33, 34

Federal Rule of Civil Procedure 12(b)...............................................................1, 14

Delaware Bankruptcy Court Local Rule 7012-1 .......................................................1n

## NATURE AND STAGE OF THE PROCEEDINGS[1]

Plaintiffs commenced this adversary proceeding on November 10, 2024.  (Adv. D.I. 1).

Defendants Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services)

Holdings Limited (the "BHL Defendants") respectfully submit this memorandum of law in support

of their motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), and (6), made

applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).[2]

## SUMMARY OF ARGUMENT

Plaintiffs are attempting to (i) recover funds FTX used to purchase its own stock 16 months

before FTX's collapse by asserting fraudulent transfer claims (the "Share Repurchase Claims");

and (ii) blame a competitor for FTX's collapse despite the massive fraud that FTX's own principals

perpetrated, and recover damages under a kitchen sink of state-law theories.  In total, Plaintiffs

assert nine causes of action against the BHL Defendants based on these two legally deficient

theories.  But as discussed in detail below, all nine should be dismissed for several independent

reasons.  The Court lacks personal jurisdiction over all BHL Defendants and—regardless of the

theory—there is no plausible claim against any of them.

---

[1] Unless noted otherwise, emphasis is added and internal citations and quotations are omitted. References to "Strong Decl." are to the Declaration of Gregory Strong and accompanying exhibits submitted in support of the BHL Defendants' motion to dismiss.  References to "King Decl." are to the Declaration of Karen King and accompanying exhibits submitted in support of the Digital Anchor Holdings Limited (f/k/a Binance Capital Management Co. Ltd.) motion to dismiss filed concurrently herewith.  Capitalized terms not otherwise defined have the meaning set forth in the Complaint (Adv. D.I. 1 ("Compl.")).  The well-pleaded allegations in the Complaint are assumed true solely for purposes of this Motion.  *See Fowler* v. *UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

[2] Pursuant to Local Rule 7012-1 and Fed. R. B. P. 7012(b), the BHL Defendants presently do not consent to the entry of final orders or judgments by the Bankruptcy Court.

***The Share Repurchase Claims.*** Plaintiffs seek to avoid and unwind transfers relating to FTX's July 2021 purchase of shares in FTX Trading (d/b/a FTX.com) and WRS (d/b/a FTX.US). (*See* Counts 1-5). Binance Capital Management Co. Ltd. ("BCM")—which is separately represented and filing its own dismissal motion—originally purchased some of those shares in November 2019. And certain former Binance executives—also separately represented— purchased other shares in February 2020. In July 2021, BCM and the former Binance executives sold all of those shares back to FTX in exchange for cryptocurrency pursuant to a series of share transfer agreements (the "Share Transfer Agreements"). But even though ***none*** of the BHL Defendants are a party to ***any*** of those agreements,[3] Plaintiffs now seek to recover the value of those transfers from the BHL Defendants. As discussed below, these claims suffer from a host of deficiencies and are all premised on the fatally flawed and legally insufficient speculation that FTX was insolvent and otherwise valueless as of July 2021—***16 months*** before it collapsed.

***The Claims Assigning Blame to the BHL Defendants for FTX's Collapse.*** Plaintiffs allege that a series of November 2022 "Tweets"—posted on the accounts of Binance's former CEO, Defendant Changpeng Zhao, and the "@binance" account, in the wake of public reports calling into question Debtors' financial condition—were intended to "destroy" FTX, and they assert a variety of state law claims based on that theory. (*See* Counts 6-9). As an initial matter, Plaintiffs' theory is inconsistent with their avoidance claims—if FTX truly were insolvent as of July 2021, then there was no value left to be "destroyed" in November 2022. But even more fundamentally, in advancing this theory, Plaintiffs are pretending that FTX did not collapse as the result of ***one of the most massive corporate frauds in history***. In trying to shift the blame,

---

[3] (*See* King Decl., Exs. 1-6). For purposes of the Motion to Dismiss, the Court may consider the Share Transfer Agreements as they are integral to, and affirmatively pleaded in, the Complaint. (*See* Compl. ¶¶ 38-41).

Plaintiffs go to almost absurd measures to downplay the real circumstances of FTX's collapse, referring in Paragraph 1 of the Complaint, for example, to "***material errors*** by [FTX's] founder, Sam Bankman-Fried." As the Court is well aware, Mr. Bankman-Fried is now currently serving a 25-year sentence in federal prison because he did far more than make some ***errors***. He was convicted of seven counts of fraud, conspiracy, and money laundering. The plausibility—or lack thereof—of Plaintiffs' allegations must be considered in light of this reality.

Plaintiffs' claims against the BHL Defendants all fail for several independent reasons:

*First*, the Court lacks personal jurisdiction over the foreign BHL Defendants. There is no general jurisdiction because none of the BHL Defendants are at home in the U.S. And Plaintiffs fail to plead facts establishing specific jurisdiction because Plaintiffs do not allege (i) any suit-related conduct as to any BHL Defendant; nor (ii) that any BHL Defendant purposefully availed itself of the benefits of any U.S. forum in connection with the claims asserted.

*Second*, Plaintiffs fail to adequately state either an intentional or constructive fraudulent transfer claim against the BHL Defendants based on the July 2021 transfers for multiple reasons: (i) the Bankruptcy Code's safe harbor provision bars the constructive fraudulent transfer claims; (ii) the BHL Defendants are not parties to the agreements and not adequately alleged to be the transferees; (iii) FTX, which remained a going concern for ***16 months after*** the July 2021 transfers, is not plausibly alleged to have been insolvent as of July 2021; and (iv) Plaintiffs fail to plead the lack of reasonably equivalent value. Plaintiffs' intentional fraudulent transfer claims also fail because they have not alleged the requisite fraudulent intent.

*Finally*, Plaintiffs' grab bag of state law claims based on the November 2022 Tweets all fail because: (i) the Court lacks jurisdiction because the claims are not sufficiently "related to" the core Chapter 11 claims and are collateral to the bankruptcy; (ii) Plaintiffs do not adequately allege

that any Tweets were false or misleading; (iii) the claims are barred by the doctrine of *in pari delicto* in light of the massive, criminal fraud at FTX; (iv) Plaintiffs impermissibly rely on group pleading; and (v) Plaintiffs otherwise fail to plead the necessary elements.

For these reasons and the other reasons below, Plaintiffs' claims against the BHL Defendants should be dismissed with prejudice.

## STATEMENT OF FACTS

The crux of the Complaint is twofold:  Plaintiffs seek to (i) avoid and recover the July 2021 transfer of cryptocurrency relating to FTX's repurchase of shares in FTX Trading and WRS; and (ii) recover damages in connection with certain November 2022 Tweets, which Plaintiffs claim somehow contributed to the collapse of FTX.  (Compl. ¶¶ 4-8).

Plaintiffs allege that prior to the November 2022 bankruptcy petition, Binance and FTX were rival cryptocurrency exchanges.  (*Id.* ¶¶ 3, 7, 57, 61, 139).  In 2017, Changpeng Zhao founded Binance, which later launched its own native token (BNB) and stablecoin (BUSD).[4]  (*Id.* ¶¶ 29-31).  Samuel Bankman-Fried ("SBF") co-founded the cryptocurrency hedge fund Alameda in 2017 and FTX.com in 2019.  (*Id.* ¶ 32).  FTX.com later launched its own native token (FTT).  (*Id.* ¶ 33).

***"Binance's" and Executives' investments in FTX and WRS.***   The Complaint defines "Binance" and the "Binance Defendants" collectively as the three BHL Defendants along with BCM.  (*Id.* ¶ 24).  The Complaint alleges that in November 2019, "Binance" entered into (i) a Share Purchase Agreement, acquiring an approximately 20% stake in FTX in exchange for BNB tokens worth approximately $18.3 million at the time; and (ii) an Investor's Rights Agreement giving "Binance" a right of first refusal in any new share issuances by FTX.  (*Id.* ¶¶ 34-35).  When

---

[4] Unlike "native" tokens, whose values tend to fluctuate, stablecoins such as BUSD are pegged 1:1 with U.S. dollars, meaning that one BUSD stablecoin can reliably be exchanged for $1, and vice versa.

SBF expanded FTX's business into the U.S. in 2020, pursuant to the Investor's Rights Agreement, Defendants Zhao, Xiao, and Lim are alleged to have collectively purchased an approximately 18.4% stake in WRS (d/b/a FTX.US) for two dollars.  (*Id.* ¶¶ 36-37).

Plaintiffs allege that "Binance" exited its investment in 2021 following the development of "personal grievances" between Zhao and SBF.  (*Id.* ¶ 4).  According to the Complaint, on July 15, 2021, FTX and "Binance" entered into an agreement whereby "FTX bought back Binance's and its executives' entire stakes" in FTX and WRS.  (*Id.*).  This was "memorialized in seven written agreements executed on the same day."  (*Id.* ¶¶ 38, 40-44, 82; King Decl., Exs. 1-6).

***FTX Continues to Grow But Eventually Collapses Due to Its Massive Fraud.***  Plaintiffs allege that FTX's business continued to grow at ever-increasing valuations after the July 2021 transfers.  (*See* Compl. ¶ 50).  But the tide abruptly shifted on November 2, 2022, when *CoinDesk* published an article reporting that a significant portion of Alameda's assets were FTT tokens, sounding alarm bells in the market as to both Alameda's and FTX's financial condition.  (*Id.* ¶ 55). The state-law claims are based entirely off Tweets that occurred ***after*** the *CoinDesk* article.

