**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST, FTX DIGITAL MARKETS, LTD.,<br><br>        Plaintiffs,<br><br>  -against-<br><br>BINANCE HOLDINGS LIMITED, BINANCE CAPITAL MANAGEMENT CO. LTD., BINANCE HOLDINGS (IE) LIMITED, BINANCE (SERVICES) HOLDINGS LIMITED, CHANGPENG ZHAO, DINGHUA XIAO, SAMUEL WENJUN LIM, and DOES 1-1000,<br><br>        Defendants. | Adv. Pro. No. 24-50222 (KBO) |

**DEFENDANT SAMUEL WENJUN LIM'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS THE COMPLAINT**

---

[1] A complete list of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

**PACHULSKI STANG ZIEHL & JONES LLP**

/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com

        -and-

**MOLOLAMKEN LLP**
Justin V. Shur (admitted *pro hac vice*)
Walter H Hawes IV (admitted *pro hac vice*)
600 New Hampshire Ave., N.W.
Washington, D.C.  20037
Telephone: (202) 556-2005
Facsimile: (202) 556-2001
Email:  jshur@mololamken.com
        whawes@mololamken.com

*Counsel for Defendant Samuel Wenjun Lim*

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF ARGUMENT ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 3

I.      Defendant Samuel Lim ..................................................................................... 3

II.     Binance's Investment in WRS ......................................................................... 3

III.    FTX's Repurchase of the WRS Shares ............................................................ 4

ARGUMENT .................................................................................................................... 5

I.      This Court Lacks Personal Jurisdiction over Lim ............................................ 5

        A.      The Complaint Fails To Allege Sufficient Minimum Contacts ............ 5

        B.      Exercise of Personal Jurisdiction Would Be Contrary to Traditional
                Notions of Justice .............................................................................. 11

II.     The Complaint Fails To Allege That Lim Is a Transferee or Beneficiary Subject to
        Recovery Under the Bankruptcy Code ............................................................ 13

        A.      The Complaint Affirmatively Pleads Lim Was Not a Transferee ....... 13

        B.      The Complaint Does Not Allege That Lim Benefited from the Challenged
                Transfers .............................................................................................. 15

III.    The Claims Against Lim Should Be Dismissed for the Additional Reasons Stated
        by the Other Defendants ................................................................................... 17

CONCLUSION ................................................................................................................ 18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aldossari v. Ripp*,
 49 F.4th 236 (3d Cir. 2022) ...........................................................................5, 6, 8

*Amos v. Franklin Fin. Servs. Corp.*,
 509 F. App'x 165 (3d Cir. 2013) ............................................................................17

*Argus Mgmt. Grp. v. GAB Robins, Inc. (In re CVEO Corp.)*,
 327 B.R. 210 (Bankr. D. Del. 2005) .......................................................................14

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solana Cty.*,
 480 U.S. 102 (1987).................................................................................................12

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).................................................................................................16

*Astropower Liquidating Tr. v. Xantrex Tech., Inc. (In re Astropower
 Liquidating Tr.)*, No. 05-ap-50867, 2006 WL 2850110
 (Bankr. D. Del. Oct. 2, 2006).................................................................................10

*Belden Techs., Inc. v. LS Corp.*,
 626 F. Supp. 2d 448 (D. Del. 2009).........................................................................9

*Bocker v. Hartzell Engine Techs., LLC*,
 No. 21-cv-1174, 2023 WL 415792 (D. Del. Jan. 26, 2023) ...................................17

*Bonded Fin. Servs., Inc. v. European Am. Bank*,
 838 F.2d 890 (7th Cir. 1988) .......................................................................13, 14, 15

*Budget Blinds, Inc. v. White*,
 536 F.3d 244 (3d Cir. 2008)...............................................................................6, 7, 8

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985)...................................................................................................7

*Burtch v. Seaport Cap., LLC (In re Direct Response Media, Inc.)*,
 466 B.R. 626 (Bankr. D. Del. 2012) .......................................................................15

*Burtch v. Stylish Move Sportswear Inc. (In re Factory 2-U Stores, Inc.)*,
 No. 05-ap-30384, 2007 WL 2698207 (Bankr. D. Del. Sept. 11, 2007)..................14

*Calder v. Jones*,
 465 U.S. 783 (1984)................................................................................................6, 9

*Carvel v. Ross*,
   566 F. Supp. 2d 342 (D. Del. 2008)....................................................................5

*Connelly v. Lane Const. Corp.*,
   809 F.3d 780 (3d Cir. 2016)............................................................................16

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
   948 F.3d 124 (3d Cir. 2020)..............................................................................8

*Dembsky v. Frommer, Lawrence & Haug, LLP (In re Lambertson Truex, LLC)*,
   458 B.R. 155 (Bankr. D. Del. 2011) ................................................................13

*In re Fisker Auto. Holdings, Inc. S'holder Litig.*,
   No. 13-cv-2100, 2015 WL 6039690 (D. Del. Oct. 15, 2015)...........................9

*Freres v. SPI Pharma, Inc.*,
   629 F. Supp. 2d 374 (D. Del. 2009)...................................................................5

*Gellert v. Coltec Indus., Inc. (In re Crucible Materials Corp.)*,
   No. 11-ap-53884, 2012 WL 5360945 (Bankr. D. Del. Oct. 31, 2012) ...................15

*Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*,
   594 B.R. 239 (Bankr. D. Del. 2018) ................................................................15

*Hasson v. FullStory, Inc.*,
   114 F.4th 181 (3d Cir. 2024) ...........................................................................10

