**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| FTX RECOVERY TRUST, FTX DIGITAL MARKETS, LTD. | |
| Plaintiffs, | |
| - against - | |
| BINANCE HOLDINGS LIMITED., BINANCE CAPITAL MANAGEMENT CO. LTD, BINANCE HOLDINGS (IE) LIMITED, BINANCE (SERVICES) HOLDINGS LIMITED, CHANGPENG ZHAO, DINGHUA XIAO, SAMUEL WENJUN LIM, and DOES 1-1000 | Adv. Pro. No. 24-50222 (KBO) |
| Defendants. | |

**DEFENDANT DINGHUA XIAO'S MEMORANDUM OF LAW IN SUPPORT OF HIS
<u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

**MELUNEY ALLEMAN & SPENCE LLC**

William M. Alleman, Jr. (#5449)
Matthew D. Beebe (#5980)
1143 Savannah Road, Suite 3-A
Lewes, DE 19958
Telephone: (302) 551-6740
Facsimile: (302) 551-6840
Email: Bill.Alleman@maslawde.com
          Matt.Beebe@maslawde.com

**DECHERT LLP**

Matthew L. Mazur (Admitted *pro hac vice*)
May Chiang (Admitted *pro hac vice*)
Hayoung Park (Admitted *pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Email: matthew.mazur@dechert.com
          may.chiang@dechert.com
          hayoung.park@dechert.com

*Counsel for Defendant Dinghua Xiao*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING ........................................................................... 1

RESERVATION OF RIGHTS AND LOCAL RULE 7012-1 STATEMENT ............................... 1

SUMMARY OF ARGUMENT ..................................................................................................... 2

STATEMENT OF FACTS ........................................................................................................... 3

ARGUMENT ............................................................................................................................... 5

I.   THIS COURT LACKS PERSONAL JURISDICTON OVER XIAO ................................... 5

   A.   Legal Standard ............................................................................................................ 5

   B.   Xiao Does Not Have Contacts with the United States ................................................ 6

     1.  Xiao Did Not Purposefully Direct His Activities at the United States ...................... 7

     2.  Alternatively, Asserting Jurisdiction over Xiao Would Be Unreasonable and Disadvantage Him in This Lawsuit .......................................................................... 12

II.  PLAINTIFFS FAIL TO STATE FRAUDULENT TRANSFER CLAIMS AGAINST XIAO ................................................................................................................. 15

   A.   Legal Standard .......................................................................................................... 15

   B.   Plaintiffs Fail to Allege that Xiao Was a Transferee or that the Alleged Transfers Were Made for His Benefit .......................................................................................... 16

     1.  Plaintiffs Fail to Allege that Xiao Was a Transferee .............................................. 17

     2.  Plaintiffs Fail to Allege that the Transfers Were Made for Xiao's Benefit ............ 20

III. THE FRAUDULENT TRANSFER CLAIMS AGAINST XIAO SHOULD BE DISMISSED FOR ADDITIONAL REASONS ................................................................... 21

CONCLUSION ......................................................................................................................... 22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Alstom SA*,
    406 F. Supp. 2d 346 (S.D.N.Y. 2005)......................................................................10

*In re Am. Int'l Refinery*,
    2009 WL 8602809 (Bankr. W.D. La. Dec. 22, 2009)..................................................9

*Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.*,
    480 U.S. 102 (1987).....................................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................15, 20

*In re Astropower Liquidating Tr.*,
    2006 WL 2850110 (Bankr. D. Del. Oct. 2, 2006) ....................................................11

*In re AstroPower Liquidating Tr.*,
    335 B.R. 309 (Bankr. D. Del. 2005) ...........................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................15, 20

*Bonded Financial Services, Inc. v. European American Bank*,
    838 F.2d 890 (7th Cir. 1988) ................................................................................17, 20

*Brinn v. McCracken Fin. Servs., Inc.*,
    1996 WL 79377 (D. Del. Feb. 20, 1996) ...................................................................11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)...............................................................................................11, 13

*Calder v. Jones*,
    465 U.S. 783 (1984).......................................................................................................8

*In re Capmark Fin. Grp. Inc.*,
    479 B.R. 330 (Bankr. D. Del. 2012) ...........................................................................9

*Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*,
    230 F.3d 934 (7th Cir. 2000) ......................................................................................9

*In re DBSI, Inc.*,
    467 B.R. 309 (Bankr. D. Del. 2012) .........................................................................12

*In re Direct Response Media, Inc.*,
    466 B.R. 626 (Bankr. D. Del. 2012) ...............................................................................17

*Dunn as Tr. of GCX Liquidating Tr. v. Barney*,
    2024 WL 667366 (Bankr. D. Del. Feb. 16, 2024) ............................................................5

*In re Factory 2–U Stores, Inc.*,
    2007 WL 2698207 (Bankr. D. Del. Sept. 11, 2007) .......................................................17

*In re Fedders N. Am., Inc.*,
    405 B.R. 527 (Bankr. D. Del. 2009) ...............................................................................16

*In re Fisker Auto. Holdings, Inc. S'holder Litig.*,
    2018 WL 4036412 (D. Del. Aug. 21, 2018) .....................................................................9

*Glynn v. EDO Corp.*,
    536 F. Supp. 2d 595 (D. Md. 2008) .................................................................................9

*In re Goodman Networks, Inc.*,
    2025 WL 73072 (Bankr. N.D. Tex. Jan. 10, 2025).........................................................19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).........................................................................................................7

*Hawk Mountain LLC v. Mirra*,
    2016 WL 3182778 (D. Del. June 3, 2016).....................................................................19

*In re Huffy Corp.*,
    358 B.R. 724 (Bankr. S.D. Ohio 2006)............................................................................9

*ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*,
    147 F. Supp. 2d 268 (D. Del. 2001)................................................................................5

*Imo Indus., Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998)............................................................................................7

*Jemez Agency, Inc. v. CIGNA Corp.*,
    866 F.Supp. 1340 (D.N.M. 1994)...................................................................................9

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007).......................................................................................6, 7

*In re Mervyn's Holdings, LLC*,
    426 B.R. 96 (Bankr. D. Del. 2010) .....................................................................15, 16, 17

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004)..............................................................................................5

