# EXHIBIT 2

**Execution Version**

**SERIES A PREFERRED SHARE PURCHASE AGREEMENT**

**November 27, 2019**

## SERIES A PREFERRED SHARE PURCHASE AGREEMENT

THIS SERIES A PREFERRED SHARE PURCHASE AGREEMENT (this "*Agreement*"), is made as of November 27, 2019 (the "*Effective Date*"), by and between FTX Trading Ltd., a company established under the laws of Antigua and Barbuda ("*FTX Trading*"), and Binance Capital Management Co. Ltd., a company established under the laws of the British Virgin Islands ("*Binance*"). Each of FTX Trading and Binance are referred to herein as a "*Party*" and they are referred together as the "*Parties*."

## RECITALS

**WHEREAS**, in consideration for the transfer by Binance to FTX Trading of 1,002,739 cryptographic tokens with the symbol 'BNB' (the "*BNB Tokens*"), FTX Trading will issue and allot to Binance 250 shares of FTX Trading's Series A Preferred Shares, par value $1.00 per share (the "*Shares*"), at an issuance price of $73,200.00 per share pursuant to the terms of this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing promises and the mutual covenants contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Purchase and Sale of the Shares.

      1.1      Sale and Issuance of the Shares.

      (a)      FTX Trading shall adopt and file with the National Companies and Intellectual Property Registry for Antigua and Barbuda on or prior to Closing (as defined below) the Amended and Restated Memorandum and Articles of Association in the form of Exhibit A attached to this Agreement (the "*Restated Articles*").

      (b)      On the terms and subject to the conditions set forth in this Agreement, and subject to any restrictions in the remaining Transaction Agreements (as such term is defined below), at the Closing, in consideration for the transfer by Binance to FTX Trading of 1,002,739 BNB Tokens, FTX Trading shall issue the Shares to Binance.

      1.2      Closing; Delivery.

      (a)      The purchase and sale of the Shares shall take place remotely via the exchange of documents and signatures on November 27, 2019, or at such other time and place as FTX Trading and Binance mutually agree upon, orally or in writing (which time and place are designated as the "*Closing*").

      (b)      At the Closing, FTX Trading shall deliver to Binance a certificate representing the Shares being issued by FTX Trading.

      1.3      Defined Terms Used in this Agreement. In addition to the terms defined above, the following terms used in this Agreement shall be construed to have the meanings set forth or referenced below.

      (a)      "*Affiliate*" means, with respect to any specified Person, any other Person who, directly or indirectly, controls, is controlled by, or is under common control with such Person, including without limitation any general partner, managing member, officer, director or trustee of such

Person, or any venture capital fund or registered investment company now or hereafter existing that is controlled by one or more general partners, managing members or investment adviser of, or shares the same management company or investment adviser with, such Person.

(b) "*Code*" means the Internal Revenue Code of 1986, as amended.

(c) "*Investor's Rights Agreement*" means the agreement among FTX Trading and Binance dated as of the date of the Closing, in the form of <u>Exhibit B</u> attached to this Agreement.

(d) "*License Agreements*" means each of the license agreements entered into between (i) FTX Trading and Binance, (ii) Cottonwood Grove Limited, a Hong Kong company, which is an affiliate of FTX Trading ("*Cottonwood*"), and Binance, and (iii) Alameda Research, LTD, a company organized under the laws of the British Virgin Islands ("*Alameda Research*") and Binance, each dated as of the Closing.

(e) "*Non-Competition Agreement*" means each of the non-competition agreements entered into among (i) Sam Bankman-Fried, FTX Trading and Binance, and (ii) Zixiao Wang, FTX Trading and Binance, each dated as of the Closing.

(f) "*OFAC Sanctions*" means any sanctions program administered by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("*OFAC*") under authority delegated to the Secretary of the Treasury (the "*Secretary*") by the President of the United States or provided to the Secretary by statute, and any order or license issued by, or under authority delegated by, the President or provided to the Secretary by statute in connection with a sanctions program thus administered by OFAC. For ease of reference, and not by way of limitation, OFAC Sanctions programs are described on OFAC's website at www.treas.gov/ofac.

