# EXHIBIT 17

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CHANGPENG ZHAO, BINANCE HOLDINGS LIMITED, BINANCE HOLDINGS (IE) LIMITED, BINANCE (SERVICES) HOLDING LIMITED and SAMUEL LIM,<br><br>Defendants. | CIVIL ACTION NO: 1:23-cv-01887<br><br>Hon. Manish S. Shah |

**CONSENT ORDER FOR PERMANENT INJUNCTION,**
**CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF**
**AGAINST DEFENDANTS CHANGPENG ZHAO, BINANCE HOLDINGS LIMITED,**
**BINANCE HOLDINGS (IE) LIMITED, AND BINANCE (SERVICES) HOLDING**
**LIMITED**

## I. INTRODUCTION

On March 27, 2023, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendants Changpeng Zhao ("Zhao"); Binance Holdings Limited ("Binance Holdings"), Binance Holdings (IE) Limited ("Binance IE"), and Binance (Services) Holdings Limited ("Binance Services") (collectively "Binance Entity Defendants" or "Binance"); and Samuel Lim ("Lim") (collectively "Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2022).

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendants Zhao and the Binance Entity Defendants without a trial on the merits or any further judicial proceedings, Zhao and the Binance Entity Defendants:

1. Consent to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendants Changpeng Zhao, Binance Holdings Limited, Binance (IE) Limited, and Binance (Services) Holdings Limited ("Consent Order");

2. Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledge service of the summons and Complaint;

4. Admit the jurisdiction of this Court over them for purposes of this settlement and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5. Admit the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act;

6. Admit that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7. Waive:

   (a) Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2022), relating to, or arising from, this action;

   (b) Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412

and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) Any and all rights of appeal from this action;

8. Acknowledge that the Commission is the prevailing party in this action for purposes of the waiver of any and all rights under the Equal Access to Justice Act and the Small Business Regulatory Enforcement Fairness Act of 1996 specified in subparts (a) and (b) of paragraph 7 above;

9. Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant Zhao and/or the Binance Entity Defendants now or in the future reside outside the jurisdiction of this Court;

10. Agree they will not oppose enforcement of this Consent Order on the grounds, if any exist, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waive any objection based thereon;

11. Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement, including any statement on social media: (i) denying, directly or indirectly, any allegations in the Complaint and/or the Findings of Fact or Conclusions of Law in this Consent Order, or (ii) creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect Zhao's, the Binance Entity Defendants' and/or their successors', assigns', agents'·and/or employees': (a) testimonial obligations, or (b) right to take positions in other proceedings to which the Commission is not a party;

3

Defendant Zhao and the Binance Entity Defendants shall comply with this agreement and shall undertake all steps necessary to ensure that all of their successors, assigns, agents and/or employees under their authority or control understand and comply with this agreement;

12. Admit: (i) as to the Binance Entity Defendants, all facts admitted in the Plea Agreement of Binance Holdings Limited with the United States Department of Justice ("DOJ") and in the related action by the Financial Crimes Enforcement Network ("FinCEN"); (ii) as to Defendant Zhao, all facts admitted in his Plea Agreement with the DOJ; and (iii) the allegations in paragraphs 11 and 12 of the Complaint as they relate to jurisdiction and venue as stated in paragraphs 4-6 above;

13. Consent to the entry of this Consent Order without otherwise admitting or denying the allegations of the Complaint or any findings of fact or conclusions of law in this Consent Order, except as set forth in paragraph 12, above;

14. Consent to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agree that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

15. Do not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than: a proceeding in bankruptcy or receivership; a proceeding regarding Commission registration or statutory disqualification; or a proceeding to enforce the terms of this Consent Order;

16. Do not consent to the use of this Consent Order, or the findings or conclusions herein, by any other party in any other proceeding; and

4

17. Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek legal or equitable remedy against Defendant Zhao or the Binance Entity Defendants in any other proceeding.

In entering into this Consent Order, the Commission acknowledges Binance's representations concerning its remediation, undertaken at Defendant Zhao's direction, as described below in paragraphs 52 and 53.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein. The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE COURT HEREBY FINDS:**

**A. Findings of Fact**

**The Parties to this Consent Order**

18. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

19. Defendant Changpeng Zhao has been at all relevant times the Chief Executive Officer ("CEO") of Binance. Zhao launched Binance in 2017 and has ultimately controlled all of Binance's business activities. Zhao is a Canadian citizen who currently resides in the United Arab Emirates. Zhao has directly or indirectly owned the scores of entities that collectively operate the Binance platform, including the Binance Entity Defendants. Zhao has never been registered with the Commission in any capacity.

5

20. Defendant Binance Holdings Limited is incorporated in the Cayman Islands and directly or indirectly owned by Zhao. Binance Holdings has held intellectual property for Binance, including trademarks and domain names, and has employed at least certain individuals who perform work for or on behalf of the Binance platform. Binance Holdings has never been registered with the Commission in any capacity.

21. Defendant Binance Holdings (IE) Limited is incorporated in Ireland and directly or indirectly owned by Zhao. Binance IE is a holding company that has directly or indirectly owned at least 24 corporate entities that have acted as Binance's digital asset and virtual asset service providers in a variety of jurisdictions and held Binance's non-U.S. regulatory licenses. Binance IE has never been registered with the Commission in any capacity.

22. Defendant Binance (Services) Holdings Limited is incorporated in Ireland and directly or indirectly owned by Zhao. Binance Services is a holding company that has directly or indirectly owned at least 43 different corporate entities, including companies that conduct technology and operations services for Binance, hold the intellectual property related to Binance's matching engines and financial products, and enter into contracts with vendors. Binance Services owns Binance Holdings. Binance Services has never been registered with the Commission in any capacity.

