## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | |
| Debtors. | Case No. 22-11068 (KBO) |
| | (Jointly Administered) |
| FTX RECOVERY TRUST, FTX DIGITAL MARKETS, LTD. | |
| Plaintiffs, | |
| - against - | |
| BINANCE HOLDINGS LIMITED, BINANCE CAPITAL MANAGEMENT CO. LTD, BINANCE HOLDINGS (IE) LIMITED, BINANCE (SERVICES) HOLDINGS LIMITED, CHANGPENG ZHAO, DINGHUA XIAO, SAMUEL WENJUN LIM, and DOES 1-1000 | Adv. Pro. No. 24-50222 (KBO) **Related to Docket Nos. 62, 63, 64, 106, 107, and 108** |
| Defendants. | |

### DEFENDANT DIGITAL ANCHOR HOLDINGS LIMITED'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION, DISMISS, OR ABSTAIN

Dated: September 12, 2025
      Wilmington, Delaware

**CONNOLLY GALLAGHER LLP**

Karen C. Bifferato (DE Bar No. 3279)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 888-6221
kbifferato@connollygallagher.com

-and-

**MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.**

Karen R. King (admitted *pro hac vice*)
Peter Menz (admitted *pro hac vice*)
565 Fifth Avenue
New York, New York 10017
(212) 856-9600 (telephone)
(212) 856-9494 (facsimile)
kking@maglaw.com
pmenz@maglaw.com

*Attorneys for Defendant Digital Anchor Holdings Limited*

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 2

I.      THE FTX RECOVERY TRUST'S OBJECTIONS TO ARBITRATION FAIL .............. 2

    a.   The FTX Recovery Trust's Objections Cannot Be Resolved by the Court ..................... 2

    b.   There is No Basis to Manufacture an Exception to the Arbitration Clause ..................... 3

II.     THE COMPLAINT FAILS TO ALLEGE PERSONAL JURISDICTION AS TO
DIGITAL ANCHOR ................................................................................................. 5

III.    THIS COURT SHOULD NOT HEAR THE FALSE STATEMENT CLAIMS ............... 8

    a.   No Subject Matter Jurisdiction Exists Over The False Statement Claims ..................... 8

    b.   In the Alternative, This Court Should Abstain From Hearing the False Statement
Claims ................................................................................................................11

IV.    THE COMPLAINT FAILS TO STATE A CLAIM ....................................................... 13

CONCLUSION .................................................................................................................... 14

# Table of Authorities

*Balcor/Morristown Ltd. Partnership v. Vector Whippany Assocs.*,
  181 B.R. 781 (D.N.J. 1995) ................................................................. 12

*Beard v. Braunstein*,
  914 F.2d 434 (3d Cir. 1990) ................................................................. 9

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988) ................................................................. 13

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) ................................................................. 4

*Hays and Co. v Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  885 F.2d 1149, 1157 (3d Cir. 1989) ................................................................. 4

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
  586 U.S. 63 (2019) ................................................................. 2, 3

*In re Berks Behavioral Health, LLC*,
  464 B.R. 684 (E.D. Pa. 2012) ................................................................. 9

*In re BWI Liquidating Corp.*,
  437 B.R. 160 (Bankr. D. Del. 2010) ................................................................. 11

*In re Centennial Coal, Inc.*,
  278 B.R. 54 (Bankr. D. Del. 2002) ................................................................. 9

*In re DHP Holdings II Corp.*,
  435 B.R. 264 (Bankr. D. Del. 2010) ................................................................. 9

*In re GWI, Inc.*,
  269 B.R. 114 (Bankr. D. Del. 2001) ................................................................. 4

*In re Insilco Techs., Inc.*,
  330 B.R. 512 (Bankr. D. Del. 2005) ................................................................. 11

*In re Maxus Energy Corp.*,
  611 B.R. 532 (Bankr D. Del. 2019) ................................................................. 8

*In re Microbilt Corp.*,
  484 B.R. 56 (D.N.J. 2012) ................................................................. 4

*In re Mintze*,
  434 F.3d 222 (3d Cir. 2006) ................................................................. 3

*In re Nu-Kote Holding, Inc.*,
    257 B.R. 855 (M.D. Tenn. 2001) ................................................................. 4

