**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| FTX RECOVERY TRUST, FTX DIGITAL MARKETS, LTD. | |
| Plaintiffs, | |
| - against - | |
| BINANCE HOLDINGS LIMITED., BINANCE CAPITAL MANAGEMENT CO. LTD, BINANCE HOLDINGS (IE) LIMITED, BINANCE (SERVICES) HOLDINGS LIMITED, CHANGPENG ZHAO, DINGHUA XIAO, SAMUEL WENJUN LIM, and DOES 1-1000 | Adv. Pro. No. 24-50222 (KBO) |
| Defendants. | |

**DEFENDANT DINGHUA XIAO'S REPLY IN FURTHER SUPPORT OF HIS
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**MELUNEY ALLEMAN & SPENCE LLC**

William M. Alleman, Jr. (#5449)
Matthew D. Beebe (#5980)
1143 Savannah Road, Suite 3-A
Lewes, DE 19958
Telephone: (302) 551-6740
Facsimile: (302) 551-6840
Email: Bill.Alleman@maslawde.com
     Matt.Beebe@maslawde.com

**DECHERT LLP**

Matthew L. Mazur (Admitted *pro hac vice*)
May Chiang (Admitted *pro hac vice*)
Hayoung Park (Admitted *pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Email: matthew.mazur@dechert.com
     may.chiang@dechert.com
     hayoung.park@dechert.com

*Counsel for Defendant Dinghua Xiao*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................................................ii

PRELIMINARY STATEMENT........................................................................................................ 1

ARGUMENT ..................................................................................................................................... 1

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER XIAO.............................. 1

          A.      Plaintiffs Fail to Establish Specific Jurisdiction Through Minimum Contacts.................................................................................................... 2

                    1.      Xiao Did Not Purposefully Direct His Activities at the United States.................................................................................... 2

                    2.      Plaintiffs' Fraudulent Transfer Claims Do Not Arise out of or Relate to Xiao's Contact with the United States........................................ 5

                    3.      Exercising Jurisdiction over Xiao Would Not Comport with Fair Play and Substantial Justice................................................... 8

          B.      Plaintiffs Fail to Establish Specific Jurisdiction Through the Effects Test............. 9

          C.      Xiao Did Not Waive His Jurisdictional Defense .................................................. 10

          D.      Plaintiffs Are Not Entitled to Jurisdictional Discovery .........................................11

II.     PLAINTIFFS FAIL TO STATE FRAUDULENT TRANSFER CLAIMS AGAINST XIAO .................................................................................................... 13

III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE........................... 15

CONCLUSION................................................................................................................................ 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
2018 WL 5118638 (S.D.N.Y. Oct. 22, 2018) ............................................................7

*Allaham v. Naddaf*,
635 F. App'x 32 (3d Cir. 2015) ...........................................................................2, 8

*Arrowsmith v. United Press Int'l*,
320 F.2d 219 (2d Cir. 1963)..................................................................................10

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
480 U.S. 102 (1987).................................................................................................8

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
921 F.3d 98 (3d Cir. 2019)....................................................................................11

*In re Astropower Liquidating Tr.*,
2006 WL 2850110 (Bankr. D. Del. Oct. 2, 2006) .................................................15

*In re AstroPower Liquidating Tr.*,
335 B.R. 309 (Bankr. D. Del. 2005) ........................................................................4

*Banks v. Rozum*,
639 F. App'x 778 (3d Cir. 2016) ...........................................................................15

*Bel-Ray Co. v. Chemrite (Pty) Ltd.*,
181 F.3d 435 (3d Cir. 1999)..................................................................................11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).................................................................................................2

*In re Capmark Fin. Grp. Inc.*,
479 B.R. 330 (Bankr. D. Del. 2012) ........................................................................3

*Clapper v. Am. Realty Invs., Inc.*,
2015 WL 3504856 (N.D. Tex. June 3, 2015) ........................................................14

*Cultural Experiences Abroad, LLC v. Colon*,
2024 WL 492683 (D. Del. Feb. 8, 2024) ...............................................................12

*DNA Genotek Inc. v. Spectrum DNA*,
224 F. Supp. 3d 359 (D. Del. 2016)......................................................................12

*E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*,
  335 F. Supp. 3d 657 (D. Del. 2018) ................................................................................12

*Eastman Chem. Co. v. AlphaPet Inc.*,
  2011 WL 6004079 (D. Del. Nov. 4, 2011) .......................................................................11

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
  482 F.3d 247 (3d Cir. 2007) ...........................................................................................15

*In re Forks Specialty Metals Inc.*,
  2023 WL 3239468 (Bankr. E.D. Pa. Apr. 30, 2023) .......................................................10

*Gordian Med., Inc. v. Misty Vaughn & Curitec, LLC*,
  2022 WL 1443917 (D. Del. May 6, 2022) ..........................................................................3

*Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*
  988 F.2d 476 (3d Cir. 1993) .............................................................................................7

