**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| FTX RECOVERY TRUST, FTX DIGITAL MARKETS, LTD., | |
| Plaintiffs, | |
| v. | |
| BINANCE HOLDINGS LIMITED, BINANCE CAPITAL MANAGEMENT CO. LTD., BINANCE HOLDINGS (IE) LIMITED, BINANCE (SERVICES) HOLDINGS LIMITED, CHANGPENG ZHAO, DINGHUA XIAO, SAMUEL WENJUN LIM, and DOES 1-1000 | Adv. Pro. No. 24-50222 (KBO) |
| | **Re: Adv. D.I. 1, 104, 134** |
| Defendants. | |

**DEFENDANT CHANGPENG ZHAO'S
<u>REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS</u>**

Dated: October 9, 2025

Teresa Goody Guillén (admitted *pro hac vice*)
Katherine L. McKnight (admitted *pro hac vice*)
1050 Connecticut Ave., NW, S-1100
Washington, D.C. 20036
Cleveland, OH 44114
(202) 861-1630
tgoodyguillen@bakerlaw.com
kmcknight@bakerlaw.com

BAKER & HOSTETLER LLP
Jeffrey J. Lyons (#6437)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801-1147
(302) 468-7088
jjlyons@bakerlaw.com

*Attorneys for Defendant Changpeng Zhao*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT...................................................................................................................1

    I.     Service on Mr. Zhao Was Improper and Ineffective ................................................1

    II.    The Complaint Does Not Establish a Basis of Personal Jurisdiction Over Mr. Zhao ........................................................................................................................3

          A.    Plaintiffs Cannot Rely on Bankruptcy Rule 7004(f) to Obtain a Nationwide Minimum-Contacts Standard ...................................................3

          B.    Plaintiffs Have Not Satisfied the Fifth Amendment's Nationwide Standard ........................................................................................................5

               1.    Rule 7004(f) Cannot Apply Unless the Minimum Contacts Test Is Satisfied...................................................................................5

               2.    Plaintiffs Fail to Satisfy the Minimum Contacts Test......................6

    III.   Claims Predicated on the 2021 Buyout Fail on Numerous Grounds .....................11

          A.    The Fraudulent Transfer Claims Impermissibly Exert Extraterritorial Reach Under Statutes with Only Domestic Application...........................11

               1.    Plaintiffs Seek to Avoid a Foreign Transaction............................11

               2.    Plaintiffs Do Not Overcome the Presumption Against Extraterritorial Reach of Domestic Law .......................................14

          B.    The State Fraudulent Transfer Claims Under Delaware Law Fail for Lack of a Basis to Assume Delaware Law Applies...................................17

          C.    Mr. Zhao Is Not Plausibly Alleged to Be a Transferee.............................20

          D.    Actual Fraudulent Intent Is Not Adequately Shown in the Allegations ....22

          E.    The Constructive Fraudulent Transfer Claims Are Legally Unavailable ...............................................................................................24

          F.    The Constructive Fraudulent Transfer Claims Are Inadequately Pleaded...................................................................................................26

    IV.   The Claims Predicated on Social Media Posts and Letter of Intent Fail on Numerous Grounds ............................................................................................28

A.      Delaware Law Does Not Reach the Claims Plaintiffs Alleged ..................28

B.      No Injurious Falsehood Claim Exists, and No Claim Could Lie
        Against Mr. Zhao's Concededly True Statements ....................................29

C.      The Fraud Claims Erroneously Blame Mr. Zhao for Plaintiffs' Own
        Fraud ......................................................................................................32

D.      The Unjust Enrichment Claim Fails Because It Is Not Unjust for a
        Fraudulent Enterprise to Fail ..................................................................34

CONCLUSION...................................................................................................................35

## TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
   600 U.S. 412 (2023)............................................................................................................15

*In re Aerovias Nacionales De Colombia S.A. Avianca*,
   345 B.R. 120 (Bankr. S.D.N.Y. 2006)..............................................................................29

*In re Agriprocessors, Inc.*,
   2012 WL 4059897 (Bankr. N.D. Iowa Sept. 14, 2012).....................................................21

*In re Allergan ERISA Litig.*,
   975 F.3d 348 (3d Cir. 2020)..............................................................................................35

*In re AM Int'l, Inc.*,
   203 B.R. 898 (D. Del. 1996).............................................................................................17

*In re Ampal-Am. Israel Corp.*,
   562 B.R. 601 (Bankr. S.D.N.Y. 2017)..............................................................................17

*In re Argose, Inc.*,
   377 B.R. 148 (Bankr. D. Del. 2007) .................................................................................26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................27, 32

*Atzili v. Islamic Republic of Iran*,
   1:24-cv-03365, Dkt. 79 (D.D.C. filed 9/22/2025) ..............................................................1

*Banco Safra S.A. - Cayman Islands Branch v. Samarco Mineracao S.A.*,
   2019 WL 2514056 (S.D.N.Y. June 18, 2019) ..................................................................13

*Barber-Greene Co. v. Walco Nat. Corp.*,
   428 F. Supp. 567 (D. Del. 1977)........................................................................................7

*Begier v. I.R.S.*,
   496 U.S. 53 (1990)............................................................................................................16

*Benezet Consulting LLC v. Sec'y Commonwealth of Pennsylvania*,
   26 F.4th 580 (3d Cir. 2022) ...............................................................................................5

*In re Bernard L. Madoff Inv. Sec. LLC*,
   773 F.3d 411 (2d Cir. 2014)........................................................................................25, 26

*Bonded Fin. Servs., Inc. v. European Am. Bank*,
   838 F.2d 890 (7th Cir. 1988) ......................................................................................20, 21

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
  582 U.S. 255 (2017)................................................................................................6

*Calder v. Jones*,
  465 U.S. 783 (1984)............................................................................................8, 9

*Carolina Indus. Prods., Inc. v. Learjet, Inc.*,
  189 F. Supp. 2d 1147 (D. Kan. 2001)..................................................................30

*In re Centaur, LLC*,
  2013 WL 4479074 (Bankr. D. Del. Aug. 19, 2013) .............................................25

*Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*,
  2021 WL 3140777 (S.D.N.Y. July 26, 2021) .......................................................10

*In re Charys Holding Co., Inc.*,
  2010 WL 2788152 (Bankr. D. Del. July 14, 2010)...............................................26

*In re CIL Ltd.*,
  582 B.R. 46 (Bankr. S.D.N.Y. 2018) ....................................................................17

*CMI, Inc. v. Intoximeters, Inc.*,
  918 F. Supp. 1068 (W.D. Ky. 1995)......................................................................30

*In re Colonial Realty Co.*,
  980 F.2d 125 (2d Cir. 1992)............................................................................15, 16

*In re Matter of Coutee*,
  984 F.2d 138 (5th Cir. 1993) ................................................................................21

*Cunningham v. CBC Conglomerate, LLC*,
  359 F. Supp. 3d 471 (E.D. Tex. 2019)....................................................................7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)................................................................................................6

*DeNoble v. DuPont Merck Pharm. Co.*,
  1997 WL 35410094 (Del. Super. Apr. 11, 1997) .................................................30

*Denoble v. Dupont Merck Pharm. Co.*,
  703 A.2d 643 (Del. 1997) .....................................................................................30

*Douglas Asphalt Co. v. QORE, Inc.*,
  657 F.3d 1146 (11th Cir. 2011) ............................................................................29

*Drivetrain, LLC v. X. Com., Inc.*,
  2023 WL 1804627 (Bankr. D. Del. Feb. 7, 2023) ..........................................22, 23

*In re Estate of Midland Euro Exch. Inc.*,
  347 B.R. 708 (Bankr. C.D. Cal. 2006)............................................................17

*In re FAH Liquidating Corp.*,
  572 B.R. 117 (Bankr. D. Del. 2017) ...................................................... *passim*

*In re Fedders N. Am., Inc.*,
  405 B.R. 527 (Bankr. D. Del. 2009) ............................................................24

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
  539 A.2d 1060 (Del. 1988) .........................................................................34

*Folk v. York-Shipley, Inc.*,
  239 A.2d 236 (Del. 1968) ............................................................................18

*In re French*,
  440 F.3d 145 (4th Cir. 2006) ................................................................ *passim*

*In re FTX Trading Ltd.*,
  2024 WL 4562675 (Bankr. D. Del. Oct. 23, 2024) ..................................7, 23

*In re FTX Trading Ltd.*,
  No. 22 Bk. 11068 (Bankr. D. Del. May 23, 2024)........................................27

*In re FTX Trading Ltd.*,
  No. 22-11068 (Bankr. D. Del. Mar. 17, 2023)............................................25

*Fuld v. Palestine Liberation Org.*,
  606 U.S. 1 (2025).....................................................................................3, 4, 5

*Ganpat v. E. Pac. Shipping, PTE. LTD.*,
  434 F. Supp. 3d 441 (E.D. La. 2020)............................................................2

*In re Gaston & Snow*,
  243 F.3d 599 (2d Cir. 2001)........................................................................19

*Glob. Gaming Philippines, LLC v. Razon*,
  2022 WL 836716 (S.D.N.Y. Mar. 21, 2022) ..............................................10

*Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*,
  988 F.2d 476 (3d Cir. 1993)...........................................................................7

*In re Hellas Telecommunications (Luxembourg) II SCA*,
  535 B.R. 543 (Bankr. S.D.N.Y. 2015)..........................................................29

*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) ............................................................23

*Higgins v. Bayada Home Health Care Inc.*,
62 F.4th 755 (3d Cir. 2023) ..................................................................................28

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)..............................................................................................22

*Jacobs v. City of Philadelphia*,
No. 21-2314, 2022 WL 1772989 (3d Cir. June 1, 2022) ......................................20

*Jefferson v. Ambroz*,
90 F.3d 1291 (7th Cir. 1996) ................................................................................20

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013)..............................................................................................14

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)........................................................................................19, 28

*In re Lyondell Chem. Co.*,
543 B.R. 127 (Bankr. S.D.N.Y. 2016)..................................................................13

*Marks v. Alfa Grp.*,
369 F. App'x 368 (3d Cir. 2010) .............................................................................9

*Marnavi S.p.A. v. Keehan*,
900 F. Supp. 2d 377 (D. Del. 2012).......................................................................11

*Maxwell Commc'n Corp. v. Societe Generale (In re Maxwell Commc'n Corp.)*,
93 F.3d 1036 (2d Cir. 1996)..................................................................................29

*In re Maxwell Commc'n Corp. plc*,
186 B.R. 807 (S.D.N.Y. 1995)........................................................................13, 17

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.*,
945 F.2d 635 (3d Cir. 1991), *as amended* (Oct. 28, 1991) .......................24, 27, 28

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
583 U.S. 366 (2018)...........................................................................11, 12, 13, 25

*In re Merritt Dredging Co.*,
839 F.2d 203 (4th Cir. 1988) ................................................................................19

*In re Mervyn's Holdings, LLC*,
426 B.R. 488 (Bankr. D. Del. 2010) .....................................................................19

