**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST, FTX DIGITAL MARKETS, LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>BINANCE HOLDINGS LIMITED, BINANCE CAPITAL MANAGEMENT CO. LTD., BINANCE HOLDINGS (IE) LIMITED, BINANCE (SERVICES) HOLDINGS LIMITED, CHANGPENG ZHAO, DINGHUA XIAO, SAMUEL WENJUN LIM, and DOES 1-1000,<br><br>Defendants. | Adv. Pro. No. 24-50222 (KBO) |

**DEFENDANT CHANGPENG ZHAO'S**
**MEMORANDUM OF LAW IN SUPPORT**
**OF HIS MOTION FOR RECONSIDERATION**

Dated: August 24, 2026

Katherine L. McKnight (admitted *pro hac vice*)
1050 Connecticut Ave., NW, S-1100
Washington, D.C. 20036
(202) 861-1630
kmcknight@bakerlaw.com

BAKER & HOSTETLER LLP
Michael E. Neminski (No. 6723)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801-1147
(302) 468-7088
mneminski@bakerlaw.com

*Attorneys for Defendant Changpeng Zhao*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ....................................................................................................... 3

A. The Complaint Pleaded a Foreign Corporate Transfer and Direct Theories against Mr. Zhao ....................................................................................... 3

B. Plaintiffs Confirmed the Corporate Boundaries in Their Opposition Briefs ........... 5

C. The Briefing Exposed the Missing Links and Preserved the Governing Law......... 6

D. After Briefing Closed, the Court Raised Alter Ego at Both Ends of the Transfers ....................................................................................... 8

E. The Opinion Made Alter Ego the Dispositive to Section 550 and Personal Jurisdiction and Adopted a Broader Domesticity Analysis .................................... 9

RULE 54(B) AUTHORIZES THE COURT TO CORRECT MATERIAL DEFECTS IN AN INTERLOCUTORY RULING ....................................................................................... 11

ARGUMENT ....................................................................................................... 12

A. The Court Should Reconsider the Section 550 Ruling Because It Rests on an Unpleaded Alter-Ego Theory and an Overlooked Foreign-Law Conflict ............. 12

1. Plaintiffs Never Pleaded (or Briefed) the Alter-Ego Theory That the Opinion Made Dispositive ....................................................................... 13

2. The Opinion Overlooked Mr. Zhao's Preserved Showing That Foreign Law Materially Differs ....................................................................... 15

B. Reconsideration Is Required Because the Opinion Used Alter Ego to Create Personal Jurisdiction Over Mr. Zhao ....................................................................... 18

1. The Opinion's Adoption of an Unpleaded Alter Ego Theory and Overlooked Choice-of-Law Error Requires Reconsideration of Its Jurisdictional Ruling ....................................................................... 19

2. The Opinion's Circular Attribution of Contacts Independently Requires Reconsideration....................................................................... 20

C. The Opinion's Court-Generated Domesticity Theory Independently Requires Reconsideration....................................................................... 23

CONCLUSION....................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 24

*Barone v. Brown*,
126 F. Supp. 2d 805 (D.N.J. 2001) ... 12

*Berardi v. Swanson Memorial Lodge No. 48 of the Fraternal Order of Police*,
920 F.2d 198 (3d Cir. 1990) ... 12, 15

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) ... 21

*Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*,
No. 15 Civ. 9003 (LTS) (SN), 2019 WL 4464242 (S.D.N.Y. Sept. 18, 2019) ... *passim*

*Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*,
No. 15 Civ. 9003 (LTS) (SN), 2021 WL 3140777 (S.D.N.Y. July 26, 2021) ... 16

*Clark v. Sweeney*,
607 U.S. 7 (2025) ... 13, 14, 15

*Commonwealth ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988) ... 14

*In re Contempri Homes, Inc.*,
281 B.R. 557 (Bankr. M.D. Pa. 2002) ... 11, 22, 26

*Crystallex International Corp. v. Petróleos de Venezuela, S.A.*,
879 F.3d 79 (3d Cir. 2018) ... 14, 26

*In re Direct Response Media, Inc.*,
466 B.R. 626 (Bankr. D. Del. 2012) ... 12, 13

*Ethridge v. Bell*,
49 F.4th 674 (2d Cir. 2022) ... 12

*Global Gaming Philippines, LLC v. Razon*,
No. 21 Civ. 2655 (LGS), 2022 WL 836716 (S.D.N.Y. Mar. 21, 2022) ... 16

*Gonzalez v. BAM Trading Services, Inc.*,
No. 2:24-cv-08521 (BRM), 2024 WL 4589791 (D.N.J. Oct. 28, 2024) ... 21

*In re Hansen*,
341 B.R. 638 (Bankr. N.D. Ill. 2006) ....................14

*Humphrey v. GlaxoSmithKline PLC*,
905 F.3d 694 (3d Cir. 2018)....................24

*Linus Holding Corp. v. Mark Line Industries, LLC*,
376 F. Supp. 3d 417 (D.N.J. 2019) ....................19

*Lomax v. Ortiz-Marquez*,
590 U.S. 595 (2020)....................14

*In re Lyondell Chem. Co.*,
543 B.R. 127 (Bankr. S.D.N.Y. 2016)....................24

*Marnavi S.p.A. v. Keehan*,
900 F. Supp. 2d 377 (D. Del. 2012)....................16

*Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*,
641 B.R. 467 (Bankr. D. Del. 2022) ....................14

*McElroy v. FirstEnergy Corp.*,
824 F. App'x 97 (3d Cir. 2020) ....................15, 26

*McGarry v. Resolution Trust Corp.*,
909 F. Supp. 241 (D.N.J. 1995) ....................11, 17, 20, 22

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
583 U.S. 366 (2018)....................23, 24

*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004)....................22

*Monkton Ins. Servs., Ltd. v. Ritter*,
No. MO-12-CA-85, 2013 WL 12109252 (W.D. Tex. Dec. 31, 2013) ....................17

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)....................2, 23, 24

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
537 F.3d 168 (2d Cir. 2008)....................16

*NL Indus., Inc. v. Com. Union Ins. Co.*,
65 F.3d 314 (3d Cir. 1995).................... *passim*

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007)....................21

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
917 F.3d 85 (2d Cir. 2019)....................24

*In re Platinum & Palladium Antitrust Litig.*,
61 F.4th 242 (2d Cir. 2023)....................16

*In re Pocius*,
556 B.R. 658 (Bankr. E.D. Pa. 2016)....................15

*Powers v. Greymountain Mgmt. Ltd. (In Liquidation)*,
[2022] IEHC 599....................17

*Prest v. Petrodel Res. Ltd.*
[2013] UKSC 34....................16, 18, 26

*Rush v. Savchuk*,
444 U.S. 320 (1980)....................21

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
181 F.3d 410....................25

*Shenzhen Jisu Technology Co. v. Shenzhen Fosala Technology Co.*,
No. 1:25-cv-16605, 2026 WL 1759350 (D.N.J. June 18, 2026)....................22

*In re Sherwood Invs. Overseas Ltd., Inc.*,
No. 6:10-bk-03323-KSJ, 2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015),
*adopted*, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016)....................24

*Shuker v. Smith & Nephew, PLC*,
885 F.3d 760 (3d Cir. 2018)....................21, 22

*Sierra v. Trafigura Trading LLC*,
No. 22-366-JLH-CJB, 2024 WL 3823018 (D. Del. Aug. 14, 2024)....................21, 22

*Stanziale v. Vanguard Info-Solutions Corp. (In re Allserve Systems Corp.)*,
Nos. 05-60401 (MBK), 06-2208 (MBK), 2007 Bankr. LEXIS 1747 (Bankr. D.N.J. May 17, 2007)....................14

