**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST, FTX DIGITAL MARKETS, LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>BINANCE HOLDINGS LIMITED, *et al.*,<br><br>Defendants. | <br><br><br><br>Adv. Pro. No. 24-50222 (KBO) |

**THE BHL DEFENDANTS' MOTION FOR A STAY PENDING APPEAL**


**MILBANK LLP**

Alexander B. Lees*
Sean M. Murphy*
Nola B. Heller*
55 Hudson Yards
New York, New York 10001
(212) 530-5000
alees@milbank.com
smurphy@milbank.com
nheller@milbank.com

Olivia Choe*
Brett P. Lowe*
1101 New York Avenue NW
Washington, D.C. 20005
(202) 835-7500
ochoe@milbank.com
blowe@milbank.com
**pro hac vice*

**ROSS ARONSTAM & MORITZ LLP**

Garrett B. Moritz (Bar No. 5646)
Adam D. Gold (Bar No. 6412)
A. Gage Whirley (Bar No. 6707)
Hercules Building
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com
agold@ramllp.com
gwhirley@ramllp.com

*Counsel for Defendants Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited*

# TABLE OF CONTENTS

**Page(s)**


TABLE OF AUTHORITIES ... ii

PRELIMINARY STATEMENT ... 1

BACKGROUND ... 2

ARGUMENT ... 3

I. THIS ACTION SHOULD BE STAYED PENDING THE ARBITRABILITY APPEAL ... 3

A. *Coinbase* and related authorities mandate a stay ... 3

B. The Court should extend any stay to all parties if Digital Anchor obtains one ... 4

II. THIS ACTION SHOULD BE STAYED PENDING THE BHL DEFENDANTS' INTERLOCUTORY APPEAL FROM THE DENIAL OF THEIR MOTION TO DISMISS ... 6

A. The BHL Defendants satisfy the *Landis* balancing test ... 6

1. A stay maximizes the chance of preserving judicial and party resources ... 7

2. Denial of a stay risks causing irreversible prejudice to the BHL Defendants ... 8

3. Granting a stay will not harm Plaintiffs ... 10

B. The BHL Defendants satisfy the *Revel* standard ... 10

1. The balance of harms and public interest favor a stay ... 11

2. The BHL Defendants have a reasonable chance of success on the merits ... 12

a. The BHL Defendants have a reasonable chance of success on their challenge to the Court's personal jurisdiction ruling ... 12

b. The BHL Defendants have a reasonable chance of success on their challenge to the Court's transferee ruling ... 15

c. The BHL Defendants have a reasonable chance of success on their party-presentation argument ... 17

III. THE SCHEDULING ORDER ALLOWS THIS COURT TO STAY PROCEEDINGS AND DOES NOT CONSTITUTE A WAIVER OF ANY LEGAL RIGHTS ... 18

CONCLUSION ... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Sec. Litig.*,
2003 U.S. Dist. LEXIS 9736 (E.D. Pa. May 14, 2003) ....11

*Allstate Ins. Co. v. Toll Bros., Inc.*,
171 F. Supp. 3d 417 (E.D. Pa. 2016) ....5, 6

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ....3

*Barrowclough v. Kidder, Peabody & Co.*,
752 F.2d 923 (3d Cir. 1985) ....4, 5

*Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*,
128 F.3d 504 (7th Cir. 1997) ....4, 5

*Capers v. Quest Cap. Strategies, Inc.*, 2007 WL 2033831 (D.N.J. July 10, 2007) ....5

*Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*,
2021 WL 3140777 (S.D.N.Y. July 26, 2021) ....16

*Cima Labs, Inc. v. Actavis Grp. HF*,
2007 WL 1672229 (D.N.J. June 7, 2007) ....7

*Clark v. Sweeney*,
607 U.S. 7 (2025) ....18

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) .... *passim*

*Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*,
2022 WL 548123 (D. Del. Feb. 11, 2022) ....7, 11

*Consumer Fin. Prot. Bureau v. Navient Corp.*,
522 F. Supp. 3d 107 (M.D. Pa. 2021) ....7

*In re Diet Drugs*,
282 F.3d 220 (3d Cir. 2002) ....8

*FTX Recovery Tr. v. Meerun*,
669 B.R. 575 (Bankr. D. Del. 2025) ....6, 9

*Glover v. Fein, Such, Kahn & Shepard, P.C.*,
2024 WL 3518120 (D.N.J. July 24, 2024) ....20

*Gold v. Johns-Manville Sales Corp.*,
723 F.2d 1068 (3d Cir. 1983)......6, 19

*Gonzalez v. BAM Trading Servs., Inc.*, 2024 WL 4589791 (D.N.J. Oct. 28, 2024)......14

*Hilton v. Braunskill*,
481 U.S. 770 (1987)......10

*Home-Stake Prod. Co. v. Talon Petroleum, C.A.*,
907 F.2d 1012 (10th Cir. 1990)......14

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974)......7

*In re La Paloma Generating Co.*,
588 B.R. 695 (Bankr. D. Del. 2018)......20

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)......4, 6, 7, 11

*Maloney v. Gordon*,
328 F. Supp. 2d 508 (D. Del. 2004)......11

*Margolin v. Nat'l Ass'n of Immigr. Judges*,
146 S. Ct. 1285 (2026)......18

*Marshall v. Anderson Excavating & Wrecking Co.*,
901 F.3d 936 (8th Cir. 2018)......18

*MicroStrategy Inc. v. Acacia Rsch. Corp.*,
2010 WL 5550455 (Del. Ch. Dec. 30, 2010)......16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)......4