Specifically, during the ensuing maelstrom, on November 6, 2022, Zhao allegedly posted a series of messages on Twitter (collectively, the "November 6 Tweets") stating in relevant part that, "[d]ue to recent revelations that have came [*sic*] to light, we have decided to liquidate any remaining FTT on our books" and to "do so in a way that minimizes market impact[,]" which was expected to take a few months to complete.  (*Id.* ¶ 56).  Zhao allegedly further stated, "[r]egarding any speculation as to whether this is a move against a competitor, it is not[,]" and "[w]e stay transparent with our actions."  (*Id.*).  In addition, Zhao also allegedly acknowledged that a transfer of FTT valued at $585 million reported by "@whale_alert" "was part of" the liquidation efforts. (*Id.* ¶ 58).  Zhao additionally is alleged to have stated that "[l]iquidating our FTT is just post-exit

risk management, learning from LUNA" and that Binance "won't support people who lobby against other industry players behind their backs." (*Id.* ¶ 60).

Around the same time, FTX experienced a surge in customer withdrawals that it was unable to satisfy—and it was ultimately revealed that FTX's insiders had embezzled from the company and misused customer funds. (*Id.* ¶¶ 49, 75-78). On November 8, 2022, SBF allegedly called Zhao seeking emergency financing for FTX. (*Id.* ¶ 65). That same day, FTX and Binance allegedly entered into a non-binding Letter of Intent, which provided that "*subject to due diligence to be completed* within 30 days, Binance would acquire FTX and inject capital sufficient to address FTX's liquidity issues," and also afforded Binance an exclusivity period to contemplate the potential arrangement. (*Id.* ¶ 67). Zhao allegedly tweeted confirmation of the non-binding, subject-to-due-diligence arrangement in a pair of Tweets (the "November 8 Tweets"):

- "This afternoon, FTX asked for our help. There is a significant liquidity crunch. To protect users, we signed a non-binding LOI [letter of intent], intending to fully acquire FTX.com and help cover the liquidity crunch. *We will be conducting a full DD [due diligence] in the coming days*." (*Id.* ¶ 68).
- "There is a lot to cover and will take some time. This is a *highly dynamic situation*, and we are assessing the situation in real time. *Binance has the discretion to pull out from the deal at any time*. We expect FTT to be highly volatile in the coming days as things develop." (*Id.*).

On November 9, 2022, Binance exercised its unambiguous right to walk away from the deal, with "@binance" tweeting: "As a result of corporate due diligence, as well as the latest news reports regarding mishandled customer funds and alleged US agency investigations, we have decided that we will not pursue the potential acquisition of FTX.com. In the beginning, our hope was to be able to support FTX's customers to provide liquidity, but the issues are beyond our control or ability to help." (*Id.* ¶ 70) (the "November 9 Tweets").

Ultimately, FTX collapsed under the weight of its principals' fraud. On November 10, 2022, the Securities Commission of The Bahamas initiated procedures to wind up the FTX entity

operating in the Bahamas.  (*Id.* ¶ 77).  The next day, SBF stepped down as FTX's CEO, and FTX thereafter began filing Chapter 11 bankruptcy petitions in this Court.  (*See id.*).  Within a few weeks, the U.S. Department of Justice filed numerous criminal charges against FTX insiders.[5]

## ARGUMENT

## I.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE BHL DEFENDANTS

Plaintiffs have not made a *prima facie* showing of personal jurisdiction over ***each BHL Defendant***, *Stampone* v. *Fopma*, 567 F. App'x 69, 70 (3d Cir. 2014), nor have they demonstrated that the Court's exercise of personal jurisdiction would comport with the due process requirements of the U.S. Constitution, *Dunn as Tr. of GCX Liquidating Tr.* v. *Barney (In re GCX Ltd.)*, 2024 WL 667366, at *6 (Bankr. D. Del. Feb. 16, 2024).  The Court should dismiss the Complaint on this basis alone.  *See Sierra* v. *Trafigura Trading LLC*, 2024 WL 3823018, at *3-4 (D. Del. Aug. 14, 2024) (dismissal absent pled facts to "make a *prima facie* showing" of personal jurisdiction).

The personal jurisdiction inquiry is defendant-specific and claim-specific, *Saudi* v. *Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 453 (3d Cir. 2004), and focuses on the contacts "that the defendant himself create[d] with the forum State," *Walden* v. *Fiore*, 571 U.S. 277, 284 (2014).  In other words, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum . . . ."  *Id.* at 291.  Personal jurisdiction can be based on a theory of either "general jurisdiction" or "specific jurisdiction."  *See Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011); *see also Sierra*, 2024 WL 3823018, at *3.  Here, Plaintiffs have not met their burden to sufficiently allege either over any BHL Defendant.

---

[5] *See United States* v. *Bankman-Fried*, No. 22 Cr. 673 (S.D.N.Y. Dec. 9, 2022).

### A. Plaintiffs Fail to Plead General Jurisdiction

General jurisdiction exists only if the entity-defendant is essentially "at home" in the forum, *Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014), but Plaintiffs' own allegations confirm that the BHL Defendants are not "at home" in the U.S.: they are ***foreign*** corporations with ***foreign*** headquarters.[6] *See Malik* v. *Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564 (3d Cir. 2017) ("[I]t is incredibly difficult to establish general jurisdiction over a corporation in a forum ***other*** than the place of incorporation or principal place of business.").

### B. Plaintiffs Fail to Plead Specific Jurisdiction

This Court also lacks specific jurisdiction because the BHL Defendants' alleged "suit-related conduct" does not "create a substantial connection with the forum . . . ." *Walden*, 571 U.S. at 284. To plead specific jurisdiction, a plaintiff must allege that: (i) its claims "arise out of or relate to" the defendants' contacts with the forum; (ii) defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum"; and (iii) defendants' purposeful contact with the forum is "such that [they] should reasonably anticipate being haled into court there" and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *See Dunn*, 2024 WL 667366, at *6, *8-9. Plaintiffs fail to do so here.

*First*, none of Plaintiffs' claims "arise out of or relate to" any alleged contacts the BHL Defendants had with the forum (*i.e.*, the United States). *Id.* at *8. Counts 6-9 relate to the November 2022 Tweets, but Plaintiffs do not allege that these Tweets were made in or directed toward the U.S. or otherwise specifically targeted U.S. residents. *See Sebastian Brown Prods., LLC* v. *Muzooka Inc.*, 2015 WL 1467255, at *3 n.4 (D. Del. Mar. 30, 2015) (explaining that the

---

[6] (Compl. ¶ 21 ("Binance Holdings, Ltd. . . . is [a] Cayman Islands limited liability company . . . ."); *id.* ¶ 23 ("Binance Holdings (IE) Limited . . . is a holding company incorporated in Ireland."); *id.* ¶ 24 ("Binance (Services) Holdings . . . is a holding company incorporated in Ireland.")).

mere fact of having Twitter followers located in the forum does not support conclusion that "defendants have targeted [forum] residents"). Nor could they. Users of X (f/k/a Twitter) and social media generally are located all over the world, and the November 2022 Tweets related to a global exchange (FTX) whose operating entity was registered in Antigua and Barbuda. (Compl. ¶ 11). *See Fatouros* v. *Lambrakis*, 627 F. App'x 84, 87-88 (3d Cir. 2015) (finding online posts accessible in the forum over the Internet did not support *prima facie* case of purposeful availment).

Plaintiffs also fail to satisfy the "effects" test, which requires them to allege that: (i) defendants committed an intentional tort; (ii) plaintiffs felt the "brunt" of the harm in the forum; and (iii) defendants expressly aimed their allegedly tortious conduct at the forum. *IMO Indus., Inc.* v. *Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). For the same reasons above, Plaintiffs fail to sufficiently allege that the BHL Defendants "knew that the [Plaintiffs] would suffer the brunt of the harm caused by the [allegedly] tortious conduct in the forum," nor have Plaintiffs "point[ed] to specific activity indicating that [BHL Defendants] expressly aimed [their allegedly] tortious conduct at the forum." *Id.* at 266. As discussed, the November 2022 Tweets targeted a worldwide audience, not the U.S. in particular, and concerned an international exchange. Thus, the allegedly intentional torts asserted in Counts 6-9 fall far short of establishing personal jurisdiction. *See Remick* v. *Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (finding effects in forum "merely incidental" where online post "was intended to provide information on [the defendant]" and "was accessible worldwide," thus providing "no basis to conclude that the defendants expressly aimed their allegedly tortious activity at [the forum]").

As to Plaintiffs' avoidance claims in Counts 1-5, the Complaint does not contain any allegations that would subject the BHL Defendants to U.S. jurisdiction either. As noted, Plaintiffs concede that the BHL Defendants are all ***foreign*** entities. Moreover, they are ***not parties to any***

*of the agreements at issue*.   (*See* King Decl., Exs. 1-6).   Plaintiffs attempt to obfuscate by ambiguously identifying "Binance" as the contracting party for the FTX Trading share transfer, but the agreements confirm that **BCM**—and not any of the BHL Defendants—entered into the relevant transaction, and there are no non-conclusory allegations of any relationship between BCM and the BHL Defendants that would suggest that the BHL Defendants somehow also became a contracting party.   (*See id.*); *see also Berdeaux* v. *OneCoin Ltd.*, 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted."); *Sebastian Brown Prods.*, 2015 WL 1467255, at *3 (emphasis is on "the intentional nature of the **defendant's** conduct vis-a-vis the forum state").