*Hughes Tech. Servs., LLC v. Glob. Consulting & Mech. Servs., LLC*,
   No. 5:20-cv-3885, 2020 WL 7350994 (E.D. Pa. Dec. 15, 2020) .............................7

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998).............................................................................10

*Importers Serv. Corp. v. Aliotta*,
   No. 22-cv-4640, 2024 WL 2765620 (D.N.J. May 30, 2024)..............................8

*inno360, Inc. v. Zakta, LLC*,
   50 F. Supp. 3d 587 (D. Del. 2014).................................................................6, 9

*Isaacs v. Arizona Bd. of Regents*,
   608 F. App'x 70 (3d Cir. 2015) .........................................................................6

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011)........................................................................................11

*Marnavi S.p.A. v. Keehan*,
   900 F. Supp. 2d 377 (D. Del. 2012)...................................................................8

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007)...........................................................................5, 10

*McDermott v. Clondalkin Grp., Inc.*,
    649 F. App'x 263 (3d Cir. 2016) ...........................................................................16

*Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*,
    960 F.2d 1217 (3d Cir. 1992)...........................................................................11, 12

*Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*,
    426 B.R. 96 (Bankr. D. Del. 2010) ...........................................................................14

*Miller v. McCown de Leeuw & Co. (In re The Brown Schools)*,
    386 B.R. 37 (Bankr. D. Del. 2008) ...........................................................................15

*MySize, Inc. v. Mizrahi*,
    193 F. Supp. 3d 327 (D. Del. 2016) ...........................................................................9

*Oakwood Labs. LLC v. Thanoo*,
    999 F.3d 892 (3d Cir. 2021)...........................................................................13, 16

*Pinker v. Roche Holdings Ltd.*,
    292 F.3d 361 (3d Cir. 2002)...........................................................................5, 11, 12

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    380 F. Supp. 2d 509 (D.N.J. 2005) ...........................................................................5

*Shaffer v. Heitner*,
    433 U.S. 186 (1977)...........................................................................9

*Sklar v. Susquehanna Bank (In re Glob. Protection USA, Inc.)*,
    546 B.R. 586 (Bankr. D.N.J. 2016) ...........................................................................14

*Stranahan Gear Co., Inc. v. NL Indus., Inc.*,
    800 F.2d 53 (3d Cir. 1986)...........................................................................6, 9

*Tribune Media Servs., Inc. v. Beatty (In re Tribune Co.)*,
    418 B.R. 116 (Bankr. D. Del. 2009) ...........................................................................6

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
    75 F.3d 147 (3d Cir. 1996)...........................................................................11

*Walden v. Fiore*,
    571 U.S. 277 (2014)...........................................................................5, 9, 10

*Wolstenholme v. Bartels*,
    511 F. App'x 215 (3d Cir. 2013) ...........................................................................10

*Zazzali v. Swenson (In re DBSI, Inc.)*,
    451 B.R. 373 (Bankr. D. Del. 2011) ................................................6

*Zazzali v. Wavetronix LLC (In re DBSI, Inc.)*,
    445 B.R. 351 (Bankr. D. Del. 2011) ................................................14

## STATUTES AND RULES

11 U.S.C. § 546(e) ................................................................................17

11 U.S.C. § 550 ....................................................................................13

11 U.S.C. § 550(a) ................................................................2, 13, 14, 15, 17

11 U.S.C. § 550(a)(1) ........................................................................13, 15

11 U.S.C. § 550(a)(2) ............................................................................13

Fed. R. Bankr. P. 7012(b) ........................................................................1

Fed. R. Civ. P. 12(b)(6) ..........................................................................13

## OTHER SOURCES

5 Wright & Miller's Federal Practice & Procedure § 1224 (4th ed. 2025 update) ........................16

## NATURE AND STAGE OF THE PROCEEDINGS

In this adversary proceeding, plaintiffs assert various state- and federal-law claims against Binance and certain individuals, including defendant Samuel Wenjun Lim.  Adv. D.I. 1 ("Compl.").  Defendants Binance Holdings Limited, Binance Holdings (IE) Limited, Binance (Services) Holdings Limited, and Digital Anchor Holdings Limited (collectively, the "Corporate Defendants") moved to dismiss and compel arbitration on May 16, 2025.  Adv. D.I. 63; Adv. D.I. 67.  This Court subsequently scheduled defendant Lim's motion to dismiss to be filed no later than July 11, 2025.  Adv. D.I. 80.

Lim respectfully submits this brief in support of that motion, addressing only those claims asserted against Lim: Counts I through V ("Fraudulent Transfer Claims"), which relate to FTX's 2021 repurchase of certain shares from Binance, Compl. ¶¶ 80-128.[2]

## SUMMARY OF ARGUMENT

The Complaint pleads away any basis for keeping Lim in this case.  The only claims asserted against him seek to recover pre-petition transfers.  Yet plaintiffs admit that Lim was ***not the "transferee."***  To the contrary, the Complaint alleges "***Binance***" was the "transferee" and that the disputed funds were paid "***directly***" "***to Binance***."  Plaintiffs also concede that Lim held the shares FTX repurchased in the accused transfers only in a "***nominal***" capacity.  Those admissions are fatal.  Lim cannot be haled into this Court from the other side of the globe to defend himself against claims arising from events in which he admittedly had no meaningful involvement.  The claims against Lim should be dismissed.

---

[2] Pursuant to Fed. R. Bankr. P. 7012(b), Lim states that he does not presently consent to the entry of final orders or judgments by the Bankruptcy Court.