*My Size, Inc. v. Mizrahi*,
    193 F. Supp. 3d 327 ...................................................................................................9

*Nat'l Corp. Hous., Inc. v. Ayres*,
    2012 WL 1081170 (E.D. Va. Mar. 28, 2012) ........................................................10

*In re Nazi Era Cases Against German Defendants Litig.*,
    153 F. App'x 819 (3d Cir. 2005) ...........................................................................12

*In re Oakwood Homes Corp.*,
    325 B.R. 696 (Bankr. D. Del. 2005) ......................................................................16

*OneScreen Inc. v. Hudgens*,
    2010 WL 1223937 (Del. Ch. Mar. 30, 2010) .........................................................10

*In re Pillowtex Corp.*,
    427 B.R. 301 (Bankr. D. Del. 2010) ................................................................16, 20

*Polar Electro Oy v. Suunto Oy*,
    2017 WL 3713396 (D. Del. Aug. 29, 2017) ...........................................................13

*In re Pursuit Cap. Mgmt., LLC*,
    595 B.R. 631 (Bankr. D. Del. 2018) .........................................................................6

*Regency Hous. & Drilling Ltd. P'ship v. Cohen*,
    1991 WL 190311 (Del. Super. Ct. Sept. 11, 1991) ..................................................9

*Rupp v. Markgraf*,
    95 F.3d 936 (10th Cir. 1996) .................................................................................17

*SEC v. Ahmed*,
    72 F.4th 379 (2d Cir. 2023) ...................................................................................12

*Shaffer v. Heitner*,
    433 U.S. 186 (1977)..........................................................................................6, 8, 9

*Stranahan Gear Co., Inc. v. NL Indus., Inc.*,
    800 F.2d 53 (3d Cir. 1986)........................................................................................6

*In re The Brown Schs.*,
    386 B.R. 37 (Bankr. D. Del. 2008) ....................................................................18, 21

*Tracinda Corp. v. Daimlerchrysler AG*,
    197 F. Supp. 2d 86 (D. Del. 2002).............................................................................9

*U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*,
    892 F. Supp. 2d 805 (N.D. Tex. 2012) ...................................................................18

iv

*In re Uni-Marts, LLC*,
    405 B.R. 113 (Bankr. D. Del. 2009) ...............................................................8, 11, 13

*In re USDigital, Inc.*,
    443 B.R. 22 (Bankr. D. Del. 2011) ...........................................................................16

*Vlandis v. Kline*,
    412 U.S. 441 (1973)....................................................................................................7

**Statutes**

11 U.S.C. § 550..................................................................................................................16

**Other Authorities**

Black's Law Dictionary (12th ed. 2024)...........................................................................11

Fed. R. Bankr. P. 7004.........................................................................................................6

Fed. R. Bankr. P. 7012.........................................................................................................5

Fed. R. Civ. P. 12................................................................................................................5

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs commenced this adversary proceeding on November 10, 2024.  Adv. D.I. 1.  The first five causes of action are brought against all Defendants, including Dinghua Xiao ("Xiao"), through which Plaintiffs allege fraudulent transfers and seek to void a 2021 transaction in which FTX repurchased approximately $1.76 billion worth of shares from Binance.  The sixth through ninth causes of action are non-bankruptcy tort claims brought against Binance and Changpeng Zhao only, and Plaintiffs seek to recover for allegedly false or misleading statements made immediately prior to FTX's collapse in late 2022.

On May 16, 2025, Defendants Binance Holdings Limited, Binance Holdings (IE) Limited, Binance (Services) Holdings Limited, and Digital Anchor Holdings Limited (collectively, the "Corporate Defendants") filed motions to dismiss and compel arbitration.  Adv. D.I. 63, 67.  On June 2, 2025, this Court approved the parties' stipulation and ordered Xiao's motion to dismiss to be filed no later than July 11, 2025.  Adv. D.I. 80.

Defendant Xiao respectfully submits this memorandum of law in support of his motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), and (6), as made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

## RESERVATION OF RIGHTS AND LOCAL RULE 7012-1 STATEMENT

Under FRBP 7012 and LBR 7012-1, in this pending adversary proceeding, Case No. 24-50222 (KBO), under the Chapter 11 case of the above-captioned debtors, Case No. 22-11068 (KBO), Xiao does not presently consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

Filing this Motion does not, and is not intended to, waive Xiao's right to: (a) contest the subject matter, personal jurisdiction, or venue of this Bankruptcy Court with respect to Xiao;

1

(b) have final orders in non-core matters entered only after *de novo* review by a United States District Court; (c) have the reference withdrawn by a United States District Court in any matter subject to mandatory or discretionary withdrawal; and (d) a jury trial on any and all claims and counterclaims. Accordingly, this Motion should not be construed as a waiver of any of these or any other rights. Xiao expressly reserves any and all other available rights.

## SUMMARY OF ARGUMENT

1.      The Court lacks personal jurisdiction over Xiao. Xiao is an Australian national who lives in China and has never worked in the United States. Plaintiffs rely on his status as a nominee shareholder holding shares on behalf of his former employer, Binance (a non-U.S. entity), to hale him into bankruptcy court in the United States. Xiao's only contact with the United States, however, is his nominal ownership of shares of a company based in the United States, for which he was not a director, officer, or employee. Under these circumstances, Xiao has not purposefully directed any activities to the United States. Alternatively, even if this Court finds that Plaintiffs alleged sufficient minimum contacts with the United States (it should not), the Court's exercise of personal jurisdiction over Xiao would be unreasonable, thereby violating his Due Process rights. Thus, the Court should dismiss the Complaint as to Xiao for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

2.      Plaintiffs also fail to state fraudulent transfer claims against Xiao. Plaintiffs do not allege that Xiao actually received any Debtor property from the transfers or that Xiao had any dominion or control over the funds at issue. Likewise, there is no allegation in the Complaint that Xiao received any benefit from the transfers. Accordingly, Plaintiff cannot meet the requirement of Section 550 of the

Bankruptcy Code and all the fraudulent transfer claims against Xiao must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

3.      Additionally, as explained in the Corporate Defendants' briefing, Plaintiffs' fraudulent transfer claims are barred by arbitration clauses in the relevant agreements, the safe harbor provision of 11 U.S.C. § 546(e), and because Plaintiffs do not plausibly allege that the transferring Debtors were insolvent at the time of the transfer.   Rather than recite those arguments, Xiao incorporates them by reference in full.