(g) "*OFAC Sanctioned Person*" means any government, country, corporation or other entity, group or individual with whom or which the OFAC Sanctions prohibit a U.S. Person from engaging in transactions, and includes without limitation any individual or corporation or other entity that appears on the current OFAC list of Specially Designated Nationals and Blocked Persons (the "*SDN List*"). For ease of reference, and not by way of limitation, OFAC Sanctioned Persons other than governments and countries can be found on the SDN List on OFAC's website at www.treas.gov/offices/enforcement/ofac/sdn.

(h) "*Person*" means any individual, corporation, partnership, trust, limited liability company, association or other entity.

(i) "*Right of First Refusal Agreement*" means the agreement among FTX Trading, Binance, and certain other shareholders of FTX Trading, dated as of the date of the Closing, in the form of <u>Exhibit C</u> attached to this Agreement.

(j) "*Securities Act*" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

(k) "*Token Exchange Agreement*" means the agreement entered into between Cottonwood and Binance dated as of the date of the Closing, in the form of <u>Exhibit D</u> attached to this Agreement.

(l)    "**Transaction Agreements**" means this Agreement, the Investor's Rights Agreement, the Right of First Refusal Agreement, the Voting Agreement, the License Agreements and the Token Exchange Agreement.

(m)    "**U.S. Person**" means any U.S. citizen, permanent resident alien, entity organized under the laws of the United States (including foreign branches), or any person (individual or entity) in the United States, and, with respect to the Cuban Assets Control Regulations, also includes any corporation or other entity that is owned or controlled by one of the foregoing, without regard to where it is organized or doing business.

(n)    "**Voting Agreement**" means the agreement among FTX Trading, Binance and certain other shareholders of FTX Trading, dated as of the date of the Closing, in the form of Exhibit E attached to this Agreement.

2.    Lockup.

2.1    Acknowledgement and Definitions. Notwithstanding anything to the contrary herein, the BNB Tokens transferred under this Agreement (the "**Restricted Tokens**") shall be held on the Binance exchange account(s) designated by FTX Trading, and shall be subject to the restrictions set forth in this Section 2.

2.2    Lockup. The Restricted Tokens shall be locked and FTX Trading shall not directly or indirectly transfer any Restricted Tokens, assign or grant any options to purchase any Restricted Tokens, or enter into any instrument convertible into, exchangeable for or that represents the right to receive Restricted Tokens (collectively, the "**Lockup**"); *provided, however,* that:

(a)    1/8th of the Restricted Tokens shall be released from the Lockup at the Closing; and

(b)    1/8th of the Restricted Tokens shall be released from the Lockup at the end of each three-month period following the Closing.

3.    Representations and Warranties of FTX Trading. FTX Trading hereby represents and warrants to Binance that the following representations are true and correct as of the date of the Closing, except as otherwise indicated.

3.1    Organization, Good Standing. FTX Trading is a company duly organized, validly existing and in good standing under the laws of Antigua and Barbuda.

3.2    Authorization. FTX Trading has full power and authority to enter into the Transaction Agreements.

3.3    Capitalization. At Closing, the outstanding capital of FTX Trading will consist of:

(a)    One thousand (1,000) ordinary shares, par value $1.00 per share.

(b)    Two-hundred and fifty (250) preferred shares, par value $1.00 per share, all of which have been designated "Series A Preferred Shares."

3.4     Valid Issuance of Shares. The Shares, when issued, sold and delivered in accordance with the terms and for the consideration set forth in this Agreement, will be validly issued, fully paid and non-assessable and free of restrictions on transfer other than restrictions on transfer under the Transaction Agreements, applicable federal securities laws and liens or encumbrances created by or imposed by Binance.

3.5     Compliance with Other Instruments. The execution, delivery and performance of the Transaction Agreements and the consummation of the transactions contemplated by the Transaction Agreements will not result in any such violation or be in conflict with or constitute, with or without the passage of time and giving of notice, either (i) a default under any such provision, instrument, judgment, order, writ, decree, contract or agreement; or (ii) an event which results in the creation of any lien, charge or encumbrance upon the Shares.