**The Binance Trading Platform**

23. Binance is the world's largest centralized digital asset exchange. From at least July 2019 to March 27, 2023 (the "Relevant Period"), Zhao has directly or indirectly owned and controlled dozens of corporate entities incorporated in numerous jurisdictions around the world, including the Binance Entity Defendants, that operate the Binance platform as a common enterprise. At times, at least certain of those entities, including Binance Holdings, Binance IE,

and Binance Services have commingled funds, relied on shared technical infrastructure, and engaged in activities to collectively advertise and promote the Binance brand.

24.     Binance's reliance on a maze of corporate entities to operate the Binance platform is deliberate; it is designed to obscure the ownership, control, and location of the Binance platform.

25.     As founder and CEO of Binance, Zhao has been responsible for all major strategic decisions, business development, and management of the Binance enterprise. Zhao has been responsible for directing and overseeing the creation and operation of Binance's trade matching engines, website, application programming interface ("API") functionalities, and order entry system. Throughout the Relevant Period, Zhao was ultimately responsible for evaluating the legal and regulatory risks associated with Binance's business activities.

**Products**

26.     Beginning no later than July 2019, Binance, under Zhao's direction and control, began offering digital asset derivative products, including futures, options, swaps, and/or leveraged retail commodity transactions in bitcoin (BTC), ether (ETH), litecoin (LTC), and other digital assets that are commodities as defined under Section 1a(9) of the Act, 7 U.S.C. § 1a(9). Throughout the Relevant Period, Binance solicited and accepted orders, accepted property to margin, and operated a facility for the trading of futures, options, swaps, and leveraged retail commodity transactions involving digital assets that are commodities.

27.     Beginning in July 2019, Binance offered leverage to retail customers (that is, non eligible contract participants ("ECPs") within the meaning of Section 1a(18) of the Act, 7 U.S.C. § 1a(18)) trading in its spot markets, which generally include its markets for BTC, ETH, and

other digital assets. These leveraged transactions do not result in actual delivery of the digital asset within 28 days of the transaction.

28. Beginning in April 2020, Binance offered a product called "Binance Options."

29. During the Relevant Period, Binance also offered two categories of digital asset derivatives that it calls "futures"—one category, called quarterly futures, is composed of contracts that have pre-determined expiration dates while the other category, called perpetual contracts or simply "perpetuals", is composed of contracts that do not have an expiration date. Binance began offering quarterly futures in or around September 2019. Binance's quarterly futures are futures contracts. Binance has offered perpetual contracts since at least September 2019. Binance's perpetuals are swaps.

**Binance Solicited U.S. Customers**

30. During the Relevant Period, Binance actively solicited customers in the United States, including commercially important "VIP" institutional customers, while failing to implement an effective Anti-Money Laundering ("AML") program as required by U.S. law. As part of this active solicitation, Binance also enlisted U.S. residents to act as "Binance Angels" to solicit and interact with U.S. customers and hosted networking and social events in the United States. Further, at Zhao's instruction, Binance's officers, agents and employees used communication applications with auto-delete functionality enabled to communicate concerning U.S. customers.

31. Throughout the Relevant Period, Binance made money by charging its customers transaction fees for trades on its platform. Binance monitored its sources of transaction volume and fee-based revenue as a matter of course in conducting its operations. Thus, Zhao and the Binance Entity Defendants were aware that a meaningful percentage of Binance's billions of

8

dollars in revenue was derived from digital asset derivative transactions entered into by U.S. customers.

**Binance Implemented Superficial, Ineffective, Compliance Controls and Instructed U.S. Customers to Circumvent Its Compliance Controls**

32. For approximately the first two years of its operations, Binance did not take any steps to limit or restrict the ability of U.S. customers to trade on the platform.

33. In June 2019, Binance updated its Terms of Use to state for the first time that "Binance is unable to provide services to any U.S. person." According to periodic revenue reports prepared for and sent to Zhao every month, however, as of January 2020 approximately 19.9% of Binance's customers were located in the United States, and as of June 2020—about a year after Binance amended its Terms of Use—approximately 17.8% of Binance's customers were located in the United States. The U.S. user presence persisted because, as set forth below, Zhao and Binance deliberately allowed U.S. Customers to circumvent their superficial controls and purported "Know Your Customer" ("KYC") program.

34. For example, after Binance began to purportedly restrict access to its platform from certain jurisdictions in mid-2019, it left open a loophole for customers to sign up, deposit assets, trade, and make withdrawals without submitting to any KYC procedures as long as the customer withdrew less than the value of two BTC in one day.

35. Then, in September 2019, Binance claimed it had begun to block customers based on their internet protocol ("IP") address. In reality, Binance simply added a pop-up window on its website that appeared when customers attempted to log in from an IP address associated with the United States. The pop-up did not block customers from logging in to their account, depositing assets, or trading on the platform, it just asked them to self-certify that they were not a U.S. person before accessing the platform by clicking a button on the pop-up. Binance knew that

9

U.S. customers continued to comprise a substantial proportion of Binance's customer base even after September 2019 because, among other reasons, Binance's internal reporting told them so.

36.     In addition, at least as early as April 2019, Binance published a guide on the "Binance Academy" section of its website titled "A Beginner's Guide to VPNs." Binance's VPN guide explained to Binance customers that "[i]f you want to be private about the websites you visit – and your location – you should use a VPN." Binance's VPN guide also hinted: "you might want to use a VPN to unlock sites that are restricted in your country."