*In re Nu Ride, Inc.*,
    No. 23-10831 (MFW), 2025 WL 1600566 (Bankr. D. Del. 2025) ..................................... 10, 11

*In re Olympus Healthcare Group, Inc.*,
    352 B.R. 603 (Bankr. D. Del. 2006) ................................................................. 5

*In re PennySaver USA Publishing, LLC*,
    602 B.R. 256 (Bankr. D. Del. 2019) ................................................................. 13

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004) ................................................................. 8, 10

*In re Stone & Webster, Inc.*,
    367 B.R. 523 (Bankr. D. Del. 2007) ................................................................. 9

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ................................................................. 5, 7

*LaSala v. Marfin Popular Bank Public Co., Ltd.*,
    410 F. App'x 474 (3d Cir. 2011) ................................................................. 7

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004) ................................................................. 6

*Nelson v. Claussen*,
    No. 23 Civ. 1896, 2024 WL 4249730 (D.N.J. 2024) ................................................................. 6

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
    496 F.3d 312 (3d Cir. 2007) ................................................................. 7

*Phar-Mor, Inc. v. Coopers & Lybrand*,
    22 F.3d 1228 (3d Cir. 1994) ................................................................. 8, 9, 12

*Quality Heating and Sheet Metal Co., Inc. v. Ernest Bock and Sons*,
    No. 94 Civ. 2523, 1994 WL 470204 (E.D. Pa. Aug. 26, 1994) ................................................................. 12

*Ryan v. Johnson*,
    115 F.3d 193 (3d Cir. 1997) ................................................................. 5

*St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*,
    884 F.2d 688 (2d Cir. 1989) ................................................................. 9

*Truinject Corp. v. Nestlé Skin Health. S.A.*,
   No. 19 Civ. 592, 2020 WL 1270916 (D. Del. Mar. 17, 2020) ..................................................... 6

*Williams v. Medley Opportunity Fund II, LP*,
   965 F.3d 229 (3d Cir. 2020) ........................................................................................................ 2

*Young v. Experian Info. Sols., Inc.*,
   119 F.4th 314 (3d Cir. 2024) ...................................................................................................... 2

*Zirpoli v. Midland Funding, LLC*,
   48 F.4th 136 (3d Cir. 2022) ......................................................................................................... 3

**Statutes**

11 U.S.C. § 546 ............................................................................................................................... 13

28 U.S.C. § 157 ......................................................................................................................... 8, 9, 12

28 U.S.C. § 1334 ........................................................................................................................ 1, 12

**Rules**

Fed. R. Bankr. P. 7012 ...................................................................................................................... 1

Fed. R. Civ. P. 12 ............................................................................................................................... 1

Defendant Digital Anchor Holdings Limited ("Digital Anchor"), by and through undersigned counsel, respectfully submits the following reply memorandum of law in support of its motion to dismiss pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(1), (2), and (6); to compel arbitration pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6); and to permissively abstain pursuant to 28 U.S.C. § 1334(c)(1).  [Adv. D.I. 62] (the "Motion").

## PRELIMINARY STATEMENT

In a sprawling and unwieldy opposition brief, the FTX Recovery Trust and FTX Digital Trading Ltd. ("Plaintiffs") claim that their complaint was sufficient on its face while simultaneously submitting hundreds of pages of evidence to clarify obvious deficiencies in that pleading.  [Adv. D.I. 106] (the "Opposition").  Not only is this backdoor attempt to amend the complaint procedurally improper, it fails to address the core deficiencies previously identified by Digital Anchor.  *See* [Adv. D.I. 63] (the "Opening Brief").  Most fundamentally, Plaintiffs' claims cannot be adjudicated in this forum.  The FTX Recovery Trust's fraudulent transfer claims are subject to arbitration, as Plaintiffs fail to dispute that the relevant arbitration agreement binds the FTX Recovery Trust and requires that questions of delegation be submitted to the arbitrator.  As to the remaining state law claims (the "False Statement Claims"), there is no federal jurisdiction, despite Plaintiffs' attempts to (1) invent a new jurisdictional theory and (2) rewrite the Plan of Confirmation to give this adversary proceeding a starring role.  Last, this Court cannot exercise personal jurisdiction as to Digital Anchor, because it *did not sign* and is not bound by the supposed admissions on which Plaintiffs rely to establish personal jurisdiction.