*Hasson v. FullStory, Inc.*,
  114 F.4th 181 (3d Cir. 2024) ........................................................................................5, 9

*IMO Indus., Inc. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998) ....................................................................................1, 9, 10

*Jovanovic v. United States Olympic & Paralympic Comm.*,
  2023 WL 7179298 (D.N.J. Mar. 31, 2023) .......................................................................2

*LaSpina v. SEIU Pennsylvania State Council*,
  985 F.3d 278 (3d Cir. 2021) ...........................................................................................15

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976) .......................................................................................11, 13

*Malik v. Cabot Oil & Gas Corp.*,
  710 F. App'x 561 (3d Cir. 2017) .....................................................................................13

*Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
  107 F.3d 1026 (3d Cir. 1997) ..........................................................................................12

*Mattel, Inc. v. Barbie-Club.com*,
  310 F.3d 293 (2d Cir. 2002) ...........................................................................................10

*In re Mervyn's Holdings, LLC*,
  426 B.R. 96 (Bankr. D. Del. 2010) ..................................................................................15

*In re Nazi Era Cases Against German Defendants Litig.*,
  153 F. App'x 819 (3d Cir. 2005) .......................................................................................8

*In re Northstar Offshore Grp., LLC*,
  616 B.R. 695 (Bankr. S.D. Tex. 2020) ....................................................................14

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
  549 B.R. 56 (S.D.N.Y. 2016)....................................................................................7

*Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A.
  Institucion de Banca Multiple*,
  92 F.4th 450 (2d Cir. 2024) ......................................................................................4

*Osco Motors Co., LLC v. Marine Acquisition Corp.*,
  2014 WL 2875374 (D. Del. June 24, 2014)............................................................15

*Picard v. Banque Syz & Co.*,
  2022 WL 2135019 (Bankr. S.D.N.Y. June 14, 2022)...............................................4

*Picard v. BNP Paribas S.A.*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018)...................................................................6, 7

*Picard v. UBS AG*,
  647 B.R. 42 (Bankr. S.D.N.Y. 2022).........................................................................4

*In re Rough Rice Commodity Litig.*,
  2012 WL 473091 (N.D. Ill. Feb. 9, 2012) .........................................................11, 13

*Sathianathan v. Pac. Exch., Inc.*,
  248 F. App'x 345 (3d Cir. 2007) ..........................................................................3, 12

*Shaffer v. Heitner*
  433 U.S. 186 (1977)...................................................................................................5

*In re The Brown Schools*,
  386 B.R. 37 (Bankr. D. Del. 2008) .........................................................................13

*TriDinetworks Ltd. v. NXP USA, Inc.*,
  2020 WL 2220152 (D. Del. May 7, 2020)................................................................5

*TriStrata Tech., Inc. v. Emulgen Lab'ys, Inc.*,
  537 F. Supp. 2d 635 (D. Del. 2008).........................................................................8

*Truinject Corp. v. Nestle Skin Health. S.A.*,
  2020 WL 1270916 (D. Del. Mar. 17, 2020) .............................................................3

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019)......................................................................................7

*VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*,
  2021 WL 4288506 (D. Del. Sept. 21, 2021)...........................................................12

*In re Zawawi*,
     644 B.R. 907 (Bankr. M.D. Fla. 2022) .......................................................................................6

## **PRELIMINARY STATEMENT**

The Complaint is devoid of allegations to establish this Court's personal jurisdiction over Defendant Dinghua Xiao ("Xiao") or to plausibly state fraudulent transfer claims against Xiao. Plaintiffs failed to plead even a prima facie case of personal jurisdiction, and Plaintiffs' opposition to Xiao's motion to dismiss ("Opposition" or "Opp.") does not overcome that fatal deficiency. Nor should the Court reward Plaintiffs' failure with any jurisdictional discovery. Plaintiffs' Opposition also confirms the pleading deficiencies of their fraudulent transfer claims. Plaintiffs suggest that merely naming Xiao as a shareholder in the Complaint would be sufficient to withstand dismissal. Not so. The Complaint specifically alleges that Xiao was only a nominal shareholder and that the consideration paid for his shares went to a Binance entity, which Plaintiffs also concede in their opposition to the Binance Defendants' motion to dismiss ("Opposition to Binance Defendants"). Accordingly, the Court should dismiss Plaintiffs' claims against Xiao with prejudice because Plaintiffs' bare, unsupported request for leave to amend in their Opposition is plainly insufficient.

## **ARGUMENT**

### **I.   THIS COURT LACKS PERSONAL JURISDICTION OVER XIAO**

Plaintiffs have not identified any evidence establishing a prima facie case of personal jurisdiction over Xiao. As an initial matter, Plaintiffs concede that the Court lacks general jurisdiction over Xiao. *See generally* Opp. Plaintiffs thus focus on specific jurisdiction, but their conclusory allegations are insufficient to demonstrate that Xiao purposefully directed his alleged activities at the U.S. Nor can Plaintiffs establish jurisdiction through the separate "effects" test because Xiao did not engage in any intentional tort. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998). Furthermore, contrary to Plaintiffs' misleading argument, Xiao has not waived his properly and timely raised personal jurisdiction defense.