*In re MFW S'holders Litig.*,
67 A.3d 496 (Del. Ch. 2013), *aff'd sub nom. Kahn v. M & F Worldwide Corp.*,
88 A.3d 635 (Del. 2014) .......................................................................................30

*Moore v. Cecil*,
    109 F.4th 1352 (11th Cir. 2024) ...................................................................................9

*Morrison v. Danberg*,
    2010 WL 1688349 (D. Del. Apr. 22, 2010) ................................................................21

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010) ....................................................................11, 12, 13, 14

*NACCO Indus., Inc. v. Applica Inc.*,
    997 A.2d 1 (Del. Ch. 2009) .......................................................................................33

*In re Nat'l Collegiate Student Loan Trusts Litig.*,
    2020 WL 3960334 (Del. Ch. July 13, 2020) ...............................................................31

*Nationwide Mut. Ins. Co. v. Buffetta*,
    230 F.3d 634 (3d Cir. 2000) ......................................................................................30

*Nestle USA, Inc. v. Doe*,
    593 U.S. 628 (2021) ...................................................................................................11

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
    537 F.3d 168 (2d Cir. 2008) ......................................................................................11

*In re New Valley Corp.*,
    89 F.3d 143 (3d Cir. 1996) ..........................................................................................2

*Nicolet, Inc. v. Nutt*,
    525 A.2d 146 (Del. 1987) ..........................................................................................32

*Orr v. Metro. Life Ins. Co.*,
    2007 WL 2702929 (M.D. Pa. Sept. 13, 2007) .............................................................2

*Penn W. Assocs., Inc. v. Cohen*,
    371 F.3d 118 (3d Cir. 2004) .........................................................................................3

*People's United Equip. Fin. Corp. v. Hartmann*,
    447 F. App'x 522 (5th Cir. 2011) ................................................................................2

*In re Physiotherapy Holdings, Inc.*,
    2017 WL 5163515 (Bankr. D. Del. Nov. 6, 2017) ................................................18, 19

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019) ...........................................................................12, 14, 17

*In re Plassein Int'l Corp.*,
    590 F.3d 252 (3d Cir. 2009) ......................................................................................25

*In re Platinum & Palladium Antitrust Litig.*,
  61 F.4th 242 (2d Cir. 2023), *cert. denied* 144 S. Ct. 681 (2024) .......................................9, 10

*In re R.M.L., Inc.*,
  92 F.3d 139 (3d Cir. 1996) ..................................................................................................26

*In re Raphael*,
  238 B.R. 69 (D.N.J. 1999) ...................................................................................................17

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001) ...................................................................................................8

*RJR Nabisco v. Eur. Cmty.*,
  579 U.S. 325 (2016) ................................................................................................... *passim*

*Rupp v. Markgraf*,
  95 F.3d 936 (10th Cir. 1996) ...............................................................................................21

*In re Samson Res. Corp.*,
  625 B.R. 291 (Bankr. D. Del. 2020) ....................................................................................26

*In re Se. Hotel Props. Ltd. P'ship*,
  99 F.3d 151 (4th Cir. 1996) .................................................................................................21

*Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  513 B.R. 222 (S.D.N.Y. 2014), *rev'd on other grounds*, 917 F.3d 85 (2d Cir. 2019) .............17

*Sebastian Brown Prods., LLC v. Muzooka Inc.*,
  2015 WL 1467255 (D. Del. Mar. 30, 2015) ...........................................................................8

*In re Sherwood Investments Overseas Ltd., Inc.*,
  2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015), aff'd 2016 WL 5719450
  (M.D. Fla. Sept. 30, 2016) ...................................................................................................13

*In re Sherwood Investments Overseas Ltd., Inc.*,
  2016 WL 5719450 (M.D. Fla. Sept. 30, 2016) .....................................................................17

*Siegel v. Fitzgerald*,
  596 U.S. 464 (2022) .............................................................................................................19

*In re SMEC, Inc.*,
  160 B.R. 86 (M.D. Tenn. 1993) ...........................................................................................19

*Spetner v. Palestine Inv. Bank*,
  70 F.4th 632 (2d Cir. 2023) ...................................................................................................8

*Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.*,
  310 F.3d 118 (3d Cir. 2002) .................................................................................................29

*In re The Brown Schools*,
   386 B.R. 37 (Bankr. D. Del. 2008) ...............................................................................21

*Threadgill v. Armstrong World Industries, Inc.*,
   928 F.2d 1366 1371 (3d Cir. 1991) ...............................................................................17

*Travelers Indem. Co. v. Lake*,
   594 A.2d 38 (Del. 1991) ...........................................................................................17, 19

*In re Trib. Co. Fraudulent Conv. Litig.*,
   946 F.3d 66 (2d Cir. 2019) ............................................................................................25

*Trinity Indus., Inc. v. Greenlease Holding Co.*,
   903 F.3d 333 (3d Cir. 2018) .............................................................................................9

*In re U.S. Mortg. Corp.*,
   492 B.R. 784 (Bankr. D.N.J. 2013) ...............................................................................21

*United States v. Nasir*,
   17 F.4th 459 (3d Cir. 2021) ..............................................................................................4

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
   75 F.3d 147 (3d Cir. 1996) ...............................................................................................7

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
   763 F.3d 273 (3d Cir. 2014) ...........................................................................................30

*In re W.J. Bradley Mortg. Cap., LLC*,
   598 B.R. 150 (Bankr. D. Del. 2019) ..............................................................................35

*Waetzig v. Halliburton Energy Servs., Inc.*,
   604 U.S. 305 (2025) .........................................................................................................3

*Walden v. Fiore*,
   571 U.S. 277 (2014) ...............................................................................................4, 6, 8

*Matter of Walldesign, Inc.*,
   872 F.3d 954 (9th Cir. 2017) .........................................................................................20

*Wells Fargo Bank, N.A. v. Est. of Malkin*,
   278 A.3d 53 (Del. 2022) .................................................................................................34

*Young v. New Haven Advocate*,
   315 F.3d 256 (4th Cir. 2002) ...........................................................................................9

*Zazzali v. Hirschler Fleischer, P.C.*,
   482 B.R. 495 (Bankr. D. Del. 2012) ..............................................................................24

*In re Zetta Jet USA, Inc.*,
    624 B.R. 461 (Bankr. C.D. Cal. 2020) ...........................................................................13, 17

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997) .............................................................................9

**Statutes**

11 U.S.C. §§ 101(22A)(A) ................................................................................................25

11 U.S.C. § 101(31)(A) .....................................................................................................27

11 U.S.C. § 362(a)(2) ........................................................................................................16

11 U.S.C. § 541(a)(1) ........................................................................................................16

11 U.S.C. § 541(a)(3) ........................................................................................................16

11 U.S.C. § 546(e) ...............................................................................................24, 25, 26

11 U.S.C. § 548(a)(1)(A) ..................................................................................................22

11 U.S.C. § 548(a)(1)(B) ..................................................................................................26

11 U.S.C. § 550(a)(1) ...........................................................................................20, 21, 22

11 U.S.C. §§ 561(a)(1) ......................................................................................................25

11 U.S.C. § 741(7) ......................................................................................................25, 26

28 U.S.C. §§ 1408 .............................................................................................................19

28 U.S.C. §§ 1409 .............................................................................................................19

**Other Authorities**

10 Oxford English Dictionary 471 (2d ed. 1989) .............................................................20

5C Charles A. Wright et al., Federal Practice and Procedure Civ. § 1363 (3d ed.) .......31

Fed. R. Bankr. P. 7004(f) ...............................................................................................4, 5

Fed. R. Civ. P. 4 ....................................................................................................1, 2, 3, 4

Fed. R. Civ. P. 12(b) ..........................................................................................................3

Fed. R. Civ. P. 60 ...............................................................................................................3

Fed. R. Civ. P. 60(b) ..........................................................................................................3

Liam Boyle, High Court makes Irish History: Piercing the Corporate Veil,
Eversheds-Sutherland (Dec. 21, 2022) .................................................................................10

Black's Law Dictionary (9th ed.)...........................................................................................20, 25

Restatement (Second) of Conflict of Laws § 145 (1971) ...............................................................19

## PRELIMINARY STATEMENT

FTX Trading failed because of "a pervasive fraud that infected virtually all aspects of FTX's business."[1] Compl. ¶ 6. In this lawsuit, Plaintiffs incoherently blame Mr. Zhao and other defendants for Mr. Bankman-Fried's many crimes. The case is flawed many times over. Among just a few examples, Mr. Zhao's motion demonstrated that he is not amenable to this Court's jurisdiction, that the transfer Plaintiffs seek to avoid occurred abroad and is beyond the reach of the Bankruptcy Code's fraudulent transfer provisions, and that Plaintiffs err in their attempts to pin FTX's implosion on social media posts that stated *true* facts rather than on Mr. Bankman-Fried's own fraud. In response, Plaintiffs criticize Mr. Zhao's motion for a "kitchen sink approach," Opp. 44, but they have only the Complaint's many failings to blame. Mr. Zhao is entitled to expose the flaws in Plaintiffs' case, and there is no shortage of those.  Plaintiffs' claims are legally unfounded and illogical. Mr. Zhao's motion to dismiss should be granted in full.

## ARGUMENT

### I.      Service on Mr. Zhao Was Improper and Ineffective

Mr. Zhao demonstrated that Plaintiffs' transmission of the complaint to Mr. Zhao's United States-based counsel is not permitted by Rule 4(f)(3), which provides means of serving "an individual . . . at a place not within any judicial district of the United States." Fed. R. Civ. P. 4(f)(3); Mot. 1–3. Recently, a federal court ratified Mr. Zhao's position that service on him under Rule 4(f) is improper. *See* Order, *Atzili v. Islamic Republic of Iran*, 1:24-cv-03365, Dkt. 79 (D.D.C. filed 9/22/2025) (attached hereto as **Exhibit A**). Plaintiffs do not respond to the substance of Mr. Zhao's opening brief and instead present two technical arguments. Opp. 5. Neither has merit.

---

[1] This memorandum uses terms as defined in the Complaint and cites Mr. Zhao's opening memorandum as "Mot." and Plaintiffs' opposition to Mr. Zhao as "Opp."

First, Plaintiffs point to a scheduling stipulation in which Mr. Zhao "waive[d] the defense of *sufficiency* of service of process," D.I. 82-1 at 2 (emphasis added), and read it to waive *all* "service of process defenses," Opp. 5. The stipulation does not say that; it waives "sufficiency" defenses, not all defenses. D.I. 82-1 at 2. In fact, it makes clear that Mr. Zhao "does not waive, but rather expressly reserves, any and all other rights, defenses, and objections to the claims in this action." *Id.* Here, Mr. Zhao contends that service "violated the rule," i.e., Rule 4(f)(3) and "is invalid." Mot. 3. Put differently, he challenged the *legality* of process that was tendered as void ab initio, but did not challenge that process as "insufficient" in the sense that it did not occur. *See People's United Equip. Fin. Corp. v. Hartmann*, 447 F. App'x 522, 524 (5th Cir. 2011) (adjudicating contention that defendant did not receive process). The law differentiates the question "whether service was in fact made" from whether service "was valid." *Ganpat v. E. Pac. Shipping, PTE. LTD.*, 434 F. Supp. 3d 441, 448 n.34 (E.D. La. 2020). The stipulation waives the procedural objection that transmission of papers did not occur but not the jurisdictional objection that service lacked legal basis, such that the court lacks personal jurisdiction altogether. Waiver of "sufficiency of service" as that phrase is used here does not cure jurisdictionally invalid service.