*Tianbo Huang v. iTV Media, Inc.*,
13 F. Supp. 3d 246 (E.D.N.Y. 2014)....................17, 20

*In re Tutu Wells Contamination Litig.*,
909 F. Supp. 1005 (D.V.I. 1995)....................15

*United Employment Associates v. Landmark Construction Co.*,
No. 5:23-cv-3668, 2024 WL 4988982 (E.D. Pa. Dec. 5, 2024)....................19

*Wade v. Kenan Advantage Group, Inc.*,
No. 20-18155, 2021 WL 4704962 (D.N.J. Oct. 8, 2021) ........................................................21

*In re Zohar III, Corp.*,
675 B.R. 142 (Bankr. D. Del. 2025) ........................................................................................11

**Statutes**

11 U.S.C. § 550(a)(1)–(2) .............................................................................................................12

**Rules**

Fed. R. Bankr. P. 7054 ...................................................................................................................11

Fed. R. Civ. P. 54(b) .......................................................................................................................11

**PRELIMINARY STATEMENT**

In this adversary proceeding, Plaintiffs seek to recover cryptocurrency transferred as consideration for a July 2021 repurchase of FTX equity (the "Share Repurchase") that ended a short-lived and unworkable business relationship. Compl. ¶¶ 1, 4, 8, 38–43. The Complaint alleges that Alameda Research Ltd. ("Alameda Ltd."), a British Virgin Islands ("BVI") company, was "the direct transferor of all of the consideration." *Id.* ¶¶ 13, 43. It identifies four foreign corporate defendants collectively as the "Binance Defendants" and alleges that the transfer went "directly to one or more Binance entities." *Id.* ¶¶ 21–24, 43. Its transfer table lists "Binance" as the transferee and Mr. Zhao as a "nominal counterparty." *Id.* ¶ 82. Plaintiffs later confirmed that the Binance Defendants, "and not the Individual Defendants," directly received all of the consideration. Adv. D.I. 106 ¶ 22. Yet the Court's July 24, 2026 opinion (Adv. D.I. 159, "Opinion" or "Op.") permits Counts I through V (the "Transfer Claims") to proceed against Mr. Zhao. Op. 31.

That counterintuitive outcome was the result of several mistakes that warrant reconsideration. To begin, the Opinion concluded that the allegations plausibly support treating the Binance Defendants as Mr. Zhao's alter egos. Op. 9–10, 22. That conclusion treated the Binance Defendants' receipt as Mr. Zhao's under Section 550 and their (unspecified) forum contacts as his for personal jurisdiction. *Id.* at 10, 22. But Plaintiffs pleaded no alter-ego theory. Across 43 pages and 144 numbered paragraphs, the Complaint never uses the words "alter ego," "pierce," or "corporate veil." It never alleges that the Binance Defendants' receipt constituted receipt by Mr. Zhao in his personal capacity. The Section 550 theories Plaintiffs did litigate respected corporate boundaries.

Alter ego became dispositive to the Section 550 and personal-jurisdiction rulings only after briefing had closed. At oral argument, the Court *sua sponte* suggested alter ego theories might fill

gaps in Plaintiffs' case. But Plaintiffs never amended the Complaint, and the Court requested no supplemental briefing on alter ego as a basis for Section 550 liability, domesticity, or on the broader entity-spanning jurisdictional theory the Opinion adopted. Mr. Zhao thus had no opportunity to address those theories in the form the Opinion adopted. That sequence presents grounds for reconsideration.

The Opinion compounded that procedural defect by overlooking the foreign-law conflict Mr. Zhao squarely preserved. The Opinion states that Defendants identified no conflict between foreign and Delaware law. Op. 23 n.153. But Mr. Zhao's Reply identified Cayman, BVI, and Irish law, contrasted their veil-piercing requirements with Delaware law, and explained why the Complaint could not satisfy them. Reply 9–11. The Opinion did not address that showing and instead relied on the supposed absence of a conflict to conduct no choice-of-law analysis. Cayman and BVI law required Plaintiffs to allege that Mr. Zhao interposed a company under his control to evade or frustrate an existing legal obligation. The Complaint alleges none of that.

The overlooked choice-of-law argument was not the only error. For personal jurisdiction, the Opinion pooled Mr. Zhao's and the Binance Defendants' contacts without first identifying a Binance Defendant independently subject to jurisdiction whose contacts could be attributed to Mr. Zhao. Op. 9–12. To determine domesticity, the Opinion considered factors beyond the statute's "focus," *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 268 (2010), and did not require affirmative allegations that the challenged transfer occurred in the United States. Further, when assessing extraterritoriality, the Opinion mistakenly described a service provider as operating Binance.com "from the United States." Op. 20. Yet the Binance Plea paragraph that is cited in the Opinion says the service provider was U.S.-based but operated the platform "on servers in Japan," and the next paragraph describes Binance.com as a "foreign-located" exchange. Binance Plea,

Statement of Facts ¶¶ 10–11; *see also* Op. 20 n.141. And the Opinion improperly disregarded Alameda Ltd.'s separate existence, which the Complaint affirmatively alleged and Plaintiffs reiterated in their own briefing. Op. 19 & n.134.

The Court should reconsider these aspects of its Opinion and dismiss Counts I through V as to Mr. Zhao. Courts grant reconsideration when a decision overlooks a preserved and dispositive argument, omits a required legal analysis, misapprehends the record, or rests on a theory the parties had no fair opportunity to address. Each type of error occurred here, and each controls whether the Transfer Claims may proceed against Mr. Zhao. Reconsideration will correct those defects now, before the parties undertake long and costly litigation on claims whose survival depends entirely on predicates the adversarial process never tested.

## BACKGROUND

Plaintiffs pleaded one case. The Opinion decided another. The chronology below traces that shift—from the Complaint, through the motion-to-dismiss briefing and oral argument, to the Opinion—and identifies what Plaintiffs alleged, what Mr. Zhao preserved, and what the Opinion supplied.

### A. The Complaint Pleaded a Foreign Corporate Transfer and Direct Theories against Mr. Zhao

The Complaint preserves corporate separateness from the outset. It identifies each Binance Defendant and its place of incorporation, defines those four entities collectively as "Binance," and separately describes Mr. Zhao as Binance's founder, former chief executive officer, and owner. Compl. ¶¶ 21–25. It never asks the Court to disregard those distinctions, attribute a Defendant's receipt or contacts to Mr. Zhao, or treat Alameda Ltd. and Alameda LLC as the same entity.

The closest allegations concern ownership and shared operations. Paragraphs 24 and 25 quote from a consent order entered in an action brought by the U.S. Commodity Futures Trading

Commission ("Consent Order"), which describes Mr. Zhao's ownership of entities that operated the Binance.com platform and alleged commingling and shared infrastructure among certain of those entities. *Id.* ¶¶ 24–25. Those allegations stop there. The Complaint never calls any Binance Defendant Mr. Zhao's alter ego, identifies which entities should be treated as one, invokes veil piercing, states a governing legal standard, or connects the quoted facts to attribution of corporate receipt or contacts.

The transfer allegations maintain the same boundary. The Complaint alleges that Alameda Ltd. sent each form of cryptocurrency "directly to one or more Binance entities," and its transfer table identifies "Binance" as the transferee for every transfer. *Id.* ¶¶ 43, 82. Even for the $14.3 million transfer associated with shares sold by Mr. Zhao, the table lists "Binance" as the transferee and Mr. Zhao only as the "nominal counterparty." *Id.* ¶¶ 38, 82. The Section 550 counts add the group conclusion that "each Defendant" qualified as an initial transferee, a transfer beneficiary, or a subsequent transferee. *Id.* ¶¶ 90, 103, 112, 123, 127. That conclusion asserted that Mr. Zhao fell within Section 550 but alleged no facts showing that he received the cryptocurrency, exercised personal dominion over it, or received it through a later transfer from a Binance Defendant.