*Nken v. Holder*,
556 U.S. 418 (2009)......11

*In re Nu Ride Inc.*,
666 B.R. 510 (Bankr. D. Del. 2024)......3

*In re Platinum & Palladium Antitrust Litig.*,
61 F.4th 242 (2d Cir. 2023)......15

*Puckett v. Schnog*,
2013 WL 1874754 (D. Nev. May 3, 2013)......19

*In re Revel AC, Inc.*,
802 F.3d 558 (3d Cir. 2015)...... *passim*

*Reyes v. Freebery*,
2004 WL 1737683 (D. Del. July 30, 2004) ....................11, 12

*Richards v. Aramark Servs., Inc.*,
108 F.3d 925 (8th Cir. 1997) ....................14

*Salerno Med. Assocs., LLP v. Riverside Med. Mgmt., LLC*,
542 F. Supp. 3d 268 (D.N.J. 2021) ....................5

*Shuker v. Smith & Nephew, PLC*,
885 F.3d 760 (3d Cir. 2018)....................14

*Sierra v. Trafigura Trading LLC*, 2024 WL 3823018 (D. Del. Aug. 14, 2024)....................14

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*,
482 U.S. 522 (1987)....................9

*Sugartown Worldwide LLC v. Shanks*,
129 F. Supp. 3d 201 (E.D. Pa. 2015) ....................16

*Theravectys SA v. Immune Design Corp.*,
2014 WL 5500506 (Del. Ch. Oct. 31, 2014) ....................16

*Thomas Glob. Grp. L.L.C. v. Watkins*,
2016 WL 3946774 (D.N.J. July 19, 2016)....................14, 15

*Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*,
2025 WL 1488015 (D. Del. May 23, 2025)....................7, 8, 11

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020)....................18

*Wang v. Essence Int'l Fin. Holdings Ltd.*,
2026 WL 2272785 (S.D.N.Y. May 19, 2026) ....................15, 16

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)....................9

**Other Authorities**

Fed. R. Bankr. P. 7016....................19

Fed. R. Bankr. P. 8007(a)(1)....................1

Fed. R. Civ. P. 16(b)(4)....................19

Liam Boyle, High Court makes Irish History: Piercing the Corporate Veil, Eversheds-Sutherland (Dec. 21, 2022), https://www.eversheds-sutherland.com/en/ireland/insights/high-court-makes-irish-history-piercing-the-corporate-veil ....16

Restatement (Second) of Conflict of Laws § 307 (1971) ....15

Defendants Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited (collectively, the "BHL Defendants") hereby move under Federal Rule of Bankruptcy Procedure 8007(a)(1) for a stay of this adversary proceeding pending their appeal from the Court's order of July 24, 2026 [Adv. D.I. 159].[1] The BHL Defendants continue to contest the Court's exercise of personal jurisdiction over them, and they do not consent to the entry of final orders or judgments by the Court.

## PRELIMINARY STATEMENT

The Court should stay this adversary proceeding for multiple reasons. *First*, a stay should be automatic pending the appeal as of right from the denial of the motion to compel arbitration. Adv. D.I. 67 at 13 n.8. As the Supreme Court held in *Coinbase, Inc. v. Bielski*, when a party appeals an order denying arbitration, "whether the litigation may go forward in the [trial] court is precisely what the court of appeals must decide." 599 U.S. 736, 741 (2023) (citation modified). The Supreme Court therefore held that the trial court "must stay its proceedings" because "it makes no sense for trial to go forward while the court of appeals cogitates on whether there should be one." *Id.* at 738, 741 (citation modified).

*Second*, if the Court declines to grant an automatic stay to the BHL Defendants, it nevertheless should use its discretion to extend any stay granted to Digital Anchor to the other Defendants. Proceeding on different tracks for different parties would be impracticable and counterproductive, especially since all Defendants have been sued on identical theories, and all are alleged to be recipients of the same challenged transfers and considered by the Court to be alter egos.

[1] The BHL Defendants adopt and support the arguments in the motion for stay pending appeal filed by Defendant Digital Anchor Holdings Limited ("Digital Anchor") [Adv. D.I. 185].

*Third*, a discretionary stay is appropriate pending resolution of the interlocutory appeal seeking review of the Court's denial of the BHL Defendants' motion to dismiss, for which the BHL Defendants have sought leave contemporaneously herewith. The Court has inherent authority to manage its docket, and it should use that discretion to prevent what ultimately might turn out to be wasteful discovery and a needless trial. A stay is especially appropriate where foreign entities have raised legitimate jurisdictional defenses. Forcing the BHL Defendants to continue litigating in a U.S. court – in an action challenging conduct that occurred outside the country – before their jurisdictional objection is resolved on appeal would deny them the benefits of appealing the threshold constitutional issue of whether they have been appropriately haled to this forum in the first place. That would cause irreparable harm. By contrast, a stay would not prejudice Plaintiffs – who are seeking only monetary relief arising from transactions five years ago – in any meaningful sense.

## BACKGROUND

The BHL Defendants recognize that the Court is familiar with the allegations in the complaint, the briefing and argument concerning the Defendants' motions to dismiss and compel arbitration, and the Court's rulings on those motions. They therefore will not burden the Court with a lengthy recitation of the alleged facts and procedural history. Since the Court's ruling of July 24, 2026, Digital Anchor filed a notice of appeal from the denial of its motion to compel arbitration and moved for a stay pending that appeal, arguing that a stay is mandatory under *Coinbase* and related authorities. Adv. D.I. 183; Adv. D.I. 185. The BHL Defendants and Changpeng Zhao also have moved contemporaneously for leave to bring interlocutory appeals from the Court's order denying their motions to dismiss, and for reconsideration of the Court's ruling.