Furthermore, although WRS is alleged to be a "Delaware corporation" (Compl. ¶ 15), Plaintiffs have not alleged that any BHL Defendant had any connection to the July 2021 WRS share transfer.  (*See id.* ¶ 82).  Rather, Plaintiffs allege that certain former Binance executives were the contracting parties for those agreements, and Plaintiffs have not offered **any** non-conclusory allegations that the executives entered those transactions on behalf of any BHL Defendant (let alone all of them).  (*See id.*).  Even if the BHL Defendants were parties to the WRS transfers (and they were not), this mere engagement with the forum for this limited transaction would still be insufficient to confer personal jurisdiction—particularly where, as here, Plaintiffs allege no facts indicating that the BHL Defendants "manifestly avail[ed] themselves of the privilege of conducting business" in the U.S.  *Cammarata* v. *Kelly Capital LLC*, 2016 WL 6023058, at *9 (D.N.J. Oct. 14, 2016); *see also Aldossari ex rel. Aldossari* v. *Ripp*, 49 F.4th 236, 259 (3d Cir. 2022) ("Merely entering into a contract with a resident of a state, absent any indication that the contract was executed or performed there, is insufficient . . . .").

*Second*, Plaintiffs fail to allege that the BHL Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities" within the forum. *Astropower Liquidating Tr* v. *Xantrex Tech., Inc. (In re Astropower Liquidating Tr.)*, 2006 WL 2850110, at *6 (Bankr. D. Del. Oct. 2, 2006). Plaintiffs have only alleged the November 2022 Tweets from the "@binance" account, which, as explained above, are insufficient.

*Lastly*, Plaintiffs do not sufficiently allege that any of the BHL Defendants had a reasonable expectation of being haled into American courts in connection with any of the alleged events. *See Dunn*, 2024 WL 667366, at *9 ("[D]ue process requires that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."); *Element Fin. Corp.* v. *ComQi, Inc.*, 52 F. Supp. 3d 739, 747 (E.D. Pa. 2014) (reasonable anticipation lacking where agreement not negotiated or performed in the forum).

Indeed, Plaintiffs come nowhere close to showing how the alleged Tweets of a ***foreign*** CEO and a ***foreign*** trading platform concerning another ***foreign*** trading platform can be said to have targeted the U.S. such that the BHL Defendants should have anticipated defending litigation here. *See Spuglio* v. *Cabaret Lounge*, 344 F. App'x 724, 726 (3d Cir. 2009) (personal jurisdiction based on "the mere posting of information or advertisements on an Internet website" found on a web search from within the forum does not "comport with fair play and substantial justice").

Plaintiffs also fail to explain how an agreement regarding the purchase of shares from ***foreign*** individuals and a ***foreign*** entity would render any of the BHL Defendants (which, as noted, were not a party to those agreements) on notice of a potential suit in the U.S.—particularly where the agreements contain Hong Kong choice-of-law and arbitration provisions. (*See, e.g.*, King Decl., Exs. 1-6 § 4.7); *see also Hughes Tech. Servs., LLC* v. *Glob. Consulting & Mech. Servs., LLC*, 2020 WL 7350994, at *10 (E.D. Pa. Dec. 15, 2020) (holding that foreign choice-of-law

provisions "indicate the parties' desire to avail themselves of the benefits of the law of forums other than [that forum]—[which] weigh[s] against a finding that [Defendant] ha[d] purposefully directed its conduct towards [that forum] in a manner sufficient to support specific jurisdiction"); *Sadek* v. *Horovitz*, 2013 WL 12149254, at *7 (D.N.J. Mar. 28, 2013) (holding that foreign choice-of-law provision meant that "jurisdiction in [the forum] would not comport with fair play and substantial justice."). Moreover, the Share Transfer Agreement between BCM and FTX which discusses Regulation S of the Securities Act of 1933 (a safe harbor that concerns offers and sales made outside the U.S.) confirms that the parties explicitly intended for the transactions to take place outside the jurisdictional reach of the United States. (*See* King Decl., Ex. 1 at Ex. B.)

## II.   PLAINTIFFS' AVOIDANCE CLAIMS REGARDING THE JULY 2021 TRANSFERS FAIL (COUNTS 1-5)

Counts 1-5 assert claims for constructive and intentional fraudulent transfers relating to the July 2021 transfers of cryptocurrency in exchange for shares of FTX Trading and WRS. (*See* Compl. ¶¶ 80-128).[7] The Complaint alleges that FTX was insolvent as of July 2021—16 months *before* its collapse—and, thus, the transfers were constructively fraudulent. Plaintiffs also try to allege an intentional fraudulent transfer by asserting that the July 2021 transfers "w[ere] made in furtherance of [SBF's] scheme" to commit fraud. (*Id.* ¶ 1). All of these claims fail for several reasons.

---

[7] Plaintiffs assert constructive and intentional fraudulent transfer claims under the federal Bankruptcy Code (11 U.S.C. § 548(a)(1)) and the state-level analog, the Uniform Fraudulent Transfer Act (Del. Code tit. 6). The analysis is essentially the same under both statutes. *See In re Pennysaver USA Publ'g, LLC*, 587 B.R. 445, 455 (Bankr. D. Del. 2018). Counts 1 and 2 assert the constructive fraudulent transfer claims, while Counts 3 and 4 assert the intentional fraudulent transfer claims. And although Count 5 asserts a claim under 11 U.S.C. § 550(a), that is merely the statutory mechanism that enables a trustee to recover property that it otherwise proves was fraudulently transferred. Thus, despite five separate claims, the allegations can be analyzed simply as "constructive" and "intentional" fraudulent transfer claims.

*First*, the Bankruptcy Code's safe harbor provision bars the constructive fraudulent transfer claims because Alameda is a "financial participant" that is alleged to have made the transfers at issue "in connection with a securities contract."   11 U.S.C. § 546(e).   *Second*, the constructive fraudulent transfer claims fail principally because the BHL Defendants are not adequately alleged to be the transferees, FTX is not plausibly alleged to have been insolvent at the time of the July 2021 transfers, and the Debtors received reasonably equivalent value in the form of the FTX and WRS shares it received.   *Finally*, the intentional fraudulent transfer claims fail for the additional reason that the Complaint does not plausibly allege fraudulent intent.[8]

## A.  Plaintiffs' Constructive Fraudulent Transfer Claims Are Barred by the Safe Harbor Provision of the Bankruptcy Code

Section 546(e) of the Bankruptcy Code (the "Safe Harbor") prohibits plaintiffs from avoiding any transfer (i) by a "financial participant" (ii) made "in connection with a securities contract."   11 U.S.C. § 546(e).   The Safe Harbor applies to claims brought under Sections 548(a)(1)(B) and 544, *see id.*, and bars Plaintiffs' constructive fraudulent transfer claims here.

*Alameda is a "financial participant."*   The Complaint alleges that, "[w]hile not a party to any of the agreements, Alameda (specifically, Alameda Ltd.) was the direct transferor of all of the consideration" in connection with the July 2021 transfers.  (Compl. ¶ 43; *see also id.* ¶ 4 (alleging that "FTX's Alameda Research division directly funded" the July 2021 transfers)).

Alameda qualifies as a "financial participant" under the Bankruptcy Code for purposes of the Safe Harbor because it is an entity that "ha[d] gross mark-to-market positions of not less than $100,000,000 (aggregated across counterparties) in one or more . . . agreements or transactions

---

[8] The BHL Defendants adopt and incorporate by reference the arguments made in Section I of Defendant Digital Anchor Holdings Limited's Brief in Support of Motion to Compel Arbitration, Dismiss, or Abstain.

with . . . any other entity (other than an affiliate) . . . on any day during the 15-month period preceding the date of the filing of the petition." 11 U.S.C. § 101(22A)(A). Here, as of the November 2022 petition date, Alameda held more than six times the threshold amount—specifically, $631 million worth of securities investments "[c]omprised of 100+ equity and fund investments, as well as equity and fixed income securities." Statements & Schedules Summary at 17, *In re FTX Trading Ltd.*, No. 22 Bk. 11068 (Bankr. D. Del. Mar. 17, 2023), D.I. 1101-1.[9] Accordingly, Alameda qualifies as a "financial participant" for purposes of the Safe Harbor.[10]

*The transfers were made "in connection with a securities contract."* The Share Transfer Agreements are subject to the Safe Harbor because they are "securities contracts"—a term the Bankruptcy Code defines with "extraordinary breadth." *See In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 417 (2d Cir. 2014). Under the Bankruptcy Code, a "securities contract" is defined as any "contract for the purchase, sale, or loan of a security, a certificate of deposit, a mortgage loan, any interest in a mortgage loan, a group or index of securities, certificates of deposit, or mortgage loans or interests therein," or "any other agreement or transaction that is similar to an agreement or transaction referred to in this subparagraph." 11 U.S.C. § 741. "The

---

[9] The Court may take judicial notice of an entity's status as a qualifying entity under the Bankruptcy Code. *See Golden* v. *Community Health Sys., Inc. (In re Quorum Health Corp.)*, 2023 WL 2552399, at *7 (Bankr. D. Del. Mar. 16, 2023) (taking judicial notice of the contents of SEC filings). The Court may also rely on Plaintiffs-Debtors' filings in the underlying bankruptcy case. *See Charys Liquidating Trust* v. *Hades Advisors, LLC (In re Charys Holding Co., Inc.)*, 2010 WL 2788152, at *5 n.3 (Bankr. D. Del. July 14, 2010) ("The Court can take judicial notice of public records to resolve a Rule 12(b)(6) motion . . . [including] [a] debtor's schedules and statements."); *see also Kosachuk* v. *Selective Advisors Grp., LLC (In re: NLG, LLC)*, 2023 WL 2055344, at *1 (Bankr. D. Del. Feb. 16, 2023) (taking judicial notice of existence of motions, decisions, and public filings in underlying bankruptcy case).