1.      The Complaint fails to establish personal jurisdiction over Lim.  To establish jurisdiction over a non-resident like Lim, plaintiffs need to show that he engaged in suit-related conduct sufficient to establish a substantial connection with the United States.  Yet the ***only*** allegation even arguably relevant to jurisdiction is that Lim held shares in a U.S. company (WRS) on behalf of his foreign employer (Binance).  That is not enough.  Controlling precedent makes clear that owning shares in a forum-based company does not establish the minimum contacts necessary to support personal jurisdiction.  The overwhelmingly foreign nature of the transactions at issue, moreover, put the absence of any meaningful U.S. connection beyond doubt.  The relevant agreements are governed by Hong Kong law and contain Hong Kong forum-selection and arbitration clauses.  And Lim allegedly entered those agreements on behalf of foreign entities, while overseas.  Even if there were sufficient forum contacts, the significant burdens Lim would face defending himself here easily outweigh any interest in keeping a concededly "nominal" defendant in the case.

2.      The claims against Lim fail on the merits.  Plaintiffs' claims depend on showing that Lim was a transferee or beneficiary of the accused transfers under 11 U.S.C. § 550(a).  But the Complaint alleges the exact opposite:  that Binance, not Lim, was the "transferee" in a transaction conducted to serve Binance's interests, not benefit Lim.  Plaintiffs concede that all of the funds involved in the accused transfers were sent "directly" to Binance, without passing through Lim's hands.  Court after court has found similar allegations wanting and dismissed defendants accordingly.  As those courts recognize, it would be "absurd" to treat a defendant as a "transferee" subject to recovery, where he did not even touch the money involved.  Nor does Lim's employment at Binance make any difference, as courts in this district have made clear.

3.    The claims against Lim should be dismissed for the additional reasons argued by the Corporate Defendants.

## STATEMENT OF FACTS

### I.    DEFENDANT SAMUEL LIM

Lim is a Singapore national, who resides in Singapore.  Declaration of Samuel W. Lim ("Lim Decl.") ¶¶ 3-4; *see* Adv. D.I. 20 at 8.  He is not a U.S. citizen.  Lim Decl. ¶ 3.  Nor has he ever owned property or resided in the United States.  Lim Decl. ¶ 4.  Plaintiffs allege that Lim was a "Binance" employee "from 2018 through 2022."  Compl. ¶ 27.  According to plaintiffs, "Binance" is comprised exclusively of foreign companies.  Compl. ¶¶ 21-24.

### II.    BINANCE'S INVESTMENT IN WRS

According to the Complaint, Binance made two investments in Bankman-Fried's businesses.  First, in November 2019, Binance bought a stake in FTX Trading Ltd. ("FTX Trading"), the entity that ran the FTX.com cryptocurrency exchange.  Compl. ¶¶ 11, 19, 25, 34.  Then, in February 2020, defendant Changpeng Zhao and other Binance employees, including Lim, allegedly purchased shares in West Realm Shires, Inc. ("WRS"), the parent company of Bankman-Fried's new U.S.-based exchange, FTX US.  Compl. ¶¶ 15-16, 36.

Lim held the acquired WRS shares exclusively as a nominal shareholder on behalf of his then-employer Binance.  Lim Decl. ¶¶ 8-9.  Lim never engaged in any substantive business activities relating to WRS or its subsidiary, West Realm Shires Services Inc., d/b/a "FTX US," ("WRSS").  Lim Decl. ¶ 10.  Specifically, Lim never engaged in any activity relating to WRS or WRSS that created or involved any connection to the United States.  He never traveled to the United States to meet with any WRS or WRSS employees or executives; communicated with any U.S.-based WRS or WRSS employees or executives—or any agents thereof—regarding those

3

entities' U.S.-based business activities; and never exercised any decision-making authority associated with the WRS shares he nominally held on Binance's behalf.  Lim Decl. ¶ 10.

### III.    FTX'S REPURCHASE OF THE WRS SHARES

In July 2021, Binance and Bankman-Fried reversed course, and entered discussions "regarding a potential repurchase of the FTX Trading and WRS shares."  Compl. ¶ 38.  The parties completed the repurchase (the "2021 Share Repurchase") through a series of written agreements. Compl. ¶ 38.

According to the Complaint, Lim served as the "nominal counterparty" in two of the repurchase agreements.  Compl. ¶ 82.  Both agreements adopt Hong Kong law as controlling "without regard to conflict of law principles that would result in the application of any [other] law."  Adv. D.I. 64-3 § 4.7; Adv. D.I. 64-4 § 4.7.  They further require that "[a]ny controversy or claim arising out of or relating to" the agreements "shall be resolved through arbitration" under the Hong Kong International Arbitration Centre Arbitration Rules by a panel of arbitrators seated in Hong Kong.  Adv. D.I. 64-3 § 4.7; Adv. D.I. 64-4 § 4.7.

The agreements called for certain "FTX executives" to pay a combined $8.13 million worth of BUSD (a cryptocurrency stablecoin) to repurchase the WRS shares nominally held by Lim. Compl. ¶ 44; Adv. D.I. 64-3 § 1.3, Schedule A; Adv. D.I. 64-4 § 1.3, Schedule A.  But the Complaint alleges that the FTX executives, the nominal buyers, did not pay anything themselves. Compl. ¶¶ 43-44.  Nor did Lim, the nominal seller, receive anything himself.  Compl. ¶¶ 43-45, 82. Instead, Alameda Ltd., a British Virgin Islands company controlled by Bankman-Fried, Compl. ¶¶ 13-14, transferred the BUSD "directly to one or more Binance entities."  Compl. ¶¶ 43-45.