### STATEMENT OF FACTS

As this Court is familiar with the events giving rise to this litigation, the following facts drawn from the allegations in the Complaint are limited to those that pertain to Xiao.

Plaintiffs allege that Xiao "worked at Binance from approximately 2017 to September 2019 at various Binance subsidiaries, including BitDJ in Tokyo, Japan, and Ruique Culture Development Co, Ltd., in Shanghai, China." Compl. ¶ 26. Binance was founded by Changpeng Zhao in 2017 and "operates through a number of affiliated entities, in multiple jurisdictions, all tied to Zhao as the beneficial owner." *Id.* ¶¶ 2, 29.

Plaintiffs allege that Binance and certain executives, including Xiao, "purchased 200,000 WRS Shares in the aggregate (equaling approximately 18.4% stake in WRS) pursuant to a founders restricted stock purchase agreements dated February 28, 2020 for an aggregate purchase price of two dollars." *Id.* ¶¶ 3, 37. Plaintiffs further allege that "[i]n July 2021, Bankman-Fried and FTX entered into discussions with Binance regarding a potential repurchase of the FTX Trading and WRS shares held by Binance and the Binance Executives (the "2021 Share Repurchase")." *Id.* ¶ 38. According to Plaintiffs, the 2021 Share Repurchase was consummated on or about July 15,

2021, when the parties executed seven written agreements, including a July 15, 2021 Share Transfer Agreement for the transfer of 42,838 WRS Shares from Xiao to Bankman-Fried and a July 15, 2021 Share Transfer Agreement for the transfer of 10,423 WRS Shares from Xiao to Wang (collectively, "2021 Share Transfer Agreements"). *Id.* As alleged in the Complaint, Xiao was only a "nominal counterparty" to these agreements, which were ultimately for Binance's benefit. *Id.* ¶ 82.

Plaintiffs identify Binance as the "Transferee" with respect to the 2021 Share Transfer Agreements and admit that Xiao was a "nominal counterparty." *Id.* Plaintiffs allege that in exchange for the transfer of WRS shares, as relevant to Xiao, FTX and its executives agreed to pay consideration in BUSD with Alameda Ltd. ("Alameda") serving as "the direct transferor of all of the consideration in connection with the 2021 Share Repurchase." *Id.* ¶¶ 39, 43. For the BUSD portion of the consideration: (1) Alameda first "transferr[ed] at least $721 million U.S. dollars to a New York trust maintained by an entity called 'Paxos,'" which served as the issuer of BUSD on Binance's behalf; (2) Paxos then "'minted' an equivalent amount of BUSD and transferred it to Alameda"; (3) Alameda then "transferred the BUSD to an Alameda-controlled account on the Binance.com exchange (which account was held in the name of Evergreen North Ltd. ('Evergreen'))"; and (4) "[i]mmediately thereafter, . . . Alameda directed the transfer of the BUSD from the Evergreen Binance.com account directly to one or more Binance entities." *Id.* ¶ 43. As Plaintiffs acknowledge, the share transfers were "made by the Debtor Plaintiffs (funded directly by Alameda) to Binance." *Id.* ¶ 45.

The Complaint contains no allegation that any funds were transferred to Xiao or that he benefitted in any way from the 2021 Share Repurchase.

4

## ARGUMENT

### I.    THIS COURT LACKS PERSONAL JURISDICTON OVER XIAO

Xiao's mere ownership of shares, as a nominee shareholder, in a company based in the United States is insufficient to justify this Court's jurisdiction over him because he did not purposefully direct any activities to the United States.  Alternatively, even if this Court finds that Plaintiffs alleged sufficient minimum contacts (it should not), it should still dismiss Xiao from this case because it would be unfair and prejudicial for Xiao to defend himself in the United States, a country he has never worked in or directed business towards.  Either way, the Court should dismiss the Complaint as to Xiao for lack of personal jurisdiction.

### A.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a court must dismiss a complaint when it lacks personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).[1]  To survive a motion to dismiss, "a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendant[]." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  Although a plaintiff "is entitled to have all reasonable inferences drawn in its favor, it bears the burden of alleging facts sufficient to make a *prima facie* showing of" the court's personal jurisdiction over the defendant. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 270–71 (D. Del. 2001).  To do so, a plaintiff must present in its complaint sufficient facts to "establish with reasonable particularity" that personal jurisdiction exists. *Id.* at 271.

Unlike the analysis under Rule 12(b)(6), the Court may consider information beyond the pleadings during its review under Rule 12(b)(2).  If a defendant submits an "opposing affidavit"

---

[1] Rule 12(b)(2) is "made applicable to this adversary proceeding by" Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. *Dunn as Tr. of GCX Liquidating Tr. v. Barney*, 2024 WL 667366, at *3 (Bankr. D. Del. Feb. 16, 2024); Fed. R. Bankr. P. 7012(b).

that "contradicts the complaint's allegations" regarding personal jurisdiction, "a plaintiff must present similar evidence in support of personal jurisdiction." *In re Pursuit Cap. Mgmt., LLC*, 595 B.R. 631, 646 (Bankr. D. Del. 2018).  With this affidavit, the plaintiff's burden rises from needing "reasonable particularity" in the complaint to requiring "actual proofs, not mere allegations," such as "sworn affidavits or other competent evidence." *Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 58 (3d Cir. 1986) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir. 1984)).

**B.    Xiao Does Not Have Contacts with the United States**

Personal jurisdiction in the bankruptcy context is governed by Rule 7004(f) of the Federal Rules of Bankruptcy Procedure, which requires "exercising jurisdiction" to be "consistent with the United States Constitution and laws."  Fed. R. Bankr. P. 7004(f); *see also In re AstroPower Liquidating Tr.*, 335 B.R. 309, 317 (Bankr. D. Del. 2005).  Because Rule 7004(d) permits service of process "anywhere within the United States," the Court must determine whether exercising personal jurisdiction over Xiao in the United States would comply with the Due Process Clause of the United States Constitution.  Fed. R. Bankr. P. 7004(d).