3.6     Compliance with Office of Foreign Assets Control. None of FTX Trading, its subsidiaries, nor its respective directors, officers or employees is an OFAC Sanctioned Person. None of (i) the purchase and sale of the Shares, (ii) the execution, delivery and performance of this Agreement or any of the Transaction Agreements or (iii) the consummation of any transaction contemplated hereby or thereby, or the fulfillment of the terms hereof or thereof, will result in a violation of any of the OFAC Sanctions.

3.7     Taxes. FTX Trading agrees that it shall be fully responsible for its own income tax and other tax consequences, if any, that may be relevant to sale of the Shares.

3.8     Disclaimer of Warranties**. FTX TRADING MAKES NO WARRANTY WHATSOEVER WITH RESPECT TO THE SHARES, INCLUDING ANY (i) WARRANTY OF MERCHANTABILITY, (ii) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, (iii) WARRANTY OF TITLE, OR (iv) WARRANTY AGAINST INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS OF A THIRD PARTY, IN EACH CASE, WHETHER ARISING BY LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE, OR OTHERWISE.**

3.9     Purchase Entirely for Own Account. This Agreement is made with FTX Trading in reliance upon FTX Trading's representation to Binance, which by FTX Trading's execution of this Agreement, FTX Trading hereby confirms that the BNB Tokens to be acquired by FTX Trading will be acquired for investment for FTX Trading's own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and that FTX Trading has no present intention to sell, grant any participation in, or otherwise distribute the same. By execution of this Agreement, FTX Trading further represents that FTX Trading does not presently have any contract, undertaking, agreement or arrangement with any Person to sell, transfer or grant participations to such Person or to any third Person, with respect to any of the BNB Tokens. FTX Trading has not been formed for the specific purpose of acquiring the BNB Tokens.

3.10    Disclosure of Information. FTX Trading has had an opportunity to discuss Binance's business, management, financial affairs and the terms and conditions of the offering of the BNB Tokens with Binance's management.

3.11    Foreign Investors. If FTX Trading is not a United States person (as defined by Section 7701(a)(30) of the Code), FTX Trading hereby represents that it has satisfied itself as to the full observance of the laws of its jurisdiction in connection with any invitation to subscribe for the BNB Tokens or any use of this Agreement, including (i) the legal requirements within its jurisdiction for the purchase of the BNB Tokens, (ii) any foreign exchange restrictions applicable to such purchase, (iii) any governmental

4

or other consents that may need to be obtained, and (iv) the income tax and other tax consequences, if any, that may be relevant to the purchase, holding, redemption, sale, or transfer of the BNB Tokens. FTX Trading's subscription and payment for and continued beneficial ownership of the BNB Tokens will not violate any applicable securities or other laws of FTX Trading's jurisdiction.

3.12    Accredited Investor. FTX Trading is an accredited investor as defined in Rule 501(a) of Regulation D promulgated under the Securities Act.

3.13    No General Solicitation. Neither FTX Trading, nor any of its officers, directors, employees, agents, stockholders or partners has either directly or indirectly, including, through a broker or finder (a) engaged in any general solicitation, or (b) published any advertisement in connection with the acquisition of the BNB Tokens hereunder.

3.14    Non-Reliance. Other than as set forth in Section 4, FTX Trading acknowledges that it has not relied upon any representation or warranty made by Binance, or by any other person on Binance's behalf, in respect of the acquisition of the BNB Tokens hereunder.

4.    Representations and Warranties of Binance. Binance hereby represents and warrants to FTX Trading that that the following representations are true and correct as of the date of the Closing, except as otherwise indicated.

4.1    Organization, Good Standing. Binance is a company duly organized, validly existing and in good standing under the laws of the British Virgin Islands.

4.2    Authorization. Binance has full power and authority to enter into the Transaction Agreements.

4.3    Valid Issuance. The BNB Tokens, when issued, sold and delivered in accordance with the terms and for the consideration set forth in this Agreement, will be validly issued and free of restrictions on transfer other than restrictions on transfer under the Transaction Agreements and liens or encumbrances created by or imposed by FTX Trading.