37.     Further, at various times during the Relevant Period, Binance personnel assisted U.S. VIP customers to create "new" accounts using "new KYC" documentation in order to circumvent Binance's compliance controls. By October 2020, Binance formalized its processes for instructing U.S. VIP customers on the best methods to evade Binance's compliance controls in a corporate policy titled "VIP Handling." Acting pursuant to the VIP Handling policy, Binance's VIP team would "coordinate the transfer" of the VIP customer's "Referral Bonuses, VIP level, Withdrawal Limits etc." to the "new" account from the VIP customer's pre-existing account. Thus, if the VIP team followed the VIP Handing policy correctly, from the customer's perspective nothing about its trading on Binance would be disrupted—the "new" account would be the same as the old account with the exception of the name of the accountholder.

38.     On August 20, 2021, Binance purported to put in place a KYC program, announcing that "all Binance users are required to verify their accounts," meaning that all new customers would be required to complete "Intermediate Verification" and provide a government issued identification evidencing their geographic location. Binance also announced that existing customers that had not yet completed Intermediate Verification would have their account changed to "withdrawal only" status by October 19, 2021.

39. Binance did not limit the ability of unverified customers to deposit funds and trade on the platform by October 19, 2021 as represented, however. Further, by February 2022, Binance had only verified the identities of approximately 30–40% of its customers though KYC documentation.

**Binance Was Aware of U.S. Regulatory Requirement but Ignored Them**

40. Defendants have been aware that the CFTC regulatory regime applies to U.S. financial institutions such as futures commission merchants ("FCMs"), and exchanges such as designated contract markets ("DCMs"), swap execution facilities ("SEFs"), and foreign boards of trade ("FBOTs"), throughout the Relevant Period, but have made deliberate, strategic decisions to evade federal law.

41. Internal messages among Zhao, Lim, and other Binance senior managers document that Binance was aware of the applicability of U.S. regulatory and legal requirements since its early days.

**Binance Knowingly Concealed the Presence of U.S. Customers**

42. Zhao directed Binance personnel to replace the "U.S." value for certain data fields in Binance's internal database with the value "UNKWN."

**Binance Allowed U.S. Customers to Transact Through Brokers**

43. During the Relevant Period, Binance implemented a "broker program" and relied on "prime brokers" to solicit and accept orders for Binance's digital asset derivatives from institutional customers, including those located in the United States. In violation of its own Terms of Use, Binance allowed at least two prime brokers to open "sub-accounts" that were not subject to Binance's KYC procedures. At various times during the Relevant Period, U.S. customers directly traded digital asset derivatives on the Binance platform through those so-called "sub-accounts."

11

**Binance Allowed U.S. Customers to Transact Directly**

44. Trading Firms A, B, and C are quantitative trading firms and three examples of U.S. customers that Binance allowed to transact directly on its platform. Trading Firms A, B, and C transacted through accounts in their own names, in the names of foreign-incorporated subsidiaries and/or through sub-accounts opened on their behalf by prime brokers.

45. Trading Firm A is a Delaware limited liability company headquartered in Chicago, Illinois, and is majority owned by U.S. residents. Trading Firm A's executive management team works from its Chicago headquarters. During the Relevant Period, Trading Firm A conducted its trading activity on Binance through automated trading strategies programmed into computer algorithms. These algorithms determine whether to place or cancel any orders based on instructions in their code. Trading Firm A's algorithms are developed by quantitative technologists that work at Trading Firm A's Chicago headquarters, among other locations. Trading Firm A's computer code and its algorithms are owned by an Illinois limited liability company that is a wholly-owned subsidiary of Trading Firm A. Trading Firm A has capitalized its trading activity on Binance and Trading Firm A's net trading revenue derived from its trading activity on Binance is consolidated into Trading Firm A's financial statements.

46. During the Relevant Period, Trading Firm A transacted on the Binance platform in an account in its own name, in the name of a nominee shell company, and through a sub-account opened on its behalf by a prime broker.

47. Trading Firm B is headquartered in New York, incorporated in Delaware, and ultimately majority owned by U.S. residents. Numerous senior managers, including the individual who functions as Trading Firm B's CEO, have worked from Trading Firm B's New York headquarters. During the Relevant Period, Trading Firm B conducted its digital asset trading activity on Binance through a dedicated trading desk that utilizes automated trading

12

strategies programmed into computer algorithms developed by personnel at Trading Firm B's New York headquarters, among other locations. The computer code that builds Trading Firm B's algorithms is owned, directly or indirectly by Trading Firm B. Trading Firm B has at all times capitalized Trading Firm B's trading activity on Binance and the net trading revenue derived from its trading activity on Binance has been consolidated into Trading Firm B's financial statements.

48. During the Relevant Period, Trading Firm B transacted on the Binance platform through a personal account and also through a nominee shell company organized under the law of Jersey.

49. Trading Firm C is headquartered and incorporated in New York and majority owned by U.S. residents. Members of Trading Firm C's senior management team, including its CEO and CIO are New York-based. During the Relevant Period, Trading Firm C conducted its trading activity on Binance through automated trading strategies that use tailor-made computer algorithms. Development of Trading Firm C's algorithms used for trading on Binance occurs in the United States and in other locations. Trading Firm C conducts its trading activity on Binance through at least 15 independent trading teams, including teams based in and managed from New York. Trading Firm C's net trading revenue derived from its trading activity on Binance is consolidated into the financial statements of Trading Firm C's commonly-owned Delaware-incorporated affiliate and combined into Trading Firm C's financial statements.