Plaintiffs' scattershot responses to these arguments (as well as the pleading flaws identified by Digital Anchor and other Defendants) do not move the needle.  The Motion should be granted.

## ARGUMENT

### I.    THE FTX RECOVERY TRUST'S OBJECTIONS TO ARBITRATION FAIL

#### a.   The FTX Recovery Trust's Objections Cannot Be Resolved by the Court

The FTX Recovery Trust does not contest that an arbitration agreement exists between Digital Anchor, former Plaintiff FTX Trading Ltd., and former Plaintiff Euclid Way Ltd., which is binding on the former Plaintiffs' successors and assigns; that the FTX Recovery Trust, the only party bringing the Fraudulent Transfer Claims (Opposition ¶ 70), is the successor to these entities; and that the agreement contains a valid delegation clause through its incorporation of the Rules of the Hong Kong International Arbitration Centre.  *See* Opening Brief at 7-10.  The failure to contest those facts is dispositive.  "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."  *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019).  Because the FTX Recovery Trust presented "no challenge to the agreement's formation, [it] presents no judicially resolvable challenge to the motion to compel."  *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 321 (3d Cir. 2024).

According to the FTX Recovery Trust, these admitted facts are "irrelevant," because (in its view) "fraudulent transfer claims brought under Section 544(b) or Section 548 are, as a rule, simply not subject to mandatory arbitration."  Opposition ¶ 55.  That is an objection to scope, *i.e.*, whether the parties (who admittedly entered into an arbitration agreement) understood that the agreement would cover claims purportedly asserted on behalf of third parties.  But objections to scope, as opposed to the existence of an arbitration agreement, are for the arbitrator, not this Court.  When, as here, no challenge is made to a delegation clause, "a court possesses no power to decide the arbitrability issue."  *Henry Schein*, 586 U.S. at 68; *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020) (party must "challenge the delegation provision specifically" to raise a judicially cognizable dispute).  As the Supreme Court has made clear, this

2

limit on judicial authority holds "true even if the court [or here, a party] thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68. While accusing Digital Anchor of an "unabashed request that this Court ignore binding precedent" (Opposition ¶ 52), the FTX Recovery Trust is the one that seeks to revive the now-debunked "wholly groundless" exception to arbitration, believing that it should win in court because it will win in arbitration. *Henry Schein*, 586 U.S. at 70 (rejecting the proposition that "if a court at the back end can say that the underlying issue was not arbitrable, the court at the front end should also be able to say that the underlying issue is not arbitrable").

Moreover, there is no precedent prohibiting an arbitrator from deciding the threshold question of arbitrability. As strenuously as the FTX Recovery Trust contests the merits of the motion to compel, it cannot identify any analogous case involving a delegation clause. Under these circumstances, "counterintuitive" as it may seem, this court "must only determine if the parties to the Loan clearly and unmistakably expressed an agreement to arbitrate the issue of arbitrability." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 145 (3d Cir. 2022). The FTX Recovery Trust remains free to make its arguments regarding scope to the arbitrator, because (according to the uncontested agreement between the FTX Recovery Trust and Digital Anchor) that tribunal will decide questions of arbitrability.

### b. There is No Basis to Manufacture an Exception to the Arbitration Clause

Although the FTX Recovery Trust suggests that the arbitration clause should be disregarded as a matter of judicial discretion, such discretion only exists when a party "establish[es] congressional intent to create an exception to the [Federal Arbitration Act's] mandate with respect to the party's statutory claims." *In re Mintze*, 434 F.3d 222, 229 (3d Cir. 2006). As Digital Anchor explained in the Opening Brief, the Supreme Court has explained that a party resisting the command of the Federal Arbitration Act "bears the heavy burden of showing

a clearly expressed congressional intention that such a result should follow." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (internal citations omitted). Despite its conclusory assertion that "[t]here is clearly a congressional intent to preclude arbitration of fraudulent conveyance claims" (Opposition ¶ 56), "the mere fact that claims may arise under the Bankruptcy Code does not preclude application of the arbitration mandate." *In re Microbilt Corp.*, 484 B.R. 56, 64 (D.N.J. 2012). The FTX Recovery Trust offers no analysis as to why bankruptcy policy forbids arbitration of this post-confirmation dispute (much less the more specific question regarding whether bankruptcy policy forbids the *arbitrator* deciding that question in the first instance). Its unreasoned objections offer little more than resort to "general bankruptcy policies," which are "not substantial enough to override the policy favoring arbitration." *In re GWI, Inc.*, 269 B.R. 114, 118 (Bankr. D. Del. 2001) (citing *Hays and Co. v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1157-58 (3d Cir. 1989)).