**A.      Plaintiffs Fail to Establish Specific Jurisdiction Through Minimum Contacts**

In establishing personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citation modified). It is essential that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at 475. Thus, in response to Xiao's declaration, Plaintiffs must come forward with competent evidence that: (1) Xiao "purposefully directed [his] activities at the forum"; (2) Plaintiffs' claims "arise out of or relate to at least one of those activities"; and (3) "the exercise of jurisdiction otherwise comports with fair play and substantial justice." *See Allaham v. Naddaf*, 635 F. App'x 32, 39 (3d Cir. 2015) (citations modified). Plaintiffs have failed to do so.

1.      <u>Xiao Did Not Purposefully Direct His Activities at the United States</u>

Plaintiffs' Opposition is devoid of allegations, let alone actual proof, that Xiao had any contact with the U.S. While Plaintiffs describe the findings of fact and/or admissions in the Lim Consent Order and the Washington Plea Agreement in their Opposition, neither court filing mentions Xiao or establishes his minimum contacts.[1] *See* Opp. at 8–11; Adv. D.I. 115, Ex. 1; Adv. D.I. 107, Ex. 16. Without alleging any facts specific to Xiao, Plaintiffs "simply" argue that "the Management Defendants were officers of a company that 'wholly or in substantial part' did business in the U.S. and actively participated in the illegalities that are described in the Lim Consent Order and Washington Plea Agreement." Opp. at 11. This is improper group pleading that cannot establish personal jurisdiction over Xiao. *See Jovanovic v. United States Olympic & Paralympic Comm.*, 2023 WL 7179298, at *8 (D.N.J. Mar. 31, 2023) (group pleading to establish personal jurisdiction "improper" because "[e]ach defendant's contacts with the forum state must

---

[1] The Lim Consent Order and the Washington Plea Agreement do not constitute evidence that can be used against Xiao, a non-party. *See infra* Section I.D.

be assessed individually"); *Truinject Corp. v. Nestle Skin Health. S.A.*, 2020 WL 1270916, at *3 (D. Del. Mar. 17, 2020) (group pleading, including referring to "Defendants" without specifying individuals, insufficient for personal jurisdiction).

Moreover, the mere fact that Xiao was an employee of various, non-U.S. Binance subsidiaries is insufficient. *See* Compl. ¶ 26. "Jurisdiction over employees of a corporation does not arise automatically from jurisdiction over the corporation." *Sathianathan v. Pac. Exch., Inc.*, 248 F. App'x 345, 347 (3d Cir. 2007). Plaintiffs' reliance on *In re Capmark Fin. Grp. Inc.*, 479 B.R. 330, 338, 340–41 (Bankr. D. Del. 2012), is misplaced because the complaint in *Capmark* sufficiently alleged that the defendant was a resident of Washington and an employee, officer, and shareholder of U.S. companies, but the defendant failed to submit an affidavit contradicting those allegations. Here, the Complaint only alleges that Xiao was a former employee of non-U.S. Binance entities and that he purchased shares in WRS from outside the U.S. as a nominee for non-U.S. Binance entities. Compl. ¶¶ 15, 21–24, 26, 37, 82. Furthermore, unlike the defendant in *Capmark*, Xiao submitted an affidavit to show that he did not direct any activity towards the U.S. *See Gordian Med., Inc. v. Misty Vaughn & Curitec, LLC*, 2022 WL 1443917, at *4 (D. Del. May 6, 2022) (allegations in complaint insufficient to establish personal jurisdiction in response to a Rule 12(b)(2) motion to dismiss supported by a sworn declaration where plaintiffs "declin[ed] to establish [defendant]'s alleged contacts with Delaware through sworn affidavits or other competent evidence").

Plaintiffs' remaining arguments fall short of demonstrating Xiao's minimum contacts, and Plaintiffs' other cases are inapposite. Plaintiffs claim that "the Management Defendants deliberately sought to exploit the U.S. cryptocurrency market[,]" Opp. at 13, but this is again improper group pleading unsupported by the documents cited. *See* Compl. ¶¶ 36–38 (describing,

*inter alia*, Xiao's purchase and sale of WRS shares); Adv. D.I. 115, Ex. 1 (Lim Consent Order which does not mention Xiao); Adv. D.I. 115, Ex. 2 (Receipt for Payment of Capital Contribution showing WRS's receipt of $0.54 as Xiao's capital contribution for WRS shares).  Unlike here, in *Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A. Institucion de Banca Multiple*, 92 F.4th 450, 453, 457–59 (2d Cir. 2024), the defendants Mexican banks had sufficient contacts with the forum because the complaint alleged that they exploited the New York market by executing trades "thousands of times" through New York brokers and by receiving the benefits on every trade.  Indeed, Plaintiffs concede in their Opposition to Binance Defendants that Xiao received no consideration from the allegedly fraudulent transfers.  *See* Adv. D.I. 106 at 18.