That is the only viable interpretation in light of the context of "the bargaining history, and the conduct of the parties that reflects their understanding." *Orr v. Metro. Life Ins. Co.*, 2007 WL 2702929, at *8 (M.D. Pa. Sept. 13, 2007) (citation omitted); *see In re New Valley Corp.*, 89 F.3d 143, 149 (3d Cir. 1996) ("A court cannot interpret words in a vacuum, but rather must carefully consider the parties' context"). It would not have made sense for Mr. Zhao to deny that he (by counsel) received the summons and complaint in the manner described in this Court's ruling authorizing service by alternative means (D.I. 79 at 2–3), so he waived arguments to the effect that he did not receive the requisite documents. But Mr. Zhao has steadfastly maintained in this case

2

and others that recourse to Rule 4(f) to achieve service on him is legally incorrect. Accordingly, the waiver of service embraced contentions concerning "sufficiency," i.e., that service did not occur (D.I. 82-1 at 2), but it cannot fairly be read to waive challenges to legality of service.

Second, Plaintiffs contend that, given "this Court's alternative service order," Mr. Zhao may challenge legality of service only under Federal Rule of Civil Procedure 60. Opp. 6 & n.9. But Rule 60 applies only to "a final judgment." Fed. R. Civ. P. 60(b); *see Penn W. Assocs., Inc. v. Cohen*, 371 F.3d 118, 123 (3d Cir. 2004) ("Rule 60(b) . . . applies only to 'final' judgments and orders"). "Rule 60(b) relief from interlocutory judgments is unnecessary because, with respect to those judgments, 'a rehearing may be sought at any time before the final decree.'" *Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305, 313 (2025) (citation omitted) (alteration accepted). The Court's order authorizing alternative service was not a final order, and Rule 12(b) entitles Mr. Zhao to challenge service of process as unlawful and invalid. Because the alleged service was never valid under Rule 4(f) or international law, the Court lacks personal jurisdiction over Mr. Zhao.

## II.     The Complaint Does Not Establish a Basis of Personal Jurisdiction Over Mr. Zhao

Even if process had been lawfully achieved, the claims against Mr. Zhao are untenable because the Court lacks personal jurisdiction over him. *See* Mot. 3–7. Neither the Complaint nor Plaintiffs' opposition establish constitutionally sufficient minimum contacts between Mr. Zhao and the relevant forum, and this is not the type of case identified in *Fuld v. Palestine Liberation Org.*, 606 U.S. 1 (2025), where a showing of minimum contacts is unnecessary.

### A.     Plaintiffs Cannot Rely on Bankruptcy Rule 7004(f) to Obtain a Nationwide Minimum-Contacts Standard

Plaintiffs' entire argument concerning personal jurisdiction is flawed because they rest on Mr. Zhao's supposed "minimum contacts" with "the U.S. as a whole" rather than Delaware, the

3

forum state. Opp. 10. But "'[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons,'" and federal courts in such cases are governed by "the limitations imposed by the *Fourteenth* Amendment on *state* courts." *Fuld*, 606 U.S. at 11 (citation omitted). Under the Fourteenth Amendment, Plaintiffs must establish sufficient contacts between Mr. Zhao and *Delaware*, not the United States taken as a whole. *See Walden v. Fiore*, 571 U.S. 277, 283 (2014). Plaintiffs do not contend that Mr. Zhao has constitutionally adequate case-related contacts with Delaware. *Compare* Mot. 3–5, *with* Opp. 11–27.

Instead, Plaintiffs claim that "Rule 7004(f) of the Federal Rules of Bankruptcy Procedure" entitles them to a nationwide forum under the Fifth Amendment's Due Process Clause, which restricts the powers of the federal government. Opp. 8. But, by their own waiver theory, Plaintiffs did *not* accomplish service under Bankruptcy Rule 7004(f). As explained, Plaintiffs claim instead that Mr. Zhao "waived service of process defenses in the Scheduling Stipulation." Opp. 5. If that were correct—it is not, *see supra* § I—then Bankruptcy Rule 7004(f) is unavailable. Rule 7004(f) creates "personal jurisdiction over a defendant" if service actually occurred "under this Rule 7004 or the applicable provisions of Fed. R. Civ. P. 4." Fed. R. Bankr. P. 7004(f). Rule 7004(f) does *not* state that personal jurisdiction is created if the defendant "waived service of process defenses," as Plaintiffs say occurred. Opp. 5; *see United States v. Nasir*, 17 F.4th 459, 471–72 (3d Cir. 2021) ("As a familiar canon of construction states, *expressio unius est exclusio alterius*: the expression of one thing is the exclusion of the other."). Accordingly, the only available basis of personal jurisdiction (if any) is the Delaware long-arm statute, but that statute reaches only defendants with constitutionally sufficient contacts *with Delaware. See* Mot. 3–4. Because Plaintiffs do not attempt to show that Mr. Zhao has such contacts, the Court should dismiss this action.

**B.      Plaintiffs Have Not Satisfied the Fifth Amendment's Nationwide Standard**

Even if Bankruptcy Rule 7004(f) had been properly utilized—it was not—Plaintiffs have still failed to establish personal jurisdiction over Mr. Zhao.

**1.      Rule 7004(f) Cannot Apply Unless the Minimum Contacts Test Is Satisfied**

Plaintiffs begin their discussion of personal jurisdiction with a fallacious straw man argument. They accuse Mr. Zhao of arguing that Bankruptcy Rule 7004(f) is "inherently unconstitutional" and "no longer . . . valid" after *Fuld*. Opp. 8, 10. Mr. Zhao did not advance that position. He asserted that an exercise of personal jurisdiction over *him* in *this* case would be unconstitutional.

A statute or rule can be facially unconstitutional—that is, unconstitutional in every possible application—or unconstitutional as applied in a specific case. *See Benezet Consulting LLC v. Sec'y Commonwealth of Pennsylvania*, 26 F.4th 580, 585 (3d Cir. 2022). Mr. Zhao makes the latter argument. As his opening brief explained, Bankruptcy Rule 7004(f) cannot be constitutionally applied because (1) Mr. Zhao has no case-specific ties to the United States and (2) this is not a case like *Fuld* where a federal court may exercise personal jurisdiction without such case-specific ties. Mot. 3–5. Once Mr. Zhao's argument is properly stated, it becomes clear that Plaintiffs *concede* its main premises. Most importantly, they acknowledge that Bankruptcy Rule 7004(f) can be applied only "so long as the defendant has minimum contacts with" the United States. Opp. 10. Plaintiffs do *not* rely on *Fuld* as a basis to avoid the need to establish constitutionally sufficient ties between Mr. Zhao and some relevant U.S. forum. Consequently, the parties *agree* that Plaintiffs' effort to sue Mr. Zhao must fail *if* their assertions of minimum contacts concerning Mr. Zhao are legally insufficient (they are, *see infra* § II.B.2).

5

### 2.    Plaintiffs Fail to Satisfy the Minimum Contacts Test

Plaintiffs' efforts to satisfy the minimum contacts test fail to make up in length what they lack in substance. *See* Opp. 11–25. General jurisdiction is unavailable because Plaintiffs cannot allege Mr. Zhao is "at home" in the United States. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Consequently, Plaintiffs must establish specific jurisdiction through "suit-related conduct" that "create[d] a substantial connection with the forum." *Walden*, 571 U.S. at 284. Plaintiffs are not up to that task. They begin with an attempt to create prejudice against Mr. Zhao by discussing irrelevant agreements with U.S. law enforcement authorities (Opp. 11–14), which have nothing to do with this lawsuit. The government alleged that Mr. Zhao maintained a "money services business" but did not "develop, implement, and maintain an effective AML [anti-money-laundering] program." [D.I. 31 at 2.] The internal programs of the BHL Defendants do not relate to the events of this case and thus fail to establish specific jurisdiction.

Insofar as Plaintiffs cite the agreements as evidence that "Binance operated a *multi-trillion-dollar* cryptocurrency platform *in the U.S.*" (Opp. 14), they fall short in several ways. First, Plaintiffs fail to allege, much less establish, that Binance or the cryptocurrency platform are located in the U.S. Second, Mr. Zhao's equity stake in Binance would not translate Binance's business operations back to Mr. Zhao, for reasons explained further below. *See* p. 7. Third, the Supreme Court has repeatedly held that "continuous activity of some sorts within a state is not enough to support the demand that the [defendant] be amenable to suits unrelated to that activity." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017). It has also rejected a "sliding scale approach" that relaxes the requirement of case-specific contacts based on general business contacts with the forum, calling that doctrine "a loose and spurious form of general jurisdiction." *Id.* at 264. As a result, even if Plaintiffs had established that "the U.S.

6

market" was "critical to the success of [Mr. Zhao's] Binance enterprise," Opp. 15 (alteration in original)—which they have *not* established—that would not subject Mr. Zhao to personal jurisdiction in the United States for purposes of *Plaintiffs' claims*.[2]

Plaintiffs steer even further off course in citing FTX's own "substantial U.S. customer base" as grounds for jurisdiction over Mr. Zhao. Opp. 15. Even if FTX's customers would make *FTX* amenable to U.S. jurisdiction, it would not reach *Mr. Zhao*. Entering and exiting contracts with persons in a forum does not subject that *counterparty* to jurisdiction in that forum. *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("[A] contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'"); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (same). It is likewise insufficient that a small portion of the consideration in an international exchange between foreign parties is alleged to be shares representing a minority stake in a Delaware corporation. Opp. 17–18; *Barber-Greene Co. v. Walco Nat. Corp.*, 428 F. Supp. 567, 570 (D. Del. 1977) ("the fictional . . . situs of stock in Delaware does not pass constitutional muster as a predicate for jurisdiction"). Indeed, "[a]n individual's status as an officer, director, or majority shareholder of a corporation alone is insufficient to support the exercise of personal jurisdiction." *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 483 (E.D. Tex. 2019). An equity stake of "approximately 18.4%" (Compl. ¶ 37), falls short even of that mark.