The Complaint draws an equally clear boundary on the transferor side. Though the transfer table uses "Alameda" as shorthand, paragraph 43 clarifies that "Alameda (specifically, Alameda Ltd.) was the direct transferor of all of the consideration." *Id.* ¶¶ 32, 43, 82. The Complaint identifies Alameda Ltd. as a BVI company and Alameda LLC as its Delaware parent. *Id.* ¶¶ 13–14. It never alleges that Alameda Ltd. was Alameda LLC's alter ego, that Alameda LLC made the transfers, or that Alameda Ltd.'s transfer constituted a transfer by its parent.

The remaining allegations confirm that Plaintiffs proceeded against Mr. Zhao directly. The Complaint's jurisdiction and venue section addresses subject-matter jurisdiction and venue but

says nothing about personal jurisdiction. *Id.* ¶¶ 9–10. Elsewhere, the Complaint alleges Mr. Zhao founded and led Binance, retained an ownership interest, purchased and sold shares in West Realm Shires Inc. ("WRS"), a Delaware corporation associated with FTX's U.S. platform, and made the statements underlying Plaintiffs' direct tort claims. *Id.* ¶¶ 2, 4, 25, 36–38, 55–78. Those allegations relied on Mr. Zhao's own role and conduct. They gave him no notice that Plaintiffs would seek Section 550 liability or personal jurisdiction by treating the Binance Defendants as his alter egos.

**B. Plaintiffs Confirmed the Corporate Boundaries in Their Opposition Briefs**

Plaintiffs confirmed the recipient-side boundary in their omnibus opposition to the Binance Defendants' motions to dismiss (the "Corporate Opposition"). Adv. D.I. 106. They stated that "the Binance Defendants, and not the Individual Defendants, were the direct transferee for all of the consideration in connection with the 2021 Share Repurchase, including the consideration paid for the WRS shares." Corporate Opp. ¶ 22. That admission placed all consideration, including the consideration associated with Mr. Zhao's shares, in the hands of the Binance Defendants rather than the individuals who sold those shares.

Plaintiffs' Section 550 analysis repeated that allocation. Under the heading "Each Binance Entity is Sufficiently Alleged to be a Transferee and/or a Transfer Beneficiary," Plaintiffs addressed the four Binance Defendants by name. *Id.* ¶ 68. Applying the same improper group pleading methodology, they argued that those defendants collectively qualified under Section 550 because they purportedly operated the Binance.com platform, received consideration through that platform, sold shares, or benefited from the platform's receipt. *Id.* That analysis, however, never asserted that Mr. Zhao personally received the same consideration.

The contrast with Plaintiffs' tort argument confirms that choice. When Plaintiffs wanted to group Mr. Zhao with the Binance Defendants, they expressly argued that the defendants committed

wrongful conduct "as a group." *Id.* ¶ 83. Their Section 550 argument did not. It identified the Binance Defendants as the recipients of the consideration. *Id.* ¶¶ 22, 68.

Plaintiffs drew the same boundary on the transferor side in their opposition to Mr. Zhao's motion to dismiss (the "Opposition"). They acknowledged that "the direct transferor was the non-US subsidiary of Alameda, Alameda Ltd." Opp. 30. Their principal response to Mr. Zhao's extraterritoriality argument was that surrounding U.S. contacts placed the transfers' "center of gravity" in the United States. *Id.* ¶¶ 54–55. Plaintiffs relied on Mr. Zhao's WRS shares, the use of a U.S.-dollar-pegged cryptocurrency, the involvement of a New York trust, U.S. counsel and notice addresses, and Alameda Ltd.'s relationship with its Delaware parent. *Id.* ¶ 55.

The Opposition then presented extraterritorial statutory reach as the fallback. Plaintiffs argued that "[e]ven if the 2021 Share Repurchase were a foreign transaction (it is not)," Sections 544, 548, and 550 still applied. *Id.* ¶¶ 56. Plaintiffs thus litigated domesticity through surrounding transaction contacts and, in the alternative, the Bankruptcy Code's extraterritorial reach. They never argued that Alameda Ltd. and Alameda LLC were alter egos or that disregarding Alameda Ltd.'s separate existence converted its transfers into domestic ones.

**C. The Briefing Exposed the Missing Links and Preserved the Governing Law**

Given Plaintiffs' allegations of corporate—not individual—receipt, Mr. Zhao's motion addressed each path by which Section 550 could reach him. It explained that the Complaint placed initial receipt with "one or more Binance entities," alleged no later transfer to Mr. Zhao, and supplied no facts showing his personal dominion over corporate property. Mot. 12–13. His ownership interest also provided no direct, quantifiable benefit corresponding to the value transferred. *Id.* at 13. The Complaint thus alleged neither receipt by Mr. Zhao nor a benefit that Section 550 recognizes.

In response, Plaintiffs did not ask the Court to disregard the Binance Defendants' separate existence and treat their receipt as Mr. Zhao's receipt. Plaintiffs vaguely invoked corporate attribution only in their personal-jurisdiction argument against Mr. Zhao. They cited a decision involving entities that operated as a "single economic unit" under their owner's control. Opp. ¶ 20. But they identified no alleged alter egos, no contacts to attribute between them, no governing law, and no applicable elements. The Opposition never called any Binance Defendant Mr. Zhao's or another Binance Defendant's alter ego and never mentioned veil piercing or the corporate veil. *See generally* Opp.

Mr. Zhao's Reply met that limited theory on its own terms. It explained that Plaintiffs had "obliquely reference[d] case law addressing an alter ego theory of jurisdiction" and could not collapse an undefined group of companies "without identifying which entities are at issue and whose U.S. contacts they would attribute to whom." Reply 9. The Reply then identified the Cayman Islands, Ireland, and the BVI as the relevant places of incorporation. *Id.* at 10. It explained that Cayman and BVI law permit veil piercing only in "vanishingly rare" circumstances and that Irish law imposes an even narrower standard. *Id.* Allegations of ownership, control, commingling, and shared operations could not satisfy those standards. *Id.* at 9–11. The Reply therefore identified both the foreign-law conflict and its effect on Plaintiffs' attribution theory before the Court issued the Opinion.

The Reply also preserved the domesticity issue. It explained that the inquiry turns on "the transfer that the trustee seeks to avoid" and the location of "the initial transfer that fraudulently depletes the estate." *Id.* at 11–12. The Complaint identified that transfer as one from Alameda Ltd., a BVI company, to foreign corporate recipients. *Id.* at 12–13. The Reply further explained that the inquiry follows the entity that made or received the challenged transfer, not a related entity, and

cited decisions treating transfers between foreign entities as foreign despite direction from U.S.-based directors or the transferee's U.S. branches. *Id.* at 13 n.4. The briefing thus placed before the Court the rule that a domestic affiliate does not relocate a foreign company's transfer.