# ARGUMENT

## I. THIS ACTION SHOULD BE STAYED PENDING THE ARBITRABILITY APPEAL.

### A. *Coinbase* and related authorities mandate a stay.

Digital Anchor's motion for a stay lays out the legal standard applicable in cases where a party appeals a decision denying a motion to compel arbitration. As explained by Digital Anchor, *Coinbase* and this Court's decision in *In re Nu Ride Inc.* mandate a stay while the arbitrability appeal is pending. 666 B.R. 510, 520-21 (Bankr. D. Del. 2024) (*Coinbase* stay appropriate in adversary proceeding where it involved discrete issues between a small group of parties and concerned the asserted right to arbitrate issues in the adversary proceeding).[2]

The BHL Defendants were not parties to the Share Transfer Agreements, but at this stage of the litigation, the Court has accepted (even though Plaintiffs never pleaded or argued the issue) that the BHL Defendants' corporate separateness from other Defendants, including Digital Anchor, can be disregarded. Adv. D.I. 159 at 8–12. The BHL Defendants do not agree with the Court's alter-ego conclusion and are appealing it. So long as the Court treats the Defendants as alter egos of one another, however, the BHL Defendants should be allowed to argue (in the alternative) that the claims against them are subject to the arbitration clauses in the Share Transfer Agreements. *See, e.g.*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (recognizing that non-signatory defendants can enforce arbitration clauses under doctrines like alter ego).

[2] Plaintiffs argue in response to Digital Anchor's stay motion that the appeal is "frivolous" because a debtor's pre-bankruptcy agreements have been held not to bind a bankruptcy trustee with respect to fraudulent transfer claims, but they do not contend with Digital Anchor's argument that the threshold question of *arbitrability* has been delegated to the arbitral panel. The BHL Defendants refer to Digital Anchor's briefing for more on this subject.

**B. The Court should extend any stay to all parties if Digital Anchor obtains one.**

Even if the Court does not grant the BHL Defendants an automatic stay under *Coinbase*, it should exercise its discretion to stay the entire proceeding if it grants a stay to Digital Anchor. The remaining claims against the remaining Defendants completely overlap: they seek to avoid and recover the same transfers on the theory that all Defendants are transferees of the same property. The issues and defenses are substantially the same for all claims and all Defendants, including whether Plaintiffs have identified a domestic transferor entity, whether that entity was insolvent, whether it received less than a reasonably equivalent value, whether the transfers were motivated by an intent to defraud creditors, and whether the transfers are protected by the Bankruptcy Code's safe harbors, among others.

If Digital Anchor loses its arbitrability appeal after other Defendants have been forced to litigate in this Court, this action will end up with different parties on different schedules. That inevitably will create inefficiencies, duplication, and waste, particularly with discovery. Digital Anchor will be behind on discovery, for example, and may have to relitigate disputes that already have played out for other Defendants. A significant burden will be imposed on witnesses, many of whom are located outside the United States, if they have to submit to separate rounds of testimony as Digital Anchor plays catch-up. In that circumstance, it would make no sense for the other Defendants to have spent months litigating in this Court while Digital Anchor did not.

Courts may use their docket-management authority to stay intertwined claims involving appealing and non-appealing parties when proceeding piecemeal is impracticable. *Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*, 128 F.3d 504, 506–07 (7th Cir. 1997); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). Courts in this circuit likewise stay actions when arbitrable and non-arbitrable claims significantly overlap. *See Barrowclough v. Kidder, Peabody & Co.*,

752 F.2d 923, 938 (3d Cir. 1985) ("[T]he district court, as a matter of its discretion to control its docket may stay litigation among the non-arbitrating parties pending the outcome of the arbitration. Since the non-parties to this arbitration agreement have related and congruent interests with the principals to the litigation, the district court did not abuse its discretion in refusing to stay the arbitration." (citation modified)),[3] *overruled on other grounds*, *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993).

The *Bradford-Scott* case, which the Supreme Court endorsed in reaching its decision in *Coinbase*, is instructive. There, two of four defendants appealed the denial of a motion to compel arbitration. 128 F.3d at 505, 507. The Seventh Circuit held that proceedings concerning the appealing defendants had to be stayed, while leaving the district court to determine whether discovery concerning non-appealing defendants could "sensibly . . . proceed" in a bifurcated manner; if not, the district court was directed to "put a hold on discovery [against all defendants] until the appeals have been resolved." *Id.* at 506–07. Here, the claims against all Defendants are entirely overlapping and this Court has treated all Defendants as alter egos; this case cannot "sensibly proceed" against some Defendants but not Digital Anchor.

Similarly, in *Allstate Insurance Co. v. Toll Brothers, Inc.*, 171 F. Supp. 3d 417 (E.D. Pa. 2016), after granting a motion to compel arbitration as to some defendants and denying it as to others, the court stayed the entire action because the factual disputes were intertwined. *Id.* at 421,

---

[3] *See also, e.g.*, *Salerno Med. Assocs., LLP v. Riverside Med. Mgmt., LLC*, 542 F. Supp. 3d 268, 283 (D.N.J. 2021) (finding it appropriate to stay proceedings for all parties despite only some parties having a valid arbitration agreement because the "issues in this litigation and the arbitration would overlap" and the non-arbitrating defendant "has no potential liability independent of that of" the arbitrating defendant); *Capers v. Quest Cap. Strategies, Inc.*, 2007 WL 2033831, at *4 (D.N.J. July 10, 2007) (explaining that although only the plaintiff and one of the two defendants had an arbitration agreement, the court would "exercise its discretion and stay [all] proceedings until such time that the arbitration is complete" because the plaintiff's claims against the defendants were intertwined).