[10] That Alameda was or is a Debtor in the underlying bankruptcy proceedings makes no difference to the analysis. *See In re Samson Resources Corp.*, 625 B.R. 291, 301 (Bankr. D. Del. 2020) (holding that "definition of financial participant does not exclude debtors").

14

term security, in turn, is also broadly defined in the Bankruptcy Code to include a note, stock, ***transferable share***, or other claim or interest commonly known as security." *Golden*, 2023 WL 2552399, at *5 (Bankr. D. Del. Mar. 16, 2023) (quoting 11 U.S.C. § 101 (49)(A)).

Here, Plaintiffs allege—and the Share Transfer Agreements confirm (*see, e.g.*, King Decl., Exs. 1-6)—that the July 2021 transfers of cryptocurrency were made by Alameda in connection with the purchase of FTX and WRS shares. (*See* Compl. ¶¶ 38, 82). Indeed, Plaintiffs allege that the July 2021 transfers involved 96,546,750 Series A Preferred Shares in FTX (*see id.* ¶ 41 n.3), and 200,000 shares in WRS (*see id.* ¶ 40), which Plaintiffs allege made up roughly twenty percent of the shares in each entity (*see id.* ¶¶ 34, 37). These are quintessential securities contracts. *See Golden*, 2023 WL 2552399, at *5-6 (agreement involving transfer of "capital stock" held to be "securities contract").

Accordingly, the transaction Plaintiffs seek to avoid—namely, the transfer of "at least $1.76 billion worth of cryptocurrency" (Compl. ¶¶ 1, 82)—was made "in connection with" a securities contract. *See* 11 U.S.C. § 546(e). This is precisely what the Complaint itself alleges: that Plaintiffs seek to avoid the transfers of digital assets made by the Debtors "***in connection with*** the 2021 Share Repurchase." (Compl. ¶ 82). Thus, the "low bar for the required relationship between the securities contract and the transfer sought to be avoided" is easily met here. *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d at 422 (explaining that a transfer is made "in connection with a securities contract if it is related to or associated with the securities contract").

The Safe Harbor bars Plaintiffs' constructive fraudulent transfer claims. 11 U.S.C. § 546(e); *Golden*, 2023 WL 2552399, at *5.[11]

---

[11] Although it alleges that Alameda is the "direct transferor" (Compl. ¶¶ 43-46, 48), the Complaint inconsistently alleges that that Evergreen North Ltd. effected certain of the transfers at issue (*see id.* ¶¶ 41, 43). In the event the Court credits this allegation, the claims should be dismissed because

**B. Plaintiffs' Constructive Fraudulent Transfer Claims Fail for Additional Reasons**

To plead a constructive fraudulent transfer claim, Plaintiffs must plausibly allege facts to show (among other things) that (i) the debtor either was insolvent on the date of the transfers or became insolvent as a result of the transfers; and (ii) the debtor received less than reasonably equivalent value in exchange for the transfers. *In re Cred Inc.*, 650 B.R. 803, 835 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024).[12]   In addition, under Section 550 of the Bankruptcy Code, a debtor may only recover the transferred property from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550(a).  Plaintiffs' constructive fraudulent transfer claims fail for three reasons:  (i) the BHL Defendants are not sufficiently alleged to be transferees; (ii) the Complaint does not plausibly allege that the Debtors were insolvent in July 2021; and (iii) the Debtors received reasonably equivalent value.

***The BHL Defendants are not sufficiently alleged to be transferees.***  The Complaint fails to allege that the BHL Defendants were the initial transferees or immediate or mediate transferees thereafter.  11 U.S.C. § 550(a); *see Burch* v. *Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 656 (Bankr. D. Del. 2012) (granting motion to dismiss fraudulent conveyance claims where plaintiff had not established that defendants were applicable transferees).  Here, the Complaint alleges that the July 2021 transfers were governed by Share Transfer Agreements

---

Evergreen North Ltd. is not a debtor in this action.  *See* Chapter 11 Petition, *In re West Realm Shires Inc.*, No. 22 Bk. 11183, (Bankr. D. Del. Nov. 14, 2022), D.I. 1 (list of debtors, not including Evergreen North Ltd.); *see also In re NewStarcom Holdings Inc.*, 816 F. App'x 675, 678-79 (3d Cir. 2020) (stating that "federal bankruptcy law does not impose liability for transfers of *non-debtor* property" (emphasis in original); affirming dismissal of fraudulent transfer claims involving a non-debtor's alleged transfer).

[12] As noted, *supra* n.8, the analysis is substantially the same for the federal and state constructive fraudulent transfer claims asserted in Counts 1 and 2.

16

between various FTX affiliates and executives, on the one hand, and BCM and three individual BHL Defendants, on the other.  (*See* Compl. ¶¶ 38, 41-42, 82; *see also* King Decl., Exs. 1-6).  ***None*** of the BHL Defendants was a party to ***any*** of the agreements.  (*Id.*)

Plaintiffs try to plead around this fatal defect with the boilerplate and conclusory assertions that the July 2021 transfers were made "to or for the benefit of the [BHL] Defendants" (Compl. ¶¶ 82, 94, 107, 117), and, upon "information and belief," that "each Defendant is an initial transferee of one or more of the [July 2021 transfers], an entity for whose benefit one or more of the [July 2021 transfers] was made, or an immediate or mediate transferee of the initial transferee." (*Id.* ¶ 127).  But such conclusory allegations are (in addition to being impermissible group pleading) insufficient to state a claim.  *See Balsiano* v. *Borell (In re Furniture Factory Ultimate Holding, L.P.)*, 2023 WL 5662747, at *10 (Bankr. D. Del. Aug. 31, 2023) ("conclusory allegations" that defendants "were involved with or participated in [a] certain transaction" were "not enough to survive a motion to dismiss"); *see also In re Stillwater Asset Backed Offshore Fund Ltd.*, 559 B.R. 563, 588 (Bankr. S.D.N.Y. 2016) (allegations "that the Funds generally commingled assets and their products, offspring, and rents in ways that make it impossible to untangle them" were "conclusory").

**The Complaint does not plausibly allege that the Debtors were insolvent in July 2021**.  Plaintiffs fail to plausibly allege that the Debtors were either insolvent at the time of the July 2021 transfers or were rendered insolvent as a result of those transfers.  While ordinarily "insolvency is a factual inquiry," a plaintiff "is still required to plead ***facts*** from which a court can infer that the debtor was insolvent on the date of each transfer."  *Jalbert* v. *Souza (In re F-Squared Inv. Mgmt., LLC)*, 2019 WL 4261168, at *11 (Bankr. D. Del. Sept. 6, 2019).  But here, Plaintiffs have alleged no such facts, instead alluding to aspects of FTX's fraud and asserting in conclusory fashion that

17

the Debtors were "balance-sheet insolvent" as of July 2021.  (Compl. ¶¶ 1, 40, 42, 45).  Accepting

such a sweeping conclusion "would effectively permit a plaintiff to evade the pleading standard."

*Jalbert*, 2019 WL 4261168, at *11; *cf. Weinshanker*, 602 B.R. 878, 903 (Bankr. D. Del. 2019)

(dismissing claims in adversary proceeding where plaintiff "continue[d] to plead overly broad

statements of insolvency"); *Guiliano* v. *Ferdinand (In re Liquid Holdings Grp., Inc.)*, 2018 WL

2759301, at *19 (Bankr. D. Del. June 6, 2018) (insolvency not pled where complaint failed to

"include any financial data surrounding the [t]ransfers that the Court can use to infer [debtor's]

insolvency" at the time of transfer).  This is particularly true here, where Debtors continued as a

going concern for *16 more months*.

Indeed, the Complaint pleads the opposite of insolvency.  For example, Plaintiffs allege

that FTX was (i) a "rival" and "clear threat to Binance's market dominance" at the time of the July

2021 transfers (*see* Compl. ¶ 7) and (ii) was "able to raise new equity capital, at even higher

valuations" *after* the July 2021 transfers (*see id.* ¶ 50).  The Complaint also alleges that FTX's

proprietary exchange token, FTT, "was designed in such a way that it derived its total value from

FTX's enterprise value" (*id.* ¶ 33)—and FTT substantially increased in value following the July

2021 transfers.  *See* Report of Robert J. Cleary at 88, Examiner, *In re FTX Trading Ltd.*, No. 22

Bk. 11068 (Bankr. D. Del. May 23, 2024), D.I. 15545 (reporting that FTT traded at roughly $85

in September 2021, compared to a trading price of under $30 at the time of the July 2021 transfers).

Laying any doubt to rest, three publicly disclosed valuations of FTX in connection with fundraising

rounds show that FTX was not insolvent at the time of the July 2021 transfers nor rendered

insolvent as a result.  Simply put, FTX's market value increased substantially in the months after

the July 2021 transfers:  (i) July 20, 2021 valuation of FTX at $18 billion; (ii) October 21, 2021

valuation of FTX at $25 billion; (iii) January 31, 2022 valuation of FTX at $32 billion.  (*See* Strong Decl., Exs. A-E).[13]

To suggest insolvency, Plaintiffs point to a snippet from Caroline Ellison's testimony that Alameda "[did not] really have the money for this [purchase], we'll have to borrow from FTX to do it."  (*See* Compl. ¶ 5).  But her testimony that around the "summer or fall of 2021" "FTX's rough equity value" was "in the ballpark of $20 billion" demonstrates just the opposite.  *See, e.g.*, Caroline Ellison's Testimony, Trial Tr. 698:2-4, 701:22-702:8, *United States* v. *Bankman-Fried*, No. 22 Cr. 673 (S.D.N.Y. Oct. 10, 2023), D.I 358.[14]  Plaintiffs' cherry-picked excerpt, which is inconsistent with other testimony from the same witness, is insufficient to plausibly allege insolvency.