According to the Complaint, the transfers underlying the 2021 Share Repurchase agreements for which Lim was the "nominal counterparty" comprised part of a "single overall

transaction." Compl. ¶¶ 82-83. Plaintiffs allege that Alameda Ltd. was the "direct transferor of all

of the consideration" in that transaction, Compl. ¶ 43, and that the consideration was all transferred

directly "to Binance," Compl. ¶ 45. According to plaintiffs, the transfers underlying all of the 2021

Share Repurchase agreements should thus "be treated as a single transfer for purposes of this

action." Compl. ¶ 82.

## ARGUMENT

### I.    THIS COURT LACKS PERSONAL JURISDICTION OVER LIM

Due process bars a court from exercising jurisdiction over a non-resident defendant unless

the defendant has "sufficient 'minimum contacts' with the forum" and "subjecting the defendant

to the court's jurisdiction comports with 'traditional notions of fair play and substantial justice.'"

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002); *see Aldossari v. Ripp*, 49 F.4th

236, 257 (3d Cir. 2022). In this case, that requires plaintiffs to show that each claim against Lim

arises out of or relates to his contacts with the United States. *Marten v. Godwin*, 499 F.3d 290,

295-96 (3d Cir. 2007).[3] Plaintiffs cannot make that showing. The counts against Lim must

therefore be dismissed. *Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 382 (D. Del. 2009).

### A.    The Complaint Fails To Allege Sufficient Minimum Contacts

To satisfy the first step of the jurisdictional inquiry, plaintiffs must show that "'the

defendant's suit-related conduct'" creates "'a ***substantial connection*** with the forum.'"

*Aldossari*, 49 F.4th at 258 (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)) (emphasis

added). That inquiry is claim- and defendant-specific. *Carvel v. Ross*, 566 F. Supp. 2d 342, 349

---

[3] Because Lim undisputedly "lives and works outside the United States," there can be "no claim
for general jurisdiction," which permits a defendant to be subject to any and all claims in the forum.
*In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 550 (D.N.J. 2005); *see* Lim Decl.
¶¶ 3-4. Accordingly, this motion addresses only suit-linked or "specific" jurisdiction. *See Pinker*,
292 F.3d at 368 & n.1.

(D. Del. 2008). "Each defendant's contacts with the forum" must be "assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). In bankruptcy proceedings like this one, the relevant forum is the United States. *Zazzali v. Swenson (In re DBSI, Inc.)*, 451 B.R. 373, 377 (Bankr. D. Del. 2011); *Tribune Media Servs., Inc. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 123 (Bankr. D. Del. 2009).

Where a jurisdictional defense is raised and "the defendant contradicts the plaintiff's allegations through opposing affidavits . . . a plaintiff must present particular evidence in support of personal jurisdiction," *Isaacs v. Arizona Bd. of Regents*, 608 F. App'x 70, 74 (3d Cir. 2015), in the form of "sworn affidavits or other competent evidence." *inno360, Inc. v. Zakta, LLC*, 50 F. Supp. 3d 587, 592 (D. Del. 2014). Plaintiffs' burden, in other words, rises from needing to allege facts supporting personal jurisdiction with "reasonable particularity," *id.*, to requiring "actual proofs," *Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 58 (3d Cir. 1986).

Plaintiffs come nowhere close to even making sufficient allegations here. The Complaint is devoid of any allegation that Lim purposely directed any conduct towards the United States or otherwise availed himself of that forum. The Complaint's ***only*** references to Lim state that he worked at Binance and was "nominal[ly]" involved in the purchase and later sale of WRS shares. Compl. ¶¶ 3, 27, 33, 37-40, 82, 90. Those threadbare assertions fall well short of making the required ***substantial connection*** between Lim, the United States, and plaintiffs' claims.

Lim's "nominal" involvement in the 2021 Share Repurchase cannot suffice. It is axiomatic that a contract executed with a forum resident is insufficient to establish personal jurisdiction. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008); *Aldossari*, 49 F.4th at 259 (argument that contract with Delaware corporation established personal jurisdiction "squarely foreclosed by precedent"). Courts instead look to the "terms of the contract," the "parties' actual

course of dealing," and "prior negotiations and contemplated future consequences" to assess "whether the defendant purposefully established minimum contacts with the forum." *Budget Blinds*, 536 F.3d at 261 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

Far from demonstrating a substantial connection with the United States, everything about the 2021 Share Repurchase agreements points overseas. The transactions were conducted on behalf of foreign entities, pursuant to agreements governed by foreign law, without any alleged expectation of performance or ongoing activity in the United States. *See* Compl. ¶¶ 35-44; Adv. D.I. 64-3; Adv. D.I. 64-4. The agreements involving Lim, for example, were executed on behalf of Binance, Compl. ¶¶ 42-45, 82, a foreign company, Compl. ¶¶ 21-24, while Lim was abroad, Lim Decl. ¶ 10. The agreements adopt Hong Kong law as controlling, mandate arbitration under the Hong Kong arbitral rules, and select Hong Kong as the appropriate forum for resolving any disputes. Adv. D.I. 64-3 § 4.7; Adv. D.I. 64-4 § 4.7. Those provisions "indicate the parties' desire to avail themselves of the benefits" of ***Hong Kong***, not the United States, and thus "weigh against a finding that [Lim] has purposefully directed [his] conduct towards [the United States] in a manner sufficient to support specific jurisdiction." *Hughes Tech. Servs., LLC v. Glob. Consulting & Mech. Servs., LLC*, No. 5:20-cv-3885, 2020 WL 7350994, at *10 (E.D. Pa. Dec. 15, 2020).