The "central concern" of the constitutional analysis is "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).  The Due Process Clause "requires that nonresident defendants have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Courts have outlined two types of personal jurisdiction: general jurisdiction and specific jurisdiction.  "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." *Id.*  "For an individual, the paradigm forum for the

6

exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "Domicile" means the person's "true, fixed and permanent home and place of habitation" where the person "has the intention of returning." *Vlandis v. Kline*, 412 U.S. 441, 454 (1973). Here, Xiao is not domiciled in the United States. He is an Australian national who lives in China. Xiao's Declaration in Support of His Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction ("Xiao Decl.") ¶¶ 4, 5. He has never worked in the United States. *Id.* ¶ 5. Therefore, this court does not have general jurisdiction over Xiao.

Turning to specific jurisdiction, the Third Circuit has outlined a three-step test to determine whether a court has personal jurisdiction over a defendant:

> First, the defendant must have "'purposefully directed' his activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. [*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).] Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

*Marten*, 499 F.3d at 296. As discussed below, Plaintiffs do not—and cannot—demonstrate with particularity that this Court has specific jurisdiction over Xiao.

1.    Xiao Did Not Purposefully Direct His Activities at the United States

To establish a defendant's personal jurisdiction, the plaintiff must show the defendant had "sufficient minimum contacts with the forum." *Imo Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (internal quotation marks omitted). This is done by pleading, with particularity, that the defendant "has purposefully directed its activities toward the residents of the forum . . . or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357

7

U.S. 235, 253 (1958)). In the bankruptcy context, the forum is the United States rather than the state in which the court sits. *In re Uni-Marts, LLC*, 405 B.R. 113, 122 (Bankr. D. Del. 2009). "Each defendant's contacts with the forum . . . must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

Here, this Court's exercise of personal jurisdiction over Xiao would violate the Due Process Clause because Plaintiffs have not shown that Xiao directed any activity towards the United States such that he could reasonably anticipate defending these claims against him. Plaintiffs' allegations make clear that Xiao worked for non-U.S. Binance entities in Japan and China. Compl. ¶¶ 21-24, 26. Plaintiffs' only allegation that is arguably relevant to the personal jurisdiction issue is that Xiao purchased shares in WRS, a Delaware corporation, which he did from outside the United States as nominee for non-U.S. Binance entities. *See id.* ¶¶ 15, 21–24, 26, 37, 82. Moreover, the 2021 Share Transfer Agreements state that they will be governed by the laws of Hong Kong, and that any claim arising out of them will be resolved in arbitration in Hong Kong. Adv. D.I. 64-5 § 4.7; Adv. D.I. 64-6 § 4.7. There are no allegations that Xiao otherwise purposefully directed any activities to the United States. The pled facts utterly fail to make a *prima facie* case that this Court has personal jurisdiction over Xiao.

Courts have routinely held that merely being a passive shareholder of a company based in the forum, without more, is insufficient contact to establish personal jurisdiction. In the seminal case *Shaffer v. Heitner*, the U.S. Supreme Court stated:

> [I]t strains reason to suggest that anyone buying securities in a corporation formed in Delaware impliedly consents to subject himself to Delaware's jurisdiction on any cause of action. . . . [Defendants] did not by acquiring those interests surrender their right to be brought to judgment only in States with which they had had minimum contacts.

433 U.S. 186, 216 (1977) (cleaned up).   Other courts have echoed this ruling, finding that additional contacts beyond share ownership are required to establish personal jurisdiction.  *See, e.g.*, *My Size, Inc. v. Mizrahi*, 193 F. Supp. 3d 327, 333–34 (D. Del. 2016) ("The Delaware Chancery Court has held that merely owning the stock is not enough to satisfy the constitutional test of minimum standards.") (cleaned up); *cf. Regency Hous. & Drilling Ltd. P'ship v. Cohen*, 1991 WL 190311, at *4 (Del. Super. Ct. Sept. 11, 1991) (holding that the nonresident defendant's "status as a limited partner alone" was insufficient contacts).   Such activities may include, for example, serving as an officer and/or employee of the company, *In re Capmark Fin. Grp. Inc.*, 479 B.R. 330, 341 (Bankr. D. Del. 2012); engaging in the company's functions as a director, such as by participating in board meetings, *In re Fisker Auto. Holdings, Inc. S'holder Litig.*, 2018 WL 4036412, at *13 (D. Del. Aug. 21, 2018); and preparing and filing the company's regulatory disclosures, *Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 86, 95 (D. Del. 2002).[2]

---

[2] Courts around the country have likewise held that being a passive shareholder, rather than an active director/employee, does not create personal jurisdiction.  *Compare, e.g.*, *In re Am. Int'l Refinery*, 2009 WL 8602809, at *8–10 (Bankr. W.D. La. Dec. 22, 2009) ("A defendant's investment in a company that is based in the forum is generally not a sufficient basis for personal jurisdiction."); *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 604–05 (D. Md. 2008) ("[W]hile directors of corporations may be subject to suit in the corporation's home state when such directors have the affairs of the corporation entrusted to them, mere employees or stockholders are not subject to jurisdiction solely on the basis of employment or stock ownership.") (cleaned up); *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F.Supp. 1340, 1348 (D.N.M. 1994) ("No one would seriously argue that an individual shareholder could, consistent with due process, be required to defend suit in a distant state merely because the corporation does business or committed torts there (assuming, of course, that the corporation is not the individual's alter ego)."), *with In re Huffy Corp.*, 358 B.R. 724, 736–38 (Bankr. S.D. Ohio 2006) (finding personal jurisdiction where the defendants "fully embraced" the company by becoming officers of its subsidiaries and "contracted to enhance their wealth with [company] stock options tied to their performance on behalf of" the company, which "contemplated a long continuing relationship with" the company that "they apparently thought would benefit them"). *Cf. Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (holding that, for a corporate parent owning shares in a subsidiary, "personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an

Here, Xiao did not have any involvement in the operations of WRS, which the Complaint makes clear was controlled by Sam Bankman-Fried. Compl. ¶ 36. Xiao's only connection to this suit is that he worked for "various . . . subsidiaries" of a non-U.S. company (Binance) and served as a nominee shareholder of WRS. *Id.* ¶ 26. He did not serve as a board member, director or employee of WRS and did not direct WRS's company affairs. Xiao Decl. ¶ 11. By merely holding WRS shares as a nominee for Binance without taking any active role in WRS, Xiao did not "purposefully avail" himself to the United States or "surrender [his] right to be brought to judgment" in this litigation.