4.4    Compliance with Other Instruments. The execution, delivery and performance of the Transaction Agreements and the consummation of the transactions contemplated by the Transaction Agreements will not result in any such violation or be in conflict with or constitute, with or without the passage of time and giving of notice, either a default under any such provision, instrument, judgment, order, writ, decree, contract or agreement.

4.5    Compliance with Office of Foreign Assets Control. None of Binance, its subsidiaries, nor its directors, officers or employees is an OFAC Sanctioned Person. None of (i) the purchase and sale of the Shares, (ii) the execution, delivery and performance of this Agreement or any of the Transaction Agreements or (iii) the consummation of any transaction contemplated hereby or thereby, or the fulfillment of the terms hereof or thereof, will result in a violation of any of the OFAC Sanctions.

4.6    Taxes. Binance agrees that it shall be fully responsible for its own income tax and other tax consequences, if any, that may be relevant to the purchase, holding, redemption, sale, or transfer of the Shares.

4.7    Disclaimer of Warranties. **BINANCE MAKES NO WARRANTY WHATSOEVER WITH RESPECT TO THE BNB TOKENS, INCLUDING ANY (i) WARRANTY**

5

**OF MERCHANTABILITY, (ii) WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, (iii) WARRANTY OF TITLE, OR (iv) WARRANTY AGAINST INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS OF A THIRD PARTY, IN EACH CASE, WHETHER ARISING BY LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE, OR OTHERWISE.**

4.8     Purchase Entirely for Own Account. This Agreement is made with Binance in reliance upon Binance's representation to FTX Trading, which by Binance's execution of this Agreement, Binance hereby confirms, that the Shares to be acquired by Binance will be acquired for investment for Binance's own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and that Binance has no present intention of selling, granting any participation in, or otherwise distributing the same. By executing this Agreement, Binance further represents that Binance does not presently have any contract, undertaking, agreement or arrangement with any Person to sell, transfer or grant participations to such Person or to any third Person, with respect to any of the Shares. Binance has not been formed for the specific purpose of acquiring the Shares.

4.9     Disclosure of Information. Binance has had an opportunity to discuss FTX Trading's business, management, financial affairs and the terms and conditions of the offering of the Shares with FTX Trading's management.

4.10     Restricted Securities. Binance acknowledges that the Shares have not been, and will not be, registered under the Securities Act, by reason of a specific exemption from the registration provisions of the Securities Act which depends upon, among other things, the bona fide nature of the investment intent and the accuracy of Binance's representations as expressed herein. Binance acknowledges that the Shares are "restricted securities" under applicable U.S. federal securities laws and that, pursuant to these laws, Binance shall hold the Shares indefinitely unless they are registered with the Securities and Exchange Commission and qualified by the applicable authorities, or an exemption from such registration and qualification requirements is available. Binance acknowledges that FTX Trading has no obligation to register or qualify the Shares for resale except as set forth in the Investor's Rights Agreement. Binance further acknowledges that if an exemption from registration or qualification is available, it may be conditioned on various requirements including, but not limited to, the time and manner of sale, the holding period for the Shares, and on requirements relating to FTX Trading which are outside of Binance's control, and which FTX Trading is under no obligation and may not be able to satisfy.

4.11     No Public Market. Binance understands that no public market now exists for the Shares, and that FTX Trading has made no assurances that a public market will ever exist for the Shares.

4.12     Legends. Binance acknowledges and agrees that FTX Trading shall not register the transfer of the Shares in violation of these restrictions. Binance acknowledges and agrees that the certificates evidencing the Shares will bear the legend set forth below (in addition to any other legend required by applicable securities laws or provided in any other agreement with FTX Trading):

*THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGIS-TERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, AND FTX TRADING DOES NOT INTEND TO REGISTER THEM. PRIOR TO _____ 20__, THE SHARES MAY NOT BE OFFERED OR SOLD (INCLUDING OPENING A SHORT POSITION IN SUCH SECURITIES) IN THE UNITED STATES OR TO U.S. PERSONS AS DEFINED BY RULE 902(k) ADOPTED UNDER THE ACT, OTHER THAN TO DISTRIBUTORS, UNLESS THE SHARES ARE REGISTERED UNDER THE ACT, OR AN*