50. During the Relevant Period, Trading Firm C transacted on the Binance platform through two accounts opened in the names of foreign-incorporated subsidiaries.

51. Zhao and other members of Binance's senior management failed to properly supervise Binance's activities during the Relevant Period and actively facilitated violations of

13

U.S. law, including by assisting and instructing customers located in the United States to evade the compliance controls Binance purported to implement to prevent and detect violations of U.S. law, by allowing customers that had not submitted proof of their identity and location to trade on the platform in violation of Binance's own Terms of Service, and by directing VIP customers with ultimate beneficial owners, key employees who control trading decisions, trading algorithms, and other assets all located in the United States to open Binance accounts under the name of newly incorporated shell companies to evade Binance's compliance controls.

**Binance and Zhao's Representations Relating to Remedial Measures**

52.     The Binance Entity Defendants and Defendant Zhao represent that, at Defendant Zhao's direction, Binance commenced substantial remedial action to improve their compliance controls and policies, including taking steps to ensure that its policies are uniformly and accurately applied to all customers and accounts. In particular, the Binance Entity Defendants and Defendant Zhao represent that, subsequent to the filing of the Complaint, Binance, at Zhao's direction, has implemented comprehensive controls to identify potential U.S. customers and prevent the onboarding of customers, and opening of accounts and sub-accounts, with a U.S. nexus.

53.     Prior to the filing of the Complaint, Binance began developing the Nationality of Business Entities Checklist ("NBEC"), the most recent version of which is published on Binance's website. The Binance Entity Defendants and Defendant Zhao represent that the NBEC implements Binance's compliance policies that prohibit U.S. persons as applied to business entities from onboarding to the Binance platform. The Binance Entity Defendants and Defendant Zhao further represent that Binance continues to implement and further enhance significant corporate governance changes begun prior to the filing of the Complaint, and remains

14

committed to investing significant financial resources to build and maintain a robust compliance program.

**B.     Conclusions of Law**

**Jurisdiction and Venue**

54.     This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

55.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because acts and practices in violation of the Act occurred within this District.

**Count I – Binance's Execution of Futures Transactions on an Unregistered Board of Trade**

56.     At various times during the Relevant Period, by the conduct described above and in the Complaint, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and collectively doing business as Binance, and through their officers, employees, and agents, including without limitation Defendant Zhao, offered, entered into, and confirmed the execution of leveraged retail commodity transactions, and contracts for the purchase or sale of digital assets that are commodities for future delivery; and conducted an office or business in the U.S. for the purpose of soliciting or accepting any order for, or

15

otherwise dealing in, any transaction in, or in connection with, leveraged retail commodity transactions or contracts for the purchase or sale of digital assets that are commodities for future delivery without conducting its futures transactions on or subject to the rules of a board of trade designated or registered by the CFTC as a contract market and thereby violated Section 4(a) of the Act, 7 U.S.C. § 6(a).

57.    At other times during the Relevant Period, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and doing business as Binance, and through their officers, employees, and agents including without limitation Zhao, violated Section 4(b) of the Act, 7 U.S.C. § 6(b), and Regulation 48.3, 17 C.F.R. § 48.3 (2022), by permitting direct access to its electronic trading and order matching system without obtaining an Order of Registration for a foreign board of trade from the Commission.

58.    Throughout the Relevant Period, Zhao directly or indirectly controlled Binance and did not act in good faith and/or knowingly induced, directly or indirectly, the acts constituting Binance's violations of 7 U.S.C. §§ 6(a) and 6(b) and 17 C.F.R. § 48.3, and thus Zhao is liable for Binance's violations as a control person pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

### Count II – Binance's Illegal Off-Exchange Commodity Options

59.    By the conduct described above and in the Complaint, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and collectively doing business as Binance, and through their officers, employees, and agents, including without limitation Zhao, offered to enter into, entered into, and confirmed the execution of, maintained positions in, or otherwise conducted activities relating to commodity option transactions in interstate commerce that were not executed on any registered board of trade and thus violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.2, 17 C.F.R. § 32.2 (2022).

16

60. Throughout the Relevant Period, Zhao directly or indirectly controlled Binance and did not act in good faith and/or knowingly induced, directly or indirectly, the acts constituting Binance's violations of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.2, and thus Zhao is liable for Binance's violations as a control person pursuant to 7 U.S.C. § 13c(b).

**Count III – Binance's Failure to Register as a Futures Commission Merchant**

61. By the conduct described above and in the Complaint, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and collectively doing business as Binance, and through their officers, employees, and agents, including without limitation Zhao, operated as an FCM by soliciting and accepting orders for the purchase or sale of commodities for future delivery, swaps, and leveraged retail commodity transactions, and/or by acting as a counterparty in such transactions; and, in connection with these activities, accepting money, securities, or property (or extending credit in lieu thereof) to margin, guarantee, or secure resulting trades on the Binance platform and thus violated Section 4d of the Act, 7 U.S.C. § 6d.

62. Throughout the Relevant Period, Zhao directly or indirectly controlled Binance and did not act in good faith and/or knowingly induced, directly or indirectly, the acts constituting Binance's violations of 7 U.S.C. § 6d, and thus Zhao is liable for Binance's violations as a control person pursuant to 7 U.S.C. § 13c(b).