As a practical matter, the FTX Recovery Trust cannot dispute that because this adversary proceeding was brought post-confirmation, the only potential effect it can have on the bankruptcy estate is to incrementally increase the recovery available to creditors. Because the exact same relief can be obtained through an arbitration proceeding (and the FTX Recovery Trust will be bound to distribute any award to creditors in any event), arbitration poses no threat to federal bankruptcy policy. *See, e.g.*, *Microbilt Corp.*, 484 B.R. at 65 (granting motion to compel arbitration as to post-confirmation disputes which 'will not affect the administration of the Plaintiffs' bankruptcy estates"); *In re Nu-Kote Holding, Inc.*, 257 B.R. 855, 865 (M.D. Tenn. 2001) (granting motion to compel arbitration as "[i]mpact on the bankruptcy estate is minimal based on the confirmed Chapter 11 plan"). Having failed to contest these dispositive premises, the FTX Recovery Trust is left with "vague arguments…that staying or dismissing this

4

proceeding in favor of arbitration would seriously jeopardize the objectives of the Bankruptcy Code." *In re Olympus Healthcare Group, Inc.*, 352 B.R. 603, 612 (Bankr. D. Del. 2006) (compelling arbitration where resisting party did not "carry its burden" to show that conflict between the Bankruptcy Code and the Federal Arbitration Act existed).

Finally, the FTX Recovery Trust's arguments that compelling arbitration would result in piecemeal arbitration ring hollow given that the arbitrable Fraudulent Transfer Claims bear little resemblance to the False Statement Claims, such that any supposed prejudice resulting from piecemeal litigation would be minimal.[1] Although the Trust asserts that "the parties' relationship at the time of the 2021 Share Repurchase is relevant to establishing the Defendants' intent to cause the harm alleged in the [False Statement] Claims," Opposition ¶ 59, those minimal overlapping facts do not establish any meaningful efficiencies. Moreover, the FTX Recovery Trust ignores entirely that the Federal Arbitration Act "expressly *requires* piecemeal adjudication of certain disputes when necessary to enforce an agreement to arbitrate," *Ryan v. Johnson*, 115 F.3d 193, 197 (3d Cir. 1997).

* * *

For the foregoing reasons, the FTX Recovery Trust's objections to arbitration fail. This Court should grant the Motion and compel arbitration of the Trust's fraudulent transfer claims.

## II.    THE COMPLAINT FAILS TO ALLEGE PERSONAL JURISDICTION AS TO DIGITAL ANCHOR

Personal jurisdiction "must be assessed individually" for each defendant and for each claim. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). Instead, Plaintiffs

---

[1] These objections are especially unfounded in light of the fact that, as described further below, (1) the False Statement Claims cannot be heard in this Court because no federal jurisdiction exists, and (2) the False Statement Claims are *also* subject to arbitration (a fact that Plaintiffs obscured through their vague pleadings).

adopt a "close enough" approach, seeking to blur the lines not only between Defendants, but between the actions and transactions alleged in the complaint.  This theory cannot give rise to personal jurisdiction as to Digital Anchor, a foreign corporation that (by Plaintiff's own admission) did nothing more than engage in other transactions with foreign corporations.  [D.I. 1 ¶¶ 22, 38, 82] (the "Complaint").