Plaintiffs' conclusory allegations that "[t]he Management Defendants" had "deliberate contacts with the U.S." and "were able to profit extraordinarily on their earlier investments in the U.S. cryptocurrency market[,]" Opp. at 13, are insufficient to show Xiao's minimum contacts. Plaintiffs only point to the February 28, 2020 Restricted Stock Purchase Agreement and the July 15, 2021 Share Transfer Agreement.  But Plaintiffs concede that Xiao was only a "nominal counterparty" to these agreements, and the consideration went to Binance.  Compl. ¶¶ 39, 43, 45, 82.  Plaintiffs' Opposition to Binance Defendants has only further reinforced that concession by further conceding that "the Binance Defendants, *and not the Individual Defendants*, were the direct transferees for *all* of the consideration in connection with the 2021 Share Repurchase."  Adv. D.I. 106 at 18.[2]  There is thus no evidence that Xiao profited off "his" purported investment.[3]

---

[2] All emphasis added unless otherwise stated.

[3] Plaintiffs rely on several cases that are easily distinguished because of the defendants' intentional conduct that resulted in profit to the defendants or injury to the plaintiff in the forum.  *See Picard v. UBS AG*, 647 B.R. 42, 56–59 (Bankr. S.D.N.Y. 2022) (defendants assisted Madoff and BLMIS in avoiding regulatory scrutiny and committing fraud and received compensation in exchange); *Picard v. Banque Syz & Co.*, 2022 WL 2135019, at *3–4 (Bankr. S.D.N.Y. June 14, 2022)

Not surprisingly, Plaintiffs do not identify any case where a court has held that a nominal shareholder of a company, without more, is sufficient contact to establish personal jurisdiction. That would be contrary to the U.S. Supreme Court's ruling in *Shaffer v. Heitner* that defendants do "not by acquiring those interests [in a Delaware corporation] surrender their right to be brought to judgment only in States with which they had had 'minimum contacts.'"  433 U.S. 186, 216 (1977).

        2.      <u>Plaintiffs' Fraudulent Transfer Claims Do Not Arise out of or Relate to Xiao's Contact with the United States</u>

In light of Plaintiffs' failure to demonstrate Xiao's purposeful availment in the U.S., it is not necessary for this Court to engage in further personal jurisdiction analysis under the traditional test. *See TriDinetworks Ltd. v. NXP USA, Inc.*, 2020 WL 2220152, at *4 (D. Del. May 7, 2020). Nevertheless, to the extent Xiao's former status as a nominal shareholder of WRS constitutes any contact, the degree of relatedness that Plaintiffs must demonstrate should be significantly stronger. As Plaintiffs admit, "'[t]he degree of relatedness required in a given case is inversely proportional to the overall intensity of the defendant's forum contacts.'"  Opp. at 14 (quoting *Hasson v. FullStory, Inc.*, 114 F.4th 181, 193 (3d Cir. 2024)).

The alleged relationship between Plaintiffs' fraudulent transfer claims and Xiao's contacts with the U.S. is tenuous at best.  Plaintiffs' assertion that "[t]he Fraudulent Conveyance Claims are directly related to the Management Defendants' investment activities with WRS, a U.S. company[,]" are vague and conclusory.  Opp. at 14.  The Complaint merely alleges that Xiao purchased shares in WRS pursuant to a 2020 contract as *nominee* for non-U.S. Binance entities.

---

(defendant "knowingly directed funds to be invested with New York-based BLMIS through Madoff Feeder Funds," "solicited its own clients to invest in Madoff Feeder Funds," and used New York bank to receive funds from BLMIS); *In re AstroPower Liquidating Tr.*, 335 B.R. 309, 318–21 (Bankr. D. Del. 2005) (defendants agreed to assist the debtor with marketing and valuing certain stocks and finding a buyer but intentionally caused injury to the debtor in the U.S.).

Compl. ¶¶ 15, 21-24, 26, 37, 82.   While the Complaint alleges that Xiao's WRS shares were transferred to Bankman-Fried and Wang pursuant to the July 15, 2021 Share Transfer Agreements, to which Xiao was a nominal counterparty, *id.* ¶¶ 38, 82, the Complaint alleges that Binance—not Xiao—received the consideration, *id.* ¶¶ 39, 43, 45.   Notably, Plaintiffs admit in their Opposition to Binance Defendants that "the evidence is also clear that the Binance Defendants, *and not the Individual Defendants*, were the direct transferees for *all* of the consideration in connection with the 2021 Share Repurchase, including the consideration paid for the WRS Shares."  Adv. D.I. 106 at 18.[4]   Absent any competent evidence that the BUSD for the WRS shares were subsequently transferred to Xiao's wallet or that Xiao otherwise received funds from the 2021 Share Repurchase, Plaintiffs' fraudulent transfer claims cannot arise out of or relate to Xiao's purported contacts with the U.S.