Plaintiffs then attempt to rely on their *own* contacts with the United States, emphasizing, for example, "that FTX used U.S. based counsel" to advise on the transaction and elected to utilize "the Alameda silo" of its enterprise to buy out the counterparties. Opp. 20. Plaintiffs miss that

---

[2] In support of their statement that "CZ and his enterprise were reliant on U.S. customers," Plaintiffs cite "*See generally* Compl." Opp. 15. That proves nothing.

constitutionally relevant contacts "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (citation omitted). Similarly, Plaintiffs observation that some of the cryptocurrency exchanged was "pegged to the U.S. dollar," Opp. 18, overlooks that "[s]imply transacting in U.S. dollars does not make a defendant . . . bank amenable to suit in" the United States. *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 643 (2d Cir. 2023). Plaintiffs do not say why the result would be different where cryptocurrency that is *not* U.S. currency is merely "pegged" to U.S. currency. Plaintiffs' comparison to cases involving transactions through U.S. bank accounts (Opp. 19), falls flat because the transaction here is *not* alleged to have been routed through U.S. bank accounts. Plaintiffs say the cryptocurrency was *minted* in the U.S. Opp. 18–19. But U.S. currency is *always* minted in the U.S, and (as explained) that is insufficient. *Spetner*, 70 F.4th at 643.

Plaintiffs' contentions concerning what they call "the Predatory Acts Claims," Compl. ¶¶ 32–33, fail along the same lines. Their principal contention is that "FTX Trading had a substantial U.S. customer base" (*id.* ¶ 31), which is yet another discredited attempt to create jurisdiction by *Plaintiffs'* contacts, not *Mr. Zhao's* contacts. *But see Walden*, 571 U.S. at 284. Plaintiffs turn to the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), and theorize that Mr. Zhao's social media posts concerning FTX create U.S. jurisdiction because "he knew FTX had a significant presence" here. Opp. 25–26. But that is exactly what does *not* work under *Calder*. *See Sebastian Brown Prods.*, *LLC v. Muzooka Inc.*, 2015 WL 1467255, at *3 n.4 (D. Del. Mar. 30, 2015) (finding mere fact of Twitter followers in forum insufficient); *Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (finding effects in forum "merely incidental" where online post "was intended to provide information on [the defendant]" and "was accessible worldwide"). Plaintiffs allege only that Mr. Zhao discussed an entity (FTX) with a small U.S. market share ("25 percent,"

8

Opp. 16) on a social media platform accessible anywhere in the world. Opp. 22. In *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002), *Calder*'s standard was unmet even though the plaintiff alleged that the defendant "posted articles on [the] Internet . . . that discussed the [defendant] and his Virginia prison, and he would feel the effects" of the tort "in Virginia, where he lives and works." *Id.* at 262. "*Calder* does not sweep that broadly." *Id.* The Third Circuit has approved this holding, *Marks v. Alfa Grp.*, 369 F. App'x 368, 370 (3d Cir. 2010), as have other circuits, *see, e.g.*, *Moore v. Cecil*, 109 F.4th 1352, 1363 (11th Cir. 2024) (describing "uniform[]" approach of circuits). Plaintiffs' own authority (Opp. 22) explains that "[a] passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

Finally, Plaintiffs obliquely reference case law addressing an alter ego theory of jurisdiction but do not develop the point. Opp. 13. One deficiency here is that Plaintiffs have failed to establish specific personal jurisdiction over any part of "the Binance platform" (Opp. 13), so it would not matter if Mr. Zhao and the Binance Defendants were viewed interchangeably. In any event, piercing the corporate veil is "notoriously difficult," *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018), and Plaintiffs do none of the work necessary to achieve that outcome. They do not say what entities should be disregarded but, as noted, refer vaguely to a "platform." Opp. 13. But the "crux of the alter-ego theory of personal jurisdiction" is that "two entities" are "acting as one." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 274–75 (2d Cir. 2023), *cert. denied* 144 S. Ct. 681 (2024) (citation omitted). Vague references to a platform do not even begin to get at this standard. Plaintiffs cannot pierce various corporate veils

without identifying which entities are at issue and whose U.S. contacts they would attribute to whom.

Moreover, Plaintiffs do not attempt justify veil piercing under the corporate law of any relevant jurisdiction. Binance Holding is a Cayman Islands Company, Binance Holdings Limited is incorporated in Ireland, and Binance Capital Management is a British Virgin Island entity. Compl. ¶¶ 21–23. Plaintiffs have not even attempted to identify, let alone establish, the alter ego standards under the laws of those nations. *See Platinum & Palladium*, 61 F.4th at 275 & n.11 (indicating that laws of location of incorporation apply to state claims). Even a cursory glance reveals they would have no hope of meeting such standards. Courts in the Cayman Islands and Virgin Islands analyze veil-piercing under English law, which applies the alter ego doctrine in "vanishingly rare" circumstances. *Glob. Gaming Philippines, LLC v. Razon*, 2022 WL 836716, at *7 (S.D.N.Y. Mar. 21, 2022) (Cayman Islands); *see Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, 2021 WL 3140777, at *1 (S.D.N.Y. July 26, 2021) ("the British Virgin Islands . . . appl[y] English law" to "alter ego claims"). It is possible "only where special circumstances exist indicating that the relationship of one corporation to another is a mere facade concealing the true facts." *Platinum & Palladium*, 61 F.4th at 275 (citation omitted). Meanwhile, the law of Ireland is so restrictive of veil-piercing that it never happened in history *until 2022*. *See* Liam Boyle, High Court makes Irish History: Piercing the Corporate Veil, Eversheds-Sutherland (Dec. 21, 2022), https://www.eversheds-sutherland.com/en/ireland/insights/high-court-makes-irish-history-piercing-the-corporate-veil. Plaintiffs cannot plausibly meet these standards, and they do not even try.

Even assuming counterfactually that Delaware law applies, Plaintiffs say nothing of the relevant factors under that state's law, such as "whether the corporation was adequately

10

capitalized" and "solvent"; "whether dividends were paid, corporate records kept, officers and directors functions properly, and other corporate formalities were observed"; "whether the dominant shareholder siphoned corporate funds"; and whether "the corporation simply functioned as a facade for the dominant shareholder." *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012) (Delaware law); *see NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (Delaware law). Plaintiffs cannot justify the drastic remedy of veil piercing by ignoring all factors necessary to allege alter ego status.

## III.   Claims Predicated on the 2021 Buyout Fail on Numerous Grounds

### A.   The Fraudulent Transfer Claims Impermissibly Exert Extraterritorial Reach Under Statutes with Only Domestic Application

Mr. Zhao's opening brief demonstrated that the transfer Plaintiffs seek to avoid occurred outside the United States and that the fraudulent transfer statutes Plaintiffs invoke have only domestic reach. Mot. 8–10. Plaintiffs challenge both assertions, but their positions are foreclosed by U.S. Supreme Court precedent. *See* Opp. 34–38.

#### 1.   Plaintiffs Seek to Avoid a Foreign Transaction

There is no merit in Plaintiffs' contention that their fraudulent conveyance claims entail a domestic application of the Bankruptcy Code's fraudulent transfer provisions. *See* Opp. 35. Their Complaint explicitly seeks to avoid transfers that—by Plaintiffs' own telling—occurred abroad.

The Supreme Court has repeatedly directed courts to "determine whether the case involves a domestic application of [a] statute . . . by looking to the statute's 'focus.'" *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 337 (2016); *see also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266–67 (2010); *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 33 (2021). Moreover, in *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366 (2018), the Supreme Court considered the "focus of the inquiry" under the same provisions of the Bankruptcy Code at issue here and found that focus to

11

be "the transfer that the trustee seeks to avoid." *Id.* at 379. Accordingly, the inquiry here turns on the location of "the initial transfer that fraudulently depletes the estate." *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019).

In this case, the relevant transfer occurred abroad. The Complaint describes the "overall transaction" that the trustee seeks to avoid as the "14,267,547.14 in BUSD" "From Alameda" to "Binance (with Zhao as nominal counterparty)." Compl. ¶¶ 83–84. In that description, the transferor "Alameda" is Alameda LTD (*id.* ¶ 43), which is a British Virgin Islands company (*id.* ¶ 13; *see* Opp. 21 (conceding that "the direct transferor was the non-US subsidiary of Alameda")). The transferees, the "Binance entities," are incorporated in Ireland, the Cayman Islands, and the Virgin Islands. *Id.* ¶ 43; *see also id.* ¶¶ 21–23. Even if Mr. Zhao was a transferee (he was not, *see infra* § II.C), the Complaint does not, and could not, allege that he received a relevant transfer within the United States. This case, then, is simple. The "transfer that the trustee seeks to avoid," *Merit Mgmt.*, 583 U.S. at 379, was an overseas transfer from a British Virgin Islands company to an Irish company. Because *that* transfer is "the statute's 'focus,'" *RJR Nabisco*, 579 U.S. at 337, Plaintiffs seek an extraterritorial application.

Plaintiffs have no meaningful response to this basic point. They attempt to bypass it by asking ask the Court to apply a "center of gravity" test they claim to find in *In re French*, 440 F.3d 145 (4th Cir. 2006). But, even if that decision applied a center of gravity test—which is far from clear—it was issued four years before the Supreme Court announced the "focus" test in *Morrison* (2010) and 12 years before it announced the "focus" of the fraudulent transfer provisions in *Merit Management* (2018). Intervening Supreme Court precedent directing a "focus" test leaves no room for a "center of gravity test."

Plaintiffs also attempt to muddy the waters by noting various allegations in their Complaint related to the United States. *See* Opp. 35. But, "if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *RJR Nabisco*, 579 U.S. at 337. "[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case," but binding precedent is "to the contrary." *Morrison*, 561 U.S. at 266. In *Morrison*, a securities claim demanded extraterritorial application of Section 10(b) of the Exchange Act, even though the complaint alleged misrepresentations from within the United States, because the securities were "*not registered on domestic exchanges*" and Section 10(b) displays an "exclusive focus on *domestic* purchases and sales." *Id.* at 267. So too here: the statute displays an exclusive "focus" on "the transfer that the trustee seeks to avoid," *Merit Mgmt*, 583 U.S. at 379, which the Complaint alleges occurred abroad. It does not matter that U.S counsel was involved in the transaction, that some cryptocurrency was "pegged to the U.S. dollar,"[3] or that Alameda's parent was allegedly a Delaware company,[4] or even that FTX ran a "new U.S. exchange platform." Opp. 35. The

---

[3] That a transaction is made in U.S. dollars "has no bearing on whether transactions are foreign or domestic." *In re Zetta Jet USA, Inc.*, 624 B.R. 461, 500 (Bankr. C.D. Cal. 2020); *Banco Safra S.A. - Cayman Islands Branch v. Samarco Mineracao S.A.*, 2019 WL 2514056, at \*5 (S.D.N.Y. June 18, 2019) (same); *see also In re Maxwell Communication Corp. plc*, 186 B.R. 807, 817–18 (S.D.N.Y. 1995) (transfers were foreign despite payment in U.S. dollars). It is even *less* relevant that a transaction in cryptocurrency was "pegged" to U.S. dollars.

[4] The inquiry does not look to related entities but to the entity that made or received the transfer. *In re Lyondell Chem. Co.*, 543 B.R. 127, 148 (Bankr. S.D.N.Y. 2016) (finding transfer from one Luxembourg entity to another extraterritorial despite direction by New York-based director); *In re Sherwood Investments Overseas Ltd., Inc.*, 2015 WL 4486470, at \*1, 20 (Bankr. M.D. Fla. July 22, 2015), aff'd 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016) (finding transfers were from Swiss to English accounts extraterritorial because transferor was a British Virgin Islands company and transferee was a Netherlands entity, despite transferee having U.S. branches and director of transfer was physically in Florida).