**D. After Briefing Closed, the Court Raised Alter Ego at Both Ends of the Transfers**

At argument, Plaintiffs' responses exposed the recipient-side pleading gap. Plaintiffs began by stating that "[t]he Binance platform is alleged to be the initial transferee." Tr. 53:13–18. The Court later observed that the Complaint alleged only that the consideration "went to Binance" and asked whether any allegation supported an inference that it "went further" to Mr. Zhao or another defendant. *Id.* at 70:13–21. Plaintiffs identified none. The Court then supplied alter ego as a possible bridge, noting Mr. Zhao's control and suggesting that "maybe there's some alter ego issues there." *Id.* at 71:1–6. Plaintiffs responded that alter ego formed "part of" their answer but offered no governing rule or entity-specific analysis, nor referenced an allegation in the Complaint that supports the notion that alter ego is "part of" their pleaded case against Mr. Zhao. *Id.*

Plaintiffs' response underscored the pleading gap. They acknowledged that the gap "could be fixed with pleading," speculated that "[m]aybe [Mr. Zhao] took all of it for himself," and sought discovery into what happened after the consideration reached the Binance.com platform. *Id.* at 72:9–24. Those statements confirmed that the Complaint alleged no downstream receipt by Mr. Zhao and did not connect its allegations to an alter-ego theory of receipt. Plaintiffs never amended the Complaint, and the Court requested no supplemental briefing on alter ego as a basis for Section 550 liability.

The same shift occurred on the transferor side. Counsel for the corporate defendants explained that Plaintiffs had identified a non-U.S. company as the direct transferor and pleaded Alameda Ltd. and Alameda LLC as separate entities. *Id.* at 16:2–17:12. The Court responded, "I'm not sure there was a corporate form." *Id.* at 16:13–14. Yet the Complaint alleged no facts

supporting disregard of Alameda Ltd.'s corporate form, and Plaintiffs had never argued that its veil could be pierced. The issue was never briefed and barely even referenced at argument.

### E. The Opinion Made Alter Ego the Dispositive to Section 550 and Personal Jurisdiction and Adopted a Broader Domesticity Analysis

The Opinion made alter ego the missing link under Section 550. It acknowledged that the Complaint called Mr. Zhao a "nominal counterparty," placed receipt with "one or more Binance entities," and alleged that the transfers went "to Binance." Op. 22. It nevertheless concluded that Mr. Zhao's alleged domination and control plausibly made the Binance Defendants "his alter egos" and treated their receipt as his at the pleading stage. *Id.* at 22 & n.149. The Opinion did not analyze the ownership-and-dominion or seller-benefit theories Plaintiffs had pleaded and briefed.

The Opinion used the same doctrine to establish personal jurisdiction. Relying on the Complaint's Consent Order allegations and materials submitted with Plaintiffs' opposition, it concluded that the Binance Defendants plausibly acted as a "coordinated enterprise," observed no "meaningful distinctions," and engaged in conduct "consistent with the alter ego theory of personal jurisdiction." *Id.* at 9–10 & nn.76–79. The Opinion therefore considered Mr. Zhao's and the Binance Defendants' contacts collectively. *Id.* at 10. It never identified a Binance Defendant independently subject to personal jurisdiction before attributing that defendant's contacts to Mr. Zhao. Instead, it began with the collective group and used the group's contacts to find a *prima facie* jurisdictional showing as to every member. *Id.* at 10–12.

The Opinion conducted no choice-of-law analysis before treating the foreign Binance entities as Mr. Zhao's—or each other's—alter egos. It acknowledged that Defendants had identified several alternatives to Delaware law but stated that they "ha[d] not identified any conflict between those laws and the laws of Delaware." Op. 23 n.153. It then cited the rule that forum law may govern "where neither party asserts that another jurisdiction's law meaningfully differs." *Id.*

But the Opinion did not address the Reply's contrary showing or the authorities cited there. Those authorities explain that Cayman and BVI law permit veil piercing only in "vanishingly rare" circumstances and that Irish law imposes an even more restrictive standard. *See* Reply 10.

On the transferor side, the Opinion acknowledged precedent holding that the Bankruptcy Code's avoidance and recovery provisions apply only within the United States. Op. 18 n.120. But the Opinion found it could avoid the "complex and thorny issue" because "Plaintiffs' action seeks a domestic application of the Bankruptcy Code's avoidance and recovery provisions." *Id.* at 18. The Court believed it could survey a broad range of "conduct" rather than take a "myopic" view dependent solely on the location of the transferor. *Id.* at 18–19 (emphasis and citation omitted). It recognized that "Alameda Ltd.[]" is "an alleged British Virgin Islands company" and is alleged to be "the transferor," but found the Complaint "inconsistent on this point." Op. 19. (In fact, the Complaint is perfectly clear that Alameda Ltd. is the only transferor and "specifically" references the same. Compl. ¶ 43). Seeking U.S.-based ties, the Opinion misread the Binance Plea. It stated that a U.S.-based provider operated the Binance.com platform "from the United States." Op. 20. But the Binance Plea states that the provider operated the platform "on servers in Japan" and describes Binance.com as a "foreign-located" exchange. Binance Plea, Statement of Facts ¶¶ 10–11. The Opinion acknowledged this, Op. 20 n.141, yet relied on its unsupported characterization of Binance.com as operating "from the United States" to conclude at the pleading stage that the transfers were domestic, while deferring the location of the cryptocurrency and Alameda Ltd.'s Binance.com account until discovery and "more fulsome briefing." *Id.* at 20 & n.141.

The Court also reasoned that the allegations and facts "known generally to the Court" plausibly supported treating Alameda LLC's subsidiaries as its alter egos. Op. 19. The Opinion drew the facts supporting that inference from a disclosure statement filed in the main bankruptcy

cases rather than the Complaint. *Id.* at 19 n.134. That unpleaded and unbriefed inference allowed the Opinion to conclude that "the Transfer was made by a United States debtor." *Id.* at 19. That conclusion cannot be reconciled with the Complaint, which identifies Alameda Ltd. as the direct transferor and never alleges that its separate corporate form should be disregarded. Nor does the disclosure statement's generalized account of governance failures and commingling across the FTX enterprise establish that Alameda Ltd. was interposed to evade an existing obligation, as BVI law requires, or otherwise justify recasting its transfer as one by its Delaware parent.

## RULE 54(B) AUTHORIZES THE COURT TO CORRECT MATERIAL DEFECTS IN AN INTERLOCUTORY RULING

Bankruptcy Rule 7054 applies Rule 54(b) to this adversary proceeding, and Rule 54(b) permits the Court to revise an interlocutory order before final judgment. Fed. R. Bankr. P. 7054; Fed. R. Civ. P. 54(b). To prevail, a movant must show good cause for reconsideration. This Court asks whether reconsideration would be "consonant with justice." *In re Zohar III, Corp.*, 675 B.R. 142, 145 (Bankr. D. Del. 2025). The need to correct clear error or prevent manifest injustice satisfies that standard. *NL Indus., Inc. v. Com. Union Ins. Co.*, 65 F.3d 314, 324 n.8 (3d Cir. 1995).

Courts find good cause when a ruling overlooks a preserved argument or misapprehends the governing law or record. In *NL Industries*, the Third Circuit held that the failure to conduct a required choice-of-law analysis "constituted a clear error" and "reconsideration was warranted." 65 F.3d at 324, n.8. The court in *McGarry v. Resolution Trust Corp.* granted reconsideration after recognizing that it "did indeed overlook" an argument with "potentially dispositive" force. 909 F. Supp. 241, 244 (D.N.J. 1995). The bankruptcy court in *In re Contempri Homes, Inc.* granted reconsideration after reexamining the record and correcting a factual error in its prior calculation. 281 B.R. 557, 559–60 (Bankr. M.D. Pa. 2002).