436 n.28. Although *Allstate* involved a stay pending arbitration rather than a stay pending appeal, its reasoning applies with equal force here: courts should not require some defendants to litigate while others pursue arbitration if doing so would create duplicative or inefficient litigation. *Id.* at 436 n.28.

This Court's decision in *FTX Recovery Trust v. Meerun*, 669 B.R. 575 (Bankr. D. Del. 2025), further supports staying discovery while threshold arbitrability and jurisdictional questions remain unresolved. There, the Court stayed merits discovery pending resolution of one party's motion to compel arbitration and another's motion to dismiss for lack of personal jurisdiction. *Id.* at 577–78. It explained that forcing parties who agreed to arbitrate to engage in full discovery "may unnecessarily subject them to the very complexities, inconveniences and expenses of litigation that they determined to avoid." *Id.* (citation modified). Likewise here, staying the action in full will prevent the remaining Defendants from enduring the burdens of discovery in a U.S. court while threshold dispositive motions are on appeal.

## II. THIS ACTION SHOULD BE STAYED PENDING THE BHL DEFENDANTS' INTERLOCUTORY APPEAL FROM THE DENIAL OF THEIR MOTION TO DISMISS.

Even if the Court does not stay this action under *Coinbase*, it nevertheless should exercise its discretion to order a stay pending resolution of the BHL Defendants' interlocutory appeal.

### A. The BHL Defendants satisfy the *Landis* balancing test.

As the Supreme Court held in *Landis v. North American Co.*, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket" so as to promote fair and efficient adjudication. 299 U.S. 248, 254 (1936); *accord, e.g.*, *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983). Courts in this circuit thus have held that they can stay discovery pending other related proceedings, like an interlocutory appeal, when necessary to preserve time and effort for themselves, counsel, and the

litigants. *E.g.*, *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, 2022 WL 548123, at *4 (D. Del. Feb. 11, 2022). Under *Landis*, a request for a stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55; *accord, e.g.*, *Cima Labs, Inc. v. Actavis Grp. HF*, 2007 WL 1672229, at *8 (D.N.J. June 7, 2007).

A balance of interests under *Landis* favors a stay pending the BHL Defendants' appeal. A stay will promote efficient adjudication and expenditure of judicial resources while preserving the efficacy of the BHL Defendants' due process objections and causing no harm to Plaintiffs.

**1. A stay maximizes the chance of preserving judicial and party resources.**

A stay pending interlocutory appeal is appropriate under *Landis* when resolution of the questions presented "will determine whether th[e] action can proceed, or must be dismissed." *Consumer Fin. Prot. Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 119 (M.D. Pa. 2021). That is because the appeal could end up "eliminating the need for trial" (*id.*), as well as the need for fact and expert discovery and attendant motion practice. The central purpose of interlocutory appeals is to avoid "a wasted protracted trial if it could early be determined that there might be no liability," including in "cases in which a long trial results from a pretrial order erroneously overruling a defense going to the right to maintain the action." *Id.* at 120 (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974)). Courts therefore "routinely" grant stays pending interlocutory appeals. *Id.* (citing cases).

This case should be no different. Awaiting resolution of the threshold issues raised by the BHL Defendants' interlocutory appeal – *i.e.*, whether they are subject to personal jurisdiction or are sufficiently alleged to be transferees – could obviate a trial altogether. *See Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, 2025 WL 1488015, at *2 (D. Del. May 23, 2025) ("Other

District Courts have entered stays pending interlocutory appeal to avoid unnecessary trials. I follow that wise approach."). As the Third Circuit has observed, "[b]ecause there exists a strong policy to conserve judicial time and resources, we have held that preliminary matters such as . . . personal jurisdiction . . . should be raised and disposed of before the court considers the merits or quasi-merits of a controversy." *In re Diet Drugs*, 282 F.3d 220, 229 (3d Cir. 2002) (citation modified). Similarly, the Supreme Court stated in *Coinbase* that allowing a case to proceed simultaneously in the trial court and the appellate court "creates the possibility that the [trial] court will waste scarce judicial resources" that could be devoted to other matters. *Coinbase*, 599 U.S. at 743.

Granting a stay pending appeal will preserve the status quo and avoid the unnecessary expense of party and judicial resources. This action remains in an early phase; as of the date of this submission, the parties have not even exchanged discovery requests or presented discovery schedules to the Court. A stay now will maximize the avoidance of waste. It will prevent what the Supreme Court described as "[t]he worst possible outcome for parties and the courts": having the parties litigate a dispute in the trial court only for the appellate court to reverse and conclude that the trial court lacks authority to hear it. *Id.*

**2. Denial of a stay risks causing irreversible prejudice to the BHL Defendants.**

Without a stay, the BHL Defendants will be forced to submit to discovery and litigate in a foreign forum while an appellate court considers whether this Court may exercise jurisdiction over them in the first place. Their only other option is hardly a choice at all: refuse to engage in discovery and face the risks of sanctions, default, forfeiture of the ability to develop defenses, and other adverse consequences. No party should be put through this when it has raised a legitimate objection to personal jurisdiction that is still being adjudicated. The constitutional limitations on

personal jurisdiction protect a defendant from "the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). This Court recently recognized that parties "have a right not to litigate in a forum where the Court lacks personal jurisdiction," and that full discovery before resolving that threshold issue undermines due process protections. *Meerun*, 669 B.R. at 577–78.