Because Plaintiffs have not sufficiently pleaded insolvency, the fraudulent transfer claims fail.  *See Jalbert*, 2019 WL 4261168, at *16 (dismissing constructive fraudulent transfer claim where the court "c[ould] not reasonably infer insolvency").

---

[13] On a motion to dismiss, courts may take judicial notice of public records, which include SEC filings and "newspaper articles."  *See Schmidt* v. *Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (SEC filings are "a matter of public record of which the court can take judicial notice" at the motion to dismiss phase); *see also Benak ex rel. Alliance Premier Growth Fund* v. *Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (upholding decision to take judicial notice of newspaper articles at motion to dismiss phase); Fed. R. Evid. 201(b)(1) (permitting court to judicially notice fact that is "not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction").

[14] The Third Circuit has ruled that courts may, on a motion to dismiss, consider "[a] document *integral to or explicitly relied* upon in the complaint" if a plaintiff's claims "are based on th[at] document."  *See, e.g., Pinkney* v. *Meadville, Pennsylvania*, 2022 WL 1616972, at *2 (3d Cir. May 23, 2022).  Here, Plaintiffs rely on Caroline Ellison's testimony throughout the Complaint, (*see* Compl. ¶¶ 5, 45, 47, 57, 71).  The Court may consider Ellison's full testimony in determining this motion to dismiss.  *See Koch* v. *Christie's Int'l PLC*, 785 F. Supp. 2d 105, 111 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012) (deciding motion to dismiss based on, in part, "deposition testimony and court documents from a related action").

***The Complaint fails to allege that the Debtors did not receive reasonably equivalent value.*** Plaintiffs fail to allege that they received less than reasonably equivalent value for the July 2021 transfers. A party "receives reasonably equivalent value for what it gives up if it gets roughly the value it gave." *In re Cred Inc.*, 650 B.R. at 836. In determining whether value is reasonably equivalent, a court must give "significant deference to marketplace values" because "[w]hen sophisticated parties make reasoned judgments about the value of assets that are supported by then prevailing marketplace values and by the reasonable perceptions about growth, risks, and the market at the time, it is not the place of fraudulent transfer law to reevaluate or question those transactions with the benefit of hindsight." *Peltz* v. *Hatten*, 279 B.R. 710, 738 (D. Del. 2002), *aff'd sub nom. In re USN Commc'ns, Inc.*, 60 F. App'x 401 (3d Cir. 2003).

There is no allegation that anybody (aside from certain FTX insiders) knew FTX was a massive fraud in July 2021. To the contrary, FTX was riding high, and BCM and the individual Defendants sold their shares of FTX Trading and WRS back to the Debtors for more than $2 billion of cryptocurrency ($1,202,763,000 worth of BUSD, $554,868,500 worth of BNB, and $554,868,500 worth of FTT). (Compl. ¶¶ 40-41). Plaintiffs do not seriously dispute that the shares were worth this amount at the time in the marketplace. Indeed, as discussed in Section II.B, *supra*, FTX had a robust marketplace value in and around July 2021. Instead, Plaintiffs allege that, regardless of marketplace valuations of FTX at or near the time of the July 2021 transfers, the FTX Group in reality (and unbeknownst to BCM or the individuals) had "no value." (Compl. ¶ 42). But these conclusory assertions, based on hindsight, cannot overcome the marketplace value. *See Peltz*, 279 B.R. at 738.

### C. Plaintiffs' Intentional Fraudulent Transfer Claims Fail

To allege an actual fraudulent transfer claim, a plaintiff must show that transfers were made by a debtor with the "actual intent to hinder, delay, or defraud" creditors. *See* 11 U.S.C.

§ 548(a)(1)(A).  A plaintiff may establish intent in an actual fraudulent transfer case through direct evidence or by alleging badges of fraud.  *See Alameda Rsch. Ltd.* v. *Giles (In re FTX Trading Ltd.)*, 2024 WL 4562675, at *7 (Bankr. D. Del. Oct. 23, 2024).  The "badges of fraud" include:  "(1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtor[]; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction."  *Id.*  "Pleading a single badge of fraud is insufficient to state viable claim for relief; rather, a confluence of several in one transaction is generally required."  *Alameda Rsch.*, 2024 WL 4562675, at *7.  "Actual fraudulent transfer claims . . . must meet the elevated pleading standards of Federal Rule of Civil Procedure 9(b)."  *In re Cred Inc.*, 650 B.R. at 834.

As an initial matter, the actual fraudulent transfer claims fail here because, as noted, the BHL Defendants are not sufficiently alleged as transferees.  *See* Section II.B, *supra*; *see also Burtch*, 466 B.R. at 654 (dismissing fraudulent transfer claim where "defendants were not initial transferees or entities for whose benefit the transfer was made").  The actual fraudulent transfer claims additionally fail because the Complaint does not plausibly allege that the transfers were made with the requisite intent.

*First*, Plaintiffs fail to allege any direct evidence of actual fraud.  The conclusory allegations that the transfers were "a critical component of [SBF]'s pervasive fraud involving the unauthorized use of FTX customer deposits[,]" (*see* Compl. ¶ 47), as well as his "deceptive scheme to hide the vulnerability of the exchange" by misappropriating customer funds (*see id.* ¶ 48) are insufficient because they are flatly inconsistent with other portions of the Complaint.  *See Bocker* v. *Hartzell Engine Techs., LLC*, 2023 WL 415792, at *4 (D. Del. Jan. 26, 2023) ("Where a

plaintiff's own pleading is internally inconsistent and contradictory, the court is not obligated to reconcile or accept such contradictory allegations."). Indeed, the Complaint also alleges that the transfers were not SBF's idea at all—but rather that "***Zhao*** . . . decided to exit his position in FTX" due to "personal grievances he had against Bankman-Fried." (Compl. ¶ 4). This alternative explanation in the Complaint itself dooms Plaintiffs' claim. *See Alameda Rsch.*, 2024 WL 4562675, at *8-9 (rejecting Plaintiffs' attempts to tie Embed acquisition to SBF's general fraudulent scheme where Plaintiffs failed to "explain[] how the Embed acquisition furthered the fraudulent scheme" and where allegations "suggest[ed] entirely different purposes for the acquisition," such as desire on part of various FTX executives to "obscure the[ir] malfeasance").

*Second*, the Complaint fails to adequately allege any badges of fraud. Plaintiffs suggest that the only alleged badges of fraud are FTX's alleged insolvency (*see, e.g.*, Compl. ¶¶ 44-45, 49, 85-86, 98-100) and the alleged lack of fair value for the transfer (*see, e.g.*, *id.* ¶¶ 39, 84, 97). But as discussed above (*see* Section II.B, *supra*), Plaintiffs fail to sufficiently allege either. And even if Plaintiffs had alleged a single badge of fraud (which they have not), dismissal would be warranted. *See, e.g.*, *Alameda Rsch.*, 2024 WL 4562675, at *7 (explaining that Fed. R. Civ. P. 9(b) mandates "heightened pleading" and the presence of a "single badge of fraud is insufficient to state viable claim for relief"); *see also In re MarketXT Holdings Corp.*, 361 B.R. 369, 396-97 (Bankr. S.D.N.Y. 2007) (dismissing claim where only alleged badge of fraud was inadequate consideration). For these reasons, Counts 1-5 of the Complaint should be dismissed.

## III.   PLAINTIFFS' STATE LAW CLAIMS CONCERNING THE NOVEMBER 2022 TWEETS FAIL AS WELL (COUNTS 6-9)

As discussed above, Plaintiffs seek avoidance of the July 2021 transfers based on the (insufficiently alleged) lynchpin that FTX was insolvent and had no value as of that time. But then, out of the other side of their mouths, Plaintiffs claim that a handful of Tweets from November

2022—more than a year later—somehow destroyed FTX's value.  Plaintiffs cannot have it both ways; their internally inconsistent allegations cannot state a claim.  *Bocker*, 2023 WL 415792, at *4.

In any event, Plaintiffs' claims based on the November 2022 Tweets fail for several additional reasons.  *First*, Plaintiffs' claims are barred because the Court lacks jurisdiction to hear claims that are not sufficiently "related to" the core Chapter 11 claims.  *Second*, the statements at issue are not plausibly alleged to be false or misleading.  *Third*, the claims are barred because Plaintiffs' own massive (and criminal) fraud—not the Tweets—led to the collapse of FTX.  *Fourth*, the claims impermissibly rely on group pleading.  *Finally*, Plaintiffs have not sufficiently alleged the necessary elements of their claims.[15]

### A. This Court Lacks Jurisdiction to Hear Plaintiffs' State Law Claims Concerning the November 2022 Tweets

This Court lacks jurisdiction over claims concerning the November 2022 Tweets because they do not "aris[e] under" Title 11 of the Bankruptcy Code, nor are they "related to" a Title 11 proceeding.  *See, e.g.*, *In re Resorts Int'l, Inc.*, 372 F.3d 154, 162 (3d Cir. 2004).