While the Complaint is silent as to the nationality or residence of FTX's nominal representatives in the 2021 Share Repurchase transactions involving Lim, it makes clear that there was never "any intention" to hold those individuals to their obligations under the agreements. Compl. ¶ 44. Instead, Alameda Ltd., another ***foreign*** entity, Compl. ¶ 13, paid the consideration due, Compl. ¶¶ 43-44. But it did not pay Lim. It provided the BUSD directly "***to Binance***." Compl. ¶ 45 (emphasis added). Lim was not even given notice under the agreements. Notice to the "Seller" was directed to "legal@binance.com" and to the then-General Counsel of Binance,

Hon Ng, at a physical address **in the British Virgin Islands**.  Adv. D.I. 64-3 § 4.3; Adv. D.I. 64-4 § 4.3.

Nor did the 2021 Share Repurchase agreements contemplate any "future consequences" in the United States.  *Budget Blinds*, 536 F.3d at 261.  Quite the opposite.  They represented Binance's **exit** from its investment in FTX.  Compl. ¶ 4.  Accordingly, the overwhelmingly foreign nature of the agreements prevents them from establishing sufficient minimum contacts on Lim's behalf.  *See Aldossari*, 49 F.4th at 258-59 (contract that was negotiated, executed, and performed abroad, without any allegation that the subject of the contract "was connected to the forum," failed to justify personal jurisdiction).[4]

The allegations relating to Lim's alleged role in the **purchase** of the WRS shares in 2020 fare even worse.  The Complaint alleges the 2020 transaction was completed pursuant to "restricted stock purchase agreements."  Compl. ¶ 37.  Despite presumably having access to those agreements, plaintiffs offer no details regarding where they were executed, the counterparties supposedly transacting with Lim, the governing law, the forum selection clause, or any other detail that might substantiate a connection between Lim, the claims, and the United States.  *See generally* Compl.  Nor do plaintiffs allege that those agreements contemplated any U.S.-based activities or involvement in WRS or its subsidiaries.  As Lim avers, no such activity occurred.  Lim Decl. ¶ 10.

---

[4] Because Lim never received the BUSD involved in the 2021 Share Repurchase agreements, Compl. ¶¶ 43-45, any incidental contact those funds might have had with the United States is "too remotely related" to Lim and the claims to establish jurisdiction.  *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020).  Even if Lim had received the funds— contrary to the Complaint's allegations, Compl. ¶¶ 43-45—that still would not be enough. *Importers Serv. Corp. v. Aliotta*, No. 22-cv-4640, 2024 WL 2765620, at *7 (D.N.J. May 30, 2024) ("[T]he mere receipt of funds by a foreign entity is insufficient to confer personal jurisdiction over that entity."); *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 391 (D. Del. 2012) ("[T]he passive receipt of income by defendants from debt and equity securities of [forum-based] companies does not constitute sufficient contacts with [the forum] to support a finding of minimum contacts.").

The Complaint's silence regarding the 2020 transaction thus speaks volumes.  It fails to allege a basis for jurisdiction with "reasonable particularity," *inno360*, 50 F. Supp. 3d at 592, much less provide any reason to believe plaintiffs can satisfy their burden through "actual proofs," *Stranahan Gear*, 800 F.2d at 58.

The **sole** allegation offering **any** connection between Lim and the United States is that the alleged transactions involved shares in a U.S. corporation, WRS.  *See* Compl. ¶ 15. But the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285.  As the Supreme Court and numerous courts in this district have held, merely purchasing or holding shares in a forum-based company is not sufficient to establish personal jurisdiction over a non-resident defendant.  *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977); *Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 456-57 (D. Del. 2009) (acquisition of Delaware corporation and entering into distribution agreement under which defendants' product may have entered Delaware was insufficient to establish personal jurisdiction in Delaware); *In re Fisker Auto. Holdings, Inc. S'holder Litig.*, No. 13-cv-2100, 2015 WL 6039690, at *22 (D. Del. Oct. 15, 2015) (where the appropriate forum is the United States, "[s]pecific jurisdiction cannot be solely based upon shares in a United States corporation").  If "merely owning the stock is not enough to 'satisfy the constitutional [minimum contacts] test,'" *MySize, Inc. v. Mizrahi*, 193 F. Supp. 3d 327, 333-34 (D. Del. 2016), **selling** that stock back to the company cannot possibly meet the standard, either, *id*.

Nor can plaintiffs rely on the "effects test" stemming from *Calder v. Jones*, 465 U.S. 783 (1984).  Under that test, intentional torts purposely directed into a forum that cause sufficient harm may "enhance otherwise insufficient contacts with the forum such that the 'minimum contacts'

prong of the Due Process test is satisfied." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998). As a threshold matter, the effects test is only applicable to intentional torts. *See id.* at 261. With respect to Lim, it can thus apply at most to Counts III and IV. The remaining claims against Lim—Counts I, II, and V—relate to constructive fraudulent transfers. Compl. ¶¶ 80-104, 125-28. And "constructive[] fraudulent transfers are not torts," rendering "*Calder . . .* not applicable." *Astropower Liquidating Tr. v. Xantrex Tech., Inc. (In re Astropower Liquidating Tr.)*, No. 05-ap-50867, 2006 WL 2850110, at *4-5 (Bankr. D. Del. Oct. 2, 2006).