Ownership of stock, on its own, cannot subject the shareholder to personal jurisdiction unless the litigation "relat[es] directly to the legal existence of stock or its character or attributes." *OneScreen Inc. v. Hudgens*, 2010 WL 1223937, at *5 (Del. Ch. Mar. 30, 2010). "A stock's attributes or characteristics may include such issues as voting rights, liquidation preferences, or the authenticity of certificates." *Id.* at *5 n.39 (internal quotations omitted). In *OneScreen*, the court found the plaintiff's efforts to "void a *transfer* of stock on the grounds that the transfer violated a criminal statute" in one state "does not relate directly to the legal existence, rights, characteristics, or attributes of stock in a Delaware corporation" and thus does not create personal jurisdiction over the defendant. *Id.* at *6. The case against Xiao does not relate to the legal existence, character, or attributes of the WRS stock. Rather, Plaintiffs seek to void the transfer of

unusually high degree of control over the subsidiary"); *Nat'l Corp. Hous., Inc. v. Ayres*, 2012 WL 1081170, at *8 (E.D. Va. Mar. 28, 2012) (finding the defendant employees did not "exercis[e] the privilege of conducting business on their own behalf in Virginia or with Virginia-based customers or vendors" because they "did not act in their individual capacity when interacting with Virginia-based colleagues, customers or vendors but rather acted on behalf of their employer . . . , who controlled which activities and duties were assigned to them"); *In re Alstom SA*, 406 F. Supp. 2d 346, 399 (S.D.N.Y. 2005) (holding the defendant's "status as a *Board member* in itself, even if he in some respect oversaw" the company's execution of a contract, "is too tenuous a connection to plausibly claim that this status alone" created personal jurisdiction) (emphasis added).

WRS stock.  Compl. ¶ 8.  Therefore, Xiao's ownership of the shares alone cannot be sufficient contact to establish personal jurisdiction.

Additionally, "merely entering into a contract with a forum resident" does not on its own establish minimum contacts.  *In re Uni-Marts, LLC*, 405 B.R. at 123; *Brinn v. McCracken Fin. Servs., Inc.*, 1996 WL 79377, at *4 (D. Del. Feb. 20, 1996).  Without other factors, such as affirmatively reaching out to the in-forum counterparty to form the relationship or negotiate the agreement, the defendant has not sufficiently directed activities toward the forum for personal jurisdiction purposes.  *See In re Astropower Liquidating Tr.*, 2006 WL 2850110, at *6 (Bankr. D. Del. Oct. 2, 2006) (finding that the defendants "did not reach out to the Debtor; instead it was the Debtors . . . who deliberately reached out beyond the United States and contracted with" the defendants, and that the defendants did not engage in any negotiations with the counterparty).  Here, Xiao's only contract with WRS was the 2020 agreement to purchase shares.  Compl. ¶ 37.  This agreement alone is inadequate to establish jurisdiction over Xiao.

Finally, jurisdiction over an individual cannot exist "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up).  Instead, the contacts must "proximately result from actions by the defendant *himself* that create a substantial connection with the forum State."  *Id.* (cleaned up).  Here, Xiao's ownership of shares in WRS is exactly the type of contact that the Supreme Court deemed insufficient in *Burger King*.  By Plaintiffs' own admission, Xiao was a "nominal counterparty" to the WRS stock transactions on behalf of Binance, Compl. ¶ 82, meaning his role was minimal and he did not have any significant rights or responsibilities under the 2021 Share Transfer Agreements.  *See, e.g.*, *Nominee*, Black's Law Dictionary (12th ed. 2024) ("A party who holds bare legal title for the benefit of others or who

11

receives and distributes funds for the benefit of others."); *SEC v. Ahmed*, 72 F.4th 379, 408 (2d Cir. 2023), *cert. denied sub nom. Ahmed v. SEC*, 144 S. Ct. 2658 (2024), and *cert. denied sub nom. Ahmed v. SEC*, 144 S. Ct. 2658 (2024) ("A 'nominee' holds bare legal title to an asset but is not its true equitable owner.").  There is no indication that any funds were transferred to Xiao or that he received any benefit from the 2021 Share Repurchase.  To the contrary, the BUSD was transferred to a Binance corporate account.  Compl. ¶ 43.

Consequently, because Xiao did not purposefully direct his activities towards the United States or otherwise purposefully avail himself of any of the privileges of conducting business in this country, the Court lacks jurisdiction over Xiao and, therefore, the Complaint should be dismissed.

> ### 2. Alternatively, Asserting Jurisdiction over Xiao Would Be Unreasonable and Disadvantage Him in This Lawsuit

The Court should also decline to exercise jurisdiction over Xiao because Plaintiffs' pursuit of this case against him fails to comport with "fair play and substantial justice."

If a plaintiff makes "a *prima facie* case of minimum contacts" (which Plaintiffs have not), courts examine whether "'some other considerations would render jurisdiction unreasonable' and would make litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.'"  *In re DBSI, Inc.*, 467 B.R. 309, 315 (Bankr. D. Del. 2012) (quoting *Burger King*, 471 U.S. at 478)).  "A weak minimum contacts showing requires greater emphasis on reasonableness."  *In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 825 (3d Cir. 2005).  Courts assess several factors when evaluating this prong, including (1) "the burden on the defendant"; (2) "the forum State's interest in adjudicating the dispute"; (3) the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the

shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

With foreign defendants like Xiao, the "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness" of exercising personal jurisdiction. *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 114 (1987). This analysis prevents instances where "the serious burdens on an alien defendant" are "outweighed by minimal interests on the part of the plaintiff or the forum." *Id.* at 115. As with the contacts analysis, "the relevant forum is the United States and . . . the inquiry is whether it is burdensome to litigate in the United States as a whole." *In re Uni-Marts, LLC*, 405 B.R. at 124.