6

*EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE ACT IS AVAILABLE. PURCHASERS OF SHARES PRIOR TO _____, 20\_\_, MAY RESELL SUCH SECURITIES ONLY PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE ACT OR OTHERWISE IN ACCORDANCE WITH THE PROVISIONS OF REGULATION S OF THE ACT, OR IN TRANSACTIONS EFFECTED OUTSIDE OF THE UNITED STATES PROVIDED THEY DO NOT SOLICIT (AND NO ONE ACTING ON THEIR BEHALF SOLICITS) PURCHASERS IN THE UNITED STATES OR OTHERWISE ENGAGE(S) IN SELLING EFFORTS IN THE UNITED STATES AND PROVIDED THAT HEDGING TRANSACTIONS INVOLVING THESE SECURITIES MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE ACT. A HOLDER OF THE SECURITIES WHO IS A DISTRIBUTOR, DEALER, SUB-UNDERWRITER OR OTHER SECURITIES PROFESSIONAL, IN ADDITION, CANNOT PRIOR TO _____, 20\_\_ RESELL THE SECURITIES TO A U.S. PERSON AS DEFINED BY RULE 902(k) OF REGULATION S UNLESS THE SECURITIES ARE REGISTERED UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION UNDER THE ACT IS AVAILABLE.*

(a)     Any legend set forth in, or required by, the other Transaction Agreements.

(b)     Any legend required by the securities laws of any applicable jurisdiction to the extent such laws are applicable to the Shares represented by the certificate, instrument, or book entry so legended.

4.13     <u>Regulation S Representations and Restrictions</u>. Binance makes the following representations, warranties and agreements:

(a)     Binance is <u>not</u> a U.S. Person as defined in Rule 902(k) of Regulation S under the Securities Act. The offer and sale of the Shares to such Binance was made in an offshore transaction (as defined in Rule 902(h) of Regulation S), no directed selling efforts (as defined in Rule 902(c) of Regulation S) were made in the United States, and Binance is not acquiring the Shares for the account or benefit of any U.S. Person;

(b)     Binance will not, during the Restricted Period applicable to the Shares set forth in the legend set forth below (the "***Restricted Period***") and to any certificate representing the Shares, offer or sell any of the foregoing securities (or create or maintain any derivative position equivalent thereto) in the United States, to or for the account or benefit of a U.S. Person or other than in accordance with Regulation S; and

(c)     Binance will, after the expiration of the applicable Restricted Period, offer, sell, pledge or otherwise transfer the Shares (or create or maintain any derivative position equivalent thereto) only pursuant to registration under the Securities Act or any available exemption therefrom and, in any case, in accordance with applicable securities laws.

4.14     <u>Foreign Investors</u>. Binance hereby represents that it has satisfied itself as to the full observance of the laws of its jurisdiction in connection with any invitation to subscribe for the Shares or any use of this Agreement, including (i) the legal requirements within its jurisdiction for the purchase of the Shares, (ii) any foreign exchange restrictions applicable to such purchase, (iii) any governmental or other consents that may need to be obtained, and (iv) the income tax and other tax consequences, if any, that may be relevant to the purchase, holding, redemption, sale, or transfer of the Shares. Binance's subscription and payment for and continued beneficial ownership of the Shares will not violate any applicable securities or other laws of Binance's jurisdiction.

4.15    Non-Reliance. Other than as set forth in Section 3, Binance acknowledges that it has not relied upon any representation or warranty made by FTX Trading, or by any other person on FTX Trading's behalf, in respect of the acquisition of the Shares hereunder.

5.    Conditions to Binance's Obligations at Closing. The obligations of Binance to purchase Shares at the Closing are subject to the fulfillment, on or before such Closing, of each of the following conditions, unless otherwise waived:

5.1    Representations and Warranties. The representations and warranties of FTX Trading contained in Section 3 shall be true and correct in all respects as of such Closing.