**Count IV – Binance's Failure to Register as a Designated Contract Market or Swap Execution Facility**

63. By the conduct described above and in the Complaint, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and doing business as Binance, and through their officers, employees, and agents, including without limitation Zhao, operated a trading system or platform in which more than one market participant

17

has the ability to execute or trade swaps with more than one other market participant on the system or platform, including the trading or processing of swaps on digital assets that are commodities without being registered as a DCM or SEF and thus violated Section 5h(a)(1) of the Act, 7 U.S.C. § 7b-3(1), and Regulation 37.3(a)(1), 17 C.F.R. § 37.3(a)(1) (2022).

64. Throughout the Relevant Period, Zhao directly or indirectly controlled Binance and did not act in good faith and/or knowingly induced, directly or indirectly, the acts constituting Binance's violations of 7 U.S.C. § 7b-3(1) and 17 C.F.R. § 37.3(a)(1), and thus Zhao is liable for Binance's violations as a control person pursuant to 7 U.S.C. § 13c(b).

**Count V – Binance's Failure to Diligently Supervise**

65. By the conduct described above and in the Complaint, Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and doing business as Binance, and through their officers, employees, and agents, including without limitation Zhao, while acting as an FCM employed an inadequate supervisory system and failed to diligently perform their supervisory duties, including by: (i) failing to implement an effective Customer Identification Program; (ii) failing to implement effective KYC procedures; (iii) failing to implement effective AML procedures; (iv) failing to ensure that its partners, officers, employees, and agents, lawfully and appropriately handled all commodity interest accounts at Binance; (v) purposefully instructing customers to evade compliance controls; and, (vi) intentionally destroying documents related to illegal conduct, and thus violated Regulation 166.3, 17 C.F.R. § 166.3 (2022).

66. Throughout the Relevant Period, Zhao directly or indirectly controlled Binance and did not act in good faith and/or knowingly induced, directly or indirectly, the acts constituting Binance's violations of 17 C.F.R. § 166.3, and thus Zhao is liable for Binance's violations as a control person pursuant to 7 U.S.C. § 13c(b).

18

**Count VI – Binance's Failure to Implement Customer Identification Program, and Failure to Implement Know Your Customer and Anti-Money Laundering Procedures**

67.    By the conduct described above and in the Complaint Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and doing business as Binance, and through their officers, employees, and agents, including without limitation Zhao, failed to implement a Customer Identification Program, KYC policies and procedures, an AML program, failed to retain required customer information, and failed to implement procedures to determine whether a customer appears on lists of known or suspected terrorists or terrorist organizations such as those issued by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") and thus violated Regulation 42.2, 17 C.F.R. § 42.2 (2022).

68.    Throughout the Relevant Period, Zhao directly or indirectly controlled Binance and did not act in good faith and/or knowingly induced, directly or indirectly, the acts constituting Binance's violations of 17 C.F.R. § 42.2, and thus Zhao is liable for Binance's violations as a control person pursuant to 7 U.S.C. § 13c(b).

**Count VII – Zhao and Binance Evasion**

69.    By the conduct described above and in the Complaint, Defendant Zhao, as well as Defendants Binance Holdings, Binance IE, and Binance Services, all acting as a common enterprise and doing business as Binance, and through their officers, employees, and agents, including without limitation Zhao, conducting activities outside the United States, including entering into agreements, contracts, and transactions and structuring entities, willfully evaded or attempted to evade provisions of the Act, as enacted by Subtitle A of the Wall Street Transparency and Accountability Act of 2010, or the rules, regulations, and orders of the

19

Commission promulgated thereunder, and thus violated Regulation 1.6(a), 17 C.F.R. § 1.6(a) (2022).

## IV.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

70.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendants Changpeng Zhao, Binance Holdings Limited, Binance Holdings (IE), and Binance (Services) Holdings Limited, and their successors or assigns are permanently restrained, enjoined and prohibited from directly or indirectly:

a.   offering to enter into, entering into, or confirming the execution of transactions described in Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (leveraged retail commodity transactions), or contracts for the purchase or sale of digital assets that are commodities for future delivery, and conducting an office or business in the U.S. for the purpose of soliciting, or accepting any order for, or otherwise dealing in, any transaction in, or in connection with, leveraged retail commodity transactions or contracts for the purchase or sale of digital assets that are commodities for future delivery, in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a);

b.   permitting direct access to an electronic trading and order matching system in violation of Section 4(b) of the Act, 7 U.S.C. § 6(b), and Regulation 48.3, 17 C.F.R. § 48.3 (2022);

c.   offering to enter into, entering into, confirming the execution of, maintaining positions in, and otherwise conducting activities relating to commodity option transactions in interstate commerce in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.2, 17 C.F.R. § 32.2 (2022);

d. soliciting or accepting orders for the purchase or sale of commodities for future delivery, swaps, or agreements, contracts or transactions described in Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (leveraged retail commodity transactions), and/or by acting as a counterparty in such transactions; and, in or in connection with these activities, accepting money, securities, or property (or extending credit in lieu thereof) to margin, guarantee, or secure resulting trades in violation of Section 4d of the Act, 7 U.S.C. § 6d;

e. operating a facility for the trading of swaps on digital assets that are commodities without registering with the CFTC as a designated contract market (DCM) or swap execution facility (SEF) in violation of Section 5h(a)(1) of the Act, 7 U.S.C. § 7b-3(1), and Regulation 37.3(a)(1), 17 C.F.R. § 37.3(a)(1) (2022);