The lynchpins of this "close enough" theory are the supposed admissions made by certain defendants—but not Digital Anchor—in certain court proceedings.  Whenever Plaintiffs are forced to acknowledge a deficiency in their theory of personal jurisdiction, their first resort is claiming that these court documents cure any issue.  *See* Opposition ¶¶ 8, 14, 15, 16, 17, 18, 19, 20, 22, 31, 33.  As Digital Anchor previously explained, that approach is fundamentally unfair and illogical as applied to Digital Anchor.  *See* Opening Brief at 12.  Although Plaintiffs occasionally concede that only "three of the four Binance Defendants" signed the relevant documents, Opposition ¶ 15, it nevertheless argues that Digital Anchor should be bound by at least the CFTC consent order, as "the findings of [that order] were expressly not limited to the three BHL defendants[.]"  *Id.* ¶ 68.  References to unnamed other entities, however, cannot excuse this Court's obligation to "analyze questions of personal jurisdiction on a defendant-specific… basis."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 n.1 (3d Cir. 2004).  Plaintiffs have not provided evidence or allegations sufficient to evaluate their claims as to Digital Anchor: as district courts in this Circuit have recognized, "group pleading makes the discernment of jurisdictional questions particularly difficult."  *Nelson v. Claussen*, No. 23 Civ. 1896, 2024 WL 4249730, at *13 n.17 (D.N.J. Sep. 20, 2024); *see, e.g.*, *Truinject Corp. v. Nestlé Skin Health. S.A.*, No. 19 Civ. 592, 2020 WL 1270916, at *3 (D. Del. Mar. 17, 2020) ("Truinject's group pleading has resulted in a complaint that fails to meet its burden to allege sufficient facts to

establish that this Court may properly exercise personal jurisdiction over Nestlé Skin Health, S.A.").

Apart from the court filings, Plaintiffs' primary theory of personal jurisdiction is that FTX—despite being a foreign entity—was "heavily connected to the U.S. market and also had a substantial U.S. customer base."  Opposition ¶ 19.[2]  To establish that *any* Defendant was aware of these supposed facts, Plaintiffs trot out excerpts of various communications between FTX executives and their counterparts at Binance, providing little context but ample speculation as to the meaning of these snippets.  Opposition ¶¶ 19, 21, 23, 30.  Such attenuated and speculative theories cannot create the "close[] and "direct causal connection" that is required to give rise to specific jurisdiction.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 323 (3d Cir. 2007). The cherry-picking of other fleeting domestic contacts—FTX employed a law firm located in the United States, FTX used a New York trust to obtain the cryptocurrency that it would eventually send to Binance—only underscores that (1) these forum-related contacts are those of *FTX*, not Digital Anchor, and (2) any such contacts were "random, isolated, [and] fortuitous," and therefore insufficient to establish jurisdiction.  *Keeton*, 465 U.S. at 774.

Finally, Plaintiffs should not be granted jurisdictional discovery in a futile attempt to cure these deficiencies.  Given Plaintiffs' apparently sweeping request for jurisdictional discovery and the speculative allegations in the complaint, their request represents the type of "fishing expedition" that should not be permitted.  *LaSala v. Marfin Popular Bank Public Co., Ltd.*, 410 F. App'x 474, 478 (3d Cir. 2011).

---

[2] Adding to the confusion, Plaintiffs assert that the repurchase of a domestic affiliate of FTX should factor into the jurisdictional analysis, even though Digital Anchor was not a party to those transactions.  *Id.* ¶ 21.

### III.   THIS COURT SHOULD NOT HEAR THE FALSE STATEMENT CLAIMS

#### a.   No Subject Matter Jurisdiction Exists Over The False Statement Claims

Plaintiffs do not dispute that the False Statement Claims are also based exclusively on state tort law, not federal bankruptcy law; that they could be filed in any court of competent jurisdiction; and that this action was filed after plan confirmation, having not been specifically identified in the Debtors' Plan of Reorganization.  These admitted facts foreclose the False Statement Claims from having a "close nexus" to FTX's now-concluded bankruptcy proceedings, and therefore no federal jurisdiction exists over these claims.  *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004) (describing the "close nexus" test).  In a futile effort to avoid dismissal, Plaintiffs ask this Court to create a novel jurisdictional test, then rewrite history to suggest that this (then nonexistent) action was a critical part of the Plan of Reorganization.  These arguments have no support in the law or the procedural history and should be rejected.