Given this attenuated relationship between Plaintiffs' claims and Xiao's contacts with the U.S., none of the cases relied on by Plaintiffs support a finding of personal jurisdiction here.  *In re Zawawi*, 644 B.R. 907, 916 (Bankr. M.D. Fla. 2022), is distinguishable because unlike Xiao, the defendants there together owned 100% of a U.S. corporation, served as directors for several years, and the contacts were "directly relate[d] to [the plaintiffs]' causes of action, which concern the ownership and/or transfer of [the corporation]'s shares."  Plaintiffs also rely on inapposite cases where defendants had sufficient purposeful contacts with the forum.  *See Picard v. BNP Paribas S.A.*, 594 B.R. 167, 190–92 (Bankr. S.D.N.Y. 2018) (fraudulent transfer claims related to 59

---

[4] Plaintiffs also included as an exhibit a funds flow memorandum titled "BCM/FTX Share Transfer dated July 16, 2021, regarding the 2021 Share Repurchase and described it as "showing that the BUSD for both the shares in WRS and FTX Trading went to the same wallet on the Binance.com platform."  Adv. D.I. 106 at 18; *see also* Adv. D.I. 107, Ex. 7.  The memorandum identifies both WRS shares transfers from Xiao to Bankman-Fried and Wang and describes the wallet address for both transfers as the "same as FTX share transfer BUSD wallet address."  Adv. D.I. 107, Ex. 7.

subsequent transfers received by defendants who maintained and operated a New York office); *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 152 (2d Cir. 2019) (breach of contract claim "arose from and related directly to" defendant's purposeful Indiana contacts).[5]

Plaintiffs' additional allegations do not provide any specific facts to establish Xiao's personal jurisdiction.  While Plaintiffs allege in conclusory fashion that "Binance and the Management Defendants elected to structure the transaction with BUSD as part of the consideration necessary to consummate the 2021 Fraudulent Transfers," Opp. at 17, Plaintiffs do not, and cannot, allege that Xiao was involved in the creation of BUSD, including the transfer of U.S. dollars to Paxos in New York to "mint" the BUSD.  Xiao is also unlike the defendants in *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68–69 (S.D.N.Y. 2016) and *BNP Paribas*, 594 B.R. at 190–92 because Plaintiffs do not allege he used a U.S. bank account nor that he directed or received any funds into any such U.S. bank account.  To the contrary, Plaintiffs admit Xiao received no consideration.

Plaintiffs also fail to allege that Xiao negotiated the 2021 Share Repurchase.  Thus, *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, is inapposite because the defendant there, unlike Xiao, "engaged in negotiations for an agreement that would have created rights and obligations among citizens of the forum and contemplated significant ties with the forum."  988 F.2d 476, 482–83 (3d Cir. 1993).  Lastly, regardless of whether the parties understood the payments were from Alameda or its non-US subsidiary, Plaintiffs conceded that Xiao did not receive any payments.

---

[5] Plaintiffs mischaracterize *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, 2018 WL 5118638 (S.D.N.Y. Oct. 22, 2018) as supporting the notion that a "single cryptocurrency transaction" is sufficient to support personal jurisdiction.  *See* Opp. at 15.  The *Alibaba* court found that "[g]iven Alibaba's evidence that over one thousand New York users had visited Defendants' website . . . , Alibaba has established a reasonable probability that the transactions at issue here are *not isolated instances*, 'but rather a part of a larger business plan' that involves the *purposeful marketing and sale* of AlibabaCoin to, among others, New York consumers[.]"  2018 WL 5118638, at *4.

     3.      <u>Exercising Jurisdiction over Xiao Would Not Comport with Fair Play and Substantial Justice</u>

Where, as here, Plaintiffs "ha[ve] failed to establish that [Defendant] purposefully directed [his] activities at [the U.S.] or that the present claim arises out of the purported activities, it is not necessary for this Court [to] address the third step and look at the so-called 'fairness' or 'reasonableness' factors set forth by the Supreme Court in *World–Wide Volkswagen Corp.*" *Allaham*, 635 F. App'x at 39 n.12; *see also In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 825 (3d Cir. 2005) ("A weak minimum contacts showing requires greater emphasis on reasonableness."). Should the Court proceed to this third step, nothing in Plaintiffs' Opposition changes the outcome because the exercise of personal jurisdiction over Xiao would not be fair.