"transfer" that supposedly "deplete[d] the estate," *Picard*, 917 F.3d at 98, was from a foreign sender to a foreign recipient. That is dispositive.

### 2. Plaintiffs Do Not Overcome the Presumption Against Extraterritorial Reach of Domestic Law

Because Plaintiffs demand an extraterritorial application of the fraudulent transfer provisions, they must overcome "the presumption against extraterritoriality: Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco*, 579 U.S. at 335. Again and again, the Supreme Court has declared "that 'when a statute gives no clear indication of an extraterritorial application, it has none.'" *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013) (quoting *Morrison*, 561 U.S. at 255) (alteration marks omitted). If the statute is "silent as to . . . extraterritorial application," Plaintiffs must lose. *Morrison*, 561 U.S. at 255.

Given how well-established this presumption is, one might have expected Plaintiffs to address it. But they analyze the question with *no* reference to the applicable legal test. *See* Opp. 36–37. The Supreme Court has warned of this approach. Over 15 years ago, the Court criticized "various courts of appeals" for the "disregard of the presumption against extraterritoriality." *Morrison*, 561 U.S. at 255–56. The Supreme Court ratified "criticisms" that had been registered against lower courts for "using congressional silence as a justification for judge-made rules" and directed courts to "apply the presumption [against extraterritoriality] in all cases." *Id.* at 260–61. Plaintiffs' refusal to grapple with that presumption is an implicit concession that they have no basis to overcome it. It is also telling that Plaintiffs revert back to *In re French*, which afforded the Bankruptcy Code's fraudulent transfer provisions an exterritorial reach, but the 2006 Fourth Circuit decision predated the Supreme Court's modern jurisprudence on extraterritoriality and is exactly the type of case the Supreme Court warned against. *Morrison*, 561 U.S. at 260–61.

Plaintiffs' reliance on *In re French In re FAH Liquidating Corp.*, 572 B.R. 117 (Bankr. D. Del. 2017), which followed *In re French*, is not persuasive and misguided. Plaintiffs cite both cases for the proposition that the Bankruptcy Code's fraudulent transfer provisions apply abroad. Opp. 36–37. However, both cases conflict with intervening Supreme Court precedent. To begin, *In re FAH* conceded that "section 548 does not contain any express language *or indication* that Congress intended the statute to apply extraterritorially." 572 B.R. at 125 (citation omitted) (emphasis added). Because Supreme Court precedent requires either "an express statement" or "a clear *indication* of extraterritorial effect," *RJR Nabisco*, 579 U.S. at 340 (emphasis added), the court in *In Re FAH* was obligated to find the presumption was not overcome. *See Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 420 (2023) ("It is a 'rare statute that clearly evidences extraterritorial effect despite lacking an express statement of extraterritoriality.'" (citation omitted)). Instead, the court looked to "surrounding provisions of the Bankruptcy Code" in search of evidence that Congress intended extraterritorial reach. 572 B.R. at 125 (citation omitted). But the Supreme Court has made clear that the "analysis applies at the level of the particular provision implicated," not "the 'statute.'" *Abitron*, 600 U.S. at 419 n.3 (citing *Nabisco*, 579 U.S. at 346 and *Morrison*, 561 U.S. at 264–65). The entire mode of analysis in *In re FAH* stands explicitly rejected in Supreme Court precedent. *See also In re French*, 440 F.3d at 151 (same erroneous approach).

*In re FAH* and *In re French* are wrong for the independent reason that they misread the Bankruptcy Code. Both decisions reasoned that (1) property placed at issue in fraudulent transfer claims is property of the bankruptcy estate under Section 541, (2) Section 541 applies extraterritorially, and (3) the fraudulent transfer provisions must apply extraterritorially as well. *In re FAH*, 572 B.R. at 125–26; *In re French*, 440 F.3d at 151–52. But the first premise fails: property placed at issue in fraudulent transfer claims is *not* property of the bankruptcy estate. *In re Colonial*

*Realty Co.*, 980 F.2d 125, 130–31 (2d Cir. 1992). Section 541(a)(1) includes within a bankruptcy estate "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). But an unliquidated fraudulent transfer claim filed *after* commencement of the case is not a legal or equitable interest in *property* of the debtor. That much is clear because Section 541(a)(3) also includes within the bankruptcy estate "[a]ny interest in property that the trustee recovers under" the Bankruptcy Code's fraudulent transfer provisions. *Id.* § 541(a)(3). If fraudulent transfer claims were within subsection (a)(1), then subsection (a)(3) would be "rendered meaningless." *Colonial Realty*, 980 F.2d at 131 (citation omitted). Meanwhile, an unresolved fraudulent transfer claim is not an "interest in property that the trustee recovers" because recovery has yet to occur and may never occur. Consequently, the property placed at issue in a fraudulent transfer claim represents, at most, what "would have been part of the estate had it not been transferred," not "property of the debtor." *See Begier v. I.R.S.*, 496 U.S. 53, 58–59 (1990). By consequence, the scope of Section 541 cannot dictate the scope of the fraudulent transfer provisions, and the entire syllogism of *In re Fah* and *In re French* falls apart.

To hold that property at issue in unresolved fraudulent transfer cases are part of the bankruptcy estate would create the absurd result that property a trustee *alleges* is subject to a fraudulent transfer claim would become subject to the automatic stay of Bankruptcy Code Section 362. *See Colonial Realty*, 980 F.2d at 131 (rejecting Plaintiffs' view because of "complexity in the administration of bankruptcy estates"). The automatic stay forbids anyone from attempting "to exercise control over property of the estate," 11 U.S.C. § 362(a)(2), and it could not be seriously argued that a person becomes forbidden from accessing that person's own money or property merely by being named—or potentially named—a defendant in fraudulent transfer action. A contrary view could wreak havoc on the global financial system by subject innumerable persons

16

to contempt for accessing their own money or property merely because a bankruptcy proceeding called that ownership into *question*.

Unsurprisingly, *In re Fah* and *In re French* are outliers. The "majority" of courts to have analyzed the issue have rejected the holding of *In re French* and *In re Fah*. *See, e.g.*, *In re Zetta Jet USA, Inc.*, 624 B.R. 461, 476 (Bankr. C.D. Cal. 2020); *In re Estate of Midland Euro Exch. Inc.*, 347 B.R. 708 (Bankr. C.D. Cal. 2006); *In re Sherwood Investments Overseas Ltd., Inc.*, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016); *In re CIL Ltd.*, 582 B.R. 46 (Bankr. S.D.N.Y. 2018) (same); *Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC ("Madoff II")*, 513 B.R. 222 (S.D.N.Y. 2014), *rev'd on other grounds*, 917 F.3d 85 (2d Cir. 2019); *In re Maxwell Commc'n Corp. plc*, 186 B.R. 807 (S.D.N.Y. 1995); *In re Ampal-Am. Israel Corp.*, 562 B.R. 601 (Bankr. S.D.N.Y. 2017). Plaintiffs are wrong in suggesting this Court is bound by either *In re FAH* or *In re French.  See In re AM Int'l, Inc.*, 203 B.R. 898, 905 (D. Del. 1996) (recognizing that Delaware bankruptcy decision on "virtually the identical issues" was not binding); *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366 1371 (3d Cir. 1991) (finding there is no "law of the district"); *cf. In re Raphael*, 238 B.R. 69, 77 (D.N.J. 1999) ("[A] bankruptcy court is not bound by the decision of a district court"). Rather, the Court must make its own "independent analysis," *see Threadgill*, 928 F.2d at 1371, and it should follow the majority rule because it alone comports with Supreme Court precedent.

### B.    The State Fraudulent Transfer Claims Under Delaware Law Fail for Lack of a Basis to Assume Delaware Law Applies

Plaintiffs have failed to identify a basis for their state-law fraudulent transfer claims. Plaintiffs insist Delaware law provides causes of action for them to pursue. Opp. 27–29. Plaintiffs agree that the "most significant relationship" test of Delaware law applies to this question. *Id.* at 27; *see Travelers Indem. Co. v. Lake*, 594 A.2d 38, 46 (Del. 1991), But, whatever jurisdiction has

17

the most significant relationship to the claims, it is not Delaware. Because Plaintiffs identify no jurisdiction whose law may apply that provides claims they may pursue, their state-law claim should be dismissed. *See Folk v. York-Shipley, Inc.*, 239 A.2d 236, 240 (Del. 1968).

The Court must apply the "most significant relationship test" under Delaware law to ascertain which jurisdiction's law applies. *In re FAH*, 572 B.R. at 129.[5]  As Mr. Zhao's opening brief explained (Mot. 10–12), Delaware law cannot apply because it is not the place where (1) the injury occurred, (2) the challenged conduct occurred, (3) the place of incorporation or principal place of business of relevant entities, or (4) the place where the relationship of the parties was centered. *Id.* at 129 (applying these factors). Ignoring these points, Plaintiffs cite a case where the relevant contract was "governed by Delaware law," "[a]ll parties to the [agreement] were Delaware entities," and all "assets sold [were] shares of a Delaware corporation whose situs is Delaware." *In re Physiotherapy Holdings, Inc.*, 2017 WL 5163515, at \*3 (Bankr. D. Del. Nov. 6, 2017). It is unserious for Plaintiffs to claim "*[e]very single one* of those facts is present here." Opp. 28. The transfer agreement was governed by the law of Hong Kong, King Decl., Exs. 1-6 § 4.7, few if any parties to the agreement were domiciled in Delaware, the property transferred belonged to a company incorporated in Antigua and Barbuda (FTX Trading), and only a subset of the consideration consisted of shares in a Delaware company. Compl. ¶¶ 38–25. *Physiotherapy Holdings* is a study in contrasts with this one. As in *In re Fah*, "the only factors militating in favor of the application of the Delaware . . . UFTA are that" some of "the Debtors were Delaware corporations." 572 B.R. at 130. That is not enough.

---

[5] Although *In re FAH* misconstrued the Supreme Court presumption against extraterritoriality, it properly construed Delaware's choice of law doctrine.

18

Plaintiffs rely almost exclusively on the bankruptcy filing and formation of a recovery trust in Delaware as the basis of Delaware's supposed interest in this case. Opp. 28. This view is mistaken. The "most significant relationship" test weighs "the interest of a *state* in having its tort rule applied in the determination of a particular issue." Restatement (Second) of Conflict of Laws § 145 cmt. b (1971) (emphasis added); *see Travelers*, 594 A.2d at 47 (posing the question: "What is Quebec's interest?"). A filing in *federal* bankruptcy court does not describe a *state's* interest in have *its* laws govern a dispute. A bankruptcy proceeding is founded on the Constitution's Bankruptcy Clause, which "empowers Congress to establish 'uniform Laws on the subject of Bankruptcies throughout the United States,'" *Siegel v. Fitzgerald*, 596 U.S. 464, 473 (2022) (quoting U.S. Const., Art. I, § 8, cl. 4), and the venue options are the product of a federal bankruptcy statute, 28 U.S.C. §§ 1408, 1409. It makes no sense to say a federal bankruptcy venue statute enhances—let alone *establishes*—a *state's* interest in having its law apply.