Courts also correct rulings that decide dispositive issues *sua sponte* without giving the parties an adequate opportunity to respond. The Third Circuit in *Berardi v. Swanson Memorial Lodge No. 48 of the Fraternal Order of Police* vacated the dismissal because the district court resolved the case on a "ground not raised" by the defendant without giving the plaintiff "an adequate opportunity to respond." 920 F.2d 198, 200 (3d Cir. 1990). The district court in *Barone v. Brown* granted reconsideration and vacated a *sua sponte* jurisdictional dismissal because the petitioner "did not have a full opportunity to address" the dispositive issue before dismissal. 126 F. Supp. 2d 805, 807, 809 (D.N.J. 2001). The Second Circuit in *Ethridge v. Bell* confirmed that post-judgment reconsideration "was not an adequate substitute" for notice and an opportunity to respond before decision. 49 F.4th 674, 689 (2d Cir. 2022) (collecting cases).

## ARGUMENT

This motion presents material defects in the Opinion that warrant correction. Mr. Zhao asks the Court to address overlooked arguments and untested theories that were not properly briefed, not to revisit arguments the Court fully considered and rejected. Once any of these errors is corrected, Counts I through V cannot be maintained against Mr. Zhao and should be dismissed.

### A. The Court Should Reconsider the Section 550 Ruling Because It Rests on an Unpleaded Alter-Ego Theory and an Overlooked Foreign-Law Conflict

As pleaded, Section 550 supplies the recovery basis for every Transfer Claim against Mr. Zhao. Counts I through IV seek avoidance under Sections 544 or 548 and recovery from him under Section 550; Count V seeks Section 550 recovery alone. Compl. ¶¶ 80–128.[1] Section 550 permits recovery only from an initial transferee, an entity for whose benefit the initial transfer was made, or an immediate or mediate transferee. 11 U.S.C. § 550(a)(1)–(2). In *In re Direct Response Media,*

[1] Counts II and IV invoke Delaware or other applicable state law as the avoidance law incorporated through Section 544, but both expressly seek recovery from each defendant under Section 550(a). Compl., ¶¶ 92-104, 114-124.

*Inc.* this Court enforced that limit by dismissing actual and constructive fraudulent-transfer claims against defendants that were not "initial transferees or entities for whose benefit the transfer was made." 466 B.R. 626, 654, 656 (Bankr. D. Del. 2012). Unless the Opinion's alter-ego theory plausibly places Mr. Zhao within one of those categories, the Court must dismiss Counts I through V against him.

The Opinion confirms that Section 550 status determines all five Transfer Claims. After concluding that the Complaint did not plausibly place Mr. Lim or Mr. Xiao within any Section 550 recovery category, the Court dismissed Counts I through V against them. Op. 22–23, 31. The Court sustained those same counts against Mr. Zhao only because alter ego supplied the missing basis for Section 550 liability. *Id.* at 22 & n.149. If the Court reconsiders that ruling, no Section 550 theory remains against Mr. Zhao.

1. <u>Plaintiffs Never Pleaded (or Briefed) the Alter-Ego Theory That the Opinion Made Dispositive</u>

Plaintiffs never pleaded alter ego as a basis for Section 550 recovery. Across 43 pages and 144 numbered paragraphs, the Complaint never mentions alter ego, veil piercing, or corporate disregard. It identifies four foreign Binance Defendants collectively as transferees, alleges that Alameda Ltd. sent the transfers "directly to one or more Binance entities," and describes Mr. Zhao only as a "nominal counterparty." Compl. ¶¶ 21–25, 43, 82. Although Plaintiffs alleged ownership and control, they never alleged that the Court should disregard the Binance Defendants' separate existence or treat their receipt as Mr. Zhao's. They also never argued in their Opposition that the Binance Defendants were Mr. Zhao's or each other's alter egos for purposes of Section 550. *See* Opp. ¶¶ 43–44.

The Court's *sua sponte* use of alter ego to sustain Section 550 liability contravenes "the principle of party presentation," which mandates that "[t]he parties 'frame the issues for decision'"

and that "the court serve[] 'as neutral arbiter of matters the parties present.'" *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (internal citations omitted). "To put it plainly, courts 'call balls and strikes'; they don't get a turn at bat." *Id.* (quoting *Lomax v. Ortiz-Marquez*, 590 U.S. 595, 599 (2020)). It was prejudicial for the Court to adopt a theory—which places a heavy pleading burden on the plaintiffs in all events—that Plaintiffs did not assert in contending that Mr. Zhao was a transferee.

Indeed, this type of pleading omission is fatal even when a plaintiff does address an unpleaded theory in its motion papers. The Third Circuit in *Commonwealth ex rel. Zimmerman v. PepsiCo, Inc.* rejected an attempt to "set forth theories in a brief" without making "proper allegations in a complaint." 836 F.2d 173, 181 (3d Cir. 1988). The Third Circuit applied that requirement to corporate disregard in *Crystallex International Corp. v. Petróleos de Venezuela, S.A.* Although the plaintiff pleaded "in great detail" one alter-ego relationship, those allegations were "beside the point" because it had not alleged that the corporate transferor served as anyone's alter ego. 879 F.3d 79, 86 (3d Cir. 2018). "Absent such allegations," the court refused to disregard the transferor's distinct identity. *Id.* The court in *In re Hansen* reached the same result under Section 550, holding that the corporate payee was the initial transferee and that its owner's status as president and majority shareholder was "not remotely enough" to treat him as the recipient. 341 B.R. 638, 643–44 (Bankr. N.D. Ill. 2006). The court entered summary judgment for the owner and denied the trustee's belated request—made after discovery had closed—to add the unpleaded alter-ego theory. *Id.* at 643–48. Plaintiffs did less here.[2]

[2] The Opinion cited two decisions to justify its *sua sponte* use of alter ego under Section 550, but the plaintiffs in both cases pleaded the issue adequately. *Stanziale v. Vanguard Info-Solutions Corp. (In re Allserve Systems Corp.)*, Nos. 05-60401 (MBK), 06-2208 (MBK), 2007 Bankr. LEXIS 1747, at *9 (Bankr. D.N.J. May 17, 2007) (finding adequate allegations in complaint and counterclaim); *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 641 B.R. 467, 500 & n.63, 510 & n.111 (Bankr. D. Del. 2022) (Count I asserted an alter-ego claim that the court had to resolve before determining transferee status). Those decisions do not support the Court's use of alter ego to sustain Section 550 liability here, where the Complaint never mentions it.

The Opinion's use of this unpleaded theory warrants reconsideration for two independent reasons. First, sustaining Counts I through V on a theory absent from the Complaint was legal error. *See NL Industries*, 65 F.3d at 324, n.8 (recognizing the need to correct clear error or prevent manifest injustice as grounds for reconsideration). Second, although Mr. Zhao addressed the governing foreign-law conflict after Plaintiffs suggested (without raising veil-piercing or any alter ego theory) that corporate distinctions could be ignored for personal jurisdiction purposes, he had no opportunity to brief alter ego as a basis for Section 550 liability. The Court raised that distinct theory only after briefing closed. *See Clark*, 607 U.S. at 9; *Berardi*, 920 F.2d at 200). Correcting either defect would leave no plausible Section 550 theory against Mr. Zhao.