The costs of litigating an action of this magnitude will be enormous, and that alone indicates that the Court, balancing the interests under *Landis*, should avoid putting the parties through discovery unnecessarily. But this motion is about more than just litigation expenses. When an appeal concerns a claimed right not to litigate in a forum, forcing a defendant to litigate while that right is under review substantially defeats the right itself. The Supreme Court recognized this in *Coinbase*, treating such a loss as sufficient to require a stay in the arbitration context; the *Meerun* court similarly recognized a due process concern in both arbitration and personal jurisdiction contexts. *Coinbase*, 599 U.S. at 743; *Meerun*, 669 B.R. at 577–78. The threatened injury is therefore the loss of the constitutional protection the BHL Defendants seek to vindicate. That injury is especially acute where, as here, foreign entities are forced to undertake and submit to discovery in the United States pending a challenge to the forum's authority. *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*, 482 U.S. 522, 546 (1987) (acknowledging the heavy burden discovery places on foreign litigants).

The threatened harm is irreversible. Discovery would require the BHL Defendants to collect, review, and produce documents; prepare witnesses; respond to discovery disputes; disclose sensitive business information; and more. Much of this may occur before it is determined on appeal whether this Court has authority over them. Should the BHL Defendants prevail on appeal, the litigation burdens they will have incurred up to that point cannot be undone, even though the action

will end up being dismissed. A stay is necessary to preserve the benefit of appellate review and avoid imposing the very litigation obligations that the appeal seeks to obviate.

**3. Granting a stay will not harm Plaintiffs.**

On the other side of the scale, Plaintiffs will suffer no meaningful harm from a temporary stay. This is a suit for money only, seeking recovery of transfers that occurred more than three years before the complaint was filed. Adv. D.I. 1 ¶¶ 34–44. There is no urgency or time sensitivity. And any proceedings in the main bankruptcy case would be completely unaffected by what occurs (or not) in this independent post-confirmation adversary proceeding. A stay merely would preserve the status quo while threshold issues are resolved on appeal. Awaiting resolution of those issues will benefit all parties: it will give them clarity about the proper forum and the adequacy of Plaintiffs' allegations against the BHL Defendants, while avoiding unnecessary discovery and motion practice if it ultimately is determined that the claims against the BHL Defendants should be dismissed.

**B. The BHL Defendants satisfy the *Revel* standard.**

Courts have identified a different test for addressing requests to stay an order or judgment from taking effect pending appeal. This separate test involves consideration of factors that overlap with the preliminary-injunction standard: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The BHL Defendants have not sought review of a final order and so are not seeking to stop a judgment from becoming effective. Rather, to maximize judicial efficiency, they seek a stay of proceedings while an interlocutory appellate process plays out. As a result, the *Revel* standard does

not apply. *Compare, e.g.*, *Nken v. Holder*, 556 U.S. 418 (2009) (applying injunctive standard where appellant alien sought stay of order of removal), *and Revel*, 802 F.3d 558 (applying injunctive standard where lessee sought stay of order authorizing sale of premises free and clear of leasehold interest), *with, e.g.*, *Landis*, 299 U.S. 248 (applying balance-of-interests test where litigant sought stay of proceedings pending other proceedings raising similar issues), *and Consumer Fin. Prot. Bureau*, 2022 WL 548123 (applying balance-of-interests test where litigant sought stay of proceedings pending interlocutory appeal).

Nonetheless, if the Court finds it appropriate to address the *Revel* factors, a stay is warranted under that test, too. *See, e.g.*, *Thomson Reuters*, 2025 WL 1488015, at *2 (recognizing that courts need not address *Revel* factors in deciding whether to stay proceedings pending interlocutory appeal but considering them anyway to be "prudent").

**1. The balance of harms and public interest favor a stay.**

Much of what is discussed above under the *Landis* standard applies under the *Revel* standard. Denying a stay will cause irreparable harm to the BHL Defendants by irreversibly undermining the constitutional right their appeal seeks to vindicate: the right of a foreign defendant to avoid being haled to a distant court to engage in litigation.

Meanwhile, granting a stay will cause no harm to Plaintiffs. At worst, it will delay litigation temporarily, but this is not enough for Plaintiffs to defeat a stay. *Maloney v. Gordon*, 328 F. Supp. 2d 508, 512 (D. Del. 2004) ("[I]n evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in her right to expeditiously pursue her claim." (quoting *In re Adelphia Commc'ns Sec. Litig.*, 2003 U.S. Dist. LEXIS 9736, at *10 (E.D. Pa. May 14, 2003))); *see also Reyes v. Freebery*, 2004 WL 1737683, at *5 (D. Del. July 30, 2004) (plaintiffs' failure to show "any prejudice other

than delay in pursuing their suits" was "insufficient to prevent staying" the case (citation modified)).

The public interest favors a stay as well: granting relief will maximize the chance that the Court and the litigants will not engage in wasteful litigation. The public benefits by freeing this Court up from attending to unnecessary discovery disputes, motion practice, and trials so that it can deal with other matters on its docket.

**2. The BHL Defendants have a reasonable chance of success on the merits.**

That leaves the first *Revel* factor, which is whether the BHL Defendants' interlocutory appeal has sufficient merit. Under *Revel*, a "reasonable chance, or probability, of winning" is enough; success need not be "more likely than not." *Revel*, 802 F.3d at 568–69 (citations modified). That is, the movant's chances must be "significantly better than negligible but not greater than 50%." *Id.* at 571.

As laid out in more detail in the BHL Defendants' motion for leave to appeal, the BHL Defendants believe that the Court's denial of their motion to dismiss rested on three errors, each of which warrants reversal. These arguments stand at least a "reasonable chance" of prevailing.