*First*, these state law claims—for injurious falsehood, fraud, intentional misrepresentation, and unjust enrichment—do not "aris[e] under" Title 11 of the Bankruptcy Code because they "would exist even outside the bankruptcy case."  *In re BWI Liquidating Corp.*, 437 B.R. 160, 164 (Bankr. D. Del. 2010).

---

[15] The BHL Defendants adopt and incorporate by reference the additional arguments set forth in Section III of Defendant Digital Anchor Holdings Limited's Brief in Support of Motion to Compel Arbitration, Dismiss, or Abstain, namely that (i) there is no bankruptcy or other basis for this Court to exercise jurisdiction over the state law claims; and (ii) even if there were, under the abstention doctrine, this Court should abstain from hearing the state law claims because they are ancillary to the bankruptcy case.

*Second*, the claims do not "relate to" the Title 11 proceeding.  Where, as here, a reorganization plan has been confirmed,[16] a bankruptcy court's "related to" jurisdiction is "limited to matters in which there is a close nexus to the bankruptcy plan or a proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement. . . ."  *In re Insilco Techs., Inc.*, 330 B.R. 512, 522 (Bankr. D. Del. 2005) (ellipsis in original), *aff'd*, 394 B.R. 747 (D. Del. 2008).  Plaintiffs' state law claims concerning the November 2022 Tweets bear no such nexus because their resolution "does not require interpretation of the Plan and will not affect the bankruptcy estate or the Debtor."  *Id.* at 524.  While these claims may have the "potential to increase the assets of the [FTX] Litigation Trust and its beneficiaries," that is not enough to establish post-confirmation "related to" jurisdiction.  *Id.* at 524-26 (dismissing prepetition claims for, *inter alia*, fraud and unjust enrichment brought by liquidating trust after confirmation of plan for lack of "related to" jurisdiction and noting that "[t]he potential to increase the assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus sufficient to confer 'related to' bankruptcy court jurisdiction post-confirmation").

### B. The Tweets Are Not False or Misleading

The November 2022 Tweets were posted in the days following a bombshell report by *CoinDesk* that blew the lid off of FTX's façade, and the Complaint contains no facts to suggest that the Tweets were false.  (*See* Compl. ¶¶ 52-79, 129-144).  That requires dismissal.[17]

---

[16] *See* Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization, *In Re FTX Trading Ltd.*, No. 22 Bk. 11068 (Bankr. D. Del. Oct. 8, 2024), D.I. 26404 (the "Confirmation Order")).

[17] As noted, Plaintiffs lump together the BHL Defendants and BCM as "Binance," (*see* Compl. ¶ 24), and assert claims against "Binance" in Counts 6-9 based primarily on statements purportedly made by Mr. Zhao from his personal Twitter account.  Although the Complaint alleges no basis to assert these claims against the BHL Defendants, we nevertheless address them here, generally

***The November 6 Tweets regarding the liquidation of FTT.***  Plaintiffs first allege that Mr. Zhao's statements in the November 6 Tweets that Binance's "decision to liquidate any remaining FTT" on its books "[d]ue to recent revelations" were false and misleading because Mr. Zhao was allegedly trying to "destroy" FTX.  (Compl. ¶¶ 56-57).  Of course, Plaintiffs' only support for this theory is pure conjecture—much of it sourced from a convicted fraudster's hindsight speculation. (*See id.* ¶ 57 (citing testimony from a former FTX insider currently serving a two-year prison sentence)).  Plaintiffs fail to provide sufficient "[f]actual allegations" to raise this conjecture above "the speculative level."  *Aoki* v. *Benihana, Inc.*, 839 F. Supp. 2d 759, 763 (D. Del. 2012).  Indeed, allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual" are properly disregarded on a motion to dismiss.  *Theseus Strategy Group LLC* v. *Barsa (In re: Old Bpsush, Inc.)*, 2021 WL 4453595, at *9 (D. Del. Sept. 29, 2021). In reality, the Complaint itself offers a more plausible explanation:  Binance's decision to liquidate its remaining FTT was, in fact, "due to recent revelations"—in particular, the November 2, 2022 *CoinDesk* article that Plaintiffs acknowledge raised "serious concerns" about FTX.  (Compl. ¶ 55). As Plaintiffs admit, "Binance [was] aware of negative news about FTX and Alameda" at the time Mr. Zhao allegedly authored the November 6 Tweets.  (*Id.* ¶ 57 n.4).  On this motion, the Court "may infer obvious alternative explanations" from the Complaint, "which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *In re Cred Inc.*, 650 B.R. at 813.  Plaintiffs' speculation stands in stark contrast to such an "obvious alternative explanation." *Id.*

Plaintiffs next allege that Mr. Zhao's statement that Binance would "try to [liquidate its remaining FTT] in a way that minimizes market impact" was false because Binance's liquidation

---

utilizing Plaintiffs' (improper) reference to "Binance" as alleged in the Complaint.

of FTT was not done in an impact-minimizing way.  (Compl. ¶¶ 56, 58).  However, Plaintiffs'

allegations ignore the plain text of Mr. Zhao's Tweet, which concerns Binance's anticipated future

performance.  (*See* Compl. ¶ 56 ("***We will try*** to [liquidate Binance's remaining FTT] in a way that

minimizes market impact.")).  To show that "a promise of future conduct" is false, Plaintiffs must

plead "specific facts that lead to a reasonable inference that the promisor had no intention of

performing at the time the promise was made."  *See Knight Broadband LLC* v. *Knight*, 2022 WL

1788855, at *11 (Del. Super. Ct. June 2, 2022) (dismissing fraud claims premised on statements

of future performance where Plaintiffs did not "sufficiently plead contemporaneous facts

supporting an inference" that Defendants knew statements at issue were false).  The Complaint

contains no such facts.

Plaintiffs allege that Binance transferred a "massive amount" of FTT on November 5, 2022.

(Compl. ¶ 58).  But that transfer, which pre-dated Mr. Zhao's Tweet, is entirely irrelevant to Mr.

Zhao's statement concerning Binance's anticipated future plans for its "***remaining*** FTT."  Indeed,

Plaintiffs' admission as to the November 5 transfer undercuts their own allegation that the

November 6 Tweets were somehow nefarious because "if [Zhou] really wanted to sell his FTT, he

wouldn't preannounce to the market that he was going to sell it."  (Compl. ¶ 57).  Plaintiffs ask the

Court to infer that Binance's decision to liquidate was motivated by some unspecified malice, but

also to ignore that Binance itself was subject to significant uncertainty that the unraveling of FTX's

massive fraud was creating in the marketplace.  Binance was plainly motivated to preserve its own

business and make clear the measures it was taking to do so.  Viewed in the context of this "obvious

alternative explanation," the inference Plaintiffs ask the Court to credit is starkly implausible.  *In

re Cred Inc.*, 650 B.R. at 813.

***The November 8 & 9 Tweets regarding the LOI.***  Plaintiffs allege that Binance's execution of the LOI and Mr. Zhao's November 8 Tweets were false "based on the[] circumstances" and "upon information and belief"—*i.e.*, without a shred of factual support—that "Zhao and Binance never intended to consummate the contemplated acquisition." (Compl. ¶ 73). However, Plaintiffs fail to plead any facts that show Mr. Zhao or Binance lacked intent to consummate the acquisition at the time these statements were made. It simply makes no sense that Binance would not want to acquire a competitor at a fire-sale price, pending the outcome of due diligence findings. Indeed, as the Complaint makes clear, the LOI provided that Binance would "acquire FTX Trading and inject capital sufficient to address FTX's liquidity issues" "***subject to due diligence to be completed within 30 days***." (*Id.* ¶ 67). The November 8 Tweets similarly state that Binance signed a "***non-binding*** LOI" which it had "the ***discretion to pull out*** from . . . at any time." (*Id.* ¶ 68). Plaintiffs' allegations regarding the purported falsity of Binance and Mr. Zhao's intent as to the contemplated acquisition are therefore insufficient, and their claims should be dismissed. *See Knight Broadband LLC*, 2022 WL 1788855, at *11 (holding that plaintiff's allegations of fraudulent misrepresentation regarding potential acquisition plans were insufficient "without any facts that the statements were knowingly false when made or were made in bad faith"); *see also Li* v. *Eqonex Ltd.*, 2024 WL 4241951, at *3 n.3, *14 (S.D.N.Y. Sept. 18, 2024) (dismissing claims and finding plaintiffs "provided no factual basis to support the allegation that [d]efendants never intended to effectuate a merger," despite defendants' statements that they would "continue to engage in ***non-binding*** discussions to explore potential merger opportunities").

Finally, Plaintiffs allege that Binance's statement that it would not pursue the acquisition of FTX "[a]s a result of corporate due diligence as well as the latest news reports regarding mishandled customer funds and alleged US agency investigations" was false because SBF

allegedly told Mr. Zhao on a November 8, 2022 phone call that "Alameda had been borrowing large amounts from FTX customer deposits[.]" (Compl. ¶¶ 65, 70, 72). Even accepting as true that SBF told Mr. Zhao about Alameda's borrowing of funds, that does not plausibly cast doubt on the stated reasons for pulling out of the deal, namely corporate due diligence, U.S. agency investigations, and news reports. (*Id.* ¶ 70). If anything, the information from SBF informed Binance's broader due diligence process and only underscores the truth of Binance's statements. Accordingly, Plaintiffs fail to plead, as required, that any of the statements were false or misleading.