But even to the extent it applies, plaintiffs cannot prevail under the effects test because they cannot show that Lim "expressly aimed [any] tortious conduct" towards the forum. *Wolstenholme v. Bartels*, 511 F. App'x 215, 219 (3d Cir. 2013); *Hasson v. FullStory, Inc.*, 114 F.4th 181, 192 (3d Cir. 2024) (to satisfy the effects test, plaintiffs must " 'point to contacts which demonstrate that the defendant *expressly aimed its tortious conduct* at the forum, and thereby made the forum the focal point of *the tortious activity*.' " (emphasis in original)). Here, the Complaint lacks *any* allegation that Lim took action "expressly aimed" at the United States. That, alone, is fatal. As the Supreme Court has emphasized, even under the effects test, "it is the defendant's conduct that must form the necessary connection with the forum." *Walden*, 571 U.S. at 285. " '[R]andom, fortuitous, or attenuated' " contacts made "by interacting with other persons affiliated with the State"—such as WRS, here—are insufficient. *Id.* The Court need not go farther, for the other elements of the effects test are considered "only if the 'expressly aimed' element . . . is met." *Marten*, 499 F.3d at 297. But the other elements are similarly lacking, regardless. The Complaint has not plausibly alleged Lim committed any intentional torts, pp.13-18, *infra*. *See Wolstenholme*, 511 F. App'x at 219. Nor have plaintiffs alleged that the United States was the "focal point" of any harm supposedly suffered. *Id.*

10

Given the stark absence of ***any*** connection—much less the required substantial one—between Lim, the forum, and the claims at issue, the claims against Lim must be dismissed.

### B. Exercise of Personal Jurisdiction Would Be Contrary to Traditional Notions of Justice

Jurisdiction would be lacking even if plaintiffs could somehow show sufficient suit-related forum contacts, because haling Lim into a U.S. court would "offend traditional notions of fair play and substantial justice." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 n.9 (3d Cir. 1996) ("Due process requires both minimum contacts . . . *and* [that jurisdiction] accord with the notions of 'fair play and substantial justice.'" (emphasis in original)).   In assessing whether the exercise of jurisdiction comports with those concepts, courts consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."   *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1222 (3d Cir. 1992).   In federal actions, courts "tak[e] less account of federalism concerns, and focus[] more on the national interest in furthering the policies of the law(s) under which the plaintiff is suing." *Pinker*, 292 F.3d at 370-71 (internal citations omitted).

Those factors weigh heavily against exercising jurisdiction over Lim.   As an individual residing abroad, the burden Lim would face in litigating in this Court is extraordinary.   The legal fees and travel expenses necessary to defend his interests and meet his discovery obligations as a party to the case would be significant.   On top of that, Lim would face forced time away from his family and the inherent risks associated with traveling across the world during a time of substantial immigration review, reform, and—in some countries—upheaval.   Those are not risks that can be

dismissed lightly. *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 114 (1987). The Supreme Court has emphasized that the "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.*

Plaintiffs' interest in securing Lim as part of this litigation, by contrast, is negligible. The Fraudulent Transfer Claims—the only claims asserted against Lim—aim to recover $1.76 billion. Compl. ¶¶ 8, 39. By the Complaint's own terms, the transfers "nominal[ly]" involving Lim were worth $8.13 million—just *0.4% of the amount at issue*. *See* Compl. ¶ 82. The Complaint fails to allege that Lim ever actually received any of the funds at issue, performed any substantive act associated with any transfer, or was ever considered a genuine party to the transaction. To the contrary, the Complaint makes it crystal clear that the real transferee was "Binance," Compl. ¶ 82, and that the transactions involving Lim should be viewed as "part of a single overall transaction" between Binance and FTX, Compl. ¶ 83, the consideration for which was paid directly to "one or more Binance entities," *not* Lim, Compl. ¶ 43. Plaintiffs' real dispute, by their own allegations, is with the Corporate Defendants. To the extent plaintiffs have any interest in recovering the funds at issue, that interest will be entirely unaffected by Lim's dismissal from the case.

The remaining factors either further support dismissal or are neutral. Efficiency concerns counsel in favor of dismissing Lim. Even to the extent the remainder of the suit remains before this Court, keeping unnecessary parties in the thick of litigation only serves to bog the case down and add unnecessary expense. And where, as here, Lim lacks any substantive involvement in the allegedly fraudulent transfers, his dismissal cannot impair any " 'fundamental substantive social polic[y]' " at stake, *Mellon Bank*, 960 F.2d at 1222, or undermine "the polic[y] of the law(s) under which the plaintiff is suing," *Pinker*, 292 F.3d at 370-71. By the Complaint's own terms, Lim was

12

merely a ***nominal*** participant, who never possessed the funds plaintiffs seek to recover. Compl. ¶ 82. To the extent the Bankruptcy Code endorses a policy of recovering fraudulently transferred funds, Lim's dismissal will not undermine that policy. Plaintiffs remain free to attempt to recover the funds against the Corporate Defendants, which are the true transferees according to plaintiffs' Complaint. Compl. ¶ 82.

## II.   THE COMPLAINT FAILS TO ALLEGE THAT LIM IS A TRANSFEREE OR BENEFICIARY SUBJECT TO RECOVERY UNDER THE BANKRUPTCY CODE

If the Court reaches the merits, it should dismiss the claims against Lim under Fed. R. Civ. P. 12(b)(6). To state a claim under the causes of action asserted against Lim, plaintiffs must plead sufficient facts to plausibly support an inference that Lim was "the initial transferee" of the relevant transfers, or "the entity for whose benefit such transfer was made," 11 U.S.C. § 550(a)(1); *see Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021); Compl. ¶¶ 90, 103, 112, 123, 127 (relying on 11 U.S.C. § 550 for each of Counts I through V).[5] The Complaint comes nowhere close.