The District Court's decision in *Polar Electro Oy v. Suunto Oy* is instructive. Despite the foreign defendant having sufficient contacts with the forum (a factor not present here), the court dismissed the complaint because "the plaintiff's interest and the state's interest in adjudicating the dispute are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." 2017 WL 3713396, at *9 (D. Del. Aug. 29, 2017) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)). Specifically, the court determined the first factor (burden on defendant) "weigh[ed] strongly" in the defendant's favor because the defendant had "no physical presence in the United States," such as "real estate, employees or agents," and "would also have to submit to a foreign nation's judicial system." *Id.* at *4–5. For this factor, courts often "analyze the burden of traversing the distance" to get to the court. *Id.* at *4 (cleaned up). For the fourth factor (the interstate and international justice system's interest in obtaining efficient resolution of controversies), the court found it weighed in the

13

defendant's favor largely because "the production of witnesses and evidence" would disproportionately affect the defendants if the case occurred in Delaware but would not prejudice the plaintiff if it occurred elsewhere. *Id.* at *7–8.

Here, it would be similarly unreasonable for the Court to assert jurisdiction over Xiao. Most notably, the burden on Xiao would be significant. He is an Australian national who lives in China. Xiao Decl. ¶¶ 4, 5. He is a former employee of a non-U.S. Binance entity and has never worked in the United States. *Id.* ¶¶ 5, 7–8. He does not own any real estate or other assets in the United States. *Id.* ¶ 6. He has never interacted with the United States court system. Meeting discovery obligations would be very difficult, costly, and inefficient for both Xiao and the courts. This is especially true because of Chinese data protection laws that impose an onerous third-party review process before electronically stored information can leave the People's Republic of China to even be viewed by U.S. attorneys. Therefore, requiring Xiao to defend himself in the United States would be prejudicial to him.

By contrast, Plaintiffs do not have a strong interest in adjudicating the dispute against or obtaining relief from Xiao. The transfers of BUSD in exchange for the shares that Xiao nominally owned are alleged to represent a meager 0.4% of the amount Plaintiffs seek to recover. Compl. ¶ 82 (alleging 8.13 million in BUSD to be at issue in the shares where Xiao was a nominal counterparty). And even for those two transactions, Xiao was only a "nominal counterparty" without any significant rights or responsibilities, who did not receive any of the funds. *Id.* Plaintiffs' principal dispute is with Binance, which is already a party to this case.

In sum, because Xiao, a nonresident defendant, foreign citizen, and nominee shareholder, has had no direct contact with the United States, and because the "serious burdens" necessary to

14

defend himself in this case significantly outweigh Plaintiffs' interests, this Court should dismiss the Complaint against him for lack of personal jurisdiction.

## II.     PLAINTIFFS FAIL TO STATE FRAUDULENT TRANSFER CLAIMS AGAINST XIAO

Plaintiffs' allegations fail to establish that Xiao was a transferee because there is no allegation that Xiao actually received the funds, which were in fact transferred to Binance, or that Xiao had any dominion and control over the funds that he never received.  Plaintiffs likewise fail to establish that the transfers were made for Xiao's benefit.  Because Plaintiffs' allegations are insufficient to meet the statutory requirement of Section 550 of the Bankruptcy Code, the Court should dismiss the Complaint as to Xiao for failure to state a claim.

### A.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "serves to test the sufficiency of the factual allegations in a plaintiff's complaint." *In re Mervyn's Holdings, LLC*, 426 B.R. 96, 100–01 (Bankr. D. Del. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)).  Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must "provide the grounds of his 'entitle[ment] to relief'" which "requires more than labels and conclusions" or "a formulaic recitation of the elements." *Id.* at 555 (citation omitted).  "Factual allegations must be enough to raise a right to relief *above the speculative level* . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (emphasis added) (citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Trombly*, 550 U.S. at 557).  Accordingly, a court is not

15

required to "credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *In re Mervyn's Holdings, LLC*, 426 B.R. at 101 (quoting *Sands v. McCormick*, 502 F.3d 263, 267–68 (3d Cir. 2007)).

In general, Federal Rule of Civil Procedure 9(b) "requires those asserting fraudulent transfer claims in bankruptcy proceedings to plead them with specificity." *In re Fedders N. Am., Inc.*, 405 B.R. 527, 544 (Bankr. D. Del. 2009) (citations omitted); *see also In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) (citations omitted) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud."). While "[t]he requirements of Rule 9(b) are relaxed and interpreted liberally where a trustee, or trust formed for the benefit of creditors . . . is asserting the fraudulent transfer claims," *id.*, "these relaxed Rule 9(b) requirements require the trustee to do more than merely identify the allegedly fraudulent transfers." *In re USDigital, Inc.*, 443 B.R. 22, 34 (Bankr. D. Del. 2011) (citation omitted). *See also In re Pillowtex Corp.*, 427 B.R. 301, 311 (Bankr. D. Del. 2010) (dismissing fraudulent transfer claim under § 548 where the complaint "merely recites the statutory language of § 548(a) of the Bankruptcy Code and completely lacks any factual allegations to support a fraudulent transfer claim" and thereby "fails to meet the pleading requirements set forth in *Twombly* and [*Iqbal*]").

**B.    Plaintiffs Fail to Allege that Xiao Was a Transferee or that the Alleged Transfers Were Made for His Benefit**

Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the value of an avoidable transfer only from "the initial transferee of such transfer or the entity for whose benefit such transfer was made" or "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). Here, however, Plaintiffs fail to allege that Xiao was a transferee or that the alleged transfers were made for his benefit. This deficiency is fatal to all five counts of fraudulent

16

transfer claims against Xiao. *See In re Direct Response Media, Inc.*, 466 B.R. 626, 656 (Bankr. D. Del. 2012) ("Just as with the actual fraud claims, the constructive fraud claims are subject to the § 550 statutory requirement that the defendant was an initial transferee of the transfer, or the entity for whose benefit the transfer was made.").

### 1.    Plaintiffs Fail to Allege that Xiao Was a Transferee

As an initial matter, the Complaint does not allege that Xiao was a "transferee" because the Complaint (1) fails to allege that Xiao received any funds; (2) alleges the funds were transferred to Binance, not Xiao; (3) uses impermissible group pleading; and (4) bases its claims against Xiao on conclusory allegations. *See, e.g.*, *Rupp v. Markgraf*, 95 F.3d 936, 942 (10th Cir. 1996) ("In order to be a transferee of the debtor's funds, one must (1) actually receive the funds, and (2) have full dominion and control over them for one's own account, as opposed to receiving them in trust or as agent for someone else . . . .").