5.2    Performance. FTX Trading shall have performed and complied with all covenants, agreements, obligations and conditions contained in this Agreement that are required to be performed or complied with by FTX Trading on or before such Closing.

5.3    Investor's Rights Agreement. FTX Trading and Binance shall have executed and delivered the Investor's Rights Agreement.

5.4    Right of First Refusal. FTX Trading and Binance shall have executed and delivered the Right of First Refusal Agreement.

5.5    Voting Agreement. FTX Trading and Binance shall have executed and delivered the Voting Agreement.

5.6    Token Exchange Agreement. Cottonwood and Binance shall have executed and delivered the Token Exchange Agreement and the closing of the Token Exchange (as such term is defined under the Token Exchange Agreement) shall take place concurrently with the Closing.

5.8    License Agreements. FTX Trading, Alameda Research and Cottonwood shall have executed the respective License Agreements.

5.9    Non-Competition Agreements. Sam Bankman-Fried, Zixiao Wang, FTX Trading and Binance, as applicable, shall have executed the Non-Competition Agreements.

5.10    Restated Articles. FTX Trading shall have filed the Restated Articles with the National Companies and Intellectual Property Registry for Antigua and Barbuda on or prior to the Closing, which shall continue to be in full force and effect as of the Closing.

6.    Conditions of FTX Trading's Obligations at Closing. The obligations of FTX Trading to sell Shares to Binance at the Closing are subject to the fulfillment, on or before the Closing, of each of the following conditions, unless otherwise waived:

6.1    Representations and Warranties. The representations and warranties of Binance contained in Section 0 shall be true and correct in all respects as of such Closing.

6.2    Performance. Binance shall have performed and complied with all covenants, agreements, obligations and conditions contained in this Agreement that are required to be performed or complied with by them on or before such Closing.

8

6.3     Investor's Rights Agreement. Binance shall have executed and delivered the Investor's Rights Agreement.

6.4     Right of First Refusal. Binance shall have executed and delivered the Right of First Refusal Agreement.

6.5     Voting Agreement. Binance shall have executed and delivered the Voting Agreement.

6.6     Token Exchange Agreement. Binance shall have executed and delivered the Token Exchange Agreement.

6.7     License Agreements. Binance shall have executed and delivered the License Agreements.

6.8     Non-Competition Agreements. Sam Bankman-Fried, Zixiao Wang, FTX Trading and Binance, as applicable, shall have executed the Non-Competition Agreements.

7.     Miscellaneous.

7.1     No Solicitation. For so long as Binance holds at least twenty-five percent (25%) of the Shares issued to Binance pursuant to this Agreement, FTX Trading covenants that it shall not, and it shall procure its Affiliates (including Cottonwood and Alameda Research) and its and their employees, officers, directors, agents, shareholders or partners, not to, directly or indirectly, (i) solicit or encourage any person to leave the employment or other service of Binance or its Affiliates; or (ii) hire, on behalf of FTX Trading or any of its Affiliates or any other person or entity, any person is then, or at any time during the preceding year was, an employee of, or consultant or other independent contractor rendering services primarily to Binance or its Affiliates; *provided, however*, that the placement of general advertisements that may be targeted to a particular geographic or technical area (including through the use of employment agencies or similar platforms) but that are not specifically targeted toward employees or consultants or other independent contractors of Binance, shall not be deemed to be a breach of this Subsection 7.1.

7.2     Survival of Warranties. Unless otherwise set forth in this Agreement, the representations and warranties of FTX Trading and Binance contained in or made pursuant to this Agreement shall survive the execution and delivery of this Agreement and the Closing and shall in no way be affected by any investigation or knowledge of the subject matter thereof made by or on behalf of Binance or FTX Trading. The representations and warranties contained in or made pursuant to this Agreement shall terminate on, and no claim or action with respect thereto may be brought after, the date that is twenty-one (21) months after the Effective Date.

7.3     Successors and Assigns. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement. Notwithstanding the foregoing, in no event shall Binance assign its rights under Subsection 7.1 without the prior written consent of FTX Trading.