f. failing to perform their supervisory duties diligently, including by: (i) failing to implement an effective Customer Identification Program; (ii) failing to implement effective Know-Your-Customer procedures; (iii) failing to implement effective Anti-Money Laundering procedures; (iv) failing to ensure that its partners, officers, employees, and agents, lawfully and appropriately handled all commodity interest accounts at Binance; (v) purposefully instructing customers to evade compliance controls; and (vi) intentionally destroying documents related to illegal conduct, in violation of Regulation 166.3, 17 C.F.R. § 166.3 (2022);

g. failing to comply with the applicable provisions of the Bank Secrecy Act and regulations promulgated by the Department of the Treasury including the requirements to implement an Anti-Money Laundering program, retain required customer information, and implement procedures to determine whether a customer

appears on lists of known or suspected terrorists or terrorist organizations in violation of Regulation 42.2, 17 C.F.R. § 42.2 (2022); and

h. conducting activities outside the United States, including entering into agreements, contracts, and transactions and structuring entities, to willfully evade or attempt to evade provisions of the Act, as enacted by Subtitle A of the Wall Street Transparency and Accountability Act of 2010, or the rules, regulations, and orders of the Commission promulgated thereunder, in violation of Regulation 1.6, 17 C.F.R. § 1.6 (2022).

## V. DISGORGEMENT AND CIVIL MONETARY PENALTY

### A. Disgorgement

71. The Binance Entity Defendants shall pay, jointly and severally, disgorgement in the amount of One Billion, Three Hundred and Fifty Million Dollars ($1,350,000,000.00) ("Disgorgement Obligation"), representing the gains received in connection with such violations, within the later of: (i) nine (9) months of the date of entry of this Consent Order, or (ii) such other date as may be ordered in any related action by, or any agreement with, the Department of Justice ("DOJ"), charging Binance Holdings Limited, in part, for the misconduct that is at issue in this matter (the "Criminal Action"). If the Disgorgement Obligation is not paid in full within the dates set forth above, then post-judgment interest shall accrue on the unpaid portion of the Disgorgement Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

72. For amounts ordered to be forfeited and forfeited in the Criminal Action, the Binance Entity Defendants shall receive a dollar-for-dollar credit against the Disgorgement Obligation. Within ten days of payment in the Criminal Action, the Binance Entity Defendants

22

shall, under a cover letter that identifies the name and docket number of this proceeding, transmit to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and Robert T. Howell, Deputy Director, Commodity Futures Trading Commission, Ralph Metcalfe Federal Building, 77 West Jackson Blvd., Ste. 800, Chicago, IL 60604, copies of the form of payment.

73.     If not offset by payments in the Criminal Action, any outstanding portions of the Disgorgement Obligation and any post-judgment interest shall be paid by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

MMAC/ESC/AMK326
Commodity Futures Trading Commission
6500 S. MacArthur Blvd.
HQ Room 266
Oklahoma City, OK 73169
9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, the Binance Entity Defendants shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions. The Binance Entity Defendants shall accompany payment of the Disgorgement Obligation with a cover letter that identifies Binance and the name and docket number of this proceeding. The Binance Entity Defendants shall simultaneously transmit copies of the cover letter and form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and Robert T. Howell, Deputy Director, Commodity Futures Trading Commission, Ralph Metcalfe Federal Building, 77 West Jackson Blvd., Ste. 800, Chicago, IL 60604.

23

**B.     Civil Monetary Penalty**

74.     Defendant Changpeng Zhao shall pay a civil monetary penalty in the amount of One Hundred and Fifty Million Dollars ($150,000,000) ("Zhao CMP Obligation"). The Zhao CMP Obligation shall be paid as follows:

(i)     Fifty Million Dollars ($50,000,000) within thirty (30) days of the date of entry of this Consent Order,

(ii)    Fifty Million Dollars ($50,000,000) within ninety (90) days of the date of entry of this Consent Order, and

(iii)    Fifty Million Dollars ($50,000,000) within one hundred and eighty (180) days of the date of entry of this Consent Order.

If the Zhao CMP Obligation is not paid within the dates set forth above on paragraph 74, then post-judgment interest shall accrue on the entire unpaid portion of the Zhao CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

75.     Defendants Binance Holdings Limited, Binance Holdings (IE) Limited, Binance (Services) Holdings Limited shall pay, jointly and severally, a civil monetary penalty in the amount of One Billion, Three Hundred and Fifty Million Dollars ($1,350,000,000) ("Binance CMP Obligation"). The Binance Entity Defendants shall pay the Binance CMP Obligation within the later of: (i) eighteen (18) months of the date of entry of this Consent Order or (ii) such other date as may be ordered in any related action by, or any agreement with, the DOJ in the related Criminal Action.

76.     The Binance Entity Defendants shall receive a dollar-for-dollar credit against the Binance CMP Obligation for Five Hundred Million Dollars ($500,000,000) ordered to be paid as a penalty and paid as a penalty in either the Criminal Action or the related consent with the

24

Financial Crimes Enforcement Network ("FinCEN Consent"). If any portion of the Binance CMP Obligation is not paid in full as ordered, or offset by payments in the Criminal Action and/or FinCEN Consent, then post-judgment interest shall accrue on the unpaid portion of the Binance CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

77. Payment of the Zhao CMP Obligation and Binance CMP Obligation, and any post-judgment interest, shall be made by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

MMAC/ESC/AMK326
Commodity Futures Trading Commission
6500 S. MacArthur Blvd.
HQ Room 266
Oklahoma City, OK 73169
9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Defendant Zhao and/or the Binance Entity Defendants shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendant Zhao shall accompany payment of the Zhao CMP Obligation, and the Binance Entity Defendants shall accompany payment of the Binance CMP Obligation, with a cover letter that identifies Zhao and Binance and the name and docket number of this proceeding. Defendant Zhao and the Binance Entity Defendants, respectively, shall simultaneously transmit copies of the cover letter and form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and Robert T. Howell, Deputy

Director, Commodity Futures Trading Commission, Ralph Metcalfe Federal Building, 77 West Jackson Blvd., Ste. 800, Chicago, IL 60604.