Plaintiffs start with the unremarkable observation that the causes of action belong to the Debtors' bankruptcy estate.  Opposition ¶¶ 41-42.  But Plaintiffs go on to conclude (without citation to Third Circuit caselaw) that their claims therefore fall within 28 U.S.C. § 157(b)(2)(E), which provides that "orders to turn over property of the estate" qualify as "core" bankruptcy proceedings and "arise in" the Debtors' bankruptcy proceedings.  *Id.* ¶¶ 43-44.  That absence of legal support is no mistake: the Third Circuit has decisively rejected the proposition that any "proceeding[] having the effect of bringing property into the estate of the debtor" is a core proceeding, explaining that the formulation advanced by Plaintiffs here "sweeps too broadly." *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1239 n.19 (3d Cir. 1994); *see also In re Maxus Energy Corp.*, 611 B.R. 532, 544 (Bankr D. Del. 2019) (disregarding this theory as

having been "specifically rejected by the Third Circuit"); *In re Stone & Webster, Inc.*, 367 B.R. 523, 527 (Bankr. D. Del. 2007) (same).[3]

As the Third Circuit has repeatedly explained, Section 157(b)(2)(E) cannot be construed to cover any claim "brought by a trustee or debtor in possession to recover money or property," lest it raise constitutional concerns regarding the scope of the bankruptcy court's authority. *Beard v. Braunstein*, 914 F.2d 434, 443-44 (3d Cir. 1990); *see also In re Berks Behavioral Health, LLC*, 464 B.R. 684, 687 (E.D. Pa. 2012) ("Core proceedings represent those disputes so intertwined with the bankruptcy process that Congress has the power under Article I of the Constitution to direct a non-tenured judicial officer (i.e., bankruptcy judge) to render a final determination of their merits."). As the *Phar-Mor* court explained, this overbroad test would include "[a] debtor corporation's state law breach of contract action against a third party," even though "such a proceeding is precisely the type of proceeding that is non-core and outside the power of the bankruptcy court to adjudicate." *Phar-Mor*, 22 F.3d at 1239 n.19. So too here— Plaintiffs' belated "mislabel[ling] [of] this action as one for turnover of property of the estate" does not transform the nature of the False Statement Claims, which constitute "nothing more than... traditional state law cause[s] of action that exist independently of Debtors' bankruptcy." *In re Centennial Coal, Inc.*, 278 B.R. 54, 58 (Bankr. D. Del. 2002); *accord In re DHP Holdings II Corp.*, 435 B.R. 264, 272 (Bankr. D. Del. 2010) ("Even if a contract claim is labeled as a turnover proceeding, it is still non-core.... the action brought to collect the account receivable could exist outside this bankruptcy case and, therefore, is non-core."). Given the binding Third Circuit caselaw rejecting Plaintiffs' interpretation of Section 157(b)(2)(E) (none of which

---

[3] Indeed, Plaintiffs expressly rely on the Second Circuit's decision in *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989), *see* Opposition ¶ 44 n.34, notwithstanding the Third Circuit's express rejection of its reasoning. *Phar-Mor*, 22 F.3d at 1239 n.19.

apparently merited mention in the Opposition), Plaintiffs' expansive view of federal jurisdiction must be rejected.

Retreating from these extreme arguments, Plaintiffs next contend that the False Statement Claims fall within this Court's "related-to" jurisdiction because they purportedly have a "close nexus" to the (now-concluded) bankruptcy proceeding. Plaintiffs concede, as they must, that the Third Circuit has made clear that "the mere possibility of a gain or loss of trust assets" is insufficient to create such a nexus. *In re Resorts Int'l, Inc.*, 372 F.3d at 170. They nevertheless identify two purported bases for jurisdiction: that (1) the allegedly "False Statements caused the downfall of FTX and resulted in the Chapter 11 Case," and (2) the purportedly false statements were "described in the Plan documents" and therefore were "sufficiently identified and preserved for prosecution… under the jurisdiction of the Bankruptcy Court." Opposition ¶ 49. Each theory fails.