As a foreign defendant who must "traverse the distance" between China and the U.S. and "submit . . . to a foreign nation's judicial system," the burden on Xiao is "severe." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 114 (1987). Indeed, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of" jurisdiction. *Id.* Contrary to Plaintiffs' Opposition, Xiao's retention of U.S. counsel does not substantially lessen the Xiao's burden of submitting himself to the U.S. judicial system.[6] Here, the severe burden on Xiao as a foreign defendant, especially in light of the onerous process imposed by Chinese data protection laws in transferring electronically stored information abroad, outweighs the United States' interest in adjudicating the dispute or Plaintiffs' interest in obtaining relief against Xiao, a nominal

---

[6] Plaintiffs' reliance on *TriStrata Tech., Inc. v. Emulgen Lab'ys, Inc.*, 537 F. Supp. 2d 635, 637, 642 (D. Del. 2008), is misplaced because the defendant there was an Illinois corporation that claimed financial difficulty and inability to find non-conflicted counsel. Because the defendant was ultimately able to hire non-conflicted counsel, the court found that exercising personal jurisdiction was consistent with fair play and substantial justice. *Id.* at 642.

counterparty to the 2021 Share Transfer Agreements who did not receive any funds from the transfers.  The interstate judicial system's interest in obtaining the most efficient resolution of this dispute likewise does not require haling Xiao into a U.S. court given that the fraudulent transfer claims should be resolved with the Binance Defendants, who Plaintiffs admit received all of the consideration from the 2021 Share Repurchase, including the consideration paid for Xiao's WRS Shares.  *See* Adv. D.I. 106 at 18; Adv. D.I. 107, Ex. 7.  Relatedly, the national interest in furthering the policies of the U.S. Bankruptcy Code does not outweigh the severe burden on Xiao, a nonresident defendant, foreign citizen, and nominee shareholder with no direct contact with the U.S. in defending this case in the U.S.  Therefore, the Complaint should be dismissed against Xiao for lack of personal jurisdiction.

B.      **Plaintiffs Fail to Establish Specific Jurisdiction Through the Effects Test**

In its bid to establish this Court's personal jurisdiction over Xiao, Plaintiffs assert that specific jurisdiction exists under the "effects" test, which courts have applied "to assess personal jurisdiction over an intentional tortfeasor whose 'contacts with the forum . . . otherwise [do] not satisfy the requirements of due process' under the traditional test."  *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024).  The Third Circuit has explained that the "effects" test, which "requires more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum," can "only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity."  *IMO Indus.*, 155 F.3d at 265 (emphasis in original).  The "effects" test requires Plaintiffs to show that: (1) Xiao "committed an intentional tort"; (2) Plaintiffs "felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort"; and (3) Xiao "expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the

9

tortious activity." *Id.* at 265–66.  Plaintiffs cannot meet this test.

Because Plaintiffs fail to adequately allege that Xiao engaged in any fraudulent transfer, Plaintiffs cannot show that Xiao committed an intentional tort.  *See infra* Section II.  Further, Xiao did not "expressly aim[]" his conduct, let alone any tortious conduct, at the U.S., such that it can be said to be "the focal point of the tortious activity."  Indeed, Plaintiffs "must show that [Xiao] knew that [Plaintiffs] would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that [Xiao] expressly aimed [his] tortious conduct at the forum."  *IMO Indus.*, 155 F.3d at 266.  Plaintiffs' allegations that "the Management Defendants . . . bought shares of a U.S. company to profit from the U.S. market and intended for the consideration for the 2021 Share Repurchase to be 'minted' from a New York Trust," Opp. at 22, falls woefully short of demonstrating that Xiao "expressly aimed" his conduct at the U.S.

## C.    Xiao Did Not Waive His Jurisdictional Defense

Plaintiffs' argument that Xiao waived his jurisdictional defense is meritless.  Xiao does not seek "affirmative relief," by moving to dismiss the Complaint.  Courts routinely address motions to dismiss a complaint under both Rule 12(b)(2) and 12(b)(6) without finding that the defendant has sought affirmative relief.  *See, e.g.*, *In re Forks Specialty Metals Inc.*, 2023 WL 3239468, at *15, 18–19 (Bankr. E.D. Pa. Apr. 30, 2023).  Moreover, "[n]ot only does logic compel initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim—but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdiction and venue questions first." *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963).  Xiao properly raised and preserved his personal jurisdiction defense pursuant to Rule 12(b)(2) by "stat[ing] the defense in [his] first responsive filing," in addition to moving to dismiss for failure to state a claim. *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002).

10

The cases relied on by Plaintiffs are inapposite and do not support a finding of waiver.  In *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443–44 (3d Cir. 1999), the defendants waived their personal jurisdiction by seeking affirmative relief and therefore submitting themselves to the court's jurisdiction.  Here, Xiao has not asked this Court for any affirmative relief that would undermine his timely raised personal jurisdiction defense.  Plaintiffs' reliance on *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 106–08 (3d Cir. 2019), fares no better because the defendants there waived their personal jurisdiction defenses through their affirmative conduct, including objecting to transfer of the case after the court found that personal jurisdiction was absent and filing answers in that court, which the parties agreed would constitute waiver of the defense. Here, Xiao's personal jurisdiction defense has not been waived and is properly before this Court.