To hold otherwise would federalize *state* common law conflict-of-law doctrine, which federal courts lack power to do. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts."); s*ee In re Merritt Dredging Co.*, 839 F.2d 203, 206 (4th Cir. 1988) (applying this rule in bankruptcy case); *In re Gaston & Snow*, 243 F.3d 599, 605–06 (2d Cir. 2001) (same). Accordingly, bankruptcy courts that have applied the most significant relationship test have generally not looked to the bankruptcy filing itself as a factor, let alone a dispositive one. *See In re FAH*, 572 B.R. at 130; *In re Mervyn's Holdings, LLC*, 426 B.R. 488, 496 (Bankr. D. Del. 2010). *Physiotherapy Holdings* is an exception to that rule, and it offered no reason to consider the bankruptcy forum relevant. *See* 2017 WL 5163515, at *3. In essence, Plaintiffs wish to establish a presumption that the federal bankruptcy forum is the state with the most

19

significant relationship to any state law claim, but "this presumption is untenable." *In re SMEC, Inc.*, 160 B.R. 86, 90 (M.D. Tenn. 1993).

### C.      Mr. Zhao Is Not Plausibly Alleged to Be a Transferee

Mr. Zhao's opening brief demonstrated that the Complaint contains no well-pleaded allegation demonstrating that Mr. Zhao was a "transferee" of the supposed fraudulent conveyance or else "the entity for whose benefit such transfer was made," as the statute requires, 11 U.S.C. § 550(a)(1). Mot. 12–15. In response, Plaintiffs insist that the Complaint *does* contain adequate allegations, but they support that assertion with the citation: "*See generally* Compl." Opp. 29. This only proves Mr. Zhao's point.

Plaintiffs bolster Mr. Zhao's argument further by *conceding* that the Complaint "alleges that the consideration was transferred to the Binance platform," *not* to Mr. Zhao. Opp. 29. The Complaint does indeed allege that the transferee was "one or more Binance entities" and that the transfers went "to Binance." Compl. ¶¶ 43, 45. Further, the Complaint seals the case against Plaintiffs by alleging that Mr. Zhao was merely a "nominal counterparty." *Id.* ¶ 82. The term "nominal" means "[e]xisting in name only, in distinction to *real* or *actual*" and "without reference to reality of fact." 10 Oxford English Dictionary 471 (2d ed. 1989); *see Nominal*, Black's Law Dictionary (9th ed.) ("Existing in name only <he was the nominal leader but had no real authority>"). Because a "functional rule" determines transferee status, *Matter of Walldesign, Inc.*, 872 F.3d 954, 962 (9th Cir. 2017) (quoting *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 894 (7th Cir. 1988)), Plaintiffs' admission that Mr. Zhao was *not* functionally a transferee is fatal to their claim.

This also defeats Plaintiffs' contention that Mr. Zhao's status "is a factual issue that is not appropriately determined at the motion to dismiss stage." Opp. 30. A plaintiff who "plead[s]

20

particulars, and they show he has no claim . . . has pleaded himself out of court." *Jefferson v. Ambroz*, 90 F.3d 1291, 1296 (7th Cir. 1996); *see also Jacobs v. City of Philadelphia*, No. 21-2314, 2022 WL 1772989, at *4 (3d Cir. June 1, 2022). Plaintiffs have done that here by alleging that "one or more Binance entities" were transferees and that Mr. Zhao was merely a "nominal counterparty." Compl. ¶¶ 43, 45, 82. In any event, Plaintiffs must plead factual content to support their claim and did not, which differentiates this case from those they cite. *See In re Agriprocessors, Inc.*, 2012 WL 4059897, at *9 (Bankr. N.D. Iowa Sept. 14, 2012) ("The Trustee alleged Defendant received the checks directly from Defendant."); *In re U.S. Mortg. Corp.*, 492 B.R. 784, 818 (Bankr. D.N.J. 2013) ("the wire transfer notification seems to indicate that $1,000,000.00 was transferred on October 28, 2008 from U.S. Mortgage's account at Capital One Bank to Newbridge Securities account").

Plaintiffs' position, in fact, boils down to several *legal* errors. First, they erroneously depend on allegations that Mr. Zhao "controlled and owned" the corporate recipients of funds, Opp. 29, but the law requires allegations that he owned and controlled the transferred *funds themselves*, not the *transferees*. *Rupp v. Markgraf*, 95 F.3d 936, 941 (10th Cir. 1996). The Complaint does not allege that Mr. Zhao had "the right to put the money to [his] own purposes," such as by spending "that money in lottery tickets or uranium stocks." *Bonded*, 838 F.2d at 893; *see Matter of Coutee*, 984 F.2d 138, 141 (5th Cir. 1993); *see In re Se. Hotel Props. Ltd. P'ship*, 99 F.3d 151, 156 (4th Cir. 1996). Second, Plaintiffs suggest without elaboration that Mr. Zhao was an "entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). But no amount of verbal gymnastics can make Mr. Zhao an "entity." *See Morrison v. Danberg*, 2010 WL 1688349, at *3 (D. Del. Apr. 22, 2010) ("On its face, the statutory definition of 'public entity' does not extend to individual governmental employees."). Nor does the Complaint say how Mr. Zhao fit

21

within the beneficiary mold. A beneficiary "is a guarantor" or someone on whose behalf "a debt was paid," *In re The Brown Schools*, 386 B.R. 37, 53 (Bankr. D. Del. 2008), and Mr. Zhao is not alleged to be either of those. Third, Plaintiffs emphasize that Mr. Zhao "*was the actual seller in the WRS prong of the 2021 Share Repurchase*," Opp. 30, but that refers to a transfer Mr. Zhao made, not one he *received*. One does not become a "transferee" or an "entity for whose benefit the transfer was made" by transferring property away. 11 U.S.C. § 550(a)(1). While Plaintiffs complain that Mr. Zhao "cites no case" for that proposition, Opp. 30, he need not have done so where the statute says "transferee" not transferor. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("statutory interpretation . . . begins with 'the language of the statute'" and "ends there as well" if "the statutory language provides a clear answer" (citation omitted)).

### D. Actual Fraudulent Intent Is Not Adequately Shown in the Allegations

Mr. Zhao demonstrated that the Complaint does not adequately allege "actual intent to hinder, delay, or defraud" creditors. 11 U.S.C. § 548(a)(1)(A); Mot. 14–15. To the contrary, the Complaint alleges that the business combination of FTX-related persons and BHL-related persons failed because of "personal grievances" and a "widely reported feud." Compl. ¶¶ 4, 52. Mr. Bankman-Fried was compelled to buy out the Binance Defendants. The Complaint does *not* allege that this occurred in anything *except* an arms-length transaction representing the minimum the Binance Defendants would accept for their equity stake. *Id.* ¶¶ 38–44. That does not describe a scheme to defraud.

In response, Plaintiffs first claim to have stated "direct" evidence of fraudulent intent, proposing that Mr. Bankman-Fried fraudulently used the highly publicized transaction "to convey confidence and strength to the market." Opp. 33. In the memorandum they incorporate by reference (D.I. 106 at 51), Plaintiffs point to a "head fake" theory applied in *Drivetrain, LLC v. X.*

22

*Com., Inc.*, 2023 WL 1804627 (Bankr. D. Del. Feb. 7, 2023), to allegations of a "goal . . . to trick investors into believing that the company was both successful . . . and was generating significant revenue . . . ." *Id.* at *3. That theory has no application here. *Drivetrain* addressed an expensive services contract the debtor entered that "provided the debtor with [no] benefit" and "served *no other purpose* but" to trick investors. *Id.* at *1, *3 (emphasis added). Plaintiffs fail to grapple with *In re FTX Trading Ltd.*, 2024 WL 4562675 (Bankr. D. Del. Oct. 23, 2024)—a case they should know well—where this Court declined to apply the "head fake" theory because the complaint's allegations "suggest[ed] entirely different purposes for the acquisition," including the legitimate purpose to "help expand FTX.US's operations." *Id.* at *9. Given those allegations, it did not matter that the complaint alleged the insiders acted with respect to the transaction "in a self-dealing, opaque manner designed to obscure [their] malfeasance." *Id.*

Unsurprisingly, this case is like *FTX Trading*, not like *Drivetrain*. Plaintiffs do not (and could not) allege that the buyback transaction "served no other purpose" but to trick investors and "provided the debtor with [no] benefit." *Drivetrain*, 2023 WL 1804627 at *1, *3. To the contrary, the Complaint "suggests entirely different purposes for the" transaction, *FTX Trading*, 2024 WL 4562675, at *9, of separating prominent industry leaders who could not run the same enterprise. The return of shares and exit of competitors was no "head fake." *Drivetrain*, 2023 WL 1804627, at *3. Any ulterior image-enhancing purpose the transaction might have served was incidental to the stated purpose of achieving a business divorce. Plaintiffs did not (and could not) plausibly allege that Mr. Bankman-Fried orchestrated the transaction for no other reason than to impress markets. Accordingly, Plaintiffs' allegations concerning inaccurate statements ancillary to the transaction itself (such as that Alameda "had a good last year," Compl. ¶ 48 (emphasis omitted))

23

carry no legal significance. *See In re HH Liquidation, LLC*, 590 B.R. 211, 265 (Bankr. D. Del. 2018) ("There is no such thing as a claim for fraudulent non-transfer.").

Without direct evidence, Plaintiffs must rely on "circumstantial evidence" by plausibly alleging "badges of fraud." *See In re Fedders N. Am., Inc.*, 405 B.R. 527, 545 (Bankr. D. Del. 2009); *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 520 n.30 (Bankr. D. Del. 2012). This effort fails because Mr. Bankman-Fried was not passing assets along to an insider that "the debtor would obtain a reconveyance of the property that had been transferred." *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 644–45 (3d Cir. 1991), *as amended* (Oct. 28, 1991). Instead, he was paying off competitors for their exit of the company and stood no chance of seeing the money again. In recharacterizing Mr. Zhao and the Binance Defendants as "insider[s]," Plaintiffs mangle that term beyond recognition. They were bought *out* of the company. Nor is it plausibly alleged that "Debtors received no value." *Id.* The Complaint is clear that there was value in ousting Binance-related persons. Compl. ¶¶ 38–51. And Plaintiffs are wrong in saying that "the allegations in the Complaint" somehow *do* allege that Mr. Bankman-Fried had an incentive to pay well beyond "the bare minimum to be rid" of Binance-related persons. Opp. 34 n.41. Plaintiffs cite no such allegations. Finally, even if Plaintiffs had alleged insolvency, *but see infra* § III.F, that is insufficient to withstand a motion to dismiss on the issue of actual fraudulent intent. *See In re Fedders*, 405 B.R. at 545 (finding badges of fraud inadequately alleged, even though insolvency was alleged); *Zazzali*, 482 B.R. at 520 n.30 (same).