2. <u>The Opinion Overlooked Mr. Zhao's Preserved Showing That Foreign Law Materially Differs</u>

Reconsideration of the Section 550 ruling is separately warranted because the Opinion overlooked Mr. Zhao's preserved choice-of-law argument (which he preserved in response to Plaintiffs' personal-jurisdiction attribution theory) and treated the Binance Defendants as his and each other's alter egos without applying the law of their places of incorporation. The law of each entity's place of incorporation governs whether a court may disregard its corporate form. *See McElroy v. FirstEnergy Corp.*, 824 F. App'x 97, 99 (3d Cir. 2020) (applying law of the state of incorporation to veil piercing); *In re Tutu Wells Contamination Litig.*, 909 F. Supp. 1005, 1009 (D.V.I. 1995) (holding a court "must apply the law of the state of incorporation" before piercing a corporation's veil) (internal citations omitted). Section 550 does not displace that rule because non-bankruptcy law determines whether corporate receipt may become an owner's receipt. *See also In re Pocius*, 556 B.R. 658, 671 (Bankr. E.D. Pa. 2016) (applying state veil-piercing law to determine an individual's Section 550 liability for transfers received by an entity). Because the

relevant Binance Defendants are Cayman, Irish, and BVI corporations, the laws of those jurisdictions govern the alter ego issue.

The Opinion bypassed that analysis on the premise that Defendants "ha[d] not identified any conflict between those laws and the laws of Delaware." Op. 23 n.153. That was incorrect. Mr. Zhao cited authorities showing that the foreign laws require different elements and impose more demanding standards. For the Cayman Islands, the Reply cited *Global Gaming Philippines, LLC v. Razon*, which recognized that Cayman law follows English law and permits veil piercing only when a controller interposes a company to evade an existing personal obligation. No. 21 Civ. 2655 (LGS), 2022 WL 836716, at *7 (S.D.N.Y. Mar. 21, 2022) (*citing Prest v. Petrodel Res. Ltd.* [2013] UKSC 34, [¶35]). For the BVI, the Reply cited *Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, which recognized that the BVI applies English law, and *In re Platinum & Palladium Antitrust Litigation*, which held that financial dependence, a limited corporate function, and board overlap did not satisfy English law's requirement of "special circumstances" showing "a mere facade concealing the true facts." *Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, No. 15 Civ. 9003 (LTS) (SN), 2021 WL 3140777, at *1 (S.D.N.Y. July 26, 2021); *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 275 (2d Cir. 2023). For Ireland, the Reply cited an Irish-law analysis explaining that no Irish court had pierced the corporate veil until 2022. Reply 10. The Reply then contrasted those standards with Delaware's factor-based inquiry into capitalization, corporate formalities, siphoning, and façade. Reply 10–11 (*citing Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012); *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008)).

Those different elements foreclose the Opinion's alter-ego theory. In constructing that unpleaded theory, the Opinion drew on allegations concerning Mr. Zhao's ownership and control

and of commingled funds, shared infrastructure, collective branding, and coordinated operations among three of the Binance entities to infer that all four of the Binance Defendants were his and each other's alter egos. Op. 9–10, 22 & n.149; *see* Compl. ¶¶ 24–25. To be sure, Plaintiffs never pleaded that those allegations warranted disregarding any Binance Defendant's corporate form. Even if they had, the allegations would not satisfy the governing standards of the Cayman Islands, the BVI, or Ireland. Nothing in the Complaint alleges an existing personal obligation Mr. Zhao owed Plaintiffs before the Binance Defendants entered the picture, a company he later interposed to evade that obligation, or any use of a Binance Defendant to frustrate its enforcement. Courts applying English law reject alter ego on similar allegations. *See Tianbo Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 257–61 (E.D.N.Y. 2014) (dismissing claims where the complaint alleged ownership but no use or misuse of the corporation and no role for it after the alleged wrongdoing); *Monkton Ins. Servs., Ltd. v. Ritter*, No. MO-12-CA-85, 2013 WL 12109252, at *4 (W.D. Tex. Dec. 31, 2013) (holding under English and Cayman law that "mere ownership" could not support veil piercing "standing alone"). Irish law likewise contemplates veil piercing for fraud, misapplication or siphoning of funds, negligence, or impropriety, and further requires that "the interests of justice" demand it. *Powers v. Greymountain Mgmt. Ltd. (In Liquidation)* [2022] IEHC 599, [155]–[157]. The Complaint does not allege that Mr. Zhao or any director committed any of those acts through an Irish Binance Defendant in connection with the transfers or otherwise used that entity to defeat an obligation owed to Plaintiffs. *See generally* Compl.

Two independent defects therefore warrant reconsideration. First, the Opinion overlooked Mr. Zhao's preserved and dispositive choice-of-law argument. *See McGarry*, 909 F. Supp. at 244 (granting reconsideration after the court overlooked an argument with "potentially dispositive" force). Second, the Court's resulting failure to conduct the required choice-of-law analysis

constituted clear error. *See NL Industries*, 65 F.3d at 324, n.8 (holding that the failure to conduct a required choice-of-law analysis "constituted a clear error" and warranted reconsideration). In *Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, No. 15 Civ. 9003 (LTS) (SN), 2019 WL 4464242, (S.D.N.Y. Sept. 18, 2019) ("*Centauro I*"), the court corrected the same substantive error after examining *Prest*, departed from its prior alter-ego rulings, and dismissed the claims against the individual defendant for lack of personal jurisdiction because the plaintiff had not alleged an existing personal obligation that he evaded through an interposed company. *Id.* at *5–8. The case for correction is stronger here because Mr. Zhao identified the conflict before the Opinion issued and Plaintiffs never pleaded alter ego. Under the governing laws, the Binance Defendants' receipt remains their own, and the Court must dismiss Counts I through V against Mr. Zhao.

### B. Reconsideration Is Required Because the Opinion Used Alter Ego to Create Personal Jurisdiction Over Mr. Zhao

Separately and independently, the Opinion's decision to allow the Transfer Claims to proceed against Mr. Zhao warrants reconsideration because the Court identified no defendant-specific basis for exercising jurisdiction over him. The Opinion made no finding that Mr. Zhao's own suit-related contacts subjected him to jurisdiction. It instead treated Mr. Zhao and the Binance Defendants as alter egos, pooled their contacts, and used that collective pool to establish jurisdiction over every member. Op. 9–12. That ruling rests on errors that merit correction. The Opinion overlooked Mr. Zhao's showing that foreign law forecloses attribution of the Binance Defendants' contacts to him, then aggregated every defendant's contacts without first identifying an anchor defendant independently subject to jurisdiction. Correcting either error removes the Opinion's sole basis for exercising personal jurisdiction over Mr. Zhao and requires dismissal of Counts I through V against him.

1. <u>The Opinion's Adoption of an Unpleaded Alter Ego Theory and Overlooked Choice-of-Law Error Requires Reconsideration of Its Jurisdictional Ruling</u>

The same errors that require reconsideration of the Section 550 ruling independently require reconsideration of the jurisdictional ruling. Plaintiffs neither pleaded nor argued that the Binance Defendants and Mr. Zhao are alter egos for jurisdictional purposes. They instead argued the Binance Defendants were a "single economic unit," in response to which Mr. Zhao raised the foreign-law conflict explained above. Reply 9–11. The Opinion recharacterized that theory as an alter ego theory and then attributed the Binance Defendants' contacts to Mr. Zhao without identifying the law governing that attribution. Op. 9–10. The Opinion's only choice-of-law rationale appears later, where it states that Defendants had identified no material conflict. *Id.* at 23 n.153. As Section A.2 shows, Mr. Zhao had identified both the governing foreign standards and the outcome-determinative conflict.