**a. The BHL Defendants have a reasonable chance of success on their challenge to the Court's personal jurisdiction ruling.**

The Court exercised jurisdiction over the BHL Defendants even though none of them satisfies all the elements of the Third Circuit's "purposeful availment" test. That test requires that a defendant have not only minimum contacts with the forum, but also a "strong relationship" with the litigation. Plaintiffs argued that the Binance.com exchange operated "in substantial part in the

United States," and that this satisfied the minimum contacts requirement.[4] Adv. D.I. 159 at 11; Adv. D.I. 106 ¶ 14. But even assuming for the sake of argument that Plaintiffs' allegations and evidence connected the BHL Defendants to the United States, they did not connect Digital Anchor. The complaint contains no allegations about Digital Anchor's relationship to the exchange. And the CFTC consent order on which the Court relied does not do so either: Digital Anchor was not a party to, and was not even mentioned in, that document. Adv. D.I. 106 ¶ 15; Adv. D.I. 108-17 ¶¶ 19, 23. The Court held that it lacked jurisdiction over Defendant Xiao precisely because he was not part of the consent order. Adv. D.I. 159 at 14 n.97. The same logic should have applied to Digital Anchor.

So, assuming the evidence showed the BHL Defendants had forum contacts satisfying the first part of the jurisdictional test, no BHL Defendant was a party to the Share Transfer Agreements and thus none had a relationship – let alone a "strong" one – with the litigation. Digital Anchor sold the FTX Trading shares (99% of the total transaction value), but it was not among the entities with U.S. contacts. Put another way, the Defendants with forum contacts were not those with contacts to the lawsuit; no single Defendant had both.

The Court sidestepped this issue by adopting an "alter ego theory of personal jurisdiction" that combined the BHL Defendants' forum contacts with Digital Anchor's litigation contacts. It did so even though Plaintiffs had not raised an alter-ego theory in the pleadings, in their briefing, or at oral argument. Adv. D.I. 159 at 10–11. The Court's reasoning in this regard was inconsistent with the Third Circuit's approach to jurisdiction. As shown by cases on which the Court relied, an alter-ego theory permits imputation only after a court finds at least one defendant that satisfies the

---

[4] The factual premise of that argument was wrong. Plaintiffs' own evidence showed that the exchange was operated "on servers in Japan." Adv. D.I. 108-16 Att. A ¶ 10.

jurisdictional test by itself, supplying both forum and litigation contacts. Only after finding jurisdiction over this anchor defendant can a court impute that entity's contacts to others. *See, e.g.*, *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) ("[I]f a subsidiary is merely the agent of a parent corporation or if the parent corporation otherwise 'controls' the subsidiary, then personal jurisdiction exists over the parent ***whenever personal jurisdiction . . . exists over the subsidiary***." (emphasis added) (citations omitted)).[5]

Even if the Court had identified an anchor defendant, it could not impute that entity's contacts to the BHL Defendants without a showing that they dominated and controlled it. No allegations or evidence showed that the BHL Defendants controlled another Defendant. The BHL Defendants and Digital Anchor were not alleged to have a parent/subsidiary or control relationship. As to Mr. Zhao, Plaintiffs asserted (and the Court found) that the BHL Defendants were the *controlled* entities. Adv. D.I. 159 at 22; Adv. D.I. 108-17 ¶¶ 19, 23. Courts have recognized that the jurisdictional alter-ego analysis does not work in reverse: "The dominated corporation does not direct and control its dominating corporate or individual alter ego. Accordingly, it is unfair to impute to the dominated corporation the forum contacts of its alter ego." *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1021 (10th Cir. 1990); *see also Richards v. Aramark Servs., Inc.*, 108 F.3d 925, 928 n.3 (8th Cir. 1997) (rejecting reverse veil piercing as method for non-insider plaintiff to obtain jurisdiction of defendant's subsidiary); *Thomas Glob. Grp. L.L.C. v.*

---

[5] *See, e.g.*, *Gonzalez v. BAM Trading Servs., Inc.*, 2024 WL 4589791, at *8 (D.N.J. Oct. 28, 2024) (citing *Shuke*r and rejecting alter ego jurisdiction over Binance Holdings Limited because the theory "require[s] the presence of another entity over which the Court has personal jurisdiction"); *Sierra v. Trafigura Trading LLC*, 2024 WL 3823018, at *10 (D. Del. Aug. 14, 2024) ("Under the alter ego theory, the contacts of an entity ***with sufficient ties to a particular forum*** can be attributed to another entity if the entity with the requisite forum contacts is the mere 'alter ego' of the other[.]") (emphasis added).

*Watkins*, 2016 WL 3946774, at *3 (D.N.J. July 19, 2016) (following *Home-Stake* and rejecting "reverse alter ego theory of jurisdiction").

The BHL Defendants therefore submit that the Court misapplied the jurisdictional test, which is reversible error. They have more than a "reasonable chance of success" on this issue. *Revel*, 802 F.3d at 571.

**b. The BHL Defendants have a reasonable chance of success on their challenge to the Court's transferee ruling.**

The Court treated the BHL Defendants as transferees even though they were not alleged to be parties to the Share Transfer Agreements, referring back to its jurisdictional alter-ego conclusion. In doing so, the BHL Defendants believe the Court committed reversible error.