### C.  The Doctrine of *In Pari Delicto* Bars Plaintiffs' State Law Claims

The doctrine of *in pari delicto* prevents a plaintiff from recovery if it bears "substantially equal" fault for the harm. *In re Pitt Penn Holding Co.*, 484 B.R. 25, 39 (Bankr. D. Del. 2012). Because bankruptcy trustees (and the Plaintiffs here) stand in the shoes of the debtor, they are subject to the same defenses that could have been asserted against the debtor, including *in pari delicto*. *Off. Comm. Of Unsecured Creditors* v. *R.F. Lafferty & Co.*, 267 F.3d 340, 356-58 (3d Cir. 2001). A court may apply *in pari delicto* on a motion to dismiss. *In re Pitt*, 484 B.R. at 38; *see also Stewart* v. *Wilmington Trust SP Services, Inc.*, 112 A.3d 271, 302 (Del. Ch. 2015).

The claims asserted in Counts 6-9 pertain to the collapse of FTX and its cause. Plaintiffs' claim that the November 2022 Tweets caused the collapse of FTX does not pass the laugh test. Indeed, the Complaint's own allegations confirm that Plaintiffs are equally at fault (and, in reality, are wholly at fault) for the alleged injury for which they seek relief. (*See, e.g.*, Compl. ¶ 1 ("FTX collapsed under the weight of the ***many material errors committed by its founder***, Sam Bankman-Fried . . . . Bankman-Fried's ***pervasive malfeasance*** began long before it was discovered."); *id.* ¶ 6 ("Bankman-Fried ***attempted to cover up in a pervasive fraud*** that infected virtually all aspects

of FTX's business.")).   As Plaintiffs themselves acknowledge, the "*major drivers* of [their] insolvency" were their agents' own "*ongoing fraud*" and "*conceal[ment]*" and "*misrepesentat[ation]*" of "*material facts about their business*."   (*See* Compl. ¶ 45); *see also Stewart*, 112 A.3d at 303 ("[A]s a general rule, when [a corporation's agents] engage in wrongdoing, the corporation itself is a wrongdoer.").

Taking Plaintiffs' allegations as true, it is clear that Plaintiffs' own fraud and mismanagement caused their losses.   Indeed, the first allegedly false Tweet identified in the Complaint specifically acknowledged the *"recent revelations"* that had come to light regarding FTX's fraud and mismanagement.   (Compl. ¶ 56).   In other words, the Tweets were only sent *in response to the massive fraud and mismanagement* that was quickly being revealed to the public in early November 2022.   Plaintiffs ask the Court to ignore that FTX was already set to freefall before the first Tweet about which they complain was ever published.

Because Plaintiffs are (at least) equally at fault for the allegedly lost value caused by the run on FTX, Counts 6-9 are barred by the doctrine of *in pari delicto*.   *See In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 63-65 (2d Cir. 2013) (affirming district court decision barring common law claims against third-party financial institutions based on *in pari delicto*).

### D.  Plaintiffs' State Law Claims Rely on Impermissible Group Pleading

The Complaint contains zero specific allegations as to any of the BHL Defendants, a pleading defect that is fatal to Plaintiffs' state law claims.   *See Bench Walk Lighting LLC* v. *LG Innotek Co.*, 530 F. Supp. 3d 468, 488 (D. Del. 2021) (requiring pleadings to "set out a plausible claim [ ] as to each defendant" by "plead[ing] enough facts to render it plausible that each defendant individually has performed" the alleged wrongdoing); *see also Lawal* v. *McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (finding plaintiff's repeated and collective use of word "defendants" created ambiguity as to each defendant's role in conduct giving rise to complaint

such that the complaint warranted dismissal).    Instead, Plaintiffs lump the BHL Defendants together with BCM and refer to them all collectively as "Binance."   (*See e.g.*, Compl. ¶¶ 131, 135, 139, 143).

It is well-settled that a plaintiff's pleading burden is unsatisfied where, as here, the claims "lump[] all of the [defendants] together . . . without supplying specific facts as to each defendant's wrongdoing."   *In re Conex Holdings, LLC*, 514 B.R. 405, 414 (Bankr. D. Del. 2014).   Indeed, the Complaint fails to plead, even in vague terms, what role any of the BHL Defendants played as to the alleged false statements.   This failure to "delineate precisely whom it is referring when alleging wrongful conduct" renders the Complaint "impermissibly vague."   *Nelson* v. *Claussen*, 2024 WL 4249730, at *6 (D.N.J. Sept. 20, 2024).   Accordingly, the state law claims against the BHL Defendants must be dismissed.

This pleading failure is even more egregious because the claims at issue sound in fraud and, thus, must be pleaded with particularity.   *See, e.g.*, *MDNet, Inc.* v. *Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) ("When multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to *each defendant*.").

### E.  Plaintiffs Fail to State a Claim for Injurious Falsehood (Count 6)

To adequately plead injurious falsehood under Delaware law, a plaintiff must allege that (i) the defendant made a false statement about the plaintiff to a third party; (ii) the defendant intended for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so; and (iii) the defendant knew that the statement was false or acts in reckless disregard of its truth or falsity (actual malice).   *In re Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 3960334, at *4  (Del. Ch. July 13, 2020).   Additionally, the plaintiff must show there was "a direct, foreseeable

connection between the false statement, a third person's reliance and harm to the plaintiff's interests" resulting in "special damage[s]." *Id.* at *6. This claim fails because, as discussed in Section III.B, *supra*, Plaintiffs have not adequately alleged that the statements made were false; additionally, Plaintiffs fail to demonstrate "actual malice," or that these statements—as opposed to other factors—caused their losses.

> ***Plaintiffs fail to demonstrate actual malice***. Plaintiffs fail to plead that Defendants acted "know[ing] that the[ir] statement [was] false of their statement or with "reckless disregard of its truth or falsity," *i.e.*, actual malice. *In re Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 3960334, at *4. Here, Plaintiffs fail to provide an iota of support for their speculation that the BHL Defendants sought to destroy FTX in order to gain market share. (*See, e.g.*, Compl. ¶¶ 58-59, 62, 73, 131-132); *see also Knight Broadband LLC*, 2022 WL 1788855, at *13 (dismissing claim where plaintiff merely alleged that "[defendant] knew [certain] representations to be false at the time they were made, because [defendant] never intended to carry out any targeted acquisitions"). Once stripped of conclusory allegations, it is irrelevant that Binance's market share grew after FTX's collapse, given the only factual support that Plaintiffs offer for their theory is that Binance and FTX were "competitors." (*See, e.g.*, Compl. ¶¶ 3, 7, 57, 61, 79). These allegations do not suggest actual malice in connection with the November 2022 Tweets.

> ***Plaintiffs fail to demonstrate that the BHL Defendants caused their damages.*** Plaintiffs also fail to show that there was a "direct, foreseeable connection" between the November 2022 Tweets, "a third person's reliance[,] and harm to the plaintiff's interests." *In re Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 3960334, at *6. To do so, Plaintiffs must show that they suffered "special damages, in the form of actual lost dealings" which were "caused directly as the result of publication of the alleged false statements." *Aoki*, 839 F. Supp. 2d at 771; *see also In re*

*Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 3960334, at *6 (citing Restatement (Second) of Torts § 623A).  The Complaint relies on a comparison of customer net withdrawals to conclude that "Zhao's announcement . . . caused a rapid sell off of FTT."  (Compl. ¶ 59).  But even assuming these figures' accuracy, such a correlation is insufficient to "connect" the November 2022 Tweets to the resultant third-party withdrawals.  *Elemica Inc.* v. *ecMarket Inc.*, 2022 WL 911127, at *3 (D. Del. Mar. 29, 2022) (to state injurious falsehood claim, plaintiff "needed to connect a 'false statement' by [the defendant] to 'a third person's reliance *and* harm to [plaintiff's] interests'" (emphasis in original)).

Plaintiffs' failure to plead a "direct, foreseeable connection" is especially inadequate here, where, by Plaintiffs' own admission, "FTX collapsed under the weight of the many material errors committed by its founder," (*see* Compl. ¶ 1), and the *CoinDesk* article that had raised "serious concerns" about FTX's "financial condition" was published a few days before the November 2022 Tweets.  (*See id.* ¶ 55); *see also* First Report of John J. Ray at 5, *In re FTX Trading Ltd.*, No. 22 Bk. 11068 (Bankr. D. Del. Apr. 9, 2023), D.I. 1242-1 (noting that FTX's bankruptcy petition on Nov. 11, 2022 capped a collapse "that began just ***nine days earlier*** [Nov. 2, 2022, the date of the *CoinDesk* Article] with the revelation of financial weakness at their affiliated trading firm, Alameda").

At most, Plaintiffs have alleged that the statements were made at a time when extensive negative press was highlighting both the scope of FTX's executives' fraud and malfeasance and investigations by several U.S. regulators.  The Complaint fails to attribute any component of the losses to the challenged Tweets as distinct from the maelstrom swirling around FTX, and thus fails to plead that the Tweets caused Plaintiffs' special damages.  *See In re Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 3960334, at *6 (dismissing injurious falsehood claim where it was

"simply not reasonably conceivable that the [alleged false] statement played a material and substantial part in influencing the conduct of others" sufficient to cause the plaintiffs' to "suffer[] special damage"); *Aoki*, 839 F. Supp. 2d at 771 (applying New York law) (dismissing injurious falsehood claim where plaintiffs "fail[ed] to allege any special damages caused directly as a result of the publication of the alleged false statements").