### A.   The Complaint Affirmatively Pleads Lim Was Not a Transferee

The "minimum requirement" to qualify as a transferee under § 550(a) "is dominion over the money or other asset" transferred such that the party has "the right to put the money to [its] own purposes." *Bonded Financial Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988).[6] In other words, a transferee must have "the legal right to use the funds to whatever purpose

---

[5] 11 U.S.C. § 550(a)(2) also authorizes recovery from "any immediate or mediate transferee of [an] initial transferee." Because no allegation in the Complaint provides any factual support for Lim receiving any transfer from an initial transferee, plaintiffs cannot rely on subsection (a)(2) to recover against Lim. In any event, plaintiffs fail to allege Lim was an "immediate or mediate transferee" for the same reasons they fail to allege Lim was an initial transferee. *See* pp. 14-15, *infra*.

[6] Courts in this district have adopted the "dominion and control" test enunciated in *Bonded Financial Services*. *See, e.g.*, *Dembsky v. Frommer, Lawrence & Haug, LLP (In re Lambertson*

he or she wishes." *Burtch v. Stylish Move Sportswear Inc. (In re Factory 2-U Stores, Inc.)*, No. 05-ap-30384, 2007 WL 2698207, at *3 (Bankr. D. Del. Sept. 11, 2007); *Argus Mgmt. Grp. v. GAB Robins, Inc. (In re CVEO Corp.)*, 327 B.R. 210, 216 (Bankr. D. Del. 2005). By contrast, where a party is a "mere conduit"—*i.e.*, where funds "simply pass[] through [a party's] hands and it ha[s] no power to redirect the funds to its own use"—it is not a transferee under § 550(a). *Argus Mgmt.*, 327 B.R. at 216. Lim cannot possibly qualify as a transferee under that standard.

Plaintiffs do not allege that Lim had possession or control of the funds—let alone that he had "the legal right to use" them as he pleased. *Burtch*, 2007 WL 2698207, at *3. To the contrary, the Complaint affirmatively alleges the opposite: that the BUSD transferred was sent "***directly*** to one or more **Binance entities**," not Lim. Compl. ¶ 43 (emphasis added); Compl. ¶ 45 (alleging the transfers were "funded directly by Alameda[] ***to Binance***" (emphasis added)). In so doing, plaintiffs have pleaded away any contention that Lim was a transferee. Courts in this district routinely find such allegations lacking and dismiss similarly situated defendants. *See, e.g.*, *Zazzali v. Wavetronix LLC (In re DBSI, Inc.)*, 445 B.R. 351, 354-56 (Bankr. D. Del. 2011) (granting motion to dismiss individual executive defendants where Complaint alleged fraudulent transfers made exclusively to corporate defendant; failed to alleged that individual defendants received or benefitted from the transfers; and explicitly "refuted" those inferences by alleging transfers "were made to [corporate defendant] in order to fund its routine business expenses"); *Mervyn's*, 426 B.R. at 103-04 (dismissing fraudulent transfer claims against financial institution where plaintiff failed to plead financial institution possessed funds in anything beyond trustee capacity on behalf of other

---

*Truex, LLC)*, 458 B.R. 155, 158 (Bankr. D. Del. 2011) (collecting cases); *Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 103-04 (Bankr. D. Del. 2010); *see also Sklar v. Susquehanna Bank (In re Global Protection USA, Inc.)*, 546 B.R. 586, 620 (Bankr. D.N.J. 2016) (noting *Bonded Financial*, which has been followed by "a majority of circuits," is the "leading case on determining whether an entity is a transferee").

14

parties); *Miller v. McCown de Leeuw & Co. (In re The Brown Schools)*, 386 B.R. 37, 53-54 (Bankr. D. Del. 2008) (dismissing fraudulent transfer claims against individual defendant-employee of corporate entity involved in transfer where Complaint failed to allege individual defendant received the transfer at issue or otherwise benefited from the transaction); *Burch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 654 (Bankr. D. Del. 2012) (dismissing fraudulent transfer claims against individual defendants, notwithstanding defendants' nominal involvement in the transactions at issue, where plaintiff failed to allege their status as initial transferees). That same result is warranted here. As a party that is not even alleged to have "touche[d] the money," Lim cannot possibly qualify as a transferee. *Bonded Financial*, 838 F.2d at 894.

### B.   The Complaint Does Not Allege That Lim Benefited from the Challenged Transfers

Nor does the Complaint plausibly allege that Lim was "the entity for whose benefit [the] transfer[s] w[ere] made," 11 U.S.C. § 550(a)(1). To qualify, Lim would need to have received an "'an actual benefit'" from the transfers. *Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*, 594 B.R. 239, 288 (Bankr. D. Del. 2018); *see Gellert v. Coltec Indus., Inc. (In re Crucible Materials Corp.)*, No. 11-ap-53884, 2012 WL 5360945, at *7 (Bankr. D. Del. Oct. 31, 2012) ("The enjoyment of some indirect, unquantifiable benefit . . . is not sufficient to establish liability under Section 550(a)."). But the Complaint alleges none. Instead, it again alleges the opposite: that the transfers were made "to ***Binance***" to effectuate ***Binance's*** desire to exit its investment in FTX. P. 4, *supra*. The benefits of the 2021 Share Repurchase, if any, thus ran to Binance, not Lim.