The Bankruptcy Code does not define the term "transferee," but this Court has adopted the "dominion and control" test prescribed in *In re Factory 2–U Stores, Inc.,* 2007 WL 2698207, at *3 (Bankr. D. Del. Sept. 11, 2007), which adopts the Seventh Circuit's decision in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988). *See In re Mervyn's Holdings, LLC*, 426 B.R. at 102–03. In *Bonded Financial*, the Seventh Circuit explained that a "transferee" requires "dominion over the money or other asset, the right to put the money to one's own purposes." *Bonded Fin. Servs., Inc.*, 838 F.2d at 893; *see also id.* at 894 (explaining that "transferee" "must mean something different from 'possessor' or 'holder' or 'agent'" and cannot just be "anyone who touches the money"). Thus, "[a] transferee must have the legal right to use the funds to whatever purpose he or she wishes, be it to invest in 'lottery tickets or uranium stocks.'" *In re Factory 2-U Stores, Inc.*, 2007 WL 2698207, at *3 (quoting *In re Anton Noll, Inc.*, 277 B.R. 875, 879 (B.A.P. 1st Cir. 2002)).

As Plaintiffs admit in the Complaint, Xiao was at most a "nominal counterparty" to the 2021 Share Transfer Agreements, and Binance was the "Transferee." Compl. ¶ 82. While painstakingly describing the details of the transfer concerning the BUSD portion of the consideration in connection with the 2021 Share Repurchase, Plaintiffs only allege that "Alameda directed the transfer of the BUSD from the Evergreen Binance.com account *directly to one or more Binance entities*." *Id.* ¶ 43 (emphasis added); *see also id.* ¶ 45 ("The transfers made by the Debtor Plaintiffs (funded directly by Alameda) *to Binance* . . . .") (emphasis added). Plaintiffs do not—and cannot—allege that the funds from the 2021 Share Repurchase were transferred directly to Xiao or that Xiao ever received the funds. Where, as here, a defendant has not even received the funds from the alleged fraudulent transfer, that defendant cannot have "dominion or control" over those funds to fall within the meaning of a transferee under Section 550. *See, e.g.*, *In re The Brown Schs.*, 386 B.R. 37, 54 (Bankr. D. Del. 2008) (dismissing actual and constructive fraudulent transfer claims where, *inter alia*, "the Trustee has not identified any transfer made to [the defendant]"); *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, 892 F. Supp. 2d 805, 820–21 (N.D. Tex. 2012), *aff'd*, 761 F.3d 409 (5th Cir. 2014), *as revised* (Sept. 2, 2014) ("[B]ecause [the defendant] did not receive the payments, it was not 'the initial transferee.'").

Moreover, not only does the Complaint fail to allege that Xiao received any funds, the 2021 Share Transfer Agreements themselves show that all funds were transferred to Binance, not Xiao. Section 1.3 of the 2021 Share Transfer Agreements provides that "On the Closing Date . . . Purchaser shall pay 100% of the Purchase Price to Seller in BUSD to the wallet designated by the Seller in writing." Adv. D.I. 64-5 § 1.3 (Xiao–Bankman-Fried Share Transfer Agreement), *and* Adv. D.I. 64-6 § 1.3 (Xiao–Wang Share Transfer Agreement). Section 4.3 of the 2021 Share Transfer Agreements further provides that all notices under the Agreements, whether to or from

18

the Purchaser or the Seller, are required to be given to Binance's Hon Ng and Binance's Legal Department, not Xiao.[3]   Adv. D.I. 64-5 § 4.3; Adv. D.I. 64-6 § 4.3.   There is no allegation in the Complaint that Xiao had anything to do with the negotiations over the 2021 Share Transfer Agreements or the wallet where the BUSD was sent.   FTX, as the counterparty to the 2021 Share Transfer Agreements, is in the unique position of knowing who designated the wallet in accordance with the agreements, but it nowhere alleges that it was Xiao.

To the extent Plaintiffs rely on the Complaint's general allegations that the transfers were made to "Binance Executives" or "Defendants," *see, e.g.*, Compl. ¶ 1 ("transfer of at least *$1.76 billion* worth of cryptocurrency to its equity holder Binance and certain Binance executives") (emphasis in original); *id.* ¶ 8 ("at least $1.76 billion that was fraudulently transferred to Binance and its executives"); *id.* ¶¶ 94, 107, 117 ("made the 2021 Fraudulent Transfers to or for the benefit of the Defendants"), such group pleading cannot satisfy even Rule 8 notice pleading, much less the particularity required under Rule 9.   In *In re Goodman Networks, Inc.*, 2025 WL 73072 (Bankr. N.D. Tex. Jan. 10, 2025), the court found the complaint to be "plagued" with similar group pleading issues regarding certain named defendants who were grouped because, *inter alia*, "roughly $5.2 million of the $44 million transferred from AMRR to the Defendants is unaccounted for and could have plausibly been distributed to any of the Defendants." *Id.* at *8.   Thus, the court dismissed the fraudulent transfer claims as to certain defendants whom "the Trustee designate[d] . . . as subsequent transferees without sufficient justification for doing so." *Id.*; *see also, e.g.*, *Hawk Mountain LLC v. Mirra*, 2016 WL 3182778, at *16 (D. Del. June 3, 2016), *report and recommendation adopted*, 2016 WL 4541032 (D. Del. Aug. 31, 2016) (holding group pleading

---

[3] Six of the agreements listed in Complaint ¶ 38 designated Binance as the entity to receive notice, regardless of the Seller's identity.   *See* Adv. D.I. 64-1 § 4.3; Adv. D.I. 64-2 § 4.3; Adv. D.I. 64-3 § 4.3; Adv. D.I. 64-4 § 4.3; Adv. D.I. 64-5 § 4.3; Adv. D.I. 64-6 § 4.3.

19

"improper . . . pursuant to Rule 9(b)").  Similarly, Plaintiffs' group pleading here falls short of demonstrating that Xiao was a transferee.