7.4     Governing Law. This Agreement shall be governed by the internal laws of Hong Kong, without regard to conflict of law principles that would result in the application of any law other than such laws.

9

7.5     Counterparts. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature via www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

7.6     Titles and Subtitles. The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

7.7     Notices. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of actual receipt, or (a) personal delivery to the party to be notified, (b) when sent, if sent by electronic mail or facsimile during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) business day after deposit with a nationally recognized overnight courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to the respective parties at their address as set forth on the signature page, or to such e-mail address, facsimile number or address as subsequently modified by written notice given in accordance with this Subsection 7.7. If notice is given to FTX Trading, a copy shall also be sent to ████████ ████████████████████████████████████████████████████, Attn: Andrew Albertson or to Andrew Albertson at aalbertson@fenwick.com and if notice is given to Binance, a copy shall also be given to Paul Hastings LLP, ████████████████████████████████████████████████, PRC, Attn: David Wang or to David Wang at davidwang@paulhastings.com.

7.8     No Finder's Fees. Each party represents that it neither is nor will be obligated for any finder's fee or commission in connection with this transaction.

7.9     Amendments and Waivers. Any term of this Agreement may be amended, terminated or waived only with the written consent of FTX Trading and the holders of at least a majority of the then-outstanding Shares. Any amendment or waiver effected in accordance with this Subsection 7.9 shall be binding upon Binance and each transferee of the Shares, each future holder of all such securities, and FTX Trading.

7.10     Severability. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

7.11     Delays or Omissions. No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power or remedy of such non-breaching or non-defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any party of any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any party, shall be cumulative and not alternative.

7.12     Entire Agreement. This Agreement (including the Exhibits hereto) and the other Transaction Agreements constitute the full and entire understanding and agreement between the parties

with respect to the subject matter hereof, and any other written or oral agreement relating to the subject matter hereof existing between the parties are expressly canceled.

7.13    Dispute Resolution. Any controversy or claim arising out of or relating to this Agreement or the interpretation, breach, termination or validity hereof shall be resolved through arbitration in accordance with the Hong Kong International Arbitration Centre Arbitration Rules. The language to be used in the arbitral proceedings shall be English and the seat of the arbitration shall be Hong Kong.

7.14    Waiver of Conflicts. Each party to this Agreement acknowledges that Fenwick & West LLP, counsel for FTX Trading and Cottonwood, has in the past performed and may continue to perform legal services for Binance in matters unrelated to the transactions described in this Agreement, including the representation of such Binance in venture capital financings and other matters. Accordingly, each party to this Agreement hereby (a) acknowledges that they have had an opportunity to ask for information relevant to this disclosure; and (b) gives its informed consent to Fenwick & West LLP's representation of certain of Binance in such unrelated matters and Fenwick & West LLP's representation of FTX Trading and Cottonwood in connection with this Agreement and the transactions contemplated hereby.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties have executed this Preferred Shares Purchase Agreement as of the date first written above.

**FTX TRADING LTD.**

By: _Samuel Bankman-Fried_

DocuSigned by:

24A1FE75CBF4440...

**Name**:     Samuel Bankman-Fried
**Title**:      Chief Executive Officer
**Address**:

*Prior to December 15, 2019:*

█████████████████████████████████

███████

*After December 15, 2019:*

█████████████████████████████████

██████████

SIGNATURE PAGE TO SHARE PURCHASE AGREEMENT

**BINANCE CAPITAL MANAGEMENT CO. LTD.**

DocuSigned by:

*Changpeng Zhao*

**By**: _____
48787FC11D74433...

**Name**:    Changpeng Zhao

**Title**:    Chief Executive Officer

**Address**:    ███████████████████
███████
███████████
███████████

SIGNATURE PAGE TO SHARE PURCHASE AGREEMENT

**<u>Exhibit A</u>**

**Restated Articles**

**Exhibit B**

**Investor's Rights Agreement**

**Exhibit C**

**Right of First Refusal Agreement**

**Exhibit D**

**Token Exchange Agreement**

**Exhibit E**

**Voting Agreement**