## C. Provisions Related to Monetary Sanctions

78.     Partial Satisfaction: Acceptance by the Commission of any partial payment of the Disgorgement Obligation, the Zhao CMP Obligation, and/or the Binance CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## D. Cooperation

79.     Defendant Zhao and the Binance Entity Defendants, and its successors and assigns, shall cooperate with the Commission, including the Commission's Division of Enforcement, in this action and in any current or future Commission civil litigation or administrative matter related to, or arising from, this action.

## E. Settling Defendants' Certifications to the Commission

### Trading Firms A, B, and C and Binance's Nationality of Business Entities Checklist

80.     Defendant Zhao and the Binance Entity Defendants, in reliance on and through Binance's Chief Compliance Officer, have certified to the Commission as follows:  (i) applying the current version of the NBEC to the information presently available to Binance, the accounts associated with Trading Firms A, B, and C, as alleged in paragraphs 150–186 of the Complaint, do not meet the NBEC criteria for onboarding, and Binance's KYC policies and procedures would disqualify those accounts from onboarding; and (ii) as of September 15, 2023, Binance has closed or restricted with the intent to close on a reasonably prompt timeline the accounts associated with Trading Firms A, B, and C, as alleged in paragraphs 150–186, and those accounts no longer trade digital asset derivative products on Binance.

26

81.     No later than ninety days from the date of entry of this Consent Order, the Binance Entity Defendants, or their successors and assigns, through Binance's Chief Compliance Officer and Chief Executive Officer, shall certify in sworn declarations provided to the Commission that:  (i) Binance has tested the reliability of the NBEC by applying it to its top 35 revenue-generating customers as of the date of this Order; (ii) for each of the top 35 revenue-generating customers, Binance identified all accounts associated with that customer, the entity holding each account (i.e. the account registrant), as well as all beneficial owner(s), parent(s), and/or intermediate beneficial owner(s) of that entity, and based on all information presently available to Binance, independently determined if each entity meets the NBEC's criteria for onboarding; (iii) Binance has closed or restricted with the intent to close on a reasonably prompt timeline all accounts of top 35 revenue-generating customers that did not meet the NBEC's criteria for onboarding and will not allow any account associated with those entities to onboard going forward absent an affirmative finding by the Chief Compliance Officer and his compliance committee, considering the relevant historical facts and circumstances, including all information available to Binance, that the entity meets the NBEC's criteria for onboarding; and, (iv) Binance's Chief Compliance Officer verified that the NBEC was correctly applied to all the accounts associated with Binance's top 35 revenue-generating customers.

**Binance Will No Longer Allow Sub-Accounts to Circumvent Compliance Controls**

82.     Defendant Zhao and the Binance Entity Defendants, through their Chief Compliance Officer, have certified to the Commission that any customer or potential customer that seeks to onboard, open an account or "sub-account", and/or otherwise transact on the Binance platform, whether through the interface available at www.binance.com, the Binance mobile application, direct connection to Binance's matching engines via the Binance API, or any

27

other type of direct market access, must first complete Binance's onboarding program, which includes all applicable KYC policies and procedures.

83. No later than ninety days following the date of the entry of this Consent Order, the Binance Entity Defendants, or their successors or assigns, through Binance's Chief Compliance Officer and Chief Executive Officer, shall certify in sworn declarations provided to the Commission that: (i) Binance has implemented compliance controls to prevent use of Binance corporate accounts directly accessing the Binance platform by anyone other than the account registrant who may act through its permitted users, and if any permitted user is acting for the benefit of any person other than the account registrant then the permitted user and its beneficiary(ies) have also been subjected to all of Binance's onboarding and KYC's controls; (ii) Binance applied all its applicable KYC policies and procedures, including the NBEC checklist, to all existing corporate "sub-accounts" directly accessing the Binance platform including those associated with Prime Brokers A and B as alleged in paragraphs 144 to 149 of the Complaint; and, (iii) Binance has closed or restricted with the intent to close on a reasonably prompt timeline every sub-account that failed to meet Binance's compliance controls and current criteria for onboarding, as described in this paragraph.

84. No later than two hundred and ten days following the date of the entry of this Consent Order, the Binance Entity Defendants, through Binance's Chief Compliance Officer and Chief Executive Officer, shall certify in sworn declarations provided to the Commission that: (i) Binance applied all applicable KYC policies and procedures to all existing retail "sub-accounts" directly accessing the Binance platform; and (ii) Binance offboarded every retail sub-account that failed to meet Binance's compliance controls and current criteria for onboarding, as described in this paragraph.

85. For any accounts or "sub-accounts" that have been abandoned or classified by Binance as dormant following any account restrictions or closures in connection with the undertakings and certifications memorialized in paragraphs 80, 81,83 and 84 of this Order, Binance shall not permit any such abandoned or dormant account to transact on its platform.