As to the first argument, blaming the allegedly false statements for FTX's failure is a thinly veiled attempt to manufacture jurisdiction where none exists. By Plaintiffs' own admissions, "the evidence does not support a finding that this lawsuit is the lynchpin of the Debtors' Plan." *In re Nu Ride, Inc.*, No. 23-10831 (MFW), 2025 WL 1600566, at *7 (Bankr. D. Del. June 5, 2025). Indeed, in this very case, Plaintiffs alleged that FTX was undone by "pervasive malfeasance"; that FTX and affiliated entities "may have been insolvent from inception"; and that FTX's officers employed "misleading" accounting techniques, including having "overvalued" assets, omitted "large regulatory liabilities" from their financial statements, and "concealed, and at times actively misrepresented, material facts about their business." Complaint ¶¶ 1, 45. These allegations are entirely consistent with the Disclosure Statement, which first makes clear that there were "serious control failures" at FTX and that these failures

"exposed digital assets under its control to a grave risk of loss, misuse, and compromise"; that the Debtors also "comming[led] and misus[ed] vast sums of customer and corporate funds" and as a result "suffered serious liquidity problems"; and that these circumstances led to a liquidity crisis once CoinDesk published factual information regarding Alameda Research's holdings of an FTX-native cryptocurrency. [D.I. 19143 at 40-41].  By Plaintiffs' own admissions, the tweets at issue were nothing more than the straw that broke the camel's back.

As to Plaintiffs' second theory, the mere fact that the statements were *mentioned* in the Disclosure Statement is insufficient to create jurisdiction.  Numerous bankruptcy courts have explained that a plan of confirmation "must specifically describe a cause of action in order to retain 'related to' jurisdiction."  *In re BWI Liquidating Corp.*, 437 B.R. 160, 165-66 (Bankr. D. Del. 2010) (collecting cases).  Such a "specific description" of a cause of action is what permits creditors to "consider[] its effect when deciding whether to vote in favor of the Plan."  *In re Insilco Techs., Inc.*, 330 B.R. 512, 525 (Bankr. D. Del. 2005).  Here, a passing reference in the Disclosure Statement (rather than a specific description in the Plan itself) "d[id] not provide any notice to creditors (or to the Court, for that matter) as to the importance of this… litigation."  *Id.*  As with the convenient claim that the tweets caused FTX's bankruptcy, Plaintiffs' own conduct belies their litigation positions.  *Accord Nu-Ride*, 2025 WL 1600566, at *7 ("If this lawsuit were so crucial to the Debtors' Plan, it would have been given a more prominent place and description in the Plan and Disclosure Statement.").

### b.  In the Alternative, This Court Should Abstain From Hearing the False Statement Claims

To the extent this Court determines that the "close nexus" test is satisfied, the tenuous connection between the False Statement Claims and the bankruptcy proceeding supports discretionary abstention as to those claims.  According to Plaintiffs, the three most important

factors in evaluating abstention are: "(1) the effect on the administration of the estate; (2) whether the proceeding is core or noncore; and (3) whether the claim involves only state law issues."  Opposition ¶ 51.  Each of those factors strongly supports abstention, and Plaintiffs have no argument to the contrary.  Because the Plan has been confirmed, the only effect on the estate is a (potential) recovery.  Plaintiffs' only response is to again point to the Disclosure Statement, pretending that a passing reference to a handful of tweets in November 2022 somehow transforms this adversary action into the lynchpin of the Plan.  Opposition ¶ 51(a); *see* Section III(a), *supra*.  As to whether the proceeding is core or noncore, Plaintiffs again invoke an interpretation of 28 U.S.C. § 157(b)(2)(E) that has been conclusively rejected by the Third Circuit.  Opposition ¶ 51(b); *Phar-Mor*, 22 F.3d at 1239 n.19.  Last, Plaintiffs cannot deny that the False Statement Claims depend entirely on state law, instead turning on a dime and seeking to minimize the importance of this factor.  Opposition ¶ 51(c) (describing this factor as "not by itself determinative").  Because these key factors and others weigh strongly against exercising jurisdiction as to the False Statement Claims, this Court should abstain pursuant to 28 U.S.C. § 1334(c)(1).[4]

---

[4] Although Plaintiffs seek to put a thumb on the scale by suggesting that abstention is disfavored, Opposition ¶ 51, they confuse the "judge-made" rules that characterize abstention doctrines in other areas with bankruptcy courts' "clear, statutorily created authority to abstain." *Balcor/Morristown Ltd. Partnership v. Vector Whippany Assocs.*, 181 B.R. 781, 792 (D.N.J. 1995).  Congress's decision to create a specialized abstention procedure pursuant to 28 U.S.C. § 1334(c)(1) reflects the view that "abstention must play a far more significant role in limiting those matters which, although properly brought within the reach of jurisdiction under title 11, are nonetheless best left for resolution to a state or other non-bankruptcy forum." *Quality Heating and Sheet Metal Co., Inc. v. Ernest Bock and Sons*, No. 94 Civ. 2523, 1994 WL 470204, at *2 (E.D. Pa. Aug. 26, 1994).  Accordingly, Plaintiffs cannot rely on any presumption against abstention here.