### D.      Plaintiffs Are Not Entitled to Jurisdictional Discovery

Where, as here, "a plaintiff does not come forward with '*some* competent evidence' that personal jurisdiction over the defendant might exist, a court should not permit jurisdictional discovery to proceed." *Eastman Chem. Co. v. AlphaPet Inc.*, 2011 WL 6004079, at *2 (D. Del. Nov. 4, 2011).  "This is because when the lack of personal jurisdiction is clear, further discovery serves no purpose and thus should be denied." *Id.*  Plaintiffs failed to submit any competent evidence demonstrating Xiao's contacts with the U.S. to support this Court's exercise of personal jurisdiction over him.  The Lim Consent Order and the Washington Plea Agreement cannot be used as evidence against Xiao, a non-party. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("This is a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues. Consequently, it can not be used as evidence in subsequent litigation between that corporation and another party."); *see also In re Rough Rice Commodity Litig.*, 2012 WL 473091, at *5 (N.D. Ill. Feb. 9, 2012) (adopting *Lipsky*).  Because Plaintiffs' jurisdictional claims against Xiao are unsupported and

11

"clearly frivolous," Plaintiffs are not entitled to jurisdictional discovery. *See Sathianathan*, 248 F. App'x at 347 ("As plaintiff failed to make even a threshold showing of jurisdiction, he was not entitled to the jurisdictional discovery."); *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (affirming dismissal without jurisdictional discovery because "a mere unsupported allegation that the defendant 'transacts business' in an area is 'clearly frivolous'"); *see id.* ("the presumption in favor of discovery is reduced" for an individual).

Furthermore, in support of his motion, Xiao submitted a declaration stating that he has never resided or worked in the U.S.; he has never owned real estate or other assets in the U.S., and he is not employed by the Binance Defendants named in this proceeding (all of which are non-U.S. entities). Adv. D.I. 97. Where, as here, "a defendant has raised a jurisdictional defense, the plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*, 2021 WL 4288506, at *4 (D. Del. Sept. 21, 2021) (citation modified). Indeed, "[o]nce a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction." *E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 665 (D. Del. 2018); *see also DNA Genotek Inc. v. Spectrum DNA*, 224 F. Supp. 3d 359, 362 (D. Del. 2016) ("To meet this burden [of establishing sufficient minimum contacts], the plaintiff cannot 'rely on the bare pleadings alone,' . . . but must produce 'sworn affidavits or other competent evidence[.]'"). While a plaintiff need only establish a prima facie case of personal jurisdiction, it must still come forward with specific facts, as opposed to vague or conclusory assertions to support jurisdiction. *Cultural Experiences Abroad, LLC v. Colon*, 2024 WL 492683, at *2 (D. Del. Feb. 8, 2024). Plaintiffs may not "undertake a fishing expedition based only upon bare allegations, under the guise of

jurisdictional discovery." *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 565 (3d Cir. 2017).

## II.    PLAINTIFFS FAIL TO STATE FRAUDULENT TRANSFER CLAIMS AGAINST XIAO

As Xiao's motion to dismiss showed, the Complaint fails to state fraudulent transfer claims against Xiao because Plaintiffs failed to allege that Xiao was a transferee or that the transfers were made for Xiao's benefit.  Plaintiffs' Opposition, both against Xiao and against Binance, make plain the inadequacy of Plaintiffs' allegations with respect to Xiao.  Plaintiffs' own filings (1) point to a consent order that does not even name Xiao individually and (2) concede that Xiao did not receive consideration for the 2021 Share Repurchase.

Plaintiffs first attempt to argue that Xiao's status as a *nominal* shareholder is irrelevant because Xiao was a Binance executive, and the Lim Consent Order states that the "the Binance Enterprise acted 'through their officers, employees, and agents' in executing and maintaining positions and conducting other activities in the U.S.[,]" Opp. at 27.  First, Xiao is not a party to the Consent Order and it cannot be used as evidence against Xiao, who is not even mentioned in the Consent Order.  *See Lipsky*, 551 F.2d at 893; *Rough Rice*, 2012 WL 473091, at *5.  Second, to plead a fraudulent transfer claim, Plaintiffs must plead that Xiao was the transferee or benefited from the transfer.  Plaintiffs have not pled Xiao was a transferee and admit that all consideration was paid to a Binance entity.  Plaintiffs' pointing to Xiao's position with Binance is not enough.  Indeed, in *In re The Brown Schools*, 386 B.R. 37 (Bankr. D. Del. 2008), the court rejected such an argument.  Though the trustee alleged that the defendant, a former director and employee of the debtor's majority shareholder, was directly involved in each challenged transactions and "benefitted from each transfer based on his affiliation," the court found this insufficient.  *Id.* at 53–54.  Noting that "the Trustee has not identified any transfer made to Naples," the court explained that "[m]erely being an employee of a transferee is insufficient, without more, to establish that

Naples was the transferee or benefitted from the transfer" and concluded that "the Trustee has failed to state a claim for any actual or constructive fraud against Naples." *Id.* at 54.