E.    **The Constructive Fraudulent Transfer Claims Are Legally Unavailable**

Mr. Zhao's opening brief demonstrated that Plaintiffs' constructive fraudulent transfer claims are categorically barred because they challenge a conveyance by a "financial participant" made "in connection with a securities contract." 11 U.S.C. § 546(e).

24

Plaintiffs' lead response is "that determinations regarding the safe harbor defense . . . are intensely fact-dependent." Opp. 37. But the Supreme Court and Third Circuit have both decided safe harbor issues on the pleadings. *See In re Plassein Int'l Corp.*, 590 F.3d 252 (3d Cir. 2009) (affirming dismissal on the pleadings); *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366 (2018) (finding safe harbor inapplicable on the pleadings); *see also In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 79–80 (2d Cir. 2019). The cases Plaintiffs cite (in the memorandum they incorporate) explain that the safe harbor defense can justify dismissal on the pleadings "when the defense is clearly established on the face of the complaint." *In re Centaur, LLC*, 2013 WL 4479074, at *4 (Bankr. D. Del. Aug. 19, 2013); D.I. 106 at 75.

The defense is established here. First, Plaintiffs have no room to deny that a "*Share Repurchase*," Compl. ¶ 38 (emphasis added), is a "contract for the purchase" or "sale" "of a security." 11 U.S.C. § 741(7). A share is *the* quintessential security. *See Security*, Black's Law Dictionary (9th ed. 2009) ("An instrument that evidences the holder's ownership of rights in a firm (e.g., stock)"). Second, Plaintiffs have effectively admitted in this proceeding that Alameda—which they agree is the relevant entity (D.I. 106 at 76)—is a "financial participant." 11 U.S.C. § 546(e). A financial participant includes an entity with not less than $100,000,000 in securities contracts. *See* 11 U.S.C. §§ 101(22A)(A) and 561(a)(1). Plaintiffs' own schedules show that Alameda has $631 million in "equity and fund investments as well as equity and fixed income securities." *See* Statements & Schedules Summary at 16, *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Mar. 17, 2023) (D.I. 1101-1).

Plaintiffs respond to this straightforward point with confusion. They attempt to differentiate "owning a security" from a transaction or arrangement to own a security (D.I. 106 at 77 n.70), but the Bankruptcy Code defines the term "securities contract" "with extraordinary

25

breadth" and "do[es] not contain a purchase or sale requirement." *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 417, 420 (2d Cir. 2014). Moreover, Plaintiffs do not say how it is possible to own a security without any "arrangement" to achieve that ownership. *Id.* at 418 (quoting 11 U.S.C. § 741(7)(A)(xi)). Plaintiffs next contend that a bankruptcy debtor like Alameda cannot be a financial participant under Section 546(e), but "Congress has demonstrated repeatedly in the Bankruptcy Code that it knows how to exclude the debtor from defined terms when intended," and it did not do so in defining financial participant. *In re Samson Res. Corp.*, 625 B.R. 291, 300 (Bankr. D. Del. 2020); *cf. Bernard L. Madoff*, 773 F.3d at 417 ("It is not disputed that BLMIS [the debtor] was a 'stockbroker' for the purposes of § 546(e)."). And it is nonsensical for Plaintiffs to demand that the Court blind itself their *own* judicial admissions of Alameda's equity positions. "A debtor's schedules and statements are among the public documents properly subject to judicial notice." *In re Charys Holding Co., Inc.*, 2010 WL 2788152, at *8 (Bankr. D. Del. July 14, 2010); *see In re Argose, Inc.*, 377 B.R. 148, 150 (Bankr. D. Del. 2007).

**F.      The Constructive Fraudulent Transfer Claims Are Inadequately Pleaded**

The constructive fraudulent transfer claims are, besides, not supported by well-pleaded allegations. Mot. 17–18.

First, Plaintiffs were obligated to plead that "the debtor received less than reasonably equivalent value in exchange of the transfers," 11 U.S.C. § 548(a)(1)(B), and failed to do so. Reasonably equivalent value is judged by "fair market value, arm's-length relationship, and good faith." *In re R.M.L., Inc.*, 92 F.3d 139, 148 (3d Cir. 1996). The first two factors are straightforward here: the Complaint's factual content shows that the transaction was at arm's length, *see* Compl. ¶¶ 34–43, and Plaintiffs admit they cannot allege bad faith on the part of "the transferee," *In re R.M.L.*, 92 F.3d at 145; *see* Opp. 32 n.39. On the third factor, Plaintiffs *deny* that "the fair market

26

value of [the] stock" is relevant, Opp. 31, but Circuit precedent (as noted) looks to "fair market value," *In re R.M.L.*, 92 F.3d at 148. Failing to acknowledge the legal standard, Plaintiffs do not even attempt to meet it. The Complaint does not contain well-pleaded allegations that the fair market value of the stock (at the time of the transaction) was substantially less than the consideration. Plaintiffs' attempt to wish this failing away as too "fact-intensive" for this stage, Opp. 31, ignores their obligation "to plead sufficient facts to state a claim," *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Besides, Plaintiffs' Complaint openly admits that "after the 2021 Share Repurchase," "the Debtors were able to raise new equity capital, *at even higher valuations*," Compl. ¶ 50 (emphasis added), so they have overtly indicated a substantial market value.

Second, Plaintiffs were obligated to allege "'that the sum of [the] entity's debts is greater than all of such entity's property, at a fair valuation'" as "measured at the time the debtor transferred value." *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 648 (3d Cir. 1991), *as amended* (Oct. 28, 1991) (quoting 11 U.S.C. § 101(31)(A)). They failed in this as well. Plaintiffs' assertion that "the Debtors had overvalued FTT and other cryptocurrencies held by Debtors," Opp. 31, is conclusory and improper reevaluation with the benefit of hindsight. FTT rose in value after the transfer (*see* Report of Robert J. Cleary at 88, Examiner, *In re FTX Trading Ltd.*, No. 22 Bk. 11068 (Bankr. D. Del. May 23, 2024), D.I. 15545), and Mr. Zhao and the Binance Defendants must have understood it had value because they accepted FTT as part of the consideration for the share repurchase (Compl. ¶ 39).

Plaintiffs also fall short in stating that "the Debtors did not have the financial resources to satisfy all customer deposits" and "would not have been able to continue to operate as a business had customers attempted to withdraw their deposits." Opp. 31–32. It would be a rare financial institution that could continue as a going concern if all customers withdrew deposits, and it would

27

be unremarkable that such an entity would not immediately be able to satisfy all customer demands with liquid assets (since financial institutions commonly have illiquid investments). And, because "FTT was designed in such a way that it derived its value from FTX's enterprise value," Compl. ¶ 33, the allegation is circular: if all customers withdrew at once, the FTT that would need to be sold to pay them would plummet in value. It does not follow that "debts" were "greater than all . . . property, at fair valuation" as "measured at the time the debtor transferred value." *Mellon Bank*, 945 F.2d at 648. Plaintiffs have not described insolvency but merely the inherent *risk* involved in a novel enterprise like a cryptocurrency exchange.

## IV.     The Claims Predicated on Social Media Posts and Letter of Intent Fail on Numerous Grounds

The sixth through ninths causes of action fail on numerous grounds that Mr. Zhao explained in his opening brief. Mot. 18–30.

### A.     Delaware Law Does Not Reach the Claims Plaintiffs Alleged

Plaintiffs pursue these claims under Delaware law, but it does not apply. Mot. 20. In an undeveloped footnote,[6] Plaintiffs double down on their federalized theory of conflict of law doctrine, claiming that "Delaware law applies to the Predatory Acts Claims" for one reason alone: the "most relevant state jurisdiction is the place where the injury, *i.e.*, FTX's bankruptcy, took place—Delaware." Opp. 38 n.44. The footnote concedes that no other factor supports application of Delaware law. The argument is fallacious. As explained already, "[t]he conflict of laws rules to be to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts." *Klaxon*, 313 U.S. at 496 (1941); *see supra* § III.B. Because state courts would not

---

[6] "[A]rguments raised in passing (such as, in a footnote) . . . are considered [forfeited]." *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) (citation omitted).

28

look to the bankruptcy venue statute in the analysis, it cannot control in federal court. Plaintiffs, however, erroneously treat the mere existence of a federal proceeding as overriding all Delaware's state conflict-of-law principles.

Plaintiffs also err in presuming that the forum with the most significant relationship must be a U.S. state. *See* Opp. 38 n.44. But foreign jurisdictions may have the best connection to claims. *See, e.g.*, *In re FAH*, 572 B.R. at 130 (Germany), *In re Hellas Telecommunications (Luxembourg) II SCA*, 535 B.R. 543, 575 (Bankr. S.D.N.Y. 2015) (United Kingdom). Accordingly, "U.S. courts frequently apply foreign law, and they have also clearly rejected the premise that 'choice of law analysis is never appropriate in a bankruptcy case.'" *In re Aerovias Nacionales De Colombia S.A. Avianca*, 345 B.R. 120, 124–25 (Bankr. S.D.N.Y. 2006) (quoting *Maxwell Communication Corp. v. Societe Generale (In re Maxwell Communication Corp*.), 93 F.3d 1036, 1049 (2d Cir. 1996)). And the Third Circuit has recognized that bankruptcy courts must balance not just state-vs.-state interests, but U.S.-vs.-foreign country interests. *Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.*, 310 F.3d 118, 130–31 (3d Cir. 2002), as amended (Nov. 12, 2002). Here, as Mr. Zhao has explained, Plaintiffs have failed to show that Delaware has a more significant relationship (if it has a relationship at all) with the claims than The Bahamas, Ireland, or any other country featured in the Complaint.

**B.      No Injurious Falsehood Claim Exists, and No Claim Could Lie Against Mr. Zhao's Concededly True Statements**

Even if Delaware law were applicable, Mr. Zhao demonstrated that it is not properly read to provide a tort of injurious falsehood and that no cognizable claim has been pleaded in any event. Mot. 20–25. Plaintiffs talk past Mr. Zhao's arguments.

Regarding the existence of an injurious-falsehood claim, Plaintiffs quip that Mr. Zhao "does not cite to a single Delaware case that supports his proposition," Opp. 42, but the *absence*

of governing authority from the state's court of highest resort does that work. *See Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1154 (11th Cir. 2011); *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1087 (W.D. Ky. 1995); *Carolina Indus. Prods., Inc. v. Learjet, Inc.*, 189 F. Supp. 2d 1147, 1167 (D. Kan. 2001). Plaintiffs then note two Delaware trial rulings addressing injurious falsehood claims, Opp. 42–43, but Mr. Zhao explained that neither provided any meaningful *analysis* to guide the *Erie* inquiry, Mot. 20–21. Rather than respond, Plaintiffs quote the rule that "a federal court can . . . give due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000); *see* Opp. 43 n.45. This confirms that following state trial rulings in rote fashion, as Plaintiffs urge, does not work. Mr. Zhao explained the many problems with jumping ahead of the Delaware Supreme Court on this issue (Mot. 21–22), and Plaintiffs have no response (*see* Opp. 42–43).