Courts within this Circuit have required a choice-of-law analysis when alter ego supplies the jurisdictional link. In *Linus Holding Corp. v. Mark Line Industries, LLC*, the plaintiff sought to establish personal jurisdiction by imputing one entity's contacts to affiliated entities and individuals. The court held that its "veil-piercing inquiry begins by first determining which state's law to apply" and used forum law only after finding no material difference among the potentially applicable laws. 376 F. Supp. 3d 417, 424 (D.N.J. 2019). The court in *United Employment Associates v. Landmark Construction Co.* likewise held that "veil piercing for jurisdictional purposes is *substantive*" and that the court "must then determine which state's substantive law applies." No. 5:23-cv-3668, 2024 WL 4988982, at *4 (E.D. Pa. Dec. 5, 2024) (emphasis in original). Federal courts in New York have taken the next step and applied incorporation law when alter ego supplied the jurisdictional link. The court in *Centauro I* held that BVI law governed because the plaintiff needed alter ego "in order to establish personal jurisdiction," then applied

English law and dismissed when that theory failed. 2019 WL 4464242, at *4–8. The court in *Huang* likewise treated jurisdictional alter ego as a choice-of-law question and applied BVI and English law based on the relevant entity's place of incorporation. 13 F. Supp. 3d at 257–60.

Those authorities counsel against the path the Opinion took here. While a court may use the forum's laws when other potentially applicable laws do not materially differ, Mr. Zhao demonstrated that they do here. The Opinion overlooked that preserved and dispositive argument and omitted the choice-of-law analysis it required. *See McGarry*, 909 F. Supp. at 244 (granting reconsideration after the court overlooked an argument with "potentially dispositive" force); *NL Industries*, 65 F.3d at 324, n.8 (holding that failure to conduct a required choice-of-law analysis constituted clear error warranting reconsideration). Plaintiffs have not plausibly alleged facts that satisfy the more demanding veil-piercing standards imposed by those foreign laws. The Binance Defendants' contacts therefore remain their own, and the Court should reconsider its jurisdictional ruling and dismiss Counts I through V against Mr. Zhao.

2. <u>The Opinion's Circular Attribution of Contacts Independently Requires Reconsideration</u>

Even apart from the choice-of-law error, reconsideration is independently justified because the Opinion used alter ego to create personal jurisdiction from a group even though the doctrine can only extend jurisdiction from a defendant already subject to it. The Opinion acknowledged that personal jurisdiction requires a defendant-specific and claim-specific analysis. Op. 9. Yet it identified no suit-related contact that independently subjected Mr. Zhao to jurisdiction and no Binance Defendant independently subject to jurisdiction on the Transfer Claims. It instead treated the Binance Defendants as a "coordinated enterprise," pooled their contacts, and used that pool to find *prima facie* jurisdiction over every member of the same group. *Id.* at 10–12. The group thus supplied both the premise and the conclusion of the jurisdictional analysis.

That circular analysis reverses the required sequence. Plaintiffs bore the burden of establishing a *prima facie* case of jurisdiction over Mr. Zhao personally. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Due process also required the Court to assess each defendant's contacts separately. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 268 (2017); *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Alter ego supplies attribution, not the initial jurisdictional anchor. The Third Circuit applied that sequence in *Shuker v. Smith & Nephew, PLC*, an alter-ego personal-jurisdiction case. The *Shuker* court began with undisputed jurisdiction over the entity whose corporate separateness the plaintiffs sought to disregard. 885 F.3d 760, 780–81 (3d Cir. 2018). Only then did it consider whether the parent controlled the subsidiary sufficiently to attribute the subsidiary's contacts to the parent. *Id. Shuker* thus required an entity independently subject to jurisdiction before alter ego could extend those contacts to another defendant. The Opinion reversed that sequence here.

Courts within this Circuit have rejected the precise shortcut the Opinion took. The court in *Wade v. Kenan Advantage Group, Inc.* held that, "even if the Moving Defendants are alter egos," the plaintiff still had to establish jurisdiction over at least one of them because, without that predicate, "none can be imputed to the other Moving Defendants." No. 20-18155, 2021 WL 4704962, at *6 (D.N.J. Oct. 8, 2021). The court in *Gonzalez v. BAM Trading Services, Inc.* applied that rule to the same proposed attribution among BAM Trading Services, Binance, and Mr. Zhao. It declined to reach alter ego because the theory "require[d] the presence of another entity over which the Court has personal jurisdiction." No. 2:24-cv-08521 (BRM), 2024 WL 4589791, at *8 (D.N.J. Oct. 28, 2024). The court in *Sierra v. Trafigura Trading LLC* followed the same sequence, explaining that alter ego permits attribution from "an entity with sufficient ties" to the forum. C.A.

No. 22-366-JLH-CJB, 2024 WL 3823018, at *10 (D. Del. Aug. 14, 2024). Those decisions require an anchor before attribution begins.

Nothing cited in the Opinion is to the contrary. The Opinion relied on *Shuker*, *Miller Yacht*, and *Shenzhen Jisu* to support its attribution of contacts. Op. 10 n.79. But, again, the court in *Shuker* began with undisputed jurisdiction over one entity before considering whether alter ego permitted attribution of that entity's contacts to another defendant. 885 F.3d at 781. The court in *Miller Yacht Sales, Inc. v. Smith* did not address alter ego and likewise began with a contact "sufficient to subject" the corporate defendants to jurisdiction before attributing that contact to individuals based on partnership allegations supported by an affidavit. 384 F.3d 93, 95 n.1, 98 n.3 (3d Cir. 2004). And the court in *Shenzhen Jisu Technology Co. v. Shenzhen Fosala Technology Co.* stated that alter-ego attribution applies only when the court already "possesses jurisdiction over a parent or subsidiary," but it did not find that predicate satisfied; it granted discovery to determine whether direct contacts or a basis for attribution existed. No. 1:25-cv-16605, 2026 WL 1759350, at *3 (D.N.J. June 18, 2026). Each authority cited in the Opinion thus requires an entity independently subject to jurisdiction before attribution. None permits the Court to pool a group's contacts to create that initial jurisdictional anchor.

Mr. Zhao preserved this precise objection. He explained that Plaintiffs could not collapse several entities "without identifying which entities are at issue and whose U.S. contacts they would attribute to whom." Reply 9. The Opinion did not address that objection and invoked authorities that require the anchor it never identified. The resulting ruling therefore overlooks a potentially dispositive argument and misapprehends the governing law. *See McGarry*, 909 F. Supp. at 244; *Contempri Homes*, 281 B.R. at 559–60. Because collective attribution supplies the Opinion's sole

basis for exercising personal jurisdiction over Mr. Zhao, correcting the error requires the Court to dismiss Counts I through V against him.

### C. The Opinion's Court-Generated Domesticity Theory Independently Requires Reconsideration

Reconsideration is warranted on the independent question of extraterritoriality. The Opinion noted the "complex and thorny issue" of whether the Bankruptcy Code's avoidance and recovery provisions "may be applied extraterritorially" but sidestepped it by finding "from the allegations in the Complaint that Plaintiffs' action seeks a domestic application" of those provisions. Op. 18. But the Complaint did not allege a domestic transfer. The Complaint alleges that "Alameda (specifically, Alameda Ltd.) was the direct transferor of all of the consideration" and that Alameda Ltd. "is a British Virgin Islands company." Compl. ¶¶ 13, 43. Accepting for the sake of argument the Court's view that "the location of the Transfer recipients is irrelevant to the extraterritoriality analysis," Op. 19, a transfer that depleted the assets of a BVI debtor and was not alleged to have occurred in the United States is foreign, not domestic.[3]

The Opinion's contrary determination rested on several interrelated mistakes. The overarching error was the Opinion's view that a focus on the transfer from Alameda Ltd. would be "too myopic" given other circumstances identified "throughout the Complaint." Op. 19. But the Supreme Court directed a narrow inquiry based on "the focus of the" relevant statute, such that "domestic activity . . . involved in the case" is irrelevant if disconnected from that focus. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010). And in construing Section 546(e), the Supreme Court held "that the focus of the inquiry is the transfer that the trustee seeks to avoid."