Because the law governing whether to disregard corporate separateness for liability varies by jurisdiction, a choice-of-law analysis often is required. *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 275 n.11 (2d Cir. 2023). In a footnote, the Court concluded that Delaware law should apply "to all claims in the Complaint." Adv. D.I. 159 at 23 n.153. The Court then applied Delaware law because, it said, no party had identified a conflict. But the BHL Defendants had no opportunity to do so because Plaintiffs had not raised alter-ego theories in the complaint, briefing, or argument.

Mr. Zhao's separate briefing, however, did identify a conflict with the veil-piercing law of the Cayman Islands (where Binance Holdings Limited was formed), Ireland (where Binance Holdings (IE) Limited and Binance (Services) Holdings Limited were formed), and the British Virgin Islands (where Digital Anchor was formed). Adv. D.I. 141 at 10; *see* Restatement (Second) of Conflict of Laws § 307 (1971) (explaining that the "local law of the state of incorporation" governs "a shareholder's liability"). As Mr. Zhao argued, the Cayman Islands and the British Virgin Islands disregard corporate separateness only in "rare" circumstances. *Wang v. Essence*

*Int'l Fin. Holdings Ltd.,* 2026 WL 2272785, at *8 (S.D.N.Y. May 19, 2026) (explaining that English law, which governs veil piercing in the Cayman Islands, requires a showing that "the corporation" was "'interposed' in some way to thwart enforcement of a specific, existing legal liability"); *see Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, 2021 WL 3140777, at *1 (S.D.N.Y. July 26, 2021) ("the British Virgin Islands . . . appl[y] English law" to "alter ego claims"). In Ireland, no court even permitted veil piercing until 2022.[6] The Court did not address the possible conflict or engage with these standards under foreign law.

Even if the Court determined it was appropriate to apply Delaware law, it did not cite or apply the appropriate alter-ego analysis for imputing liability. Just because the Court found the "Binance Defendants" were alter egos for jurisdiction purposes did not automatically mean they could be alter egos for liability purposes. The alter-ego analysis is more "onerous" for liability than for jurisdiction, requiring more than just control. *E.g.*, *Sugartown Worldwide LLC v. Shanks*, 129 F. Supp. 3d 201, 205 (E.D. Pa. 2015); *MicroStrategy Inc. v. Acacia Rsch. Corp.*, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010).

Under Delaware law, "[s]eparate corporate identities are generally respected except in rare circumstances," including "when the use of the corporate form in and of itself operates to serve some fraud or injustice." *Theravectys SA v. Immune Design Corp.*, 2014 WL 5500506, at *2 (Del. Ch. Oct. 31, 2014) (citation modified). The Court did not address typical factors for disregarding separateness when considering the BHL Defendants, such as their solvency, board functions, corporate records, or siphoning. And while the Court relied on the CFTC consent order to conclude that the "corporate form was used to deceive," it did not contend with the fact that Digital Anchor

[6] *See* Liam Boyle, High Court makes Irish History: Piercing the Corporate Veil, Eversheds-Sutherland (Dec. 21, 2022), https://www.eversheds-sutherland.com/en/ireland/insights/high-court-makes-irish-history-piercing-the-corporate-veil.

was not a party to the consent order and was not even mentioned in the unadmitted facts contained in that document, which meant there was no basis to conclude that that entity's corporate form was misused. This was crucial because Digital Anchor, as the party to the Share Transfer Agreement governing the sale of the FTX shares, was the presumptive transferee of the consideration for those shares: it is the entity whose corporate form must be disregarded for transferee liability to be imputed to others.

Finally, the Court concluded that the BHL Defendants could be liable as Mr. Zhao's alter egos, which means it applied "reverse veil piercing" (holding a subsidiary liable for its shareholders' debts). The Court did not analyze whether reverse piercing is available under applicable law – again, because Plaintiffs never pleaded the point or advanced the argument, which meant the BHL Defendants had no notice that they should contend with it.

**c. The BHL Defendants have a reasonable chance of success on their party-presentation argument.**

As discussed, the complaint does not allege, and Plaintiffs did not argue, that the three BHL Defendants, Digital Anchor, and Mr. Zhao are alter egos for jurisdictional purposes. Plaintiffs instead argued that they did not have to "specif[y] which … Binance [entities] had the U.S. contacts alleged" because the entities form part of a unified corporate structure. Adv. D.I. 106 ¶ 14. Plaintiffs likewise did not use the words "alter ego" or "veil piercing" in alleging that the BHL Defendants were transferees. They merely alleged, conclusorily and "upon information and belief," that "each Defendant" was a transferee or beneficiary "of one or more of the 2021 Fraudulent Transfers." *E.g.*, Adv. D.I. 1 ¶ 90. Their position, in other words, was that all Defendants acted collectively and so could be grouped together for pleading purposes. Adv. D.I. 106 ¶ 68.

In their briefing opposing the BHL Defendants' motion to dismiss, "alter ego" appeared only once – in a parenthetical describing a case about what constitutes a "core" bankruptcy claim – not in an argument urging the bankruptcy court to collapse corporate forms. Adv. D.I. 106 ¶ 43. At oral argument, while addressing whether the complaint adequately alleged that each Defendant was a transferee, the Court *sua sponte* offered that "I know there's … allegations that … CZ controlled and that maybe there's some alter ego issues there." Adv. D.I. 150 at 70–71. Plaintiffs still did not urge an alter-ego theory.

As a result, at all stages of the litigation, the BHL Defendants were not on notice that an alter-ego theory, let alone a reverse veil-piercing theory, might be used against them. The Court's invocation of alter-ego theories thus violated the party-presentation principle and deprived the BHL Defendants of due process. "In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). Courts "rely on the parties to frame the issues for decision" and act as "neutral arbiter[s] of matters the parties present." *Id.* (citation omitted).