### F. Plaintiffs Fail to Adequately Allege Fraud and Intentional Misrepresentation (Counts 7 and 8)

To state a claim for fraud or intentional misrepresentation under Delaware law, a plaintiff must adequately allege: "(1) the defendants falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendants knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendants intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." *Edinburgh Holdings, Inc.* v. *Educ. Affiliates, Inc.*, 2018 WL 2727542, at *10 (Del. Ch. June 6, 2018) (fraud); *see also Paul Elton, LLC* v. *Rommel Delaware, LLC*, 2020 WL 2203708, at *10 (Del. Ch. May 7, 2020) (intentional misrepresentation). Because these claims are subject to the heightened pleading requirement of Fed. R. Civ. P. 9(b), a plaintiff must allege "with particularity" the "circumstances constituting fraud." *Baldonado* v. *Avrinmeritor, Inc.*, 2014 WL 2116112, at *9 (D. Del. May 20, 2014), *R&R adopted*, *Baldonado* v. *Avrinmeritor, Inc.*, 2014 WL 2621119 (D. Del. June 10, 2014). Plaintiffs fail to adequately allege any of these elements.

***None of the statements are actionable.*** Fraud and intentional misrepresentation claims fail where a plaintiff does not "allege an actionable false representation of existing fact" or "a deliberate concealment of material facts." *Knight Broadband LLC*, 2022 WL 1788855, at *9-10. Plaintiffs have failed to adequately allege that any of the Tweets were false. *See* Section III.B.

***Plaintiffs fail to adequately allege scienter or an intent to induce.*** The Complaint asserts, in a conclusory fashion, that Binance "made the [allegedly false statements] with the intent to induce FTX's customers to withdraw their deposits" and "to cause FTX to cease seeking alternative financing," but is devoid of any factual allegations to support these conclusory assertions. (Compl. ¶¶ 135, 139). Merely alleging statements were made "with knowledge of their falsity," (*id.* ¶ 135), or with an "intent to conceal such facts," (*id.* ¶ 139), is plainly insufficient. *See Hopkins* v. *Concorde Career Colleges, Inc.*, 2016 WL 1238775, at *3 (D. Del. Mar. 29, 2016) ("[A] party alleging fraudulent intent . . . . must plead specific facts that lead to a reasonable inference that the promisor had no intention of performing at the time the promise was made.").

***Plaintiffs fail to allege reliance.*** Plaintiffs' threadbare and conclusory recitations that "FTX's customers reasonably relied on the November 6 False Tweets," (Compl. ¶¶ 135, 139), are clearly inadequate to satisfy the plausibility pleading standard, let alone the heightened pleading standard of Rule 9(b). *See Trenwick Am. Litig. Tr.* v. *Ernst & Young, L.L.P.*, 906 A.2d 168, 208 (dismissing fraud claim where plaintiff made "unspecific, broad-brush generalities" in alleging that plaintiff "relied on the[] [alleged] omissions to its detriment"). Moreover, Plaintiffs cannot and indeed do not assert that FTX.com account holders "did not have either the awareness or opportunity to discover the accurate information," *Edinburgh Holdings, Inc.*, 2018 WL 2727542, at *12, because the statements occurred after the publishing of *CoinDesk*'s "now-infamous article." (Compl. ¶ 55).

Even if Plaintiffs' assertions were not wholly conclusory—and they are—Plaintiffs seek to recover for statements aimed at the general public and made through a public forum. (Compl. ¶¶ 135, 139). However, a "fraud-on-the-market theory" is insufficient to allege reliance under Delaware law. *See Gaffin* v. *Teledyne, Inc.*, 611 A.2d 467, 474 (Del. 1992) ("[F]raud-on-the-

34

market presumption of reliance is not available in state law fraud."). Plaintiffs also fail to allege that the Debtors justifiably relied on the statements when FTX allegedly suspended efforts to "seek[] alternative financing." (Compl. ¶¶ 135, 139). The statements at issue made clear that the financing arrangement was "non-binding." (Compl. ¶ 68). This language is provisional and plainly insufficient. *See Edinburgh Holdings, Inc.,* 2018 WL 2727542, at *13 (dismissing fraud claims where "[b]uyers were not justified in relying on [sellers'] alleged extra-contractual representations regarding future performance of the business and management capabilities").

*Plaintiffs fail to demonstrate that the BHL Defendants caused Plaintiffs' damages.* Plaintiffs must show the alleged misstatements caused Plaintiffs' harms. *Vichi* v. *Koninklijke Philips Elecs., N.V.,* 85 A.3d 725, 815 (Del. Ch. 2014). An actionable statement causes financial loss "if, but only if, the loss might reasonably be expected to result from the reliance." *Id.* at 816. Here, Plaintiffs have failed to allege causation. *See* Section III.E.

### G. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 9)

Plaintiffs' unjust enrichment claim requires showing of "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *In re Cred Inc.*, 650 B.R. at 832. The unjust enrichment claim fails for multiple reasons.

*First*, Plaintiffs do not, and cannot, plausibly allege that there was "some **direct** relationship" between the BHL Defendants' supposed enrichment and Plaintiffs' purported impoverishment. *Vichi* v. *Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59-60 (Del. Ch. 2012). Plaintiffs assert without substantiation that FTX suffered harm, and "Binance's customer base and revenues increased as a result." (Compl. ¶ 143). Plaintiffs' support for this assertion is an unadorned observation that "[a]fter November 6, 2022, Binance saw a significant growth," which they purport to validate with a statement by an anonymous forum poster on the "Binance Square"

forum called "wayneeeeeee."(*Id*. ¶ 79).[18]   But this allegation does nothing to show the requisite direct relationship between the November 2022 Tweets, the collapse of FTX, and Binance's own market share.  *Pennsylvania Emp., Benefit Tr. Fund* v. *Zeneca, Inc.*, 710 F. Supp. 2d 458, 485 (D. Del. 2010) (dismissing unjust enrichment claim for failure to plead proximate cause).

*Second*, the Complaint fails to allege any wrongdoing to satisfy the "absence of justification" element.   *In re Cred Inc.*, 650 B.R. at 832 (under Delaware law, "[t]he absence of justification element usually entails some type of wrongdoing or mistake at the time of the transfer.").   Plaintiffs have failed to allege that the statements constitute any form of wrongdoing. *See* Section III.B.   Rather, the Complaint relies on "entirely formulaic and conclusory" pleadings as to unjust enrichment.   *Swift* v. *Pandey*, 2016 WL 4267947, at *3 (D.N.J. Aug. 10, 2016).

*Finally*, the unjust enrichment claim fails because Plaintiffs have not alleged an "absence of a remedy provided by law."   *In re Cred Inc.*, 650 B.R. at 832.   To the contrary, Plaintiffs' kitchen-sink complaint has asserted multiple claims that could provide such a remedy (Counts 6-8)—if their claims were valid and properly pleaded (which they are not).

## CONCLUSION

For the reasons set forth above, the Court should dismiss the Complaint against Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited with prejudice.

---

[18] *wayneeeeeee*, Crypto Exchange 2022 Annual Report, Binance Square (Jan. 28, 2023), https://www.binance.com/en/square/post/184323.

Dated: May 16, 2025

**CAHILL GORDON & REINDEL LLP**

*/s/ Gregory Strong*

Samson A. Enzer[*]
Herbert S. Washer[*]
Edward N. Moss[*]
Joel H. Levitin[*]
Gregory Mortenson[*]
32 Old Slip
New York, NY 10005
(212) 701-3000
SEnzer@cahill.com
HWasher@cahill.com
EMoss@cahill.com
JLevitin@cahill.com
GMortenson@cahill.com
[*] *admitted pro hac vice*

Gregory Strong (No. 4664)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
(302) 884-0001
GStrong@cahill.com

*Attorneys for Defendants Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am not less than 18 years of age and that on this 16th day of May 2025, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Defendants Binance Holdings Limited's, Binance Holdings (IE) Limited's, and Binance (Services) Holdings Limited's Motion to Dismiss the Complaint to be served upon the parties on the attached service list in the manner indicated.

Under penalty of perjury, I declare the following is true and correct.

Dated:  May 16, 2025                                  */s/ Gregory Strong*
Wilmington, Delaware                          Gregory Strong (No. 4664)

<u>**Service List - Via CM/ECF, Email & First Class Mail**</u>

Kevin Gross
Paul N. Heath
Brendan J. Schlauch
Robert C. Maddox
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
gross@rlf.com
heath@rlf.com
schlauch@rlf.com
maddox@rlf.com

J. Christopher Shore
Brian D. Pfeiffer
Colin West
Ashley R. Chase
Brett L. Bakemeyer
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
cshore@whitecase.com
brian.pfeiffer@whitecase.com
cwest@whitecase.com
ashley.chase@whitecase.com
brett.bakemeyer@whitecase.com

*Attorneys for Plaintiffs*

Karen C. Bifferato
CONNOLLY GALLAGHER, LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
kbifferato@connollygallagher.com

Karen R. King
Peter Menz
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
kking@maglaw.com
pmenz@maglaw.com

*Attorneys for Defendant Binance Capital Management Co. Ltd.*

Teresa Goody Guillén
Katherine L. McKnight
BAKER & HOSTETLER LLP
1050 Connecticut Ave., NW, S-1100
Washington, DC 20036
tgoodyguillen@bakerlaw.com
kmcknight@bakerlaw.com

Jeffrey J. Lyons
BAKER & HOSTETLER LLP
1201 North Market Street Suite 1407
Wilmington, DE 19801
jjlyons@bakerlaw.com

*Attorneys for Defendant Changpeng Zhao*