Lim's status as a former Binance employee does not alter that conclusion. *Miller*, 386 B.R. at 53-54. "Merely being an employee of a transferee is insufficient, without more, to establish that [an individual defendant] . . . benefitted from the transfer" under § 550(a). *Id.* (allegation that

individual executive indirectly received benefit of transfer through employment relationship with corporate defendants insufficient to survive motion to dismiss).  The Complaint's failure to specifically allege any benefits to Lim for his nominal participation thus precludes retaining him as a defendant in this case.

The Complaint's generalized allegations that "[o]n information and belief, each Defendant is an initial transferee of one or more of the 2021 Fraudulent Transfers [or] an entity for whose benefit one or more of the 2021 Fraudulent Transfers was made" are likewise deficient.  Compl. ¶¶ 90, 103, 112, 123, 127; *see* 5 Wright & Miller's Federal Practice & Procedure § 1224 (4th ed. 2025 update) ("[S]ince Rule 11 requires that allegations be based on a 'reasonable' inquiry, care must be exercised in terms of the pleader having a solid basis for pleading on information and belief.").  It is black letter law that, to survive a motion to dismiss, plaintiffs must make ***factual allegations*** sufficient to make their claims plausible on their face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Merely reciting the elements of a claim or stating legal conclusions is insufficient. *Oakwood Labs.*, 999 F.3d at 904; *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (allegations "upon information and belief" must be accompanied by non-conclusory "'factual allegations that make their theoretically viable claim plausible'").  "[T]he clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).  The Complaint's broad allegations—made against every defendant and recited in every relevant Count—are clearly nothing more than the legal elements re-hashed.  *See* Compl. ¶¶ 90, 103, 112, 123, 127.  As applied to Lim, moreover, such conclusory allegations contradict the numerous factual allegations in the Complaint describing the 2021 Share Repurchase as a single transaction between FTX and Binance, conducted at Binance's direction, where Binance

16

was both the de facto and the beneficial transferee.  *See* pp. 4-5, *supra*.  "[T]he court is not obligated to reconcile or accept such contradictory allegations."  *Bocker v. Hartzell Engine Techs., LLC*, No. 21-cv-1174,  2023 WL 415792, at *4 (D. Del. Jan. 26, 2023); *Amos v. Franklin Financial Servs. Corp.*, 509 F. App'x 165, 167 n.3 (3d Cir. 2013) (courts must dismiss complaints that plead facts inconsistent with defendants' liability).

Because the Complaint fails to plausibly allege recovery against Lim is appropriate under 11 U.S.C. § 550(a), the claims against Lim must be dismissed for failure to state a claim.

### III.    THE CLAIMS AGAINST LIM SHOULD BE DISMISSED FOR THE ADDITIONAL REASONS STATED BY THE OTHER DEFENDANTS

Numerous additional reasons independently require dismissal of the claims against Lim. Those reasons are stated in the other defendants' motions to dismiss and supporting materials.  For brevity, Lim adopts and incorporates those arguments here.

With respect to all claims against Lim (Counts I through V), Lim adopts and incorporates by reference the arguments in Digital Anchor Holdings Limited's Brief in Support regarding the need to dismiss all the fraudulent transfer claims in light of the arbitration provisions in the relevant transfer agreements.  Adv. D.I. 63 at 6-10.  The agreements to which Lim is a nominal party have identical arbitration provisions to those in the FTX Repurchase Agreement addressed by Digital Anchor Holdings Limited.  *Compare* Adv. D.I. 64-1 § 4.7 (FTX Repurchase Agreement), *with* Adv. D.I. 64-3 § 4.7 (Lim-Singh Agreement), *and* Adv. D.I. 64-4 § 4.7 (Lim-Wang Agreement). The agreements governing Lim's nominal sale of WRS shares thus demand arbitration of the fraudulent transfer claims to the same degree as the FTX Repurchase Agreement.

With respect to the constructive fraudulent transfer claims (Counts I, II, and V), Lim adopts and incorporates by reference the arguments made in the BHL Defendants' Brief in Support regarding the Safe Harbor provision under Bankruptcy Code Section 546(e).  *See* Adv. D.I. 67 at

12-15.  Lim also adopts and incorporates by reference the BHL Defendants' arguments that the constructive fraudulent transfer claims must be dismissed because the Complaint fails to plausibly allege that the Debtors were insolvent in July 2021, that the Debtors were rendered insolvent by the Share Repurchase Agreements, and that the Debtors did not receive reasonably equivalent value under those agreements.  Adv. D.I. 67 at 12-13, 17-20.

With respect to the intentional fraudulent transfer claims (Counts III and IV), Lim adopts and incorporates by reference the arguments made in the BHL Defendants' Brief in Support regarding the need to dismiss those claims for failing to adequately plead that the transfers were made with the requisite fraudulent intent.  Adv. D.I. 67 at 20-22.

## <u>CONCLUSION</u>

The claims against defendant Samuel Lim should be dismissed.

Dated: July 11, 2025
Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com

-and-

**MOLOLAMKEN LLP**
Justin V. Shur (admitted *pro hac vice*)
Walter H Hawes IV (admitted *pro hac vice*)
600 New Hampshire Ave., N.W.
Washington, D.C.  20037
Telephone: (202) 556-2005
Facsimile: (202) 556-2001
Email: jshur@mololamken.com
          whawes@mololamken.com

*Counsel for Defendant Samuel Wenjun Lim*