Plaintiffs' "formulaic recitation of the elements" to allege "each Defendant is an initial transferee" fares no better.  *Twombly*, 550 U.S. at 570.  *See* Compl. ¶¶ 90, 103, 112, 123, 127 ("Upon information and belief, each Defendant is an initial transferee of one or more of the 2021 Fraudulent Transfers, an entity for whose benefit one or more of the 2021 Fraudulent Transfers was made, or an immediate or mediate transferee of one or more of the 2021 Fraudulent Transfers.").  As the U.S. Supreme Court cautioned, "Rule 8 does not empower [Plaintiffs] to plead the bare elements of [their] cause of action, affix the label 'general allegation,' and expect [their] complaint to survive a motion to dismiss."  *Iqbal*, 556 U.S. at 687.  Because Plaintiffs cannot plead sufficient facts to show that Xiao is a transferee, Plaintiffs end up resorting to pure speculation that Xiao received funds and is therefore a transferee.  And in order to do so, Plaintiffs ignore the only documentary evidence that ties Xiao to the 2021 Share Repurchase—the 2021 Share Transfer Agreements—which support the contrary notion that all funds were transferred to Binance.  As a result, Plaintiffs "merely recite[] the statutory language of § 548(a) of the Bankruptcy Code and completely lack[] any factual allegations to support a fraudulent transfer claim," which "fails to meet the pleading requirements set forth in *Twombly* and [*Iqbal*] . . . and should be dismissed pursuant to Rule 12(b)(6)."  *See In re Pillowtex Corp.*, 427 B.R. at 311.

2.    Plaintiffs Fail to Allege that the Transfers Were Made for Xiao's Benefit

"The paradigm 'entity for whose benefit such transfer was made' is a guarantor or debtor—someone who receives the benefit but not the money."  *Bonded Fin. Servs.*, 838 F.2d at 895.  Absent from the Complaint is any allegation that Xiao was a guarantor or a debtor or that he received any benefit from the transfers.  To the contrary, the Complaint alleges that the 2021 Share Repurchase was the product of "discussions with Binance," Compl. ¶ 38, and made "for the benefit

20

of the Defendants," *id.* ¶¶ 82, 94, 107, 117. *See also id.* ¶ 29 ("Binance operates through a number of affiliated entities, in multiple jurisdictions, **all tied to Zhao as the beneficial owner**.") (emphasis added). Accordingly, Plaintiffs fail to sufficiently allege that Xiao received any benefit from the transfers and as a result, the fraudulent transfer claims cannot stand. *See In re The Brown Schs.*, 386 B.R. at 54 (concluding that the trustee failed to state a claim for actual or constructive fraud because "[m]erely being an employee of a transferee is insufficient, without more, to establish that [the employee] was the transferee or benefitted from the transfer").

\*                    \*                    \*

In sum, Plaintiffs' allegations fall woefully short of demonstrating that Xiao had any dominion or control over the funds, let alone actually received the funds, or that the transfers were made for Xiao's benefit. As Plaintiffs have failed meet the statutory requirement of Section 550, this Court should dismiss the Complaint for failure to state a claim.

## III. THE FRAUDULENT TRANSFER CLAIMS AGAINST XIAO SHOULD BE DISMISSED FOR ADDITIONAL REASONS

Xiao joins in and incorporates by reference additional arguments made by other Defendants in their motions to dismiss and supporting materials.

With respect to all fraudulent transfer claims set forth in the first through fifth causes of action, Xiao adopts and incorporates by reference the arguments in Digital Anchor Holdings Limited's Brief in Support regarding the need to dismiss all the fraudulent transfer claims in light of the arbitration provisions in the relevant transfer agreements. Adv. D.I. 63 at 6–10. The 2021 Share Transfer Agreements to which Xiao is a nominal counterparty have *identical* arbitration provisions to those in the FTX Repurchase Agreement addressed by Digital Anchor Holdings Limited. *Compare* Adv. D.I. 64-1 § 4.7 (FTX Repurchase Agreement), *with* Adv. D.I. 64-5 § 4.7 (Xiao–Bankman-Fried Share Transfer Agreement), *and* Adv. D.I. 64-6 § 4.7 (Xiao–Wang Share

21

Transfer Agreement).   The Share Transfer Agreements governing Xiao's nominal sale of WRS shares thus demand arbitration of the fraudulent transfer claims to the same degree as the FTX Repurchase Agreement.

With respect to the constructive fraudulent transfer claims set forth in the first, second, and fifth causes of action, Xiao adopts and incorporates by reference the arguments made in the BHL Defendants' Brief in Support regarding the Safe Harbor provision under Bankruptcy Code Section 546(e).  *See* Adv. D.I. 67 at 12–15.  Xiao also adopts and incorporates by reference the BHL Defendants' arguments that the constructive fraudulent transfer claims must be dismissed because the Complaint fails to plausibly allege that the Debtors were insolvent in July 2021, that the Debtors were rendered insolvent by the Share Transfer Agreements, and that the Debtors did not receive reasonably equivalent value under those agreements.  Adv. D.I. 67 at 12–13, 17–20.

With respect to the intentional fraudulent transfer claims set forth in the third and fourth causes of action, Xiao adopts and incorporates by reference the arguments made in the BHL Defendants' Brief in Support regarding the need to dismiss those claims for failing to adequately plead that the transfers were made with the requisite fraudulent intent.  Adv. D.I. 67 at 20–22.

## CONCLUSION

For the foregoing reasons, Defendant Dinghua Xiao respectfully requests that Plaintiffs' claims against him be dismissed in their entirety and with prejudice.

22

Dated: July 11, 2025
      Wilmington, Delaware

**MELUNEY ALLEMAN & SPENCE LLC**

/s/ *William M. Alleman, Jr.*
William M. Alleman, Jr. (#5449)
Matthew D. Beebe (#5980)
1143 Savannah Road, Suite 3-A
Lewes, DE 19958
Telephone: (302) 551-6740
Facsimile: (302) 551-6840
Email:  Bill.Alleman@maslawde.com
      Matt.Beebe@maslawde.com

**DECHERT LLP**

Matthew L. Mazur (Admitted *pro hac vice*)
May Chiang (Admitted *pro hac vice*)
Hayoung Park (Admitted *pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Email:  matthew.mazur@dechert.com
      may.chiang@dechert.com
      hayoung.park@dechert.com

*Counsel for Defendant Dinghua Xiao*