**Binance Corporate Governance**

86. No later than ninety days following the date of the entry of this Consent Order, the Binance Entity Defendants, or their successors or assigns, through Binance's Chief Compliance Officer and Chief Executive Officer, shall certify in sworn declarations provided to the Commission that Binance has implemented a corporate governance structure that includes at least the following elements: (i) a Board of Directors composed of at least three independent members and in which Defendant Zhao will not be a member; (ii) a Compliance Committee; and (iii) an Audit Committee.

## VI. MISCELLANEOUS PROVISIONS

87. Until such time as Defendant Zhao and the Binance Entity Defendants satisfy in full their Disgorgement Obligation, the Zhao CMP Obligation, and Binance CMP Obligation under this Consent Order, upon the commencement by or against them of any insolvency, receivership, or bankruptcy proceeding or any other proceeding for settlement of Zhao and/or Binance debts, all notices to creditors required to be furnished to the Commission under Title 11 of the United States Code or other applicable law with respect to such insolvency, receivership bankruptcy or other proceedings, shall be sent to the address below:

Secretary of the Commission
Office of the General Counsel
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street N.W.
Washington, DC 20581

88.     Notice: All notices and certifications required to be given by any provision in this

Consent Order, except as to paragraph 80-85, above, shall be sent certified mail, return receipt

requested and via e-mail as follows:

Notice to the Commission:

> Robert T. Howell, Deputy Director
> Commodity Futures Trading Commission, Chicago Regional Office
> Ralph Metcalfe Federal Building
> 77 West Jackson Blvd., Ste. 800
> Chicago, IL 60604
> *RHowell@cftc.gov*

Notice to Zhao:

> Douglas K. Yatter
> Latham & Watkins LLP
> 1271 Avenue of the Americas
> New York, NY 10020
> douglas.yatter@lw.com

Notice to Binance Entity Defendants:

> Stephanie L. Brooker
> Gibson, Dunn & Crutcher LLP
> 1050 Connecticut Avenue, N.W.
> Washington, DC 20036
> sbrooker@gibsondunn.com

89.     Change of Address/Phone: Until such time as the Binance Entity Defendants

satisfy in full their Disgorgement Obligation and Binance CMP Obligation, and Defendant Zhao

satisfies the Zhao CMP Obligation, they shall provide written notice to the Commission by

certified mail of any change to their telephone number and mailing address within ten calendar

days of the change.

90.     Entire Agreement and Amendments: This Consent Order incorporates all of the

terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to

30

amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

91.     Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

92.     Waiver: The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or other provision of the Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

93.     Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order.

94.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon the following persons who receive actual notice of this Consent Order, by personal service or otherwise: (1) Defendants Changpeng Zhao, Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited; (2) any officer, agent, servant, employee or attorney of Defendant Zhao and/or the Binance Entity Defendants; and (3) any other persons who are in active concert or participation with any person described in subsections (1) and (2) above.

95.     Authority: Joshua Eaton hereby warrants that he is the Deputy General Counsel of Binance; that this Consent Order has been duly authorized by Binance Holdings Limited,

31

Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited; and he has been duly empowered to sign and submit this Consent Order on behalf of Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited.

96.    Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

97.    Contempt: Defendant Zhao and the Binance Entity Defendants understand that the terms of the Consent Order, except with respect to disgorgement, are enforceable through contempt proceedings and that, in any such proceeding, they may not challenge the validity of this Consent Order.

98.    Agreements and Undertakings: Defendants Changpeng Zhao, Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendants Changpeng Zhao, Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited without further notice.

32

IT IS SO ORDERED on this <u>14th</u> day of <u>December</u>, 2023

<u>                    </u>
**UNITED STATES DISTRICT JUDGE**

**CONSENTED TO AND APPROVED BY:**

| | |
|---|---|
| **PLAINTIFF COMMODITY FUTURES TRADING COMMISSION** | **DEFENDANT CHANGPENG ZHAO** |

**Candice Haan, Senior Trial Attorney**          **Changpeng Zhao**

Date: __11/21/2023__                  Date: __November 20, 2023__

Joseph Platt (*jplatt@cftc.gov*)
Candice Haan *(chaan@cftc.gov)*
Katherine Paulson (*kpaulson@cftc.gov*)
Elizabeth N. Pendleton
*(ependleton@cftc.gov)*
Scott R. Williamson
*(swilliamson@cftc.gov)*
Robert T. Howell (*rhowell@cftc.gov*)

Ralph Metcalfe Federal Building
77 West Jackson Boulevard, Suite 800
Chicago, Illinois 60604
(312) 596-0700
(312) 596-0714 (fax)

**Approved as to Form:**

Douglas K. Yatter (*Douglas.Yatter@lw.com*)
Benjamin Naftalis
(*Benjamin.Naftalis@lw.com*)
Heather A. Waller (*Heather.Waller@lw.com*)
Iris Xie (*Iris.Xie@lw.com*)
Kirsten C. Lee (*Kirsten.Lee@lw.com*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Attorneys for Changpeng Zhao*

DEFENDANTS BINANCE HOLDINGS
LIMITED, BINANCE HOLDINGS (IE)
LIMITED, and BINANCE (SERVICES)
HOLDING LIMITED

Joshua Eaton, Deputy General Counsel

Date: November 20, 2023

Approved as to Form:

Stephanie Brooker
(SBrooker@gibsondunn.com)
M. Kendall Day (KDay@gibsondunn.com)
Richard W. Grime
(RGrime@gibsondunn.com)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.,
Washington, DC 20036-5306
Tel: 202-887-3502
Fax: 202-530-4216

*Attorneys for Binance Holdings Limited,
Binance Holdings (IE) Limited, Binance
(Services) Holdings Limited*

34