## IV.     THE COMPLAINT FAILS TO STATE A CLAIM

Finally, neither the Fraudulent Transfer Claims nor the False Statement Claims are adequately pleaded, supplying another reason for dismissal at this stage.[5]  Plaintiffs' attempts to clarify their vague group pleading through an opposition brief are both procedurally improper and ultimately insufficient.  *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint.").

*First*, as to the Fraudulent Transfer Claims, Plaintiffs essentially concede that the Complaint does not allege "specific facts as to which…. Defendant received which transfer."  *In re PennySaver USA Publishing, LLC*, 602 B.R. 256, 268 (Bankr. D. Del. 2019).  That fact necessitates dismissal.  *Id.*  Again relying on the CFTC consent order, Plaintiffs nevertheless argue that "all of the Binance Defendant were transferees because they form part of the 'maze of corporate entities' that 'collectively' controlled the Binance.com platform."  Opposition ¶ 68.  As with personal jurisdiction, this "close enough" theory of pleading is not tenable and deprives Digital Anchor of fair notice.

*Second*, as to the False Statements Claims, Plaintiffs ignore the nature of Digital Anchor's objection, which was not that the false statements at issue were inadequately identified, but that

---

[5] Digital Anchor continues to join in Defendants Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited (the "BHL Defendants")'s additional arguments as to why the Fraudulent Transfer Claims fail to state a claim (including that the constructive transfer claims are barred by 11 U.S.C. § 546(e)'s safe harbor provision; that the Complaint does not plausibly plead insolvency as of July 2021, when the transfers took place; (3) that the Complaint fails to allege that the Debtors received less than reasonably equivalent value; and (4) that the actual fraudulent transfer claims fail because neither direct evidence of fraud nor badges of fraud are adequately alleged) and the BHL Defendants' additional arguments regarding Plaintiffs' failure to plead a false or misleading statement, injurious falsehood, intent, and unjust enrichment, as well as the doctrine of *in pari delicto*.

Plaintiff had failed to allege that any could be attributed to Digital Anchor. Opening Brief at 22-23. Once they finally address that issue, Plaintiffs attempt to assert a new allegation not found in the Complaint: Digital Anchor purportedly signed the non-binding "Letter of Intent" that Plaintiffs allege was false. Plaintiffs may not amend their pleading through briefing on a motion to dismiss. It remains the case that none of the alleged misstatements identified in the Complaint are alleged to have been made by Digital Anchor. Should Plaintiffs seek to add claims based on Digital Anchor's purported signature of the non-binding "Letter of Intent," there will certainly be strong grounds for objection and dismissal—not least of which is that the Letter of Intent contains a mandatory arbitration clause.

## **CONCLUSION**

For the foregoing reasons, and for the reasons explained in its Opening Brief, Digital Anchor respectfully submits that the Fraudulent Transfer Claims are subject to arbitration and that the False Statement Claims should be dismissed for lack of subject matter jurisdiction; that, in any event, there is no personal jurisdiction as to Digital Anchor; and that, should this Court disagree, it should dismiss all claims for failure to state a claim, or in the alternative, permissively abstain as to the False Statement Claims.

Dated: September 12, 2025
      Wilmington, Delaware

**CONNOLLY GALLAGHER LLP**

*/s/ Karen C. Bifferato*
Karen C. Bifferato (DE Bar No. 3279)
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 888-6221
kbifferato@connollygallagher.com

-and-

**MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.**

Karen R. King (admitted *pro hac vice*)
Peter Menz (admitted *pro hac vice*)
565 Fifth Avenue
New York, New York 10017
(212) 856-9600 (telephone)
(212) 856-9494 (facsimile)
kking@maglaw.com
pmenz@maglaw.com

*Attorneys for Defendant Digital Anchor Holdings Limited*