Nor can Plaintiffs plausibly allege that Xiao was a transferee that benefited from the 2021 Share Repurchase Plaintiffs now seek to avoid. The Complaint alleges only that he was a nominal shareholder and that the 2021 Share Repurchase was made for Binance's benefit, not his own. Plaintiffs have now conceded elsewhere in this proceeding, "the Binance Defendants, *and not the Individual Defendants*, were the direct transferees for *all* of the consideration in connection with the 2021 Share Repurchase, including the consideration paid for the WRS Shares." Adv. D.I. 106 at 18. In light of the specific allegations and this concession, the Court should reject Plaintiffs' invitation to "infer" that the "the actual sellers of the WRS shares benefitted from the consideration paid from those shares and/or subsequently received consideration for the shares." Opp. at 27. Such an inference contradicts Plaintiffs' prior admission, is entirely speculative, and would violate this well-established federal pleading standard.

Finally, Plaintiffs' group pleading cannot salvage their claims against Xiao. Plaintiffs' cited cases involved distinct groups of defendants who were alleged to have benefited from the transfers at issue. *See In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 722–23 (Bankr. S.D. Tex. 2020); *Clapper v. Am. Realty Invs., Inc.*, 2015 WL 3504856, at *6 (N.D. Tex. June 3, 2015). Here, the Complaint impermissibly lumps allegations against "Binance Executives" with Binance or generally refers to all "Defendants." *See, e.g.*, Compl. ¶¶ 1, 8, 94, 107, 117. Even if Xiao could be properly lumped in with other Binance Executives, Plaintiffs have already conceded that the 2021 Share Repurchase was not made for his benefit, and that he did not receive the consideration from the transfer. Thus, Plaintiff's pleading failure is more akin to *Clapper*, where the court dismissed the fraudulent conveyance claims against certain defendants because "although

14

plaintiffs allege[d] generally that the fraudulent transfers were for the defendants' 'personal gain and benefit,' . . . most of the allegations are conclusory and do not explain *how* any of the transfers benefited [defendants]."   2015 WL 3504856 at *6 (emphasis in original).   The Complaint's impermissible group pleading fails to plausibly allege that Xiao was a transferee, and as a result, Plaintiffs fail to state fraudulent transfer claims against Xiao.

## III.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs do not seek leave to amend in their Opposition.  Instead, Plaintiffs ask the Court's permission to seek amendment at a later date.  *See* Opp. at 29–30.  The requested relief is prohibited under established Third Circuit precedent, which holds that failure to attach a proposed amended complaint is "fatal to a request for leave to amend."  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).  Even if the Court were to consider Plaintiffs' improper request (it should not), leave to amend should not be granted because "amendment would be futile [and] inequitable."  *LaSpina v. SEIU Pennsylvania State Council*, 985 F.3d 278, 291 (3d Cir. 2021); *see Banks v. Rozum*, 639 F. App'x 778, 784 (3d Cir. 2016).  As explained above, Plaintiffs cannot establish that this Court has personal jurisdiction over Xiao or that Xiao was a transferee because Plaintiffs have already conceded that the consideration for the shares he held as a nominee for Binance was in fact transferred to Binance.  Any amendment would therefore be futile.  *Osco Motors Co., LLC v. Marine Acquisition Corp.*, 2014 WL 2875374, at *11 (D. Del. June 24, 2014); *In re Astropower Liquidating Tr.*, 2006 WL 2850110, at *9 (Bankr. D. Del. Oct. 2, 2006); *In re Mervyn's Holdings, LLC*, 426 B.R. 96, 105–06 (Bankr. D. Del. 2010).

## CONCLUSION

For the foregoing reasons and those set forth in the Memorandum of Law in Support of Motion to Dismiss, Defendant Dinghua Xiao respectfully requests that Plaintiffs' claims against him be dismissed in their entirety and with prejudice.

15

Dated: September 12, 2025
       Wilmington, Delaware

**MELUNEY ALLEMAN & SPENCE LLC**

*/s/  William M. Alleman, Jr.*
William M. Alleman, Jr. (#5449)
Matthew D. Beebe (#5980)
1143 Savannah Road, Suite 3-A
Lewes, DE 19958
Telephone: (302) 551-6740
Facsimile: (302) 551-6840
Email: Bill.Alleman@maslawde.com
       Matt.Beebe@maslawde.com

**DECHERT LLP**

Matthew L. Mazur (Admitted *pro hac vice*)
May Chiang (Admitted *pro hac vice*)
Hayoung Park (Admitted *pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Email:  matthew.mazur@dechert.com
       may.chiang@dechert.com
       hayoung.park@dechert.com

*Counsel for Defendant Dinghua Xiao*