Plaintiffs do not "convincingly show how the highest court in the state would decide the issue," *Nationwide Mut.*, 230 F.3d at 637, but rest on an unpublished table decision, *Denoble v. Dupont Merck Pharm. Co.*, 703 A.2d 643 (Del. 1997) (TABLE), which summarily affirmed a trial court ruling finding that a complaint *failed* to state a claim for injurious falsehood, *DeNoble v. DuPont Merck Pharm. Co.*, 1997 WL 35410094, at *5 (Del. Super. Ct. Apr. 11, 1997). This smacks of desperation. The unpublished decision is "not . . . binding," *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 287 (3d Cir. 2014), and neither trial nor appellate decision even addressed the issue presented here, *See In re MFW S'holders Litig.*, 67 A.3d 496, 521 (Del. Ch. 2013), *aff'd sub nom. Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014) ("If an issue is not presented to a court with the benefit of full argument and record, any statement on that issue by that court is not a holding with binding force").

30

On the merits, Plaintiffs fail to satisfy the very test they cite, beginning with the requirement that they allege "a false statement 'about the plaintiff his property, or his business.'" Opp. 43 (citation omitted). The trial-court decision Plaintiffs cite "declined to 'expand' the injurious falsehood tort to statements that cause pecuniary harm but are 'about something other than the plaintiff." *In re Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 3960334, at *5 (Del. Ch. July 13, 2020). Oblivious to this point—which Mr. Zhao prominently raised (Mot. 23–24)—Plaintiffs persist in asserting "that CZ made *false* statements about . . . his motive *for selling* FTT." Opp. 45. That is not a false statement *about Plaintiffs*. Moreover, as Mr. Zhao explained (Mot. 24–25), Plaintiffs admit their business was shot through with fraud, so any disparagement of them or their business by implication would have been *true*.

Plaintiffs also fail to allege that the supposed (non-cognizable) falsehoods caused "the resulting harm to Plaintiffs' interests." Opp. 46. For one thing, Plaintiffs openly admit that their inferences of supposed falsehood "were widely understood" at the time of Mr. Zhao's social media posts, *id.* at 46, which proves that, even if Mr. Zhao in fact concealed his true motive, everyone concerned in FTX's collapse understood this yet sold out of FTX anyway. *See* Mot. 27 n.9. This defeats Plaintiffs' directly contradictory statement "that customers relied on CZ's false statements." Opp. 46; *see* 5C Charles A. Wright et al., Federal Practice and Procedure Civ. § 1363 (3d ed.) ("The district court will not accept as true pleading allegations that are contradicted . . . by other allegations"). For another thing, Plaintiffs ignore that the overriding causes of FTX's collapse—according to the Complaint itself—were Mr. Bankman-Fried's fraud and the CoinDesk article showing that the company was a proverbial house of cards. Compl. ¶¶ 33, 55. It is implausible for Plaintiffs to blame Mr. Zhao for a "run on the bank" that *they* caused (Opp. 46), which was the rational response of customers to *Mr. Bankman-Fried's* fraud, Mot. 25.

31

### C.    The Fraud Claims Erroneously Blame Mr. Zhao for Plaintiffs' Own Fraud

Plaintiffs' fraud and intentional misrepresentation claims also fail. The Complaint alleges that FTX failed because of Mr. Bankman-Fried's "pervasive fraud that infected virtually all aspects of FTX's business." Compl. ¶ 6. It is nonsensical for Plaintiffs to contend that it actually failed because the market was misled about the state of mind of an executive of a competitor. Plaintiffs say their "actual fraud theory . . . is that notwithstanding FTX's misrepresentations, CZ independently made his own false statements that were calculated to, and did, inflict the maximum possible pecuniary harm upon FTX and its customers—more harm than would have occurred had he not made those statements (even if FTX had otherwise filed for bankruptcy when it did)." Opp. 47. Mr. Zhao debunked this theory (Mot. 27–29), and Plaintiffs failed to rehabilitate it.

Beginning with the claims based on Mr. Zhao's social medial posts (Mot. 26–27), Plaintiffs overlook the requirement that a false statement be "material." *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987). The material fact of Mr. Zhao's social media posts was that Binance "decided to liquidate any remaining FTT on [its] books," which was *true*. Comp. ¶ 56. The Complaint does not allege sufficient facts from which it can fairly be understood that Mr. Zhao's *motive* for this *true* statement mattered to FTX's customers. That concept makes no sense: had Mr. Zhao announced a goal of destroying FTX, FTX's customers would have had *all the more reason to flee*. Ignoring materiality, Plaintiffs turn to their conclusory assertion of "customers' reliance on" Mr. Zhao's statement regarding his own motive (Opp. 51), but no factual content in the Complaint has "nudged" this view "across the line from conceivable to plausible." *Ashcroft*, 556 U.S. at 680 (citation omitted). It is entirely plausible—actually, certain—that customers sold out of FTX because it was a failed enterprise; it is entirely implausible that they sold out because of a belief (correct or not) about Mr. Zhao's subjective motives.

32

Besides, "Delaware's common law fraud remedy does not provide investors with expansive, market-wide relief," *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 29 (Del. Ch. 2009), so Mr. Zhao's assertions regarding motive would not create a cause of action even if customers somehow relied on it (to make the entirely rational choice to sell out of a failed financial institution). Mot. 25. Plaintiffs miss this point entirely in their rabbit-hole discussion of "estate claims." Opp. 51. Even if Plaintiffs may bring claims for the creditors they defrauded, the complaint does not allege a fraud claim under Delaware law that creditors might bring.[7]

Turning to the claims based on the letter of intent, Mot. 27–29, Plaintiffs fail to identify sufficient factual content in the Complaint to justify their conclusory view that Mr. Zhao did not "genuinely intend to acquire FTX," which is the supposedly false representation. Opp. 51–52. Plaintiffs claim that Mr. Zhao "did not receive any new material information" in the due diligence process and therefore must never have intended to acquire FTX. Opp. 52. But the Complaint alleges that Mr. Zhao cited "US agency investigations" as a basis to withdraw (Compl. ¶ 70), and Plaintiffs do not allege that Mr. Zhao already knew of those investigations (*see id.* ¶¶ 65, 72; *see also* Opp. 52). Plaintiffs also have nothing to say of their own allegations that the letter of intent provided "30 days" for due diligence (*id.* ¶ 67), yet Mr. Zhao promptly called the effort off in just 15 hours (*compare id.* ¶ 68, *with id.* ¶ 70), which would have been illogical had Mr. Zhao actually intended to block FTX from "alternative financing" (Opp. 52; *see* Mot. 28).

In all events, Plaintiffs' theory of loss and damages is untenable. Terms like "value destruction" and "rapid withdrawal" (Opp. 53), are euphemisms for a darker reality that the

---

[7] The BHL Defendants have demonstrated that the doctrine of *in pari delicto* bars Plaintiffs' claims, CITETK, and, without burdening the Court with repetition, Mr. Zhao urges the Court to accept that as an independent basis to reject them. *See* Mot. 20 n.7.

Complaint cannot help but disclose: "the Debtors were able to raise new equity capital" through "the same overarching fraud," such that all new "investments were induced by fraud." Compl. ¶ 50. By consequence, when Plaintiffs (illogically) propose that Mr. Zhao's social media posts and letter of intent prevented "alternative financing" and "destroy[ed] FTX" (*e.g.* Opp. 53), they actually allege that FTX was prevented by Mr. Zhao from defrauding new investors and creditors. To permit these claims to progress past the pleadings would ratify the pernicious doctrine that cognizable forms of causation and damages in a *fraud* claim include the loss of opportunity *to defraud*. No amount of vague verbosity can or should confuse the Court about that basic—and deeply troubling—point.

### D. The Unjust Enrichment Claim Fails Because It Is Not Unjust for a Fraudulent Enterprise to Fail

For the same reasons, Plaintiffs' unjust enrichment claim is meritless. Plaintiffs propose they "were significantly harmed," Opp. 54, in losing the opportunity "to raise new equity capital" through "the same overarching fraud," Compl. ¶ 50. But an unjust enrichment claim turns on "the fundamental principles of justice or equity and good conscience," *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988), and Plaintiffs' view that they had the right to continue their fraud without obstruction gets that doctrine exactly backwards. Mot. 29–30. Plaintiffs refuse to respond to this point. Opp. 53.

Plaintiffs stand solely on the argument that they "alleged a clear relationship between CZ's (owner, founder, and CEO of Binance) enrichment and Plaintiffs' impoverishment." Opp. 53. They have not. The law requires that that "the plaintiff acted for the defendant's benefit" but received no recompense, *Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53, 70 (Del. 2022), but Plaintiffs do not explain how "executing the Letter of Intent" that never materialized into a deal benefited Mr. Zhao. Their attempt to shift the blame from FTX's own mismanagement to Mr.

34

Zhao fails on Plaintiffs' own terms: Their sole authority, *In re W.J. Bradley Mortg. Cap., LLC*, 598 B.R. 150 (Bankr. D. Del. 2019), featured allegations showing that the defendants' acquisition of interest "led to the Debtors' insolvency." *Id.* at 177 (emphasis added). Here, Plaintiffs claim to have been insolvent long before Mr. Zhao made social media posts about them, and they cannot show that FTX's failure resulted from anything but the Debtors' own misconduct.

## CONCLUSION

For the foregoing reasons, all claims against Mr. Zhao should be dismissed with prejudice.[8]

Dated: October 9, 2025                    BAKER & HOSTETLER LLP

*/s/ Jeffrey J. Lyons*
Jeffrey J. Lyons (#6437)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
jjlyons@bakerlaw.com

Teresa Goody Guillén (admitted *pro hac vice*)
Katherine L. McKnight (admitted *pro hac vice*)
1050 Connecticut Ave., NW, S-1100
Washington, D.C. 20036
Cleveland, OH 44114
(202) 861-1630
tgoodyguillen@bakerlaw.com
kmcknight@bakerlaw.com

*Attorneys for Defendant Changpeng Zhao*

---

[8] Plaintiffs' request for leave to replead (Opp. 54), should be denied because it "fail[s] to say anything at all about how they intended to amend their pleading." *In re Allergan ERISA Litig.*, 975 F.3d 348, 358 (3d Cir. 2020).

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2025 a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Paul N. Heath (No. 3704)
Brendan J. Schlauch (No. 6115)
Robert C. Maddox (No. 5356)

-and-

**WHITE & CASE LLP**

J. Christopher Shore (admitted *pro hac vice*)
Brian D. Pfeiffer (admitted *pro hac vice*)
Colin West (admitted *pro hac vice*)
Ashley R. Chase (admitted *pro hac vice*)
Brett L. Bakemeyer (admitted *pro hac vice*)

*Attorneys for the Plaintiffs*

/s/ Jeffrey J. Lyons
Jeffrey J. Lyons (#6437)