---

[3] Because the recipients of the transfer also were not alleged to be in the U.S., the relevance (or not) of the transferor's location would not change the outcome in this case.

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 379 (2018). Accordingly, what the Opinion called "***conduct relevant to that focus***," Op. 18 (emphasis in original) (footnote omitted), was simply the location of the transfer from Alameda Ltd. that allegedly "deplete[] the estate." *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 98 (2d Cir. 2019). Additional analysis went beyond the statute's focus.[4]

Second, while the Opinion appeared to recognize that a plaintiff must affirmatively plead a domestic application of law, Opinion 17 n.115, it effectively relieved Plaintiffs of this obligation by making "inference[]s" from various points of speculation, including that the Opinion deemed "the Complaint is inconsistent" about the transferor. *Id.* at 19. Setting aside that the Complaint was perfectly clear that the transferor was "specifically[] Alameda Ltd.," Compl. ¶¶ 13 and 43, any ambiguity could not substitute for affirmative allegations plausibly locating the transfer in the United States. A plaintiff must plead domestic application of a law under the ordinary pleading standard. *See Morrison*, 561 U.S. at 253–54; *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 707–09 (3d Cir. 2018) (explaining that a claim is not stated "absent allegations that would give rise to a domestic" application of the statute invoked). This requires "sufficient factual matter" to show "more than a sheer possibility" of domestic application. *Ashcroft v. Iqbal*, 556 U.S. 662,

[4] Decisions the Opinion cited each involved a transfer by a domestic debtor, from a domestic account, or both. Op. 20 n.140; *see, e.g.*, *Picard*, 917 F.3d at 99–100 & n.9 (a domestic debtor and transfers from U.S. bank accounts). Courts have treated transfers lacking those features as foreign despite substantial U.S. contacts. *See In re Lyondell Chem. Co.*, 543 B.R. 127, 149–51 (Bankr. S.D.N.Y. 2016) (holding that U.S. direction and domestic effects did not make a transfer between Luxembourg entities domestic); *In re Sherwood Invs. Overseas Ltd., Inc.*, No. 6:10-bk-03323-KSJ, 2015 WL 4486470, at *19–22 (Bankr. M.D. Fla. July 22, 2015), *adopted*, 2016 WL 5719450, at *10–11 (M.D. Fla. Sept. 30, 2016) (holding that direction from Florida and U.S.-maintained records did not make transfers from a Swiss account to an English account domestic).

678–79 (2009). The Complaint did not meet that standard because it alleged no fact locating Alameda Ltd.'s transfer in the United States.

Moreover, the Court's reliance on documents outside the Complaint both confirmed and compounded the Opinion's mistake of law in applying the pleading standard. *See* Opinion 19. A court deciding a motion to dismiss may notice that another filing exists, but it may not accept disputed assertions in that filing as true. *See, e.g., S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 and 427, n.7 (3d Cir. 1999) ("[A] court that examines a transcript of [another] proceeding to find facts converts a motion to dismiss into a motion for summary judgment."). The Court's familiarity with the FTX cases did not place facts from the disclosure statement into the Complaint or permit the Opinion to use those facts to supply allegations Plaintiffs omitted. Notably, Plaintiffs did not argue that they had no duty to plead domestic application of the relevant statutes or that the Court should take notice of other documents. Opp. 35 (¶¶ 54–55). In this additional respect, the new theories presented in the Opinion were prejudicial because Mr. Zhao had no fair opportunity to address them.

Those points of law aside, the Court's ruling turned on several mistakes that independently warrant correction. Most obviously, the Court made a clear mistake in inferring that "the challenged Transfer" occurred "within the United States." Op. 20. Plaintiffs did not argue that, Opp. 35, and the Complaint does not allege it. The Opinion suggested that Binance.com was located in the U.S. because of the technology provider's U.S. domicile, which was noted in a plea agreement between Binance and the United States. Op. 20. But the cited paragraph states that the provider "operated Binance's exchange platform on servers ***in Japan***." Binance Plea, Statement of Facts ¶ 10 (emphasis added). The next paragraph in that cited document describes the exchange as "foreign-located." *Id.* ¶ 11. Those facts contradict the Opinion's characterization of

Binance.com as operating "from the United States." The Opinion also noted language in the plea agreement stating that Binance operated within the United States, Op. 20, but the quoted passage linked that statement to services provided to U.S. customers; it did not say that transactions of *non-U.S. users* like Alameda Ltd. occurred in the United States. Those legal and factual misapprehensions independently warrant reconsideration. *See Contempri Homes*, 281 B.R. at 559–60 (recognizing reconsideration when a court misapprehends the facts or applicable law); *NL Industries*, 65 F.3d at 324, n.8 (recognizing clear error as a ground for reconsideration).

Finally, in treating Alameda Ltd.'s transfer as one by a U.S. debtor, the Opinion again applied an alter ego theory that was neither pleaded nor briefed. It treated Alameda Ltd. as the alter ego of its Delaware parent. Op. 18–20. But the Complaint did not plead alter ego status; it instead clarified that "the direct transferor" was "***specifically***[] Alameda Ltd." Compl. ¶ 43 (emphasis added). This allegation confirmed corporate separateness. Plaintiffs confirmed this yet again in their briefing, stating that "the direct transferor was the non-US subsidiary of Alameda, Alameda Ltd." Opp. ¶ 30. They defended domesticity through the transaction's alleged U.S. contacts, *id.* ¶¶ 54–55, and, in the alternative, the extraterritorial reach of Sections 544, 548, and 550, *id.* ¶¶ 56–58. Plaintiffs never alleged or argued that Alameda Ltd. was an alter ego of Alameda LLC.

Because Plaintiffs never pleaded transferor-side alter ego, the Court could not base its ruling on that theory. *See Crystallex*, 879 F.3d at 86 (refusing to disregard a corporate transferor's separate identity because detailed alter-ego allegations concerning another entity were "beside the point"). And the Court repeated the same mistakes discussed above in reaching an alter ego holding, such as failing to apply the law of the BVI. *See McElroy*, 824 F. App'x at 99. Because Alameda Ltd. is a BVI company, BVI law governed. Compl. ¶ 13. The Opinion conducted no choice-of-law analysis. As Section A.2 explains, BVI law follows *Prest* and permits veil piercing

only when a controller interposes a company to evade an existing legal obligation. *See Centauro I*, 2019 WL 4464242, at *5–8.

Even if the disclosure statement could properly be considered, the pages cited by the Opinion describe the corporate relationships among FTX entities and generalized control failures, disregard of intercompany formalities, and commingling across affiliated entities; they do not tie that conduct to Alameda Ltd., much less plausibly show that Alameda Ltd. was interposed to evade an existing obligation, as BVI law requires. *See* D.I. 19143 at 30–35. The Court should therefore reconsider its domesticity ruling and dismiss Counts I through V against Mr. Zhao.

**CONCLUSION**

For the foregoing reasons, the Court should reconsider the Opinion and dismiss Counts I through V against Mr. Zhao.

Dated: August 24, 2026

BAKER & HOSTETLER LLP

*/s/ Michael E. Neminski*
Michael E. Neminski (No. 6723)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
mneminski@bakerlaw.com

Katherine L. McKnight (admitted *pro hac vice*)
1050 Connecticut Ave., NW, S-1100
Washington, D.C. 20036
(202) 861-1630
kmcknight@bakerlaw.com

*Attorneys for Defendant Changpeng Zhao*