This, too, provides grounds for reversal. *See Marshall v. Anderson Excavating & Wrecking Co.*, 901 F.3d 936, 943 (8th Cir. 2018) (reversing district court for "rais[ing] an alter ego theory . . . sua sponte"). The Supreme Court summarily reverses courts of appeals on this very basis. *Clark v. Sweeney*, 607 U.S. 7 (2025); *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285 (2026). The BHL Defendants' chances of succeeding on this challenge are therefore "significantly better than negligible." *Revel*, 802 F.3d at 571.

## III. THE SCHEDULING ORDER ALLOWS THIS COURT TO STAY PROCEEDINGS AND DOES NOT CONSTITUTE A WAIVER OF ANY LEGAL RIGHTS.

In their opposition to Digital Anchor's motion for a stay, Plaintiffs argue that Defendants "waived" the right to seek a stay when the Court entered a scheduling order establishing a thirteen-

month discovery period running from the time it resolved the motions to dismiss and the motion to compel arbitration. Adv. D.I. 193 ¶¶ 17–18. This is not correct.

Paragraph 12 of the scheduling order states that the parties can seek modification either by agreement or by "an order of the Court upon good cause shown." Adv. D.I. 113 ¶ 12. That is consistent with Rule 7016, which permits a scheduling order to be modified "for good cause and with the judge's consent." Fed. R. Bankr. P. 7016; Fed. R. Civ. P. 16(b)(4). The BHL Defendants' motion for a stay is a request to modify the scheduling order so that the discovery period begins to run (if ever) on the date a stay is denied or lifted. Since the scheduling order expressly contemplates modification, there can be no argument that the BHL Defendants waived the right to seek a stay that would modify the schedule. *E.g.*, *Puckett v. Schnog*, 2013 WL 1874754, at *4 (D. Nev. May 3, 2013) (stipulated discovery plan and scheduling order "does not automatically waive a party's right to move for a stay of discovery"). In any event, as discussed above, the Court has inherent power to stay proceedings to help manage its docket. *E.g.*, *Gold*, 723 F.2d at 1077. The scheduling order does not deprive the Court of this fundamental authority.

Further, the scheduling order says that nothing therein "shall be deemed a waiver of any . . . jurisdictional objections." Adv. D.I. 113 ¶ 11. The BHL Defendants are seeking leave to appeal, among other things, the Court's denial of their motion challenging personal jurisdiction. A stay pending appeal is necessary to preserve the benefits of the jurisdictional objection, as described above. If a defendant is forced to submit to merits discovery while a jurisdictional objection is pending, the point of the jurisdictional objection will have been severely undermined. Since the scheduling order preserved jurisdictional objections, it also preserved the right to seek procedural relief that is necessary to ensure those objections are not eviscerated.

Finally, waiver requires an "intentional relinquishment . . . of a known right," which means the Court "must indulge every reasonable presumption against waiver." *In re La Paloma Generating Co.*, 588 B.R. 695, 717 (Bankr. D. Del. 2018), *aff'd*, 607 B.R. 794 (D. Del. 2019). A party cannot waive rights that come into existence after the date of the alleged waiver. *See Glover v. Fein, Such, Kahn & Shepard, P.C.*, 2024 WL 3518120, at *5 (D.N.J. July 24, 2024) (no waiver where claims did not arise until after the alleged point of waiver), *clarified on denial of reconsideration*, 2025 WL 615126 (D.N.J. Feb. 25, 2025).

The scheduling order was entered against the backdrop of unresolved motions. The BHL Defendants did not expect that the Court would deny their motion to dismiss the fraudulent transfer claims based on alter-ego and reverse veil-piercing concepts that Plaintiffs never pleaded, briefed, or argued. The central arguments in the BHL Defendants' interlocutory appeal will be that the Court erroneously applied those concepts, and in any event violated the party-presentation principle. The BHL Defendants should be allowed to seek a stay of proceedings pending this appeal, since the appeal is based on circumstances that could not have been foreseen when the scheduling order was entered.[7]

## CONCLUSION

For these reasons, the Court should stay this adversary proceeding pending resolution of the Defendants' appeals and grant the BHL Defendants such other relief as is just and proper.

---

[7] Plaintiffs argue in response to Digital Anchor's stay motion that the BHL Defendants, in entering into a stipulation to extend their time to file an answer, waived their right to seek a stay that would affect the answer deadline. Not so. As the email correspondence attached to Colin West's declaration makes clear, the BHL Defendants expressly sought clarification from Plaintiffs that the stipulation would not "foreclose[] the right later to seek a stay pending appeal," and Plaintiffs agreed. Adv. D.I. 194-1. Having induced the BHL Defendants to enter into the stipulation based on that understanding, Plaintiffs cannot now argue that the stipulation does, in fact, foreclose the right to seek a stay of the answer deadline pending appeal.

Dated: August 28, 2026
Wilmington, Delaware

**ROSS ARONSTAM & MORITZ LLP**

*/s/ Garrett B. Moritz*
Garrett B. Moritz (Bar No. 5646)
Adam D. Gold (Bar No. 6412)
A. Gage Whirley (Bar No. 6707)
Hercules Building
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com
agold@ramllp.com
gwhirley@ramllp.com

-and-

**MILBANK LLP**
Alexander B. Lees*
Sean M. Murphy*
Nola B. Heller*
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
alees@milbank.com
smurphy@milbank.com
nheller@milbank.com

Olivia Choe*
Brett P. Lowe*
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
ochoe@milbank.com
blowe@milbank.com
**pro hac vice*

*Counsel for Defendants